No. 24-2815

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

THE GEO GROUP, INC.,

Plaintiff-Appellee,

v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington;
ROBERT W. FERGUSON, in his official capacity as Attorney General of the State
of Washington

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Western District of Washington

_____

### BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
_____

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

TESSA M. GORMAN
   *United States Attorney*

MARK B. STERN
BRAD HINSHELWOOD
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7256*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND INTEREST OF THE UNITED STATES ..........................1

BACKGROUND..............................................................................................2

    A.    Federal Immigration Detention Operations...................................2

    B.    Washington's Efforts to Ban or Regulate Federal Immigration
        Detention Operations ...................................................................3

ARGUMENT ..................................................................................................7

The District Court Correctly Applied Fundamental Principles of
Intergovernmental Immunity.........................................................................7

    A.    State Law May Be Discriminatory Even if it Does Not Expressly
        Name the Federal Government or its Contractors .....................8

    B.    A State Law Regulating Federal Immigration Detention is
        Discriminatory if It Imposes Burdens on Federal Contractors Not
        Imposed on Comparable State Facilities......................................12

CONCLUSION ............................................................................................ 19

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Clark v. Martinez,*
   543 U.S. 371 (2005) ........................................................................................ 3

*Dawson v. Steager,*
   586 U.S. 171 (2019) ........................................................................ 10, 11, 17

*GEO Grp., Inc. v. Inslee,*
   No. 3:21-cv-05313-BHS, 2023 WL 7919947 (W.D. Wash. Nov. 16, 2023) ............. 4

*GEO Grp., Inc. v. Newsom*:
   15 F.4th 919 (9th Cir. 2021) ...................................................................... 9
   50 F.4th 745 (9th Cir. 2022) ................................................ 1, 3, 4, 9, 14, 15

*North Dakota v. United States,*
   495 U.S. 423 (1990) ........................................................................................ 8

*United States v. California,*
   921 F.3d 865 (9th Cir. 2019) ...................................................................... 14, 16

*United States v. Hynes,*
   20 F.3d 1437 (7th Cir. 1994) ...................................................................... 12

*United States v. Nye County,*
   938 F.2d 1040 (9th Cir. 1991) ...................................................................... 12

*United States v. Nye County,*
   178 F.3d 1080 (9th Cir. 1999) ...................................................................... 12

*United States v. Washington,*
   596 U.S. 832 (2022) ........................................................................................ 8

*Washington v. United States,*
   460 U.S. 536 (1983) ........................................................................................ 8

**Statutes:**

6 U.S.C. § 557 ........................................................................................ 3

8 U.S.C. § 1225(b) ........................................................................ 2, 18

8 U.S.C. § 1226 ........................................................................ 2, 18

8 U.S.C. § 1231(a) ............................................................................ 2, 18

8 U.S.C. § 1231(g)(1) ........................................................................ 2, 3

8 U.S.C. § 1231(g)(2) ...................................................................... 15, 16

Wash. Rev. Code § 70.395.020(7) ....................................................... 1, 4

Wash. Rev. Code § 70.395.030 .............................................................. 4

Wash. Rev. Code § 70.395.030(1) .......................................................... 4

Wash. Rev. Code § 70.395.040 .............................................................. 5

Wash. Rev. Code § 70.395.050 .............................................................. 5

Wash. Rev. Code § 70.395.060(1) .......................................................... 5

Wash. Rev. Code § 70.395.070(1) .......................................................... 5

Wash. Rev. Code § 70.395.080 .............................................................. 5

Wash. Rev. Code § 70.395.100 .......................................................... 4, 10

Wash. Rev. Code § 70.395.100(1) ........................................................ 10

Wash. Rev. Code § 70.395.100(6) ................................................... 10, 17

Wash. Rev. Code § 71.12.455(3)(a) ..................................................... 17

Wash. Rev. Code § 72.68.110 ............................................................... 4

## INTRODUCTION AND INTEREST OF THE UNITED STATES

In enforcing the immigration laws, the United States detains noncitizens pending their removal or a decision on removal. In Washington, as in other states, the Department of Homeland Security (DHS) uses privately operated detention facilities in addressing the "significant fluctuations in the population of noncitizens who are detained" in the state. *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750-52 (9th Cir. 2022) (en banc).

Plaintiff GEO Group, Inc., carries out federal immigration detention operations at a facility in Tacoma, Washington, under contract with DHS. GEO Group challenges HB 1470, a Washington statute that established a variety of requirements applicable to a "[p]rivate detention facility," defined as "a detention facility that is operated by a private, nongovernmental for-profit entity and operating pursuant to a contract or agreement with a federal, state, or local governmental entity." Wash. Rev. Code § 70.395.020(7).

The United States respectfully files this brief to address the principle of intergovernmental immunity that precludes a State from singling out the federal government or federal contractors for unique burdens or otherwise subjecting them to unfavorable treatment. It does not address any of the other issues addressed by the district court and the parties.

It is not controverted that the only entity now subject to HB 1470 is the DHS-contracted facility in Tacoma, and the district court concluded that the singling out of

the contractor at this facility is impermissibly discriminatory. Some aspects of the district court's analysis, challenged here by Washington, are of particular recurrent significance in cases raising issues of intergovernmental immunity. First, it is immaterial that the general definition of "detention facility" is facially neutral. The statute elsewhere excludes all contactors that might operate detention facilities used by the State or its localities, and consistent with the statute's intent, HB 1470 applies only to the Tacoma facility under contract with DHS. Second, the district court correctly rejected the State's contentions that it should compare the federal contractor's treatment with the treatment of other contractors who do not exist or, failing that, should compare the requirements imposed on the federal contractor by HB 1470 with the requirements imposed on residential treatment facilities. Such facilities are exempted from HB 1470, and in any event, as the district court explained, they differ in all crucial respects from the federally contracted facility at issue.

## BACKGROUND

### A.    Federal Immigration Detention Operations

As part of its administration of the immigration system, DHS detains certain noncitizens pending the completion of removal proceedings or while awaiting removal. *See* 8 U.S.C. §§ 1225(b), 1226, 1231(a). Congress authorized DHS to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," *id.* § 1231(g)(1), and it has directed that DHS "should favor the use of existing facilities for immigration detention, whether through purchase or

2

lease," *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc).  The statute specifically requires DHS to "consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility" before "initiating any project for the construction of any new detention facility."  8 U.S.C. § 1231(g)(2).[1]

Because the number and location of detained individuals change over time, it is necessary for DHS to "maintain flexibility" in detention operations.  *GEO Grp.*, 50 F.4th at 751.  As a result, DHS generally does not build or operate detention facilities; instead, DHS—like the former Immigration and Naturalization Service—contracts with private corporations or with local, state, or other federal agencies for detention space or facilities.  *Id.*  One such contracted facility is the Northwest ICE Processing Center (NWIPC), a facility in Tacoma, Washington owned and operated by plaintiff GEO Group, Inc.

### B. Washington's Efforts to Ban or Regulate Federal Immigration Detention Operations

1.  In recent years, Washington has several times attempted to ban or otherwise regulate federal immigration detention operations in the state.  Most notably, Washington in 2021 enacted a statute that sought to ban the operation of private

---

[1] The statutory language refers to the "Attorney General," but many references in the Immigration and Nationality Act to the "Attorney General" are now read to refer to the Secretary of Homeland Security.  *See* 6 U.S.C. § 557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

3

detention facilities within the state, subject to a host of exceptions for Washington's own detention operations. *See* Wash. Rev. Code § 70.395.030(1). GEO sued to enjoin that statute. After this Court sitting en banc held that a materially similar California statute "violates the Supremacy Clause as to ICE-contracted facilities," *GEO Grp.*, 50 F.4th at 763, Washington conceded that its statute likewise could not be applied to NWIPC while it was under contract with DHS, *see GEO Grp., Inc. v. Inslee*, No. 3:21-cv-05313-BHS, 2023 WL 7919947, at *1 (W.D. Wash. Nov. 16, 2023) (noting State's acknowledgement that its law "is unconstitutional as applied to the NWIPC").

After *Newsom*, Washington enacted HB 1470, which establishes a variety of requirements applicable to a "[p]rivate detention facility," defined as "a detention facility that is operated by a private, nongovernmental for-profit entity and operating pursuant to a contract or agreement with a federal, state, or local governmental entity." Wash. Rev. Code § 70.395.020(7). Despite the apparent breadth of that definitional provision, the scope of the statute is severely limited by its exclusions of several categories of facilities, including state rehabilitative, counseling, and treatment facilities, work release facilities, drug abuse treatment facilities, and facilities owned and operated by tribes. *Id.* § 70.395.100.

As a result of these exclusions and the state's general policy of not contracting for prison or jail services, *see* Wash. Rev. Code §§ 70.395.030, 72.68.110, it is uncontested that "at present HB 1470 applies only to NWIPC," State Br. 15.

4

Five provisions of HB 1470 are at issue in this suit. Section 2 of HB 1470 requires the state Department of Health to issue regulations governing private detention facilities that must include a variety of specific requirements, such as regulations about indoor air temperature control and dietary requirements, with violations enforceable by the state Attorney General. Wash. Rev. Code § 70.395.040. Section 3 establishes a new inspection regime applicable only to private detention facilities, again providing for enforcement by the state Attorney General. *Id.* § 70.395.050. Section 4 imposes a variety of specific requirements directly on private detention facilities, following "the duration of" any existing contract for detention services, "not to include any extensions or modifications." *Id.* § 70.395.060(1). Section 5 creates a private right of action for any "detained person aggrieved by a violation" to bring suit against the facility in state court and to seek damages for negligent and willful violations and injunctive relief. *Id.* § 70.395.070(1). Finally, Section 6 of the statute generally provides for civil penalties for violations of the statute, with penalties initially assessed by the Department of Health and enforceable in court by the state Attorney General. *Id.* § 70.395.080.

2. GEO filed suit and sought a preliminary injunction, arguing, among other contentions, that the challenged provisions violate principles of intergovernmental immunity and preemption. The district court dismissed GEO's claim with respect to § 4 as unripe, reasoning that GEO's contract with DHS runs through September 2025, and that it was speculative whether DHS would extend the contract or modify it

5

before that time "in a manner that will subject the NWIPC to enforcement under Section 4." 1-ER-28.

The district court held that GEO's challenges to the other two substantive provisions—Sections 2 and 3—were ripe and that they likely discriminate against GEO as a federal contractor and thus are invalid under the intergovernmental immunity doctrine. The court held that each of the challenged provisions imposes burdens on NWIPC that are not imposed on any other detention facility in Washington, and thus "impermissibly discriminate[] against GEO as the operator of the NWIPC." 1-ER-48; *accord* 1-ER-49, 67, 70.

With respect to § 2, the court first noted that "[t]he language and history of HB 1470 demonstrate that it was enacted to apply solely to private immigration detention facilities," 1-ER-41, citing the legislative history, statutory statements of purpose, and exclusion of all other sorts of facilities from the statute's coverage, 1-ER-42-44. The court noted that it was uncontested that the statute applied to no facility other than the DHS detention facility. The court rejected the State's contention that no discrimination existed because the requirements imposed on the DHS facility mirrored those the State had previously established for residential treatment facilities, which are not detention facilities covered by HB 1470. The court emphasized that "[i]mmigration detention facilities and residential treatment facilities serve entirely different purposes," 1-ER-46, that they are "authorized to exercise vastly different

6

degrees of control over those who fall under their purview" and that they "operate out of categorically different types of facilities," 1-ER-48.

The court concluded that § 3 also impermissibly discriminated against GEO as a government contractor. 1-ER-63-67. The court explained that § 3 is more onerous than other inspection regimes in the state because it requires "mandatory, routine, and unannounced inspections," while other inspection regimes are discretionary and occasional and require the consent of the inspected party. 1-ER-64-66. The court stressed that § 3 grants "broader authority to inspect" than provisions applicable to other facilities, citing such provisions as the mandatory inspection of the "nutrition and calorie needs" of detainees that have no analogue in other state inspection regimes. 1-ER-67.

The court also briefly addressed §§ 5 and 6, concluding that the statutes created enforcement provisions with no application to any similarly situated facilities. 1-ER-69-70.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY APPLIED FUNDAMENTAL PRINCIPLES OF INTERGOVERNMENTAL IMMUNITY

The United States submits this amicus brief to address aspects of the State's argument that ask this Court to depart from basic principles of intergovernmental immunity and permit discrimination by states against the federal government and its contractors.

7

The doctrine of intergovernmental immunity recognizes that the Supremacy Clause prohibits "state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals' (*e.g.*, contractors)." *United States v. Washington*, 596 U.S. 832, 838 (2022) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality op.)). "[A] state law discriminates against the Federal Government or its contractors if it 'single[s them] out' for less favorable 'treatment,' or if it regulates them unfavorably on some basis related to their governmental 'status.'" *Id.* at 839 (second alteration in original) (first quoting *Washington v. United States*, 460 U.S. 536, 546 (1983), and then quoting *North Dakota*, 495 U.S. at 438 (plurality op.)). The district court correctly applied these principles in evaluating the provisions challenged here.

### A. State Law May Be Discriminatory Even if it Does Not Expressly Name the Federal Government or its Contractors

HB 1470 imposes a number of regulatory requirements on the NWIPC, and also subjects the NWIPC to private enforcement actions with no analogue in state law. The State acknowledges that "at present HB 1470 only applies to NWIPC," but it declares "that is not enough for impermissible discrimination." Br. 15. In the State's view, its law cannot be discriminatory "[b]ecause its plain text applies equally to private detention facilities operating under a contract with any 'federal, state, or local government entity[.]'" *Id.*

8

It should be beyond dispute that a state statute may not discriminate against the federal government simply by avoiding direct mention of the federal government or its contractors. The statute's definition of "private detention facility" might be neutral in isolation. But that definition must be read in conjunction with the other statutory provisions that exempt all contractors who provide detention services to the state or local governments and otherwise forbid detention operations in the state. Those provisions effectively mean that Washington law singles out federal contractors—and only federal contractors—for the burdens imposed by HB 1470.

A state may not discriminate against the federal government and its contractors simply by couching a statute in broad terms and enacting exceptions or other provisions that render the statute narrowly applicable. Indeed, a panel of this Court has already rejected that premise: the panel in *Newsom* recognized that California's statute attempting to ban private detention facilities "facially discriminate[d] against the federal government" by "creat[ing] a blanket prohibition and then exempt[ing] large swaths of state contractors in line with its own preferences." *GEO Grp., Inc. v. Newsom*, 15 F.4th 919, 938 (9th Cir. 2021). While the en banc Court in *Newsom* had no need to reach the discrimination question, *see GEO Grp.*, 50 F.4th at 758 n.7, the panel was correct, and Washington points to no case that has permitted a state to discriminate against federal contractors by drawing a statute to apply only to such contractors.

9

Washington is thus quite wrong to urge that "[d]espite its plain text, the district court concluded HB 1470 singles out GEO as a federal contractor [merely] because the law's intent section cites this Court's decision in *GEO Group, Inc. v. Newsom*." Br. 26. The court concluded that the statute singles out the DHS contractor operating the NWIPC because that is exactly what it does. The statute would be equally infirm if the legislature had not chosen to declare that it had enacted the statute to regulate federal contractors based on its mistaken belief that principles of intergovernmental immunity do not constrain its ability to regulate DHS detention centers as long as they are operated by private federal contractors.

Nor does the State advance its argument by noting (Br. 26) that many of HB 1470's exemptions cover not only state operations but also facilities detaining individuals pursuant to "similarly applicable federal law." Wash. Rev. Code § 70.395.100. The extent to which those exceptions apply to any actually existing federal operations is unclear, as the exceptions deal primarily with matters of interest to the State, such as juvenile offenders or residential substance abuse treatment. *E.g.*, *id.* § 70.395.100(1), (6). But in any event, that HB 1470 is drafted to provide exemptions for other federal operations—none of which apply to NWIPC—only underscores the tailoring of the statute to impose burdens only on immigration detention operations, which are exclusively a federal responsibility.

The State cites (Br. 25, 27) the Supreme Court's statement in *Dawson v. Steager*, 586 U.S. 171, 177 (2019), that the "letter of the law" is "what matters" in assessing

discrimination, but it fundamentally misunderstands the Court's point. The Court in *Steager* rejected West Virginia's contention that it should uphold the state tax exemption at issue "because it isn't intended to harm federal retirees, only to help certain state retirees." *Id.* at 172. The Court explained that "what matters isn't the intent lurking behind the law but whether the letter of the law treats those who deal with the federal government as well as it treats those with whom the State deals itself." *Id.* at 177 (alterations and quotation marks omitted). The dispositive issue was not legislative intent but the statute's relative impact on federal and state employees. Accordingly, immediately after rejecting the argument based on intent, the Court turned to (and rejected) West Virginia's contention that even "[i]f treatment rather than intent is what matters[] . . . it should still prevail for other reasons." *Id.* at 177-78. Here, as in *Steager,* the state statute as written results in discrimination.

Nothing in *Steager* suggests that a court should disregard whether a law "treats those who deal with the federal government as well as it treats those with whom the State deals itself," on the ground that the law does not refer to federal contractors and federal facilities by name. Washington cannot simultaneously acknowledge that the statute applies only to the DHS detention facility and nevertheless also assert that "HB 1470 is a generally applicable health and safety law that applies to all private detention facilities." Br. 49. As discussed, that position finds no basis in intergovernmental immunity analysis.

11

Washington notes (Br. 25) this Court's observation that the wording of a state law is "significant" in intergovernmental immunity analysis. *United States v. Nye County*, 178 F.3d 1080, 1084 (9th Cir. 1999) (quoting *United States v. Nye County*, 938 F.2d 1040, 1042 (9th Cir. 1991)). No one disputes that the wording of a state law is significant, but there is no basis for Washington's contention that the intergovernmental inquiry "should end" merely because the state law does not expressly mention the federal government or its contractors. Br. 27. And, indeed, this Court in the *Nye County* litigation held discriminatory a state tax that did not by its terms refer to the federal government or its contractors, and instead applied to "[p]ersonal property exempt from taxation which is leased, loaned or otherwise made available to and used by a natural person, association or corporation in connection with a business conducted for profit."[2] *Nye County*, 938 F.2d at 1042-43.

## B. A State Law Regulating Federal Immigration Detention is Discriminatory if It Imposes Burdens on Federal Contractors Not Imposed on Comparable State Facilities

The State offers two reasons why its statute is nondiscriminatory despite singling out NWIPC for unique treatment. First, the State contends that its regulation

---

[2] In *United States v. Hynes*, 20 F.3d 1437 (7th Cir. 1994) (en banc), on which the State also seeks to rely, the Seventh Circuit found that Congress had *consented* to differential taxation by statute. The court explained that "there is no discrimination because the sole cause of the difference in treatment is Congress' decision to subject [certain federal] property to state and local taxes," and that consent applied "whether or not property being acquired by state or local public bodies is similarly taxed." *Id.* at 1441. The decision has no bearing on this case, where there is no claim that the United States has consented to differential treatment.

of NWIPC should be compared to a hypothetical contractor performing detention services for the State, even though no such contractors exist (and apparently will not exist for the foreseeable future).  As the district court recognized, that is mistaken; the State is not free to impose regulations on federal contractors simply because the State has chosen not to use private contractors for a similar function.  Second, the State contends that if comparison with state operations is appropriate, the appropriate comparators are residential treatment facilities for mental health or substance abuse issues.  Those facilities, as the district court recognized, bear no resemblance to immigration detention, and in any event, Congress has recognized that prisons and jails are the appropriate comparable facilities.

**1.**  The State devotes considerable effort to arguing that HB 1470 does not discriminate because no other private detention facilities receive more favorable treatment under the statute.  Br. 30-36.  As discussed, it is undisputed that HB 1470 applies to no entity other than the NWIPC.  Washington thus compares the treatment of federal contractors to a null set.  As the district court observed, the State's apparent theory is thus that "it can impose any burdens it wants on private immigration detention facilities short of prohibiting them altogether."  1-ER-43.

In response, the State declares that the court's concern is misplaced because Washington recognizes that "a state regulation that frustrates ICE's goals by purporting to regulate who could be detained at NWIPC would likely be forbidden by the Supremacy Clause."  Br. 32.  In other words, apart from dictating to the federal

13

government which detainees it can place in DHS detention facilities, the State can impose any regulations on DHS facilities as long as they are operated by private contractors. The State cites no case endorsing such a premise. And in any event, the extent to which a State regulation "frustrates" federal objectives has no bearing on discrimination analysis. State regulations that frustrate federal objectives implicate principles of obstacle preemption. *GEO Grp.*, 50 F.4th at 761-63. But as this Court has explained, under the intergovernmental immunity doctrine, even a *de minimis* burden is impermissible if discriminatorily imposed. *United States v. California*, 921 F.3d 865, 883-84 (9th Cir. 2019).

Like California in *GEO Group v. Newsom*, Washington has ceased to use private contractors in operating prisons and various other detention facilities. This is, of course, a matter committed to the State's judgment. But the State cannot urge that contractors not providing any services to any government provide a valid comparator and then insist that "federal contractors are *better off* than state contractors, who are largely prohibited from operating in Washington." Br. 31. And the State's assertion is particularly inappropriate where Washington has taken care to exclude from the statute's requirements all detention facilities that the State itself may use. The State has "impose[d] additional burdens on private immigration detention facilities that are not imposed on other similarly situated facilities." 1-ER-44.

Washington attacks a straw man, declaring, for example, that "[u]nder the district court's reasoning, private contractors must be treated like state governments

14

and thus must be exempt from property taxes too." Br. 35. That is plainly not the case. The question in all instances is whether a state law discriminates against federal contractors by imposing unique burdens on them or otherwise treating them less favorably, and the appropriate comparison will vary with the nature of the state enactment and its impact on the federal government and the states respectively. For example, federal contractors may pay a generally applicable property tax on land they own because such a statute bears no relationship to their federal contract and applies equally to all similarly situated taxpayers. Here, however, HB 1470 applies only to a federal contractor's operation of a detention facility to carry out federal immigration detention; it is in no sense the sort of "generally applicable" regulation that operates on federal contractors in only a "neutral, nondiscriminatory way." *GEO Grp.*, 50 F.4th at 755 (quotation omitted).

**2.** The district court explained that the relevant question is whether HB 1470 imposes greater requirements on the NWIPC than Washington law imposes on prisons and other comparable detention facilities in Washington. As the district court noted, the governing federal statute recognizes that prisons and jails are comparable facilities for purposes of immigration detention, and it requires the Secretary of Homeland Security to "consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use" "[p]rior to initiating any project for the construction of any new detention facility" for immigration detention. 8 U.S.C. § 1231(g)(2); *see* 1-ER-46. "This congressional

15

mandate is consistent with the plain and ordinary meaning of 'detention center,' which applies equally to immigration detention facilities like the NWIPC and other detention facilities like prisons or jails." 8 U.S.C. § 1231(g)(2); *see* 1-ER-46.

As the district court also observed, this Court has approved the extension of some state inspection requirements to immigration detention facilities contracting with the federal government, but it has done so on the understanding that the inspection requirements mirrored those the state applied to "state and local detention facilities," namely jails and prisons. 1-ER-46 (emphasis omitted) (quoting *California*, 921 F.3d at 884). Although this Court held that statute was permissible to the extent that it did "not compel any additional inspection requirements beyond those applied to other state facilities," this Court likewise recognized that some portions of the statute did "not merely replicate th[e] inspection scheme" already applicable to "prisons and detainment facilities," but instead included "additional requirements [that] burden federal operations, and *only* federal operations." 921 F.3d at 882-83, 884. And this Court explained that a provision imposing a "novel requirement" that was "apparently distinct from any other inspection requirements imposed by California law" should be enjoined as discriminatory. *Id.* at 884-85. The same principles of comparison apply here.

Despite this guidance, HB 1470 imposes unique burdens on federal contractors applicable to no contractors at any other detention facility. Washington seeks to deal with this critical difficulty by urging that the requirements for federal immigration

detention contractors should be compared to those imposed by a different state statute regarding "residential treatment facilities housing individuals with mental health or substance abuse disorders" instead of state law governing prisons and jails. Br. 37; *see* Br. 39 (asserting that HB 1470 is based on regulations for such facilities).

It is fundamental, however, that in evaluating the discriminatory nature of a state statute, the relevant comparisons depend on "how the State" has defined the class of persons or entities subject to the statute. *Steager*, 586 U.S. at 177. Residential treatment facilities are excluded from the coverage of HB 1470, unlike prison or jail facilities. Wash. Rev. Code § 70.395.100(6). And indeed, residential treatment facilities bear no resemblance to the facilities with which the federal government contracts for immigration detention services. As the district court explained, such facilities are designed for medical treatment of patients, and generally operate out of hospitals or similar medical facilities. 1-ER-47, 48; *see* Wash. Rev. Code § 71.12.455(7) (defining residential treatment facility as an "establishment" that provides care "for the evaluation, stabilization, or treatment of residents"); *id.* § 71.12.455(3)(a) (defining "establishment" to include "[e]very private or county or municipal hospital, including public hospital districts, homes, behavioral health hospitals, residential treatment facilities, or other places receiving or caring for any person"). Such facilities also house a mix of voluntarily and involuntarily present people, with the ultimate goal of returning those individuals to society after the conclusion of their treatment. 1-ER-46-47.

17

Conversely, the purpose of immigration detention is to ensure that individuals are present for the effectuation of a final order of removal or are present for removal proceedings because they are charged with being removable from the United States. *See* 8 U.S.C. §§ 1225(b), 1226, 1231(a). Immigration detention is not voluntary, is not for the purpose of medical treatment, and is not intended to prepare or treat individuals for an eventual return to society.

In sum, HB 1470 singles out contractors carrying out a contract with DHS for unique requirements imposed on no contractors at any other detention facility within the meaning of the statute, and it thus runs afoul of principles of intergovernmental immunity.

## CONCLUSION

For the foregoing reasons, this Court should reject Washington's efforts to authorize state discrimination against federal contractors.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

TESSA M. GORMAN
*United States Attorney*

MARK B. STERN

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*
*bradley.a.hinshelwood@usdoj.gov*

July 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and Ninth Circuit Rule 32-1(a) because it contains 4,345 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood