No. 24-2815

# In the United States Court of Appeals for the Ninth Circuit

THE GEO GROUP, INC.,

*Plaintiff-Appellee,*

v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington & ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington,

*Defendants-Appellants.*

Appeal from the United States District Court for the Western District of Washington (Settle, J.)
3:23-cv-05626

## SUGGESTION OF MOOTNESS AND MOTION TO REMAND

Scott Schipma
The GEO Group, Inc.
4955 Technology Way
Boca Raton, FL 33431
(561) 999-7615
scott.schipma@geogroup.com

Dominic E. Draye
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street NW
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Counsel for Appellee*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

LEGAL STANDARD ........................................................................................4

ARGUMENT .....................................................................................................5

CONCLUSION ..................................................................................................9

ii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arizona v. United States,*
 567 U.S. 387 (2012) ............................................................................................ 7

*Board of Trs. of Glazing Health & Welfare Tr. v. Chambers,*
 941 F.3d 1195 (9th Cir. 2019) (en banc) .......................................... 4, 6

*Boeing v. Movassaghi,*
 768 F.3d 832 (9th Cir. 2014) .......................................................................... 2

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
 505 U.S. 88 (1992) .............................................................................................. 7

*Geo Group, Inc. v. Newsom,*
 50 F.4th 745 (9th Cir. 2022) (en banc) ................................................. 3

*Hardeman v. Monsanto Co.,*
 997 F.3d 941 (9th Cir. 2021) .......................................................................... 7

*New York State Rifle & Pistol Ass'n v. City of New York,*
 590 U.S. 336 (2020) ............................................................................................ 5

*Shirk v. United States,*
 773 F. 3d 999 (9th Cir. 2014) .......................................................................... 3

*Teter v. Lopez,*
 125 F.4th 1301 (9th Cir. 2025) (en banc) .................................. 5, 8, 9

*United States v. Washington,*
 596 U.S. 832 (2022) ............................................................................................ 5

## Statutes

Wash. Rev. Code § 70.395 ............................................................. 1, 4, 8

iii

Other Authorities

H.B. Rep. E2SHB 1232, 69th, Leg., Reg. Sess. (Wa. 2025) ...................... 1

Wash. Admin. Code § 246-215, *et seq.* .................................................... 2

Wash. Admin. Code § 246-217, *et seq.* .................................................... 2

## INTRODUCTION

On May 12, 2025, Governor Ferguson signed into law Second Substitute House Bill ("H.B.") 1232, a sweeping amendment to Wash. Rev. Code § 70.395—the statute at issue in this case. 2025 Wash. Sess. Laws Ch. 235 (Exhibit A). H.B. 1232 changes many of the requirements that the State of Washington imposes on Appellee the GEO Group, Inc. ("GEO") as the operator of the federal immigration facility known as the Northwest ICE Processing Center ("NWIPC"). In scope and substance, the new law differs materially from its predecessor and unfortunately moots this appeal.

Most notably, the new law purports to sweep more broadly than its predecessor by removing the requirement that a regulated entity be "for-profit," thereby potentially bringing other facility operators within the law's reach. Ex. A at 3:4. The Washington Legislature noted that this change was specifically made in response to the district court ruling that is the subject of this appeal. H.B. Rep. E2SHB 1232, 69th Leg., Reg. Sess., at 4 (Wa. 2025). In addition, as revised by H.B. 1232, Section 70.395 now (1) empowers the State to impose any "reasonable conditions" on the operation of the NWIPC, (2) allows the State to dictate facility

1

staffing and imposes detailed staff training and licensing requirements for facility employees, and (3) requires the NWIPC to comply with more than 200 separate state statutory sections found at Wash. Admin. Code § 246-215, *et seq.* and Wash. Admin. Code § 246-217, *et seq.* Ex. A 9:9–10. None of these new requirements was before the district court below.

These changes will not make Washington's efforts constitutional, but they change the constitutional analysis. If anything, H.B. 1232 goes further in regulating GEO's performance in violation of *Boeing v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), than its predecessor did. Its more involved provisions also encroach more significantly on the federal field of immigration detention and present greater obstacles to the accomplishment of the federal government's objectives than the statute at issue in this appeal. And, because GEO's impending new contract will be subject to all provisions of the new law, the district court's holding that challenges to some of the State's requirements were not ripe will no longer apply. 1-ER-23–29.

Ultimately, the same Supremacy Clause doctrines that led the district court to enjoin the previous statute should yield the same result for H.B. 1232. But that determination should be made by the district

2

court in the first instance. *Shirk v. United States*, 773 F. 3d 999, 1007 (9th Cir. 2014) ("[W]e are a court of review, not first view." (quotation omitted)).

The Court should dismiss this appeal and remand to the district court so that GEO can amend its complaint to address the current law.

## BACKGROUND

For the past five years, elected officials in Washington State have passed law after law attempting to thwart federal enforcement of immigration laws. That campaign began with H.B. 1090 in 2021, which purported to restrict the federal government from using contractors to operate detention facilities within Washington's borders. This Court held a similar ban unconstitutional in *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc). To circumvent that decision, Washington adopted H.B. 1470 with the expressed intent of "prohibit[ing] the use of private, for-profit prisons and detention facilities in the state" through burdensome requirements and unannounced inspections. As its authors recognized, HB 1470 is simply a backdoor to accomplishing what this Court struck down in *Newsom*. GEO brought the current lawsuit to challenge that law.

3

In response, the Washington Legislature has again returned to the drawing board. Its current iteration, H.B. 1232, adds many new requirements and deletes a few provisions in a naked attempt undercut the district court's ruling below. For example, H.B. 1232 alters the definition of "private detention facility" to remove the for-profit requirement. Ex. A at 3:4–6. It also deletes the prohibition on dried or canned fruits and vegetables, along with the specific requirements for personal hygiene products. *Id.* at 1:10–14, 2:18–21. One provision the new law did not delete was its application to federal contracts. In particular, it did not alter the exclusion of contracts entered before January 1, 2023, which was the district court's basis for finding portions of GEO's lawsuit unripe. *Id.* at 7:15–19. Currently, however, GEO is negotiating its next contract, which will take effect at the end of this summer and trigger the entire spectrum of requirements in Section 70.395, as revised by H.B. 1232.

## LEGAL STANDARD

This Court "presume[s] that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot." *Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d

4

1195, 1199 (9th Cir. 2019) (en banc); *see also New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 338–39 (2020) (declaring moot claims challenging constitutionality of New York law that had been amended). Under these circumstances, the Court dismisses the appeal and remands the matter to the district court so that the plaintiff can amend its complaint to assert claims against the new law. *Teter v. Lopez*, 125 F.4th 1301, 1309 (9th Cir. 2025) (en banc).

## ARGUMENT

This is not the first time Washington has changed its laws in an attempt to avoid the Supremacy Clause. While *United States v. Washington*, 596 U.S. 832, 837 (2022), was pending in the Supreme Court, the Washington Legislature amended the contested statute that discriminated against federal contractors at Hanford. It then argued that the Supreme Court should not decide the case on mootness grounds. *Id.* Because there were lingering liabilities from the previous law, the Court disagreed and proceeded to decide the case. *Id.* at 838. This time, GEO does not face any continuing liabilities from the previous statute, so the State's efforts to avoid judicial review have succeeded for the time being.

5

Because H.B. 1232 effects both a "repeal" and an "amendment" of the statute GEO sought to enjoin, this Court "presume[s]" that the new legislation "will render an action challenging the [earlier] legislation moot." *Glazing Health*, 941 F.3d at 1199. And for good reason. Even though H.B. 1232 has the same object as its predecessors and raises many of the same constitutional concerns, it has remade the State's regulatory program by adding requirements, deleting requirements, and perhaps altering the universe of facilities to which the law applies by striking "for-profit" from its definition of covered facilities. Ex. A at 3:4. The latter change is especially relevant to the district court's reasoning, which enjoined the enforcement of H.B. 1470 because it singled out the NWIPC for different and greater burdens than those imposed on state facilities and state contractors. 1-ER-45–47. The current record does not answer whether deleting "for-profit" will expand the law's scope to encompass one or more of those state facilities. This Court, of course, is not the forum in which to explore that question.

Conversely, the district court rejected in dicta GEO's alternative arguments under (1) the direct-regulation prong of intergovernmental immunity and (2) federal preemption. Although GEO is certain that the

6

lower court's holding was mistaken, the changed statute and GEO's impending new contract dramatically change the analysis under both of those doctrines.

For preemption, the tremendous expansion of detailed requirements changes the assessment of whether Washington has encroached on a field traditionally occupied by the federal government or "state law stands as an obstacle" to the accomplishment of federal policy. *Arizona v. United States*, 567 U.S. 387, 399 (2012). The new law is not only different from its predecessor but also more intrusive in aggregate. That is important because both species of preemption require a statute-specific inquiry—either into the scope of the federal field or the degree to which state law presents an obstacle. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992) ("[P]art of the preempted field is defined by reference to the purpose of the state law in question, . . . another part of the field is defined by the state law's actual effect."); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 976 (9th Cir. 2021) (noting that, with small changes in facts or enforcement, "perhaps the preemption analysis would lead to a different outcome"). Conducting that analysis for H.B. 1470's array of now-supplanted regulations makes no sense. The current

7

question is whether the requirements in Section 70.395, as amended by H.B. 1232, cross the line and trigger preemption.

For direct regulation, the most important development is something that H.B. 1232 did not change, specifically the effective date for contacts covered by the law. In reliance on the fact that GEO's current contract was entered before January 1, 2023, the district court found GEO's challenge unripe as to the substantive requirements in Section 4 of H.B. 1470. 1-ER-27–29. The new statute does not delay the effective date, meaning that it will apply to GEO's new contract, which takes effect at the end of this summer. That fact alone will allow the district court to consider a host of requirements that it did not analyze before. In fact, the full application of Section 70.395 will require a new complaint to enjoin enforcement of the provisions the district court did not reach, which only highlights the judicial economy in dismissing this appeal.

In these circumstances—where the State has amended its statute but GEO's objections remain as to the new law—the Court should remand for GEO to amend its complaint and assert whatever claims it might have based on the current statute. *Teter*, 125 F.4th at 1309. The en banc Court in *Teter* explained that, where mootness is "'attributable

8

to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework,'" the court should remand the case with an opportunity for the plaintiff to amend rather than dismissing it entirely. *Id.* (quoting *New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 338 (2020)). That perfectly describes the circumstances here, in which GEO intends to reassert Supremacy Clause challenges to the new law. That process must begin in the district court.

GEO has conferred with Defendants' counsel, and Defendants oppose the suggestion of mootness.

## CONCLUSION

Because the adoption on H.B. 1232 changes the scope and substance of Washington's law regulating the NWIPC, this appeal is moot. The Court should dismiss the appeal and remand to the district court, where GEO will amend its complaint to challenge the current statute.

9

May 23, 2025

Scott Schipma
The GEO Group, Inc.
4955 Technology Way
Boca Raton, FL  33431
(561) 999-7615
scott.schipma@geogroup.com

Respectfully submitted,

*/s/ Dominic E. Draye*

Dominic E. Draye
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street NW
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of 9th Cir. R. 27(d)(2)(a) because this brief contains 1,752 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century type.

/s/ Dominic E. Draye
Dominic E. Draye

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 23, 2023. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Dominic E. Draye<br>
Dominic E. Draye