No. 24-2815

# In the United States Court of Appeals for the Ninth Circuit

THE GEO GROUP, INC.,

*Plaintiff-Appellee,*

v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington & ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington,

*Defendants-Appellants.*

Appeal from the United States District Court for the Western District of Washington (Settle, J.)
3:23-cv-05626

## PETITION FOR REHEARING AND REHEARING EN BANC

Scott Schipma
THE GEO GROUP, INC.
4955 Technology Way
Boca Raton, FL 33431
(561) 999-7615
scott.schipma@geogroup.com

Dominic E. Draye
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street NW
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ......................................................ii

INTRODUCTION AND RULE 40(B) STATEMENT ............................1

ARGUMENT ......................................................................7

I.   H.B. 1232 Substantially Amended the Law, Mooting this Case. ..................................................................7

II.  If the Case Is Not Moot, the Merits Holdings Warrant Rehearing for Breaking with Precedent from the Supreme Court, this Court, and Other Circuits. .....................................11

    A.   Intergovernmental Immunity Bars States from Discriminating Against the Federal Government and Its Contractors or Directly Regulating Their Work. ...........11

    B.   Immigration Detention Is an Exclusively Federal Field in which State Regulation Creates Conflicts in Enforcement. .......................................................16

CONCLUSION ..................................................................21

i

# TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Am. Ins. Assn. v. Garamendi*,
539 U.S. 396 (2003) .............................................................. 20

*Arizona v. United States*,
567 U.S. 387 (2012) ........................................... 3, 10, 18, 20

*Board of Trustees of Glazing Health & Welfare Trust v. Chambers*,
941 F.3d 1195 (9th Cir. 2019) (en banc) .............. 3, 7, 10, 21

*Boeing Co. v. Movassaghi*,
768 F.3d 832 (9th Cir. 2014) ................................... 5, 13, 14

*CoreCivic, Inc. v. Governor of New Jersey*,
145 F.4th 315 (3d Cir. 2025) .......................................... 5, 16

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) ............................................... 8

*De Canas v. Bica*,
424 U.S. 351 (1976) .......................................................... 17

*Gartrell Const. Inc. v. Aubry*,
940 F.2d 437 (9th Cir. 1991) ................................. 6, 7, 15, 19

*GEO Group, Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) (en banc) ...................... *passim*

*GEO v. Wash. Dept. of Health*,
No. 24-5880 (9th Cir. argued Aug. 12, 2005) ..................... 20

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174, 181 n.3 (1988) ............................... 9, 13, 14, 15

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985) .......................................................... 18

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ............................................................... 4

*Johnson v. Maryland,*
254 U.S. 51 (1920) ................................................................ 15

*Leslie Miller, Inc. v. Arkansas,*
352 U.S. 187 (1956) ..................................................... *passim*

*McCulloch v. Maryland,* 17 U.S. 316, 432 (1819) ................................ 22

*Motor Coach Employees v. Lockridge,*
403 U.S. 274 (1971) ............................................................... 19

*New York State Rifle & Pistol Ass'n v. City of New York,*
590 U.S. 336 (2020) ........................................................... 3, 10

*North Dakota v. United States,*
495 U.S. 423, 438 (1986) ..................................................... 14

*Nwauzor v. GEO Grp., Inc.,*
146 F.4th 1280 (9th Cir. 2025) .............................................. 13

*Osborn v. Bank of the United States,*
22 U.S. 738 (1824) ............................................................. 15

*Plyler v. Doe,*
457 U.S. 202 (1982) ............................................................ 4

*Pub. Utils. Comm'n v. United States,*
355 U.S. 534 (1958) ........................................................... 14

*Rice v. Santa Fe Elevator Corp.,*
331 U.S. 218 (1947) ............................................................ 6

*Teter v. Lopez,*
125 F.4th 1301 (9th Cir. 2025) (en banc) ........................... 8, 10

*United States v. California,*
921 F.3d 865 (9th Cir. 2019) ................................... 4, 12, 13, 16

*United States v. King County,*
122 F.4th 740 (9th Cir. 2024) ................................ 4, 5, 11, 15

iii

*United States v. New Mexico,*
455 U.S. 720 (1982) ..................................................................... 14

*United States v. Texas,*
599 U.S. 670 (2021) ....................................................................... 3

*United States v. Washington,*
596 U.S. 832 (2022) ..................................... 11, 12, 14, 15

**Statutes**

6 U.S.C. § 112(b)(2) ....................................................................... 18

6 U.S.C. § 205 .......................................................................... 18, 21

6 U.S.C. § 205(a) ............................................................................ 20

6 U.S.C. § 205(c) ............................................................................ 19

8 U.S.C. § 1231(g)(1) ...................................................................... 17

Wash. Rev. Code § 43.70.170 ........................................................ 20

Wash. Rev. Code § 70.395 ................................................... *passim*

**Other Authorities**

9th Cir. R. 40-1(b) ........................................................................... 1

Fed. R. App. P. 32(a)(5) .................................................................... 1

Fed. R. App. P. 32(a)(6) .................................................................... 1

Fed. R. App. P. 32(f) ........................................................................ 1

Fed. R. App. P. 40(b)(2)(A),(B) ........................................... 3, 5, 6, 7

Fed. R. App. P. 40(b)(2)(C) ............................................................... 5

U.S. Const. art. I, § 8, cl. 4. ............................................................. 4

iv

## INTRODUCTION AND RULE 40(B) STATEMENT

This is a case of bypassing mootness to arrive at error. The panel opinion declares constitutional a statute that was adopted after briefing and oral argument. No complaint was filed against it, and neither side briefed its constitutionality. If they had, the outcome would have been the opposite.

Washington State has a long-running crusade against the federal government's use of contracted detention facilities. In response to this Court's decision in *GEO Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc), which held that States could not prohibit the federal government from using such facilities, Washington pivoted to regulating federal immigration detention and the contractors that provide those services. The first law it adopted, H.B. 1470, amended portions of the Washington Revised Code to regulate nearly every aspect of federal immigration detention. It applied to exactly **one** facility in the State: the Northwest ICE Processing Center ("NWIPC"), which the GEO Group operates under a contract with the federal government. That was not an accident. Three sections of H.B. 1470 explicitly exempt state facilities and a list of "private detention facilities" that covers every state

contractor. Wash. Rev Code. § 70.395.070 ("The state and its agencies are not liable for a violation of this chapter."), *id.* § 70.395.100.

GEO brought suit to enjoin H.B. 1470's enforcement under two Supremacy Clause doctrines: intergovernmental immunity and preemption. The former consists of two sub-species that prohibit (i) discrimination against the federal government or its contractors and (ii) direct regulation of how the government or its contractors perform their work. The district court granted the injunction under the anti-discrimination prong of intergovernmental immunity, and Defendants appealed.

**I.** As this appeal progressed, the Washington Legislature went back to the drawing board. It adopted a new statute, H.B. 1232, that dramatically altered many of the requirements imposed by H.B. 1470 and incorporated hundreds of pages of additional provisions. *See* Appendix B (comparison of pre- and post-H.B. 1232 statute); Appendix C (newly incorporated provisions). It also adjusted some of the exemptions in a way that might address one of the law's defects by bringing at least one unlucky state contractor within the law's ambit. That determination, however, must occur in the district court. The result was a substantially

different law than the one the district court enjoined. Indeed, no one has had an opportunity to brief the constitutionality of the current law. And without rehearing, no one will **ever** have that opportunity, because the panel has declared it to be constitutional.

Under this Court's en banc decision in *Board of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc), these changes render the case moot and require dismissal of the appeal. *See also New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 339 (2020). The panel declined to do so, even though it could not even identify the sections of H.B. 1232 that it was declaring constitutional. Opinion ("Op."; Appendix A) at 3, 4, 7, 11, 13, 15, 21, 32 (citing specific sections of H.B. 1470 plus unidentified "relevant" provisions of H.B. 1232). Rehearing is necessary to restore consistency with precedent from this Court and the Supreme Court regarding mootness. Fed. R. App. P. 40(b)(2)(A),(B).

**II.** If the case is not moot, rehearing is even more urgent. Defendants are hardly the first state politicians to prefer different immigration policies than those adopted by the federal government. *See, e.g., United States v. Texas*, 599 U.S. 670 (2021); *Arizona v. United States*,

567 U.S. 387 (2012); *Plyler v. Doe*, 457 U.S. 202 (1982); *Hines v. Davidowitz*, 312 U.S. 52 (1941).  Nor, in all likelihood, will they be the last.  But, as the Supreme Court has held for decades, the Constitution assigns responsibility for "an uniform Rule of Naturalization" to the U.S. Congress and makes its policies the supreme law of the land.  U.S. Const. art. I, § 8, cl. 4.  Several Supremacy Clause doctrines implement that rule.  Relevant here are intergovernmental immunity and preemption.

**A.**  Intergovernmental immunity comes in two forms.  First, it prohibits discrimination against the federal government and its contractors, a rule for which there is no *de minimis* exception.  *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019).  Any degree of less-favorable treatment invalidates a state law.  *Id.*  Here, H.B. 1470's burdens apply ***only*** to the federal government and its contractors; the law expressly exempts state operations.  Even if facial discrimination were not enough, a quick comparison to state detention facilities confirms the less-favorable treatment.  *See* Answering Br. ("AB") 38–44 (compare first and second columns).  Rehearing is necessary to apply the unbroken anti-discrimination rule from *California*, *Newsom*, and *United States v. King County*, 122 F.4th 740 (9th Cir. 2024).

Rehearing is also necessary on the second species of intergovernmental immunity, which invalidates a state law that "mandates the way in which [a contractor] renders services that the federal government hired [it] to perform." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014). There is no argument that H.B. 1470 (and H.B. 1232) regulates the manner in which GEO performs its work for the federal government. Regulating federal operations is the entire point of the statutes. In *King County*, this Court enjoined a county ordinance that regulated charter-flight operators working for ICE. 122 F.4th at 757–58. And just two months ago, the Third Circuit reached the same conclusion in a case indistinguishable from this one. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025). Despite a 28(j) letter, the panel never addressed the Third Circuit's searching analysis before reaching the opposite holding. Rehearing is necessary to reconcile this departure from other circuits, Fed. R. App. P. 40(b)(2)(C), and from controlling precedent from the Supreme Court and this Court, *id.* 40(b)(2)(A),(B).

**B.** The panel's preemption analysis was virtually non-existent. Field preemption earned just one paragraph; obstacle preemption fared slightly better with two. In these cursory sections, the panel held that

5

the federal government has not occupied the field of immigration detention, without referencing even one of the statutes that GEO cited. Op. 31. That is a monumental holding without any analysis at all. Rehearing is necessary to do the work that precedent from this Court and the Supreme Court require to assess whether the framework of federal regulation is "so pervasive . . . that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 2230 (1947). And the panel whispered not one word about the other path to field preemption, namely a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.*; *see* AB 57–58. Rehearing is again necessary to do the analysis required. Fed. R. App. P. 40(b)(2)(A),(B).

Finally, the panel's terse treatment of obstacle preemption simply quotes the provision in GEO's contract requiring compliance with "applicable" state law, Op. 32, without acknowledging that the Supreme Court and this Court have recognized that state laws "cannot be 'applicable,' nor compliance with them 'necessary,' where such laws are preempted by federal law." *Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 440 (9th Cir. 1991); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956).

6

The panel's conclusion that Washington law is not preempted because it is "applicable" inverts the rule from *Gartrell* and *Leslie Miller*. Rehearing is again necessary. Fed. R. App. P. 40(b)(2)(A),(B).

## ARGUMENT

### I. H.B. 1232 Substantially Amended the Law, Mooting this Case.

This Petition is not long enough to detail all of the changes that H.B. 1232 worked on the law as it existed after H.B. 1470. The panel and the State simply declare that the changes are "nonmaterial." Op. 9. But the statute speaks for itself. *See* App. B.

In charging ahead to bless statutory provisions that it could not even identify, the panel broke with a pair of recent en banc decisions from this Court and a host of Supreme Court precedents. This Court "presume[s] that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot." *Glazing Health*, 941 F.3d at 1199. That makes sense; an amendment changes the statute. And whether improved or worsened from a constitutional perspective, the new statute requires new analysis. In these circumstances, this Court should dismiss the appeal and remand the matter to the district court so that the plaintiff can amend its complaint to assert claims against the

7

new law. *Teter v. Lopez*, 125 F.4th 1301, 1309 (9th Cir. 2025) (en banc). The panel's alternative approach decided a statute's constitutionality without any briefing on that question, let alone consideration by a district court.

The narrow exception to this rule is for insubstantial changes. *Id.* at 1307; *see, e.g., Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019) (no mootness where the "only meaningful difference" was the elimination of a fee to obtain a permit). Here, the changes effected by H.B. 1232 are undeniably significant. For starters, H.B. 1232 attempts to cure the discrimination that was the basis for the district court's intergovernmental immunity holding. It does so by deleting the term "for-profit" from Wash. Rev. Code § 70.395's scope. App. B at 3:4. That subtle change means that the law might now reach at least one state contractor, potentially undermining the basis for the district court's finding of discrimination against federal operations. ER-7, 15. Determining that fact is, of course, a matter for the district court.

Other changes are more conspicuous. H.B. 1232 incorporates hundreds of pages of additional provisions and makes them applicable to the NWIPC. App. B at 9:9–10; App. C (incorporated provisions). Among

8

the incorporated provisions is a requirement that GEO obtain licenses from the State. App. C at 50. That is flagrantly unconstitutional, *Leslie Miller*, 352 U.S. at 190, but the panel did not even mention it, apparently a consequence of never receiving briefing on the vast new statute. H.B. 1232 also adds its own requirements ranging from automatic water-temperature regulation "at all plumbing fixtures," App. B at 4:23–24, to free, confidential telephone service for all detainees, *id.* at 10:7–9. It also includes open-ended provisions requiring written policies and procedures that assure detainees are protected from (i) "abuse," which encompasses "any act" that "in any way jeopardizes a detained person's health, welfare, or safety," and (ii) "neglect" which includes a "refusal to acknowledge, hear, or consider a detained person's concerns." *Id.* at 2:1–10, 31–40. Equally open-ended, H.B. 1232 gives the State power to "impose reasonable conditions" as it deems necessary. *Id.* at 6:21.

These new requirements affect the analysis for preemption and the direct-regulation prong of intergovernmental immunity. Regarding the latter, H.B. 1232 seeks to "'dictate the manner in which the federal function is carried out.'" *Newsom*, 50 F.4th at 758 (quoting *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 n.3 (1988)). And regarding

9

obstacle preemption, the additional interference presents a greater obstacle to federal policy. Likewise, for purposes of field preemption, even if H.B. 1470's augmentation of federal detention standards did not already upset a "comprehensive scheme," *Arizona*, 567 U.S. at 402, the hundreds of pages of new requirements added by H.B. 1232 very well could. The fact that the panel decision does not cite a single section of H.B. 1232 confirms that the panel never actually evaluated the current law, including its compliance, *vel non*, with intergovernmental immunity and preemption.

Article III's mootness doctrine serves many purposes. One of them is avoiding decisions on a law that has changed substantially, such that the parties' briefing on a predecessor statute does not address the current law. None of the requirements added by H.B. 1232 were in effect when GEO made its case that Section 70.395 is unconstitutional. Yet the panel charged ahead to hold that the never-briefed, post-H.B. 1232 statute is constitutional. Rehearing is necessary to conform to this Court's rule articulated in *Glazing Health* and *Teter* as well as the Supreme Court' holding in *New York Rifle* and the many cases on which they rely.

## II. If the Case Is Not Moot, the Merits Holdings Warrant Rehearing for Breaking with Precedent from the Supreme Court, this Court, and Other Circuits.

The panel's holding that "relevant portions" of H.B. 1232 are constitutional upends precedent from this Court and the Supreme Court. Intergovernmental immunity and preemption bar a State from regulating how a federal function is performed.

### A. Intergovernmental Immunity Bars States from Discriminating Against the Federal Government and Its Contractors or Directly Regulating Their Work.

The intergovernmental immunity doctrine prevents States from "interfering with or controlling the operations of the Federal Government." *Washington*, 596 U.S. at 838. "It does so by proscribing state laws that *either* regulate the United States directly *or* discriminate against the Federal Government or those with whom it deals (*e.g.*, contractors)." *King County*, 122 F.4th at 756 (quotations omitted). H.B. 1470 (and H.B. 1232) violates both forms of intergovernmental immunity.

**1. Discrimination.** The district court enjoined enforcement of H.B. 1470 because it discriminated against the federal government. The root of that holding was the statute's express exemption of state agencies and contractors. Wash. Rev Code. §§ 70.395.070, 70.395.100. Continuing a pattern of not engaging GEO's arguments, the panel said not a word

11

about the exemptions. It instead reversed the district court's comparison of H.B. 1470 to state prisons and remanded for a comparison to ***exempt*** state contractors like residential treatment facilities. *Compare* Op. 25 (listing preferred comparators) *with* Wash. Rev. Code § 70.395.100(2),(6) (exempting those same state contractors); *see also* AB 36–37 (explaining same).

Additionally, this Court already held that "state and local detention facilities" are the comparators for federal detention facilities. *California*, 921 F.3d at 885. To sidestep that precedent, the panel made two errors. First, it observed that detainees at the NWIPC have not been convicted of a crime, unlike "inmates in Washington's prisons," for whom "the conditions of their confinement are part of a penal regime." Op. 24. That makes no sense in evaluating regulations purportedly related to health and safety—inmates are just as entitled to safe and sanitary conditions as civil detainees. Second, the panel used circular reasoning to declare that state-owned facilities are not comparable to contractors because they are state-owned: "Washington owns and operates its prisons. By contrast, the federal government neither owns nor operates the NWIPC." *Id.* The Supreme Court and this Court disagree. *E.g., United States v.*

*Washington*, 596 U.S. 832 (2022) (rejecting discrimination against contractors working at Hanford site); *Goodyear Atomic*, 486 U.S. at 181 ("[T]he federal function must be left free of . . . state regulation" even when "the federal function is carried out by a private contractor."); *Boeing*, 768 F.3d at 842 ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis"). The panel broke with this precedent by treating the facility's ownership as a loophole for discrimination against federal operations. *Accord Nwauzor v. GEO Grp., Inc.*, 146 F.4th 1280, 1286 (9th Cir. 2025) (Bumatay, J., dissenting from denial of rehearing).

Through its many exemptions, H.B. 1470 assured that only federal contractors would come within its reach and face more burdensome regulations than any state comparator. AB 38–44 (compare first and second columns). Because there is no *de minimis* exception, *California*, 921 F.2d at 883, any less-favorable treatment of federal operations offends intergovernmental immunity.

**2. Direct Regulation.** The panel's error in concluding that States can regulate contractors' performance of federal functions reaches full

13

flower in the discussion of direct regulation. It is black-letter law that States cannot regulate federal contractors because "a [state] regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself." *North Dakota v. United States*, 495 U.S. 423, 438 (1986). An exception exists for neutral tax laws that merely increase the cost of federal operations. *E.g., United States v. New Mexico*, 455 U.S. 720 (1982). But the "tax laws did not regulate ***what*** the federal contractors had to do or ***how*** they did it." *Boeing*, 768 F.3d at 839 (emphasis added). Washington's law, by contrast, expressly regulates what GEO must do. Yet the panel excused H.B. 1470 because "while Section 2 of HB 1470 does regulate GEO, it does not directly regulate the federal government." Op. 21. That distinction is flat wrong. The dust bin of state laws that violated intergovernmental immunity is full of examples that regulated contractors rather than the government itself. *Washington*, 596 U.S. at 838; *Goodyear Atomic*, 486 U.S. at 181; *Leslie Miller*, 352 U.S. at 190; *Pub. Utils. Comm'n v. United States*, 355 U.S. 534 (1958).

As a fallback position, the panel opinion limits the intergovernmental immunity doctrine to total bans. Op. 17, 20 (narrowing *Newsom* and *King County* to laws that "forbade" use of contractors). Outright bans are certainly unconstitutional, but so are regulations that "dictate the manner in which the federal function is carried out." *Goodyear Atomic*, 486 U.S. at 181 n.3. In another recent case involving Washington's efforts to regulate federal contractors, the Supreme Court explained that intergovernmental immunity prohibits any state regulation "interfering with or controlling the operations of the Federal Government." *Washington*, 596 U.S. at 838. That principle dates to the earliest days of the Republic. *Osborn v. Bank of the United States*, 22 U.S. 738, 867 (1824) (States cannot "control" federal "contractors" as a means of controlling the federal government). As precedent confirms, that control is possible through measures short of outright prohibitions.

Another black-letter rule that the panel ignored is the unconstitutionality of state laws imposing licensing requirements on federal contractors. That is the holding in *Gartrell*, *Leslie Miller*, and *Johnson v. Maryland*, 254 U.S. 51, 57 (1920). Apparently the panel missed the fact that among H.B. 1232's new provisions are licensing

15

requirements. *E.g.,* App. C. at 50. Given the obviousness of those provisions' unconstitutionality, the lesson to glean from the panel missing them is that H.B. 1232 worked a "substantial" change in the law, and it might have been helpful to have a complaint and briefing aimed at the law as it currently exists before declaring it constitutional. *See* Part I *supra.*

Rehearing is necessary to correct the panel's many departures from precedent and to confirm the nationwide rule that States may not "'dictate the manner in which the federal function is carried out.'" *Newsom*, 50 F.4th at 758 (quoting *Goodyear Atomic*, 486 U.S. at 181 n.3); *CoreCivic*, 145 F.3d at 323.

### B. Immigration Detention Is an Exclusively Federal Field in which State Regulation Creates Conflicts in Enforcement.

The panel opinion rejects federal preemption in three short paragraphs that continue a pattern of ignoring both GEO's arguments and controlling Supreme Court precedent.

**1. Field Preemption.** The panel's entire analysis of field preemption is devoted to the fact that this Court applied the presumption against preemption in *California*. Op. 31. And despite recognizing that

16

the federal government **conceded** the presumption's application in *California*, the panel acted as if that uncontested—and therefore undecided—point is binding in this case, where the issue is far from conceded. To wit, GEO argued that the field of immigration detention is outside the States' traditional police powers based on Supreme Court precedent rejecting every effort by States to encroach of the federal government's regulation of immigration. AB 50–52 (citing *Arizona*, 567 U.S. at 401 (alien registration); *Toll v. Moreno*, 458 U.S. 1 (1982) (classification); *De Canas v. Bica*, 424 U.S. 351 (1976) (employment)). These cases confirm a "comprehensive federal statutory scheme for regulation of immigration and naturalization," including "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *De Canas*, 424 U.S. at 353.

If the misapplication of a conceded point from *California* was sloppy, the panel's total failure to acknowledge the federal laws that show congressional intent to occupy the field is inexplicable. Word limits prevent repeating GEO's entire argument, but federal law tasks the Attorney General with selecting "appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C.

§ 1231(g)(1); it further authorizes "contracts . . . as may be necessary and proper" to implement immigration laws, 6 U.S.C. § 112(b)(2). And in a statute adopted *after California*, Congress provided its own system for inspection of contractors' detention facilities and resolution of detainees' grievances. 6 U.S.C. § 205. Consistent with these statutory mandates, ICE has promulgated extensive regulations, which themselves have preemptive effect. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985); AB 53–58. The panel discussed none of this.

The panel decision does not explain how detention is the one immigration-related field that Congress has not occupied. *Cf. Arizona*, 567 U.S. at 394 (federal government "has broad, undoubted power over the subject of immigration"). Especially after the adoption of 6 U.S.C. § 205 and the promulgation of the 450-page Performance Based National Detention Standards, the panel's holding is indefensible, breaks with Supreme Court precedent, and will allow States to encroach on federal immigration detention whenever they think they have a better policy— which history indicates will be often and from both ends of the political spectrum.

**2. Obstacle Preemption.** The panel's approach to obstacle preemption relies again on the reference to "applicable" state laws in GEO's contract with ICE. Op. 32. As noted above, the panel did not discuss contradictory precedent from this Court (*Gartrell*) and the Supreme Court (*Leslie Miller*) holding that "applicable" state laws do not include those that are preempted. *Gartrell*, 940 F.2d at 440. The panel's reference to a single provision, plucked from context that includes other provisions prioritizing compliance with the PBNDS, is therefore misplaced even on its own terms.

But it gets worse. By failing to address the rule that a "[c]onflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy," *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 287 (1971), the panel blessed state laws that would impose obligations different from—and often in direct conflict with—those promulgated by the federal government. When, for example, the federal government insists that "pre-clearance approvals are required for access to ICE . . . facilities," 4-ER-670, and provides "unfettered" access for federal inspectors, 6 U.S.C. § 205(c), Washington State cannot insist (in Section 3 of H.B. 1470) on "free and unimpeded access" for its own

19

inspectors, Wash. Rev. Code § 43.70.170. AB 43. That rule (i) directly conflicts with the pre-clearance requirement and (ii) arrogates to the State a prerogative that Congress specifically provided to federal officials. And the conflict is not academic. The State has already brought lawsuits in state court to enforce its self-conferred right to unannounced access. *See GEO v. Wash. Dept. of Health*, No. 24-5880 (9th Cir. argued Aug. 12, 2005). Other examples abound. Congress enacted 6 U.S.C. § 205(a) to address complaints against contractors, but Washington purports to create a private cause of action while imposing its own civil penalties. AB 42; *see generally* AB 38–44 (compare first and third columns). As usual, the panel devoted not one word to these conflicts.

Even if motivated by the common goal of assuring detainee welfare, federal law preempts its state counterpart where the latter employs different methods. *Arizona*, 567 U.S. at 402 (state law served "the same aim as federal law and adopt[ed] its substantive standards," but was still preempted); *Am. Ins. Assn. v. Garamendi*, 539 U.S. 396, 425 (2003). Washington law adopts different methods of assuring detainee health and safety than those adopted by the federal government. AB 38–44. Particularly pronounced are Washington's inspection provisions and

process for addressing detainee complaints. In the years since *California*, Congress created a specific office to conduct unannounced inspections of contractor facilities and to review detainee grievances. 6 U.S.C. § 205. Federal law—both statutes and regulations—contains exhaustive requirements for operating an ICE detention facility. Washington's additional regulations, like those rejected in *Arizona*, are preempted because they impose different requirements on the same operators.

## CONCLUSION

The States have a long history of attempting to regulate various aspects of immigration. Washington's attempt to regulate immigration detention is the latest chapter in that history. But in its zeal to regulate immigration detention, Washington has mooted the statute at issue in this case. The adoption of H.B. 1232 presumptively moots this case. *Glazing Health*, 941 F.3d at 1199. The only exception would be for an insubstantial amendment, which H.B. 1232 is not. Indeed, the panel's failure to address glaring infirmities in the new law highlights both the inadequacy of its analysis and the rationale for mootness when a statute's constitutionality has never been briefed. The merits are even more

inconsistent with precedent. Allowing Washington to override federal regulations, insist on its own inspections, set up its own grievance process, and impose its own penalties would "chang[e] totally the character" of the Supremacy Clause by "transfer[ring] the supremacy, in fact, to the states." *McCulloch v. Maryland*, 17 U.S. 316, 432 (1819). Both intergovernmental immunity and preemption prevent that outcome.

Respectfully submitted.

September 16, 2025

*/s/ Dominic E. Draye*
Dominic E. Draye
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street NW
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

Scott Schipma
The GEO Group, Inc.
4955 Technology Way
Boca Raton, FL 33431
(561) 999-7615

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of 9th Cir. R. 40-1(b) because this brief contains 4,199 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century type.

*/s/ Dominic E. Draye*
Dominic E. Draye

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 16, 2025. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Dominic E. Draye*
Dominic E. Draye

# APPENDIX A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE GEO GROUP, INC., | No. 24-2815 |
| *Plaintiff - Appellee*, | D.C. No. 3:23-cv-05626-BHS |
| v. | |
| JAY INSLEE, Governor; ROBERT FERGUSON, | OPINION |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted February 14, 2025
Seattle, Washington

Filed August 19, 2025

Before: William A. Fletcher, Ronald M. Gould, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Intergovernmental Immunity / Preemption

The panel (1) vacated the district court's grant of a preliminary injunction sought by GEO Group, Inc. ("GEO") against Washington's Governor and Attorney General, preventing the enforcement of Sections 2, 3, 5 and 6 of House Bill 1470 ("HB 1470"), a Washington law that protects the health and safety of civil detainees held in the Northwest Immigration and Customs Enforcement Processing Center ("NWICP"); and (2) granted in part GEO's motion to remand to the district court for further proceedings.

GEO owns and operates the NWIPC, a private, for-profit detainment facility in Washington State that confines noncitizen civil detainees while their immigration status is determined. GEO sought a preliminary injunction against the enforcement of several provisions of HB 1470: Section 2, which requires Washington's Department of Health ("DOH") to adopt rules to ensure that private detention facilities provide sanitary, hygienic, and safe conditions for detained persons; Section 3, which provides that DOH shall conduct routine, unannounced inspections of private detention facilities; Section 5, which provides to a detained person a private cause of action for monetary and injunctive relief for a violation of HB 1470; and Section 6, which provides that any person who fails to comply with HB 1470 may be subject to a civil penalty.  The district court held that

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

these sections violate the doctrine of intergovernmental immunity and granted a preliminary injunction against their enforcement.

After oral argument in this case, HB 1232—which made several changes to HB 1470—was passed.  The panel held that although HB 1232 affects some of the issues on appeal, the appeal is not moot.

The panel held that GEO's challenges to HR 1470, as amended by HR 1232, constitute a case or controversy within the meaning of Article III.  GEO alleged sufficient injury in fact to bring a pre-enforcement challenge to Section 2 and relevant enforcement-related provisions of Sections 3 and 6 of HB 1470, as well as relevant provisions of HB 1232.  Because no rules have yet been adopted implementing Section 2, as amended by HB 1232, GEO's pre-enforcement challenge is limited to the question of whether GEO has shown a sufficient likelihood that DOH will adopt such rules to justify a preliminary injunction.

Addressing GEO's argument that Sections 2, 3, and 6 are invalid under the intergovernmental immunity doctrine— which generally immunizes the federal government from state laws that directly regulate and discriminate against it— the panel held that Section 2 does not regulate the federal government directly in violation of the intergovernmental immunity doctrine.  Addressing whether Sections 2 and 3 of HB 1470 were impermissible discriminatory regulations, the panel held that it would not decide at this point whether Washington regulates the conditions of confinement at the NWIPC differently from the way it regulates the conditions of confinement in other civil detention facilities.  Because the district court incorrectly concluded that the appropriate comparator was Washington's prisons, the panel remanded

to allow the district court to make the comparison with other civil detention facilities. The panel vacated the district court's decision to strike Section 6 as unconstitutional because it was premised on a comparison to Washington's prisons rather than the private civil detention facilities, and remanded to allow the district court to make the appropriate comparison.

The panel agreed with the district court that Sections 2, 3, and 6 of HB 1470 were not preempted by federal law. Under field preemption, the panel saw no clear indication that Congress had demonstrated any intent to preempt Sections 2, 3, and 6 of HB 1470 and relevant portions of HB 1232. Under obstacle preemption, the panel held that HB 1470 did not present an unconstitutional obstacle to the accomplishment of the government's standards for the conditions of alien detention.

Finally, the panel held that the district court erred in reaching the merits of GEO's challenge to Section 5 because this section provides no cause of action against either the Washington Attorney General or Governor. Rather than enjoining enforcement of Section 5 by the Attorney General and the Governor, the district court should have dismissed this portion of GEO's suit.

---

## COUNSEL

Dominic E. Draye (argued) and Christopher M. O'Brien, Greenberg Traurig LLP, Phoenix, Arizona; John Hodges-Howell, Harry J.F. Korrell, Davis Wright Tremaine LLP, Seattle, Washington; Scott Schipma, The GEO Group Inc., Boca Raton, Florida; for Plaintiff-Appellee.

Marsha J. Chien (argued) and Cristina Sepe, Deputy Solicitors General; Robert W. Ferguson, Attorney General; Office of the Washington Attorney General, Olympia, Washington; Andrew R.W. Hughes and Ellen E. Range, Assistant Attorneys General, Office of the Washington Attorney General, Seattle, Washington; for Defendants-Appellants.

Bradley Hinshelwood (argued) and Mark B. Stern, Attorneys, Appellate Staff, Civil Division; Tessa M. Morgan, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C., for Amicus Curiae United States.

Hannah Woerner, Columbia Legal Services, Olympia, Washington, for Amici Curiae La Resistencia and Professor Angelina Snodgrass Godoy.

Aaron Korthuis, Matt Adams, Leila Kang, and Glenda A. Madrid, Northwest Immigrant Rights Project, Seattle, Washington, for Amicus Curiae Northwest Immigrant Rights Project.

Andrew L. Schlafly, Far Hills, New Jersey, for Amicus Curiae Immigration Reform Law Institute.

Anastasia R. Sandstrom, Senior Counsel, Office of the Washington Attorney General, Seattle, Washington; Eric Sonju, Senior Assistant Attorney General; Robert W. Ferguson, Attorney General; Office of the Washington Attorney General, Olympia, Washington; for Amici Curiae Department of Health and Department of Labor and Industries.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff-Appellee the GEO Group ("GEO") owns and operates a private, for-profit detention facility, the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), in Washington State. The NWIPC confines noncitizen civil detainees while their immigration status is determined. GEO obtained a preliminary injunction against the Defendants-Appellants, then-Governor Jay Inslee and then-Attorney General Robert Ferguson (together, "Washington"), preventing enforcement of several provisions of House Bill 1470 ("HB 1470"), a Washington law that protects the health and safety of the civil detainees held in the NWIPC. We vacate and remand.

## I. Background

GEO operates detention facilities and private prisons throughout the country under contracts with the federal government. In 2024, GEO had $2.42 billion in total revenue and a net income of $31.9 million. *The GEO Group Reports Fourth Quarter and Full Year 2024 Results,* The GEO Group, Inc. (Feb. 27, 2025), https://investors.geogroup.com/news-releases/news-release-details/geo-group-reports-fourth-quarter-and-full-year-2024-results.

GEO operates the NWIPC in Tacoma, Washington, under a contract with Immigration and Customs Enforcement ("ICE"). The NWIPC is the only immigration detention facility in Washington. Persons held at the NWIPC are civil detainees, awaiting administrative review of their immigration status. Some detainees lack legal status

in the United States.  Others are lawful permanent residents, some with work authorization.  Detainees are held until they are either deported or released into the United States.

As described in more detail below, the relevant provisions of Washington's HB 1470, as amended by HB 1232 in May 2025, require the NWIPC to provide nutritious food in a clean and safe facility, authorize inspections related to these requirements, and authorize a monetary penalty for violations.  The question before us is whether these provisions are consistent with federal law.

### A.  Predecessors to HB 1470 and HB 1232

In 2020, the Washington legislature passed two related statutes.

First, the legislature passed Senate Bill 6442. S.B. 6442, 66th Leg., Reg. Sess. (Wash. 2020), *enacted as* 2020 Wash. Sess. Laws ch. 318.  The statute prohibited Washington's Department of Corrections ("DOC") from contracting with private prisons for placement or transfer of state prisoners except in emergencies.  Wash. Rev. Code § 72.68.110(1). The legislature passed the statute after finding that "profit motives lead private prisons to cut operational costs, including the provision of food, health care, and rehabilitative services."  2020 Wash. Sess. Laws ch 318, § 1(2).

Second, the legislature passed House Bill 2576. H.B. 2576, 66th Leg., Reg. Sess. (Wash. 2020), *enacted as* 2020 Wash. Sess. Laws ch. 284.  That statute instructed Washington's Department of Health ("DOH") to evaluate and report on private detention facilities in Washington State.  The statute provided that "all people confined in prisons and detention facilities in Washington deserve basic

health care, nutrition, and safety, regardless of whether those people are confined in publicly or privately operated facilities." *Id.* § 1. DOH finished its report in November 2020. The report noted that "private detention centers are not all the same. Detainee and advocate complaints are almost exclusively associated with the [NWIPC]. This facility is [the] state's only privately operated, adult immigration detention center."

In 2021, based on the findings in the DOH report, the Washington Legislature passed House Bill 1090. H.B. 1090, 67th Leg., Reg. Sess. (Wash. 2021), *enacted as* 2021 Wash. Sess. Laws, ch. 30. The statute prohibited the operation of any "private detention facility within the state." Wash. Rev. Code § 70.395.030. After our court's en banc decision in *GEO Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), which invalidated a similar law passed in California, Washington stipulated that it would not enforce HB 1090 against GEO's operation of the NWIPC. *See GEO Group, Inc. v. Inslee*, 702 F. Supp. 3d 1043, 1046 (W.D. Wash. Nov. 16, 2023).

## B.  HB 1470

In 2023, in the wake of *Newsom*, the Washington legislature passed House Bill 1470. H.B. 1470, 68th Leg. Reg., Sess. (Wash. 2023), *enacted as* 2023 Wash. Sess. Laws ch. 419. In enacting HB 1470, the Washington legislature found

> that all people confined in prisons and detention facilities in Washington deserve basic health care, nutrition, and safety. As held in *United States v. California*, 921 F.3d 865, 886 (9th Cir. 2019), states possess "the

> general authority to ensure the health and welfare of inmates and detainees in facilities within its borders." States have broad authority to enforce generally applicable health and safety laws against contractors operating private detention facilities within the state. The [N]inth [C]ircuit reinforced this authority in *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022), stating "[p]rivate contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself."

Wash. Rev. Code § 70.395.010. Four sections of HB 1470 are at issue in this appeal.

## C. HB 1232

On May 12, 2025, after we heard oral argument in this case, now-Governor Ferguson signed Second Substitute House Bill 1232 ("HB 1232"). *See* Engrossed Second Substitute H.B. 1232, 69th Leg., Reg. Sess. (Wash. 2025). HB 1232 makes several but, in the context of this case, largely nonmaterial changes to HB 1470.

## D. The Present Suit and Appeal

In July 2023, GEO filed a complaint in federal district court against Washington, seeking declaratory and injunctive relief against the enforcement of HB 1470. As relevant to this appeal, GEO challenged Sections 2, 3, 5 and 6 of HB 1470. The district court concluded that it "ha[d] subject-matter jurisdiction to consider GEO's constitutional challenges to Sections 2, 3, 5, and 6 of HB 1470." The court

held that all of these sections violate the doctrine of
intergovernmental immunity and granted a preliminary
injunction against their enforcement. Washington timely
appealed.

### E. Motion by GEO

After the passage of HB 1232, GEO moved in this court
for a dismissal of the current appeal and a remand to the
district court on the ground that changes to HB 1470 wrought
by HB 1232 mooted the appeal. Washington opposed the
motion on the ground that the changes are relatively minor
and that the substance of the appeal remains properly
pending in this court.

We agree with GEO that HB 1232 affects some of the
issues on appeal. However, we disagree with GEO's
conclusion that we should dismiss the appeal as moot.
Although "the repeal, amendment, or expiration of
challenged legislation is generally enough to render a case
moot and appropriate for dismissal," that presumption is
rebutted when the legislative change results in a law that is
"substantially similar" to the challenged legislation. *Bd. of
Trs. Of Glazing Health & Welfare Tr.*, 941 F.3d 1195, 1198
(9th Cir. 2019). We conclude that HB 1232's changes have
resulted in a law that is "substantially similar" to HB 1470's
initial text, and that this appeal is therefore not moot. *Cf.
Teter v. Lopez*, 125 F.4th 1301, 1307 (9th Cir. 2025) (en
banc) (finding appeal moot after legislative changes when
the defendant "ha[d] ceased to enforce the challenged law
because it no longer exist[ed]"). Most of the questions
presented to us remain largely unchanged by HB 1232.

We deny GEO's motion in part and grant in part. We
decide some questions now. We remand other questions to
the district court.

## II. Jurisdiction and Standard of Review

We have jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions[.]" 28 U.S.C. § 1292(a)(1). We review the grant or denial of a preliminary injunction for abuse of discretion. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018). We review underlying legal issues de novo "because a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of law." *Id.* (internal quotation marks omitted) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 (9th Cir. 2000)).

## III. Preliminary Injunctive Relief

To obtain a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Likelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' we need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (2018) (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

## IV. Discussion

### A. Sections 2, 3, and 6 of HB 1470 and Relevant Provisions of HB 1232

Section 2 of HB 1470 requires Washington's DOH to "adopt rules as may be necessary to . . . ensure private detention facilities comply with measurable standards providing sanitary, hygienic, and safe conditions for

detained persons." Wash. Rev. Code § 70.395.040(1). Section 2 provides that Washington's Attorney General "may enforce violations of this section on its own initiative or in response to complaints or violations." *Id.* § 70.395.040(2). DOH has not yet adopted regulations under Section 2. HB 1232 modifies Section 2 in minor respects.

Section 3 of HB 1470 provides that DOH "shall . . . [c]onduct routine, unannounced inspections of private detention facilities including, but not limited to, inspection of food services and food handling, sanitation and hygiene, and nutrition[,]" and shall "[c]onduct investigations of complaints received relating to any private detention facility located within the state." Wash. Rev. Code § 70.395.050(1)(a)–(1)(b) (now § 70.395.05(2)(a)–(2)(b)). Section 3 further provides that Washington's Department of Labor and Industries "shall conduct routine, unannounced inspections of workplace conditions at private detention facilities, including work undertaken by detained persons." *Id.* § 70.395.050(4) (now § 70.395.050(5)). The Office of Washington's Attorney General "may enforce violations of this section on its own initiative or in response to complaints of violations." *Id.* § 70.395.050(5) (now § 70.395.050(6)). HB 1232 does not affect any of the issues presented to us under Section 3.

Section 6 of HB 1470 provides that "[a]ny person who fails to comply" with HB 1470 "may be subject to a civil penalty in an amount of not more than $1,000 per violation per day." *Id.* § 70.395.080(1). Section 4 of HB 1232 provides a "civil fine of up to $10,000 per violation, not to exceed a total fine of $1,000,000, on a private detention facility" under certain circumstances. H.B. 1232 § 4.

### 1. Article III Case or Controversy

We first address the question whether GEO's challenges to HR 1470, as amended by HR 1232, constitute a case or controversy within the meaning of Article III. The district court concluded that they do constitute a case or controversy. We agree.

Washington contends that because DOH has not yet adopted implementing rules for Section 2 (now including amendments contained in HB 1232), GEO has not yet suffered an injury in fact. Washington contends that GEO's pre-enforcement challenge to Section 2 and relevant enforcement-related portions of Sections 3 and 6 (and now relevant portions of HB 1232) is therefore unripe under Article III. We regard Washington's contention as equivalent to a contention that GEO lacks Article III standing. We wrote in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted), a pre-enforcement injury case:

> Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional case or controversy, that the issues presented are definite and concrete, not hypothetical or abstract. In assuring that this jurisdictional prerequisite is satisfied, we consider whether the plaintiffs face a realistic danger of

> sustaining a direct injury as a result of the
> statute's operation or enforcement.

*See also Newsom*, 50 F.4th at 753 ("Whether framed as standing or ripeness, California's injury requirements 'boil down to the same question.'" (citation omitted)).

"Pre-enforcement injury is a special subset of injury-in-fact." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). We have "adopt[ed] the Supreme Court's framework" for determining whether a plaintiff bringing a pre-enforcement challenge has satisfied Article III's injury-in-fact requirement. *Id*. That test requires the plaintiff to show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

GEO is already required, pursuant to its contract with the government, to comply with Performance-Based National Detention Standards ("PBNDS") in its operation of the NWIPC. It contends that Section 2 will impose additional requirements. Before the passage of HB 1232, GEO contended that rules implementing Section 2 will require it to change the existing heating and cooling air conditioning system in the NWIPC; to provide exclusively fresh fruits and vegetables, whereas the PBNDS requires fresh fruits and vegetables only in specific situations; and to provide a list of specified personal toiletries to detainees on a regular basis, whereas the PBNDS does not require the provision of such toiletries. HB 1232 makes clear that the NWIPC is not required to provide exclusively fresh fruits and vegetables; it is now required to provide a "balanced diet, *including* fresh

fruits and vegetables." (Emphasis added.) However, the heating and cooling, as well as the personal toiletries, issues remain.

We conclude that GEO has alleged sufficient injury in fact to bring a pre-enforcement challenge to Section 2 and relevant enforcement-related provisions of Sections 3 and 6 of HB 1470, as well as relevant provisions of HB 1232. We recognize that DOH has not yet adopted rules implementing Section 2, as amended by HB 1232. But it is clear that DOH intends to adopt such rules, and that, once adopted, DOH intends to enforce them against GEO. GEO contends that there is a likelihood that such rules will require it to make the changes described above. GEO contends that requiring such changes will violate the doctrine of intergovernmental immunity, and, further, that such changes will be preempted by federal law. Because no rules have yet been adopted implementing Section 2, as amended by HB 1232, GEO's pre-enforcement challenge is limited to the question whether GEO has shown a sufficient likelihood that DOH will adopt such rules to justify a preliminary injunction.

## 2. Challenges to Sections 2, 3, and 6 of HB 1470 and Relevant Provisions of HB 1232

GEO argues, first, that Sections 2, 3, and 6 of HB 1470 are invalid under the doctrine of intergovernmental immunity, and, second, that they are preempted. We apply its argument to relevant provisions of HB 1232 as well. (For convenience from this point on, when we refer to sections of HB 1470 we also refer to relevant provisions contained in HB 1232 unless otherwise indicated.)

### a. Intergovernmental Immunity

"[I]ntergovernmental immunity attaches only to state laws that discriminate against the federal government and burden it in some way." *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019). Because federal contractors are not the federal government, "states may impose some regulations on federal contractors that they would not be able to impose on the federal government itself." *Newsom*, 50 F.4th at 760 n.10. "If the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing as respects contracts in a particular form, or contracts under particular programs." *United States v. New Mexico*, 455 U.S. 720, 737 (1982) (citing *James v. Dravo Contracting Co.*, 302 U.S. 134, 161 (1937)).

"The Constitution's Supremacy Clause generally immunizes the Federal Government from state laws that [1] directly regulate or [2] discriminate against it." *United States v. Washington*, 596 U.S. 832, 835 (2022) (bracketed numbers added). We address in turn these two ways in which a state law can be invalid under the intergovernmental immunity doctrine.

### i. Direct Regulation

In the portion of its brief arguing that HB 1470 is an impermissible direct regulation, GEO focuses only on the requirements of Section 2. GEO does not make separate arguments directed to the inspection and enforcement provisions in Sections 3 and 6. Based on the manner in which GEO has made its arguments, we conclude that GEO's objections to Sections 2, 3 and 6 based on direct regulation stand or fall based on its arguments about the validity of Section 2.

The district court held that Section 2 "does not regulate the federal government directly in violation of the intergovernmental immunity doctrine." We agree.

A state has greater ability to regulate a contractor of the federal government than to regulate the government itself. As we wrote in *Newsom*, "The scope of a federal contractor's protection from state law under the Supremacy Clause is substantially narrower than that of a federal employee or other federal instrumentality." *Newsom*, 40 F.4th at 755.

GEO relies on three cases in particular to support its argument that HB 1470 is impermissible direct regulation.

First, GEO relies on our en banc decision in *Newsom.* GEO characterizes AB 32, the California statute at issue in that case, as "similar" to HB 1470. It writes that HB 1470 was adopted "for the express purpose of circumventing this Court's en banc decision in *Newsom*," suggesting that *Newsom* requires us to hold that HB 1470 is discriminatory.

It is true that HB 1470 was enacted after it became clear that AB 32 was unconstitutional under our holding in *Newsom*. But it is also true that HB 1470 was specifically designed to avoid the unconstitutional aspects of AB 32. HB 1470 is poles apart from AB 32. AB 32 flatly forbade the operation in California of private detention facilities operating under contract with the federal government. In contrast to AB 32, HB 1470 permits the operation of private detention facilities such as the NWIPC in Washington. Further, in holding AB 32 invalid in *Newsom*, we emphasized the extraordinary degree of direct control over federal operations authorized by AB 32:

> AB 32 would override the federal government's position, pursuant to discretion

> conferred by Congress, to use private
> contractors to run its immigration detention
> facilities. It would give California a "virtual
> power of review" over ICE's detention
> decisions, and allow the 'discretion of the
> federal officers [to] be exercised . . . only if
> the [state] approves.'

*Id.* at 751 (citations omitted). No such control is authorized
in HB 1470.

Contrary to GEO's argument, *Newsom* supports rather
than undermines the decision we reach here. It is undisputed
that the purpose and effect of HB 1470 is to protect the health
and safety of detainees in the NWIPC. Our opinion in
*Newsom* explicitly recognized the authority of a state to
protect the health and safety of those within its borders:

> States's historic police powers include
> regulation of health and safety. And these
> historic powers extend to laws regulating
> health and safety in federal detention
> facilities located within a state.

*Id.* at 766 (citations omitted). *See also California*, 921 F.3d
at 886 (states have "the general authority to ensure the health
and welfare of inmates and detainees in facilities within its
borders").

Second, GEO relies on *Boeing Co. v. Movassaghi*, 768
F.3d 832 (9th Cir. 2014), contending that the facts there are
"remarkably similar" to the facts here. In *Movassaghi*, a
California statute required a "responsible party" to "take or
pay for appropriate removal or remedial action" at a
particular site in California that had been heavily polluted.

*Id.* at 839.  The federal government accepted responsible-party status at that site and recognized that, as the responsible party, it was required under state law to clean up the site.  The federal government "actively conduct[ed] the cleanup through its cleanup contractor, Boeing."  *Id.* at 839.

The California statute imposed higher clean up standards and costs on the government than the clean-up standards and costs imposed by federal law.  We struck down the California statute, holding that it directly, and therefore impermissibly, regulated the federal government as a responsible party.  In *Newsom*, we characterized the statute at issue in *Movassaghi* as "impermissibly interfer[ing] with federal functions by overriding federal contracting decisions" rather than "merely increas[ing] the federal government's costs."  *Newsom*, 50 F.4th at 760.

The case before us is not controlled by *Movassaghi*.  First, and most important, the statute in *Movassghi* imposed an obligation directly on the federal government.  HB 1470 imposes no obligation on the federal government.  Instead, it imposes obligations on GEO, a federal *contractor*.  Second, unlike the statute in *Movassaghi*, HB 1470 does not "impermissibly" "overrid[e] federal contracting decisions."  *Id.*  Many, perhaps all, of the obligations imposed by Section 2 are already imposed by the federal government itself, through GEO's contract with ICE.  The contract explicitly orders GEO to comply with obligations imposed under state law, even when those obligations are more demanding than those imposed under federal law:

> All services [at the NWIPC] must comply with . . . all applicable federal, state, and local laws and standards.  Should a conflict exist

> between any of these standards, the most
> stringent shall apply.

Finally, HB 1470 does not increase the federal government's costs.  Under GEO's contract with the government, any increased costs are borne by GEO, not by the government.

Third, after briefing was completed in this appeal GEO brought to our attention *United States v. King County, Washington*, 122 F.4th 740 (9th Cir. 2024), in support of its position.  In *King County*, the government had challenged a county executive order that forbade companies at Boeing Field, a small airport just south of Seattle, from providing essential services such as fueling to flights chartered by Immigration and Customs Enforcement ("ICE").  We held that the order violated intergovernmental immunity on two grounds.  First, the order "forc[ed] ICE either to stop using Boeing Field or to use government-owned planes there." *Id.* at 756.  Second, the order "'singl[ed] out' the federal government and its contractors for unfavorable treatment,' . . . 'burdening federal operations, and *only* federal operations.'" *Id.* at 757.

*King County* is very different from the case before us. First, unlike in *King County*, nothing in Washington law results in the federal government being unable to use contractors in the State.  HB 1470 does not seek to shut down the NWIPC; nor does it limit ICE's ability to detain any individual in the NWIPC.  Through the passage of HB 1470, Washington seeks only to change the way GEO treats its detainees.  Second, unlike in *King County*, Washington has not "singled out" the NWIPC for unfavorable treatment.  As we will discuss in a moment, Washington law regulates two types of residential treatment facilities, in which people are

held in involuntary civil confinement, in a very similar—perhaps identical—fashion.

In sum, Section 2 does not "require[] ICE to entirely transform its approach to detention in the state or else abandon its [Washington] facilities." *Newsom*, 50 F.4th at 750. It does not give Washington "'virtual power of review' over ICE's detention decisions." *Id.* at 751. Nor does it "prevent ICE's contractors from continuing to run detention facilities." *Id.* at 750. We thus conclude that while Section 2 of HB 1470 does regulate GEO, it does not directly regulate the federal government.

### ii. Discriminatory Regulation

#### (a) Sections 2 and 3 of HB 1470 and Relevant Provisions of HB 1232

In the portion of its brief arguing that HB 1470 is an impermissible discriminatory regulation, GEO again focuses on the requirements of Section 2. It does not make a separate argument directed to the inspection or enforcement provisions in Sections 3. Based on the manner in which GEO has made its arguments, we conclude that GEO's objections to Sections 2 and 3 of HB 1470 based on discriminatory regulation stand or fall based on its arguments about the validity of Section 2. We address Section 6 in a separate subsection.

A state law or regulation impermissibly discriminates against the federal government if it treats a state entity more favorably than it treats a comparable federal entity. *Dawson v. Steager*, 586 U.S. 171, 175–76 (2019). The "important consideration" is whether the state has "singled out contractors who work for the United States for discriminatory treatment." *Washington v. United States*, 460

U.S. 536, 544, 546 (1983). A state law or regulation that burdens only a federal contractor is not impermissibly discriminatory if it "duplicate[s] requirements otherwise mandated under" state law that are imposed on similarly situated state contractors. *California*, 921 F.3d at 873; *see also Washington v. United States*, 460 U.S. at 541 (sales tax that applied only to federal contractors did not violate intergovernmental immunity because "Washington . . . impose[s] a sales tax on all purchases from contractors who do not deal with the Federal Government").

HB 1470 is written in general terms, applying to "for-profit prisons and detention facilities in the state." However, the NWIPC is the only such detention facility in Washington. Thus, as a practical matter, HB 1470 applies only to the NWIPC. The fact that HB 1470 applies only to the NWIPC does not, by itself, mean that it violates the intergovernmental immunity doctrine. *See Washington*, 460 U.S. at 541–45 (rejecting argument that statute specifically targeting federal contractors was discriminatory solely on that basis); *id.* at 540 (citing *United States v. Mexico*, 455 U.S. 720, 734 (1982) ("[I]mmunity may not be conferred simply because" the law "has an effect on the United States, or even because the Federal Government shoulders the entire economic burden.")). To determine whether HB 1470 is impermissibly discriminatory, we evaluate how Washington law treats entities that are "similarly situated" to GEO. *Dawson*, 586 U.S. at 177. If Washington law treats similarly situated entities in the same manner HB 1470 treats the NWIPC, HB 1470 is not impermissibly discriminatory.

The key issue in this case is whether the entities to which we should compare the NWIPC are state prisons or civil detention facilities. For the reasons explained below, we

conclude that the appropriate comparators are civil detention facilities.

The district court held that Section 2 impermissibly discriminates against the federal government because it "impose[s] various burdens on the NWIPC that do not apply to any similarly situated facility in the State." The court concluded that the "similarly situated facilit[ies] in the State" are Washington's state-owned and state-operated prisons rather than private residential treatment facilities and civil commitment facilities (collectively, "civil detention facilities") in Washington. Using Washington's prisons as the comparator, the district court concluded that Section 2 is impermissibly discriminatory.

GEO has consistently contended that the entities to which the NWIPC should be compared are Washington's prisons. In agreeing with GEO, the district court relied in substantial part on our decision in *California.* The district court wrote, "[T]he court [in *California*] implicitly reasoned that immigration detention facilities are similarly situated to state and local detention facilities, such as prisons and jails." If the district court had been correct in concluding that the appropriate comparator is Washington's prisons, we would agree with its decision striking down Sections 2 and 3 of HB 1470. However, we disagree with that conclusion.

In *California*, we compared California's treatment of civil immigration detention facilities, on the one hand, to its treatment of California detention facilities that held convicted criminals and those charged with crimes, on the other. We were not asked to compare California's regulation of civil immigration facilities to its regulation of civil detainment facilities. Because we "decide only questions presented by the parties," *United States v. Sineneng-Smith*,

590 U.S. 371, 376 (2020), and because of the fundamental difference between civil detainees and those charged or convicted with crimes, we decline to hold that our comparison in *California* controls here. Now properly presented with the question, we therefore decide whether the appropriate comparison in this case is to private facilities holding civil detainees or to the public prisons and jails holding convicted criminals and those charged with crimes.

GEO has consistently argued that the appropriate comparator to the NWIPC is Washington's prisons. In arguing that prisons are the appropriate comparator, GEO asks us to ignore the critical fact that inmates in Washington's prisons have been convicted of crimes, and that the conditions of their confinement are part of a penal regime. By contrast, none of the detainees held in the NWIPC has been convicted of—or even charged with—a crime. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (Immigration detention is "civil, not criminal" and "nonpunitive in purpose and effect."); *Mahler v. Eby*, 264 U.S. 32, 39 (1924) ("It is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment."). All of the detainees in the NWIPC are civil detainees, awaiting determination of their immigration status. As we noted above, some of the detainees will be deported based on that determination. Some will be released into the United States. GEO also asks us to ignore the fact that Washington owns and operates its prisons. By contrast, the federal government neither owns nor operates the NWIPC. Rather, the NWIPC is owned and operated by GEO, a private, for-profit company. Because of the fundamental differences between Washington's prisons, which are state-owned and state-operated facilities that hold and punish convicted criminals, and the NWIPC, which is a

privately owned and privately operated detention facility that holds civil detainees, we conclude that the appropriate comparator is not Washington's prisons.

Washington has consistently argued that the entities to which the NWIPC should be compared are privately owned and operated civil detention facilities. Like the civil detainees in the NWIPC, many of the individuals in these facilities are held in involuntary confinement. *See*, *e.g.*, Wash. Rev. Code §§ 71.05.010–71.05.950 (Washington's Involuntary Treatment Act); *id.* § 11.130.330(7) (recognizing that facilities can involuntarily detain individuals consistent with Washington's Involuntary Treatment Act); *id.* § 10.77.150(4) (allowing courts to grant "conditional release of [a] person to a less restrictive alternative, including residential treatment" facilities); and *id.* §§ 9.94A.660, 9.94A.664 (allowing courts to issue sentences "conditioned on the offender entering and remaining in a residential substance use disorder treatment program," *id.* § 9.94A.664(1)(a)). Also like the civil detainees in the NWIPC, individuals confined in these facilities are not confined because they have committed crimes, and the conditions of their confinement are not part of any punishment. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418, 428–30 (1979) (explaining the fundamental differences between criminal and civil commitments, including that '[i]n a civil commitment state power is not exercised in a punitive sense"). We therefore agree with Washington that the appropriate comparators to the NWIPC are these civil detention facilities.

Section 2 sets forth required conditions of confinement for detainees held in the NWIPC. As noted above, DOH has not yet adopted rules implementing those requirements. However, even before implementing rules have been

adopted by DOH, it is evident that the statutory and contractual requirements imposed on the NWIPC are almost identical to the requirements imposed under Washington law on the two types of civil detention facilities to which we compare them. *See California*, 921 F.3d at 882–84. We describe in turn the required conditions of confinement in these three facilities.

First, Section 2 requires DOH to adopt rules implementing its requirements that the NWIPC (1) maintain a "safe, clean, and comfortable environment that allows a detained person to use the person's personal belongings to the extent possible"; (2) clean and sanitize living areas "regularly"; (3) "provide laundry facilities"; (4) provide "[b]asic personal hygiene items . . . at no cost"; (5) "provide a nutritious and balanced diet, including fresh fruits and vegetables"; (6) maintain "[s]afe indoor air quality"; (7) have "heating and air conditioning equipment that can be adjusted by room or area"; and (8) operate an "infection control program." Wash. Rev. Code § 70.395.040.

Second, residential treatment facilities in Washington are "twenty-four hour . . . facilities" that "provid[e] health care services to persons with mental disorders or substance abuse disorders." Wash. Admin. Code § 246-337-001 (2023). These facilities are required under Washington law to maintain an effective "infection control program," *id.* § 246-337-060; to serve three nutritious meals per day, with modifications appropriate to medical conditions and religious preferences, *id.* § 246-337-111; to provide laundry facilities that are clean and in good repair, *id.* § 246-337-112; to provide housing that is in good repair, with "heating, ventilation, and air conditioning," *id.* § 246-337-120; to provide bathing and toilet areas with soap and toilet paper, *id.* § 246-337-124; to provide laundry facilities, *id.* § 246-

337-128; to provide heating and air conditioning that can maintain "interior temperatures between sixty-five degrees Fahrenheit and seventy-eight degrees Fahrenheit year-round," *id.* § 246-337-135; and to maintain the facility in a clean and sanitary condition, *id.* § 246-337-146.

Third, involuntary civil commitment facilities in Washington are facilities where individuals are confined against their will despite the fact that they have not been convicted of a crime. Such facilities include, for example, mental health hospitals where mentally ill individuals are civilly committed under Washington's Involuntary Treatment Act. Wash. Rev. Code §§ 71.05.010–71.05.950. These facilities are required under Washington law to "[e]stablish and implement an effective hospital-wide infection control program," Wash. Admin. Code § 246-322-100 (2024); to provide a safe and clean environment, including a ventilation system and a "heating system operated and maintained to sustain a comfortable temperature," *id.* § 246-322-120; to provide sleeping rooms with adequate space and bed linens, *id.* § 246-322-140; to provide adequate toilet fixtures and rooms, as well as adequate sink and bathing fixtures, *id.* § 246-322-160; to provide three well-balanced and nourishing meals per day, *id.* § 246-322-230; and to provide laundry and linen services, *id.* § 246-322-240.

We have held that there is no "de minimis exception to the doctrine of intergovernmental immunity." *California*, 921 F.3d at 883. "*Any* economic burden that is discriminatorily imposed on the federal government is unlawful." *Id.* at 883–84 (emphasis in original). With GEO's challenge in its current posture—before DOH has promulgated any rules implementing Section 2—the question before us is whether there is a likelihood that DOH

will adopt rules under Section 2 that are different from the requirements applicable to the two types of  civil detention facilities.

GEO's discrimination argument in its brief is based almost entirely on a comparison of the requirements imposed by Section 2 with the requirements Washington imposes on its prisons.  GEO argues only in passing that Section 2 is discriminatory based on a comparison of its requirements to the requirements Washington imposes on the two types of civil detention facilities.  The only requirements of Section 2 to which GEO has specifically objected in its brief are three requirements discussed in the portion of its brief dedicated to its argument about Article III case or controversy. Generously construed, GEO's argument is that these three requirements are different from the comparable requirements imposed on the civil detention facilities, and that they are therefore discriminatory.

Though it is a close question, we conclude that the best course of action is not to decide ourselves at this point whether Washington regulates the conditions of confinement at the NWIPC differently from the way it regulates the conditions of confinement in the two civil detention facilities.  The best course of action is, rather, to allow the district court to do so in the first instance.  That court should make the comparison between the requirements imposed on the NWIPC by Section 2 of HB 1470, as amended by HB 1232, and the requirements imposed by Washington law on the two types of civil detention facilities. Because the district court concluded that the appropriate comparator is Washington's prisons, it made no attempt to make that comparison with respect to the requirements imposed by Section 2; and, because of its recent enactment, the district court of course could not have included in such a

comparison the requirements of HB 1232.  We remand to allow the district court to make that comparison.

### (b)  Section 6 of HB 1470 and Section 4 of HB 1232

As noted above, Section 6 of HB 1470 provides that "[a]ny person who fails to comply" with HB 1470 "may be subject to a civil penalty in an amount of not more than $1,000 per violation per day." *Id.* § 70.395.080(1).  Section 4 of HB 1232 provides a "civil fine of up to $10,000 per violation, not to exceed a total fine of $1,000,000, on a private detention facility" under certain circumstances. H.B. 1232 § 4.

For two reasons, Washington argues in its brief that Section 6 is not a discriminatory burden.  First, DOH possesses the "authority to impose fines on other facilities for non-compliance with its regulations."  For example, Wash. Admin. Code § 246-322-025(6) (2023) allows "civil fines on a psychiatric hospital . . . of up to $10,000 per violation."  Second, Washington contends that "other facilities are subject to a much more stringent enforcement mechanism: DOH's authority to deny or suspend their license or ability to operate at all."  Further, Wash. Admin. Code § 246-337-021(6) (2023) allows DOH to "revoke" a license of a residential treatment facility that "[f]ail[s] to comply" with DOH regulations.  Washington therefore argues that the NWIPC is thus "*better off*" than the civil detention facilities to which we compare it. *See Washington*, 460 U.S. at 541–42 (emphasis in original).

GEO has made no argument to the contrary.  In its responding brief, GEO describes the penalty authorized in Section 6, but it does not argue that it is discriminatory. However, GEO has not yet had an opportunity to make an

argument that Section 6, combined with Section 4 of HB 1232, is discriminatory.

The district court struck down Section 6 as a natural corollary of its decision that the requirements of Section 2 were unconstitutional.  But that decision was, of course, premised on a comparison to Washington's prisons rather than the private civil detention facilities to which we now hold are the appropriate comparators.  We vacate the district court's decision and remand to allow that court to make that comparison in the first instance.

### b.  Preemption

The district court held that Sections 2, 3 and 6 of HB 1470 are not preempted by federal law.  Of course, that court had no opportunity to address HB 1232.  However, given the relatively small changes effectuated by HB 1232, we conclude that its preemption analysis would not have been affected.

Federal law preempts state law when Congress has occupied the "field," enacting a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  Federal law also preempts state law when a party cannot comply with both federal and state law, or when state law poses an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (citation omitted).

There is a presumption against preemption "when a state regulates in an area of historic state power."  *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018) (citation

omitted).      Once triggered, the presumption against
preemption applies "even if the law 'touch[es] on' an area of
significant federal presence." *Id.* (alteration in original)
(quoting *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 n.5
(9th Cir. 2016)); *DeCanas v. Bica*, 424 U.S. 351, 355 (1976)
("[T]he Court has never held that every state enactment
which in any way deals with [noncitizens] is a regulation of
immigration and thus per se preempted by this constitutional
power."); *Puente Ariz.*, 821 F.3d at 1104.  To overcome the
presumption against preemption, the challenging party must
show a "clear and manifest purpose of Congress" to preempt
state law.   *Arizona v. United States*, 567 U.S. 387, 400
(2012) (internal citations omitted).

### i. Field Preemption

GEO points to the constitutional authority of the federal
government to regulate immigration and argues that many
state-imposed immigration-related measures, including
those at issue here, are preempted by federal law.   We
rejected a similar argument in *California*, where California
law authorized inspection, *inter alia*, of federal detention
facilities holding noncitizens "for purposes of civil
immigration proceedings." *California*, 921 F.3d at 875.  The
inspections included review of "conditions of confinement"
and "standard of care."   *Id.* at 876.  We noted that the
government did not "dispute that California possesses the
general authority to ensure the health and welfare of inmates
and detainees in facilities within its borders," and held that
the government had failed to "demonstrate *any* intent, let
alone 'clear and manifest,' that Congress intended to
supersede this authority." *Id.* (emphasis in original); *see also
Newsom*, 40 F.4th at 766 (emphasizing a state's "historic"
powers in this domain).  Similarly, we see no indication that
Congress has demonstrated any intent, let alone a clear and

manifest intent, to preempt Sections 2, 3 and 6 of HB 1470 and relevant portions of HB 1232.

### ii.  Obstacle Preemption

GEO contends in its brief that "HB 1470 presents an unconstitutional obstacle to the accomplishment of the government's carefully crafted standards for the conditions of alien detention."

As noted above, to prevail in its argument, GEO must overcome the presumption against preemption. *See California*, 921 F.3d 886. HB 1470 and HB 1232 do not apply to the United States. They apply to GEO. Nothing in Sections 2, 3 and 6 frustrates the federal government's ability to detain individuals at the NWIPC. Nor do these sections prevent GEO from accomplishing any task that has been required by the federal government—especially when its own contract with ICE contemplates more stringent state requirements in the first place. We therefore conclude that GEO has not established that these statutes constitute obstacle preemption.

### B.  Section 5

Section 5 of HB 1470 provides to a "detained person" a private cause of action for monetary and injunctive relief for a violation of HB 1470, including the requirements set forth in Section 2. Wash. Rev. Code § 70.395.070. Section 5 provides no cause of action to the Attorney General or Governor. The district court granted a preliminary injunction against the enforcement of Section 5, holding that it violates the doctrine of intergovernmental immunity.

In *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), a provision of a Texas statute, SB 8, allowed private citizens to enforce the law's prohibition on abortions through

the filing of a civil suit. *Id.* Plaintiffs filed suit against several defendants, including the Texas Attorney General, seeking an injunction against enforcement of the statute. *Id.* The Supreme Court held that the Attorney General was not a proper defendant as to SB 8 because "petitioners d[id] not direct this Court to any enforcement authority the attorney general possessed in connection with [SB] 8 that a federal court might enjoin him from exercising." *Id.* at 43. Like SB 8, Section 5 of HB 1470 does not grant "any enforcement authority" to the Attorney General or the Governor. *See id.* Thus, the Attorney General and the Governor are not proper defendants as to Section 5.

Because Section 5 provides no cause of action against either the Attorney General or Governor, we conclude that the district court erred in reaching the merits of GEO's challenge to this section. Rather than enjoining enforcement of Section 5 by the Attorney General and the Governor, the district court should have dismissed this portion of GEO's suit.

## Conclusion

We vacate the district court's grant of a preliminary injunction against Sections 2, 3, 5 and 6 of HB 1470. We grant in part the motion to remand (Dkt. No. 63) to the district court for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

# APPENDIX B

CERTIFICATION OF ENROLLMENT

**ENGROSSED SECOND SUBSTITUTE HOUSE BILL 1232**

Chapter 235, Laws of 2025

69th Legislature
2025 Regular Session

PRIVATE DETENTION FACILITIES—VARIOUS PROVISIONS

EFFECTIVE DATE: May 12, 2025

Passed by the House March 7, 2025
  Yeas 56  Nays 38

LAURIE JINKINS
_____
**Speaker of the House of
Representatives**

Passed by the Senate April 23, 2025
  Yeas 29  Nays 19

DENNY HECK
_____
**President of the Senate**

Approved May 12, 2025 2:57 PM

CERTIFICATE

I, Bernard Dean, Chief Clerk of the House of Representatives of the State of Washington, do hereby certify that the attached is **ENGROSSED SECOND SUBSTITUTE HOUSE BILL 1232** as passed by the House of Representatives and the Senate on the dates hereon set forth.

BERNARD DEAN
_____
**Chief Clerk**

FILED

May 14, 2025

BOB FERGUSON
_____
**Governor of the State of Washington**

**Secretary of State
State of Washington**

_____

### ENGROSSED SECOND SUBSTITUTE HOUSE BILL 1232

_____

Passed Legislature - 2025 Regular Session

**State of Washington          69th Legislature          2025 Regular Session**

**By** House Appropriations (originally sponsored by Representatives Ortiz-Self, Fey, Reed, Ramel, Leavitt, Mena, Macri, Callan, Farivar, Gregerson, Simmons, Peterson, Wylie, Ormsby, Fosse, and Hill)

READ FIRST TIME 02/26/25.

1    AN ACT Relating to private detention facilities; amending RCW
2  70.395.020, 70.395.040, 70.395.050, 70.395.060, and 70.395.100;
3  adding new sections to chapter 70.395 RCW; creating new sections; and
4  declaring an emergency.

5  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

6    **Sec. 1.** RCW 70.395.020 and 2023 c 419 s 9 are each amended to
7  read as follows:
8    The definitions in this section apply throughout this chapter
9  unless the context clearly requires otherwise.
10    (1) (("Basic personal hygiene items" means items used to promote
11  or preserve a detained person's health and contribute to the
12  prevention of disease or infection, including soap, toothbrush and
13  toothpaste, shampoo and conditioner, lotion, nail clippers, comb,
14  towels, and menstrual products.
15    (2) "Culturally competent" includes: Knowledge of a detained
16  person's cultural histories and contexts, as well as family norms and
17  values in different cultures; knowledge and skills in accessing
18  community resources and community outreach; and skills in adapting
19  services and treatment to a detained person's experiences and
20  identifying cultural contexts for individuals.

1     ~~(3)~~)) "Abuse" means an act by any individual which injures,
2 exploits, or in any way jeopardizes a detained person's health,
3 welfare, or safety, including, but not limited to:
4     (a) Physically damaging or potentially damaging nonaccidental
5 acts;
6     (b) Emotionally damaging verbal behavior and harassment or other
7 actions which may result in emotional or behavioral problems; and
8     (c) Sexual abuse, exploitation, and mistreatment through
9 inappropriate touching, inappropriate remarks, or encouraging
10 participation in pornography or prostitution.
11     (2) "Detained person" means a person confined in a private
12 detention facility.
13     (((4))) (3) "Detention facility" means any facility in which
14 persons are incarcerated or otherwise involuntarily confined for
15 purposes including prior to trial or sentencing, fulfilling the terms
16 of a sentence imposed by a court, or for other judicial or
17 administrative processes or proceedings.
18     ((~~(5) "Fresh fruits and vegetables" means any unprocessed fruits~~
19 ~~or vegetables, not including any processed, canned, frozen, or~~
20 ~~dehydrated fruits or vegetables, or any fruits or vegetables infected~~
21 ~~or infested with insects or other contaminants.~~
22 ~~(6)(a) "Personal protective equipment" means equipment worn to~~
23 ~~minimize exposure to hazards that cause serious injuries and illness,~~
24 ~~which may result from contact with chemical, radiological, physical,~~
25 ~~electrical, mechanical, or other hazards.~~
26 ~~(b) Personal protective equipment may include items such as~~
27 ~~gloves, safety glasses and shoes, earplugs or muffs, hard hats,~~
28 ~~respirators, or coveralls, vests, and full body suits.~~
29     ~~(7)~~)) (4) "Dietitian" means an individual certified under chapter
30 18.138 RCW.
31     (5) "Neglect" means conduct which results in deprivation of care
32 necessary to maintain a detained person's minimum physical and mental
33 health including, but not limited to:
34     (a) Physical and material deprivation;
35     (b) Lack of medical care;
36     (c) Inadequate food, clothing or cleanliness;
37     (d) Refusal to acknowledge, hear, or consider a detained person's
38 concerns;
39     (e) Lack of social interaction and physical activity;
40     (f) Lack of personal care; and

     E2SHB 1232.SL

1  (g) Lack of supervision appropriate for the detained person's
2  level of functioning.

3  (6) "Private detention facility" means a detention facility that
4  is operated by a private, nongovernmental ((for-profit)) entity and
5  operating pursuant to a contract or agreement with a federal, state,
6  or local governmental entity.

7  (((8) "Solitary confinement" means the confinement of a detained
8  person alone in a cell or similarly confined holding or living space
9  for 20 hours or more per day under circumstances other than a partial
10  or facility wide lockdown.

11  (9) "Telecommunications services" means phone calls or other
12  voice communication services, video communications, and email
13  services.))

14  **Sec. 2.**  RCW 70.395.040 and 2023 c 419 s 2 are each amended to
15  read as follows:

16  (1) The department of health shall adopt rules as may be
17  necessary to effectuate the intent and purposes of this section in
18  order to ensure private detention facilities comply with measurable
19  standards providing sanitary, hygienic, and safe conditions for
20  detained persons. The department of health rules shall include that:

21  (a) A detained person should have a safe, clean, and comfortable
22  environment that allows a detained person to use the person's
23  personal belongings to the extent possible;

24  (b) Living areas, including areas used for sleeping, recreation,
25  dining, telecommunications, visitation, and bathrooms, must be
26  cleaned and sanitized regularly;

27  (c) A private detention facility must provide laundry facilities,
28  equipment, handling, and processes for linen and laundered items that
29  are clean and in good repair, adequate to meet the needs of detained
30  persons, and maintained according to the manufacturer's instructions.
31  Laundry and linen must be handled, cleaned, and stored according to
32  acceptable methods of infection control including preventing
33  contamination from other sources. Separate areas for handling clean
34  laundry and soiled laundry must be provided and laundry rooms and
35  areas must be ventilated to the exterior;

36  (d) Basic personal hygiene items must be provided to a detained
37  person regularly at no cost;

38  (e) A private detention facility shall provide a nutritious and
39  balanced diet, including fresh fruits and vegetables, and shall

1  recognize a detained person's need for a special diet. A private
2  detention facility must follow proper food handling and hygiene
3  practices. A private detention facility must provide at least three
4  meals per day, at no cost, and at reasonable hours;

5  (f) Safe indoor air quality must be maintained;

6  (g) The private detention facility must have both heating and air
7  conditioning equipment that can be adjusted by room or area. Rooms
8  used by a detained person must be able to maintain interior
9  temperatures between 65 degrees Fahrenheit and 78 degrees Fahrenheit
10 year-round. Excessive odors and moisture must be prevented in the
11 building; ((and))

12 (h) A private detention facility must implement and maintain an
13 infection control program that prevents the transmission of
14 infections and communicable disease among detained persons, staff,
15 and visitors((.)); and

16 (i) A private detention facility must provide:

17 (i) Ready access and equipment to accommodate detained persons
18 with physical and mental disabilities;

19 (ii) Adequate lighting in all areas;

20 (iii) An adequate supply of hot and cold running water under
21 pressure meeting the standards in chapters 246-290 and 246-291 WAC,
22 with devices to prevent backflow into the potable water supply
23 system, and water temperature not exceeding 120 degrees Fahrenheit
24 automatically regulated at all plumbing fixtures used by detained
25 persons;

26 (iv) Written policies, procedures, and schedules for maintenance
27 and housekeeping functions;

28 (v) Housekeeping and service facilities on each floor, including:

29 (A) One or more service sinks, designed for filling and emptying
30 mop buckets;

31 (B) Housekeeping closets that are equipped with shelving,
32 ventilated to the out-of-doors, and kept locked; and

33 (C) A utility service area designed and equipped for washing,
34 disinfecting, storing, and housing medical and nursing supplies and
35 equipment; and

36 (vi) Equipment and facilities to collect and dispose of all
37 sewage, garbage, refuse, and liquid waste in a safe and sanitary
38 manner.

1    (2)  The office of the attorney general may enforce violations of
2  this section on its own initiative or in response to complaints or
3  violations.

4    **Sec. 3.**   RCW 70.395.050 and 2023 c 419 s 3 are each amended to
5  read as follows:
6    (1) <u>The department of health may at any time inspect a private</u>
7  <u>detention facility to determine whether it has failed or refused to</u>
8  <u>comply with the requirements of this chapter, the standards or rules</u>
9  <u>adopted under this chapter, or other applicable state or federal</u>
10  <u>statutes or rules regulating such facilities.</u>
11    <u>(2)</u> The department of health shall:
12    (a) Conduct routine, unannounced inspections of private detention
13  facilities including, but not limited to, inspection of food service
14  and food handling, sanitation and hygiene, and nutrition as provided
15  in (c) of this subsection;
16    (b) Conduct investigations of complaints received relating to any
17  private detention facility located within the state;
18    (c) Regularly review the list of food items provided to detained
19  persons to ensure the specific nutrition and calorie needs of each
20  detained person are met, including any needs related to medical
21  requirements, food allergies, or religious dietary restrictions;
22    (d) Test water used for drinking and bathing and air quality
23  every six months at private detention facilities both inside and
24  outside of the facility; and
25    (e) Post inspection results on its website and in a conspicuous
26  place viewable by detained persons and visitors to private detention
27  facilities. Results should be posted in English and in languages
28  spoken by detainees, to the extent practicable.
29    (((2))) <u>(3)</u> The department of health may delegate food safety
30  inspections to the local health jurisdiction, where the local health
31  jurisdiction is in the county where the private detention facility is
32  located, to conduct inspections pursuant to regulations.
33    (((3))) <u>(4)</u> The department of health shall adopt rules as may be
34  necessary to effectuate the intent and purposes of this section in
35  order to ensure private detention facilities allow regular
36  inspections and comply with measurable standards providing sanitary,
37  hygienic, and safe conditions for detained persons.

E2SHB 1232.SL

1     (((4))) (5) The department of labor and industries shall conduct
2 routine, unannounced inspections of workplace conditions at private
3 detention facilities, including work undertaken by detained persons.

4     (((5))) (6) The office of the attorney general may enforce
5 violations of this section on its own initiative or in response to
6 complaints or violations.

7     NEW SECTION. **Sec. 4.** A new section is added to chapter 70.395
8 RCW to read as follows:
9     In any case in which the department of health conducts an
10 inspection of a private detention facility and finds that the private
11 detention facility has failed or refused to comply with applicable
12 state statutes or regulations, the department of health may take one
13 or more of the following actions:
14     (1) When the department of health determines the private
15 detention facility has previously been subject to an enforcement
16 action for the same or similar type of violation of the same statute
17 or rule, or has been given any previous statement of deficiency that
18 included the same or similar type of violation of the same or similar
19 statute or rule, or has failed to correct noncompliance with a
20 statute or rule by a date established or agreed to by the department
21 of health, the department of health may impose reasonable conditions
22 on the private detention facility, which may include correction
23 within a specified amount of time, training, or hiring a consultant
24 approved by the department of health if the private detention
25 facility cannot demonstrate that it has access to sufficient internal
26 expertise.
27     (2)(a) In accordance with the authority under RCW 43.70.095, the
28 department of health may assess a civil fine of up to $10,000 per
29 violation, not to exceed a total fine of $1,000,000, on a private
30 detention facility if the private detention facility has previously
31 been subject to an enforcement action for the same or similar type of
32 violation of the same statute or rule, or has been given any previous
33 statement of deficiency that included the same or similar type of
34 violation of the same or similar statute or rule, or has failed to
35 correct noncompliance with a statute or rule by a date established or
36 agreed to by the department of health.
37     (b) Proceeds from these fines may only be used by the department
38 of health to provide training or technical assistance to private
39 detention facilities.

         

1    (c) The department of health shall adopt in rules specific fine
2  amounts in relation to the severity of the noncompliance.

3    (d) If a private detention facility is aggrieved by the
4  department of health's action of assessing civil fines, the private
5  detention facility has the right to appeal under RCW 43.70.095.

6    NEW SECTION.  **Sec. 5.**  A new section is added to chapter 70.395
7  RCW to read as follows:

8    As resources allow, the department of health shall make private
9  detention facility inspection statements of deficiencies, plans of
10 correction, notice of acceptance of plans of correction, enforcement
11 actions, and notices of resolution available to the public on the
12 internet.

13   **Sec. 6.**  RCW 70.395.060 and 2023 c 419 s 4 are each amended to
14 read as follows:

15   (1) This section does not apply to private detention facilities
16 operating pursuant to a valid contract that was in effect prior to
17 January 1, 2023, for the duration of that contract, not to include
18 any extensions or modifications made to, or authorized by, that
19 contract.

20   (2) A private detention facility operating pursuant to a contract
21 or agreement with a federal, state, or local government shall comply
22 with the following:

23   (a) ((A detained person, upon admission to a private detention
24 facility, must be issued new clothing and new footwear for both
25 indoor and outdoor use and for protection against cold and heat.
26 Clothing issued must be regularly laundered and replaced at no cost
27 once no longer hygienic or serviceable;

28   (b) Any food items in the commissary must be available at
29 reasonable prices taking into account the income and financial
30 circumstances of detained persons;

31   (c) Telecommunications services must be provided free of charge
32 to detained persons and any communication, whether initiated or
33 received through such a service, must be free of charge to the
34 detained person initiating or receiving the communication. Each
35 detained person must be eligible to use these telecommunications
36 services for at least 60 minutes on each day of the person's
37 detainment. Private detention facilities must not use the provision
38 of telecommunications services or any other communication service to

1  supplant in-person contact visits any detained person may be eligible
2  to receive;
3      (d) In-person visitation must be available daily. Visitation
4  rooms must allow for the presence of children and personal contact
5  between visiting persons and detained persons may not be restricted.
6  A detained person may receive reading and writing materials during
7  visitation;
8      (e) Solitary confinement is prohibited;
9      (f) Televisions must be available and accessible to a detained
10 person at no cost. The private detention facility shall make every
11 effort to make television programming available in the language of
12 the detained person;
13     (g) Handheld radios must be provided to a detained person at no
14 cost;
15     (h) A detained person may invite persons to the private detention
16 facility to provide legal education, know your rights presentations,
17 and other similar programming;
18     (i) Computer and internet access must be available and accessible
19 to a detained person at no cost;
20     (j) A law library must be available and accessible;
21     (k) Communication from the private detention facility to a
22 detained person, either in writing or verbally, must be delivered in
23 the primary language of the detained person;
24     (l) Sexual violence and harassment grievances must be responded
25 to immediately by culturally competent professionals on-site and
26 reported to local law enforcement in the county where the private
27 detention facility is located;
28     (m) Mental health evaluations should occur at intake and
29 periodically, at least once a week. Culturally competent mental
30 health therapy must be available and free;
31     (n) Requested medical care and attention must be provided without
32 delay, including the provision of requested medical accommodations;
33     (o) Rooms used by a detained person for sleeping must have access
34 to windows, natural light, and natural air circulation. Subject to
35 safety limitations, sleeping rooms must include adjustable curtains,
36 shades, blinds, or the equivalent installed at the windows for visual
37 privacy and that are shatterproof, screened, or of the security type
38 as determined by the private detention facility needs; and
39     (p) A private detention facility must be equipped to respond to
40 natural and human-made emergencies, including earthquakes, lahar

1  threats, ~~tsunami, and industrial accidents. A private detention~~
2  ~~facility must be earthquake resistant. A private detention facility~~
3  ~~shall develop emergency operation and continuity of operations plans~~
4  ~~and provide those plans to the local emergency management department.~~
5  ~~A private detention facility must stock all necessary personal~~
6  ~~protective equipment in case of disease outbreaks consistent with~~
7  ~~large numbers of people detained in close contact to one another.~~))
8  The private detention facility shall:
9      (i) Comply with food service rules under chapters 246-215 and
10  246-217 WAC;
11      (ii) Designate an individual responsible for managing and
12  supervising food services 24 hours per day, including:
13      (A) Incorporating ongoing recommendations of a dietitian;
14      (B) Serving at least three meals a day at regular intervals with
15  15 or fewer hours between the evening meal and breakfast, unless the
16  facility provides a nutritious snack between the evening meal and
17  breakfast;
18      (C) Providing well-balanced meals and nourishments that meet the
19  current recommendations published in recommended dietary allowances
20  by the national research council, 10th edition, 1989, adjusted for
21  the detained person's age, sex, and activities unless
22  contraindicated;
23      (D) Making nourishing snacks available as needed for detained
24  persons, and posted as part of the menu;
25      (E) Preparing and serving therapeutic diets according to written
26  medical orders;
27      (F) Preparing and serving meals under the supervision of food
28  service staff;
29      (G) Maintaining a current diet manual, approved in writing by the
30  dietitian and medical staff, for use in planning and preparing
31  therapeutic diets; and
32      (H) Ensuring all menus: Are written at least one week in advance;
33  indicate the date, day of week, month, and year; include all foods
34  and snacks served that contribute to nutritional requirements;
35  provide a variety of foods; are approved in writing by the dietitian;
36  are posted in a location easily accessible to detained persons at the
37  facility; and are retained for one year;
38      (iii) Substitute foods, when necessary, of comparable nutrient
39  value and record changes on the menu;
40      (iv) Allow sufficient time for detained persons to consume meals;

1       (v) Ensure staff from dietary and food services are present in
2  the facility during all meal times; and
3       (vi) Keep policies and procedures pertaining to food storage,
4  preparation, and cleaning food service equipment and work areas in
5  the food service area for easy reference by dietary staff at all
6  times;
7       (b) The private detention facility shall provide a readily
8  available telephone for detained persons to make and receive
9  confidential calls, and make a nonpay telephone or equivalent
10 communication device readily accessible on each floor occupied by a
11 detained person for emergency use;
12      (c) The private detention facility shall provide a visiting area
13 allowing privacy for detained persons and visitors;
14      (d) The private detention facility shall develop and implement
15 the written policies and procedures consistent with assuring the
16 rights of detained persons, protecting against abuse and neglect, and
17 reporting suspected incidents, and post those policies and procedures
18 in a prominent place for detained persons at the facility to read;
19      (e) The private detention facility shall employ sufficient,
20 qualified staff to:
21      (i) Provide adequate services to detained persons;
22      (ii) Maintain the facility free of safety hazards; and
23      (iii) Implement fire and disaster plans;
24      (f) The private detention facility shall provide and document
25 orientation and appropriate training for all staff, including:
26      (i) Organization of the facility;
27      (ii) Physical layout of facility, including buildings,
28 departments, exits, and services;
29      (iii) Fire and disaster plans, including monthly drills;
30      (iv) Infection control;
31      (v) Specific duties and responsibilities;
32      (vi) Policies, procedures, and equipment necessary to perform
33 duties;
34      (vii) Policies related to the rights of detained persons and
35 protecting against abuse and neglect;
36      (viii) Managing the behavior of detained persons; and
37      (ix) Appropriate training for expected duties; and
38      (g) The private detention facility shall establish and implement
39 an effective facility-wide infection control program including, at a
40 minimum, the following:

1       (i) Written policies and procedures describing:

2       (A) Types of surveillance used to monitor rates of infections

3  originating at the facility;

4       (B) Systems to collect and analyze data; and

5       (C) Activities to prevent and control infections;

6       (ii) A review process to determine if staff and detained person

7  infections originated at the facility;

8       (iii) A procedure for reviewing and approving infection control

9  aspects of policies and procedures used in each area of the facility;

10      (iv) A procedure to monitor the physical environment of the

11 facility for situations which may contribute to the spread of

12 infectious diseases; and

13      (v) Provisions for:

14      (A) Providing consultation regarding care practices, equipment,

15 and supplies which may influence the risk of infection;

16      (B) Providing consultation regarding appropriate procedures and

17 products for cleaning, disinfecting, and sterilizing;

18      (C) Providing infection control information for orientation and

19 in-service education for staff providing direct care;

20      (D) Making recommendations, consistent with federal, state, and

21 local laws and rules, for methods of safe and sanitary disposal of

22 sewage, solid and liquid wastes, and infectious wastes, including

23 safe management of sharps;

24      (E) Identifying specific precautions to prevent transmission of

25 infections; and

26      (F) Coordinating employee activities to control exposure and

27 transmission of infections to or from employees and others performing

28 services.

29      (3) The office of the attorney general may enforce violations of

30 this section on its own initiative or in response to complaints or

31 violations.


32      **Sec. 7.**   RCW 70.395.100 and 2023 c 419 s 10 are each amended to

33 read as follows:

34      RCW 70.395.040 through 70.395.080 and sections 4 and 5 of this

35 act do not apply to a private detention facility that is:

36      (1) Providing ((rehabilitative,)) counseling, treatment, mental

37 health, educational, or medical services to juveniles ((who are

38 subject to Title 13 RCW, or similarly applicable federal law)) under

39 chapter 74.15 RCW;

1     (2) Providing evaluation and treatment or forensic services to a
2 person who has been civilly detained or is subject to an order of
3 commitment by a court pursuant to chapter 10.77, 71.05, 71.09, or
4 71.34 RCW, or similarly applicable federal law, including facilities
5 regulated under chapters 70.41, 71.12, and 71.24 RCW;

6     (3) Used for the quarantine or isolation of persons for public
7 health reasons pursuant to RCW 43.20.050, or similarly applicable
8 federal law;

9     (4) Used for work release under chapter 72.65 RCW, or similarly
10 applicable federal law;

11     (5) Used for extraordinary medical placement;

12     (6) Used for residential substance use disorder treatment; or

13     (7) Owned and operated by federally recognized tribes and
14 contracting with a government.

15    NEW SECTION. **Sec. 8.** This act is necessary for the immediate
16 preservation of the public peace, health, or safety, or support of
17 the state government and its existing public institutions, and takes
18 effect immediately.

19    NEW SECTION. **Sec. 9.** If any provision of this act or its
20 application to any person or circumstance is held invalid, the
21 remainder of the act or the application of the provision to other
22 persons or circumstances is not affected.

23    NEW SECTION. **Sec. 10.** This act shall be construed liberally to
24 effectuate its purposes.

25    NEW SECTION. **Sec. 11.** If specific funding for the purposes of
26 this act, referencing this act by bill or chapter number, is not
27 provided by June 30, 2025, in the omnibus appropriations act, this
28 act is null and void.

       Passed by the House March 7, 2025.
       Passed by the Senate April 23, 2025.
       Approved by the Governor May 12, 2025.
       Filed in Office of Secretary of State May 14, 2025.

**--- END ---**

# APPENDIX C

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service

WAC T. 246, Ch. 246-215., Disp Table

*Currentness*

**Editors' Notes**

**DISPOSITION OF SECTIONS FORMERLY CODIFIED IN THIS CHAPTER**

246-215-001. Purpose and authority. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-001, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-001, filed 4/1/92, effective 5/2/92; WSR 91-02-051 (Order 124B), recodified as S 246-215-001, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-001, filed 10/1/80; Regulation .84.001, filed 6/4/63; Regulation .84.001, effective 3/11/60.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-005. Minimum performance standards. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-005, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-009. Definitions. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-009, filed 12/27/90, effective 1/31/91; WSR 84-14-090 (Order 274), S 248-84-002, filed 7/3/84; WSR 80-14-059 (Order 203), S 248-84-002, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-010. Definitions. (Statutory Authority: RCW 43.20.050. WSR 00-02-014, S 246-215-010, filed 12/27/99, effective 1/27/00; WSR 92-08-112 (Order 261B), S 246-215-010, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-011. Definitions. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-011, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-019. Food supplies. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-019, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-010, filed 10/1/80; Regulation .84.010, filed 6/4/63; Regulation .84.010, effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-020. Food supplies. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-020, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

App C 001

246-215-021. Management and personnel. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-021, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-029. Food protection and storage. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-029, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-015, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-030. Food protection. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-030, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-031. Employee hygiene. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-031, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-039. Food preparation, display, service and transportation. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-039, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-020, filed 10/1/80; Regulation .84.020, filed 6/4/63; Regulation .84.020, effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-040. Public health labeling. (Statutory Authority: RCW 43.20.050. WSR 00-02-014, S 246-215-040, filed 12/27/99, effective 1/27/00; WSR 92-08-112 (Order 261B), S 246-215-040, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-041. Food supplies. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-041, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-049. Personnel. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-049, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-025, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-050. Food preparation. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-050, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-051. Public health labeling. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-051, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-059. Sanitary design, construction, and installation of equipment and utensils. (Statutory Authority: RCW

App C 002

43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-059, filed 12/27/90, effective 1/31/91; WSR 84-14-090 (Order 274), S 248-84-030, filed 7/3/84; WSR 80-14-059 (Order 203), S 248-84-030, filed 10/1/80; Regulation .84.030, filed 6/4/63; Regulation .84.030 effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-060. Modified atmosphere packaging. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-060, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-061. Food handling. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-061, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-069. Equipment and utensil cleaning and sanitation. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-069, filed 12/27/90, effective 1/31/91; WSR 84-14-090 (Order 274), S 248-84-035, filed 7/3/84; WSR 80-14-059 (Order 203), S 248-84-035, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-070. Temperature control. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-070, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-071. Equipment and utensils. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-071, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-079. Sanitary facilities and controls. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-079, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-040, filed 10/1/80; Regulation .84.040, filed 6/4/63; Regulation .84.040, effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-080. Personal hygiene. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-080, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-081. Water, plumbing, and waste. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-081, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-089. Garbage and rubbish. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-089, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-045, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-090. Sanitary design, construction, and installation of equipment and utensils. (Statutory Authority: RCW

App C 003

43.20.050. WSR 92-08-112 (Order 261B), S 246-215-090, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-091. Physical facilities. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-091, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-099. Insect and rodent control. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-099, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-050, filed 10/1/80; Regulation .84.050, filed 6/4/63; Regulation .84.050, effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-100. Equipment and utensil cleaning and sanitizing. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-100, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-109. Construction and maintenance of physical facilities. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-109, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-055, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-110. Poisonous or toxic materials. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-110, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-119. Mobile units. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-119, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-060, filed 10/1/80; Regulation .84.060, filed 6/4/63; Rules (part), effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-120. Sanitary facilities and controls. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-120, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-121. Mobile food units. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-121, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-129. Bulk foods, storage, and display. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-129, filed 12/27/90, effective 1/31/91; WSR 84-14-090 (Order 274), S 248-84-062, filed 7/3/84.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-130. Garbage, rubbish, and litter. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-130, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory

Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-131. Temporary food establishments. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-131, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-139. Temporary food service establishments. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-139, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-065, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-140. Pests and pest control. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-140, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-141. Bed and breakfast operations. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-141, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-149. Permits required, suspension and revocation procedures. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-149, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-070, filed 10/1/80; Regulation .84.070 (part), filed 6/4/63; Rules (part), effective 3/11/60.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-150. Construction and maintenance of physical facilities. (Statutory Authority: RCW 43.20.050 and chapter 70.84 RCW. WSR 02-09-028, S 246-215-150, filed 4/9/02, effective 5/10/02. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-150, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-151. Donated food distributing organizations. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-151, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-159. Service of notices. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-159, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-075, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-160. Mobile food units. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-160, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-169. Hearings. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-169, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-080, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-170. Customer self-service of food and bulk food dispensing. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-170, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-179. Inspections. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-179, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-085, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-180. Bed and breakfast food service operations. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-180, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-181. Compliance and enforcement. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-181, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-189. Examination-Hold orders-Condemnation-Destruction of food. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-189, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-090, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-190. Temporary food service establishments. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-190, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-191. Exempt from permit. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-191, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-199. Review of plans. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-199, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-095, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-200. Permits required, suspension, revocation, enforcement. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-200, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-200, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-209. Procedure when infection is suspected. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-209, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-100, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-210. Service of notices. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S

246-215-210, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-210, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-219. Variance clause. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-219, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-105, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-220. Hearings. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-220, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-220, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-229. Interpretation. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-229, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-110, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-230. Inspections and investigations. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-230, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-239. Sulfiting agents. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-239, filed 12/27/90, effective 1/31/91; WSR 85-11-024 (Order 288), S 248-84-120, filed 5/13/85.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-240. Examination, hold orders, condemnation, and destruction of food. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-240, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-240, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-250. Review of plans and menu. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-250, filed 4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-251. Employee health. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-251, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-260. Procedure when disease transmission is suspected. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-260, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-260, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-270. Variance clause. (Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-270, filed

4/1/92, effective 5/2/92.) Repealed by WSR 04-22-111, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060.

246-215-280. Interpretation. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-280, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-280, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-290. Separability clause. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-290, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-290, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-300. Penalty clause. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-300, filed 11/3/04, effective 5/2/05. Statutory Authority: RCW 43.20.050. WSR 92-08-112 (Order 261B), S 246-215-300, filed 4/1/92, effective 5/2/92.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-311. Effective date. (Statutory Authority: RCW 43.20.050, 43.20.145 and 69.80.060. WSR 04-22-111, S 246-215-311, filed 11/3/04, effective 5/2/05.) Repealed by WSR 13-03-109, filed 1/17/13, effective 5/1/13. Statutory Authority: RCW 43.20.050 and 43.20.145.

246-215-500. Separability clause. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-500, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-500, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

246-215-900. Penalty clause. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-215-900, filed 12/27/90, effective 1/31/91; WSR 80-14-059 (Order 203), S 248-84-900, filed 10/1/80.) Repealed by WSR 92-08-112 (Order 261B), filed 4/1/92, effective 5/2/92. Statutory Authority: RCW 43.20.050.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 008

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 1. Intent, Scope, and Definitions |

WAC 246-215-01100

246-215-01100. Intent--Food safety, illness prevention, and honest presentation (FDA Food Code 1-102.10).

Currentness

The purpose of this chapter is to safeguard public health and provide to CONSUMERS FOOD that is safe, unADULTERATED, and honestly presented.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-01100, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-01100, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-01100, WA ADC 246-215-01100

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 1. Intent, Scope, and Definitions

WAC 246-215-01105

246-215-01105. Scope--Statement (FDA Food Code 1-103.10).

Currentness

This chapter establishes definitions; sets standards for management and personnel, FOOD operations, and EQUIPMENT and facilities; and provides for FOOD ESTABLISHMENT plan review, PERMIT issuance, inspection, EMPLOYEE RESTRICTION, and PERMIT suspension. This chapter adopts, with modification, the 2017 Food Code published by the United States Department of Health and Human Services, Public Health Service, Food and Drug Administration.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-01105, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-01105, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-01105, WA ADC 246-215-01105

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 1. Intent, Scope, and Definitions

WAC 246-215-01110

246-215-01110. Applicability.

Currentness

(1) The requirements of this chapter apply to an operation that meets the definition of a FOOD ESTABLISHMENT as defined in WAC 246-215-01115 (50).

(2) When a LOCAL BOARD OF HEALTH adopts rules with more stringent provisions than those contained in this chapter, the more stringent rules apply.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-01110, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-01110, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-01110, WA ADC 246-215-01110

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 1. Intent, Scope, and Definitions

WAC 246-215-01115

246-215-01115. Definitions, abbreviations, and acronyms (FDA Food Code 1-201.10(B)).

Currentness

The definitions in this section apply throughout this chapter unless the context clearly indicates otherwise.

(1) "ACCREDITED PROGRAM."

(a) ACCREDITED PROGRAM means a FOOD protection manager certification program that has been evaluated and listed by an accrediting agency as conforming to national standards for organizations that certify individuals.

(b) ACCREDITED PROGRAM refers to the certification process and is a designation based upon an independent evaluation of factors such as the sponsor's mission; organizational structure; staff resources; revenue sources; policies; public information regarding program scope, eligibility requirements, recertification, discipline, and grievance procedures; and test development and administration.

(c) ACCREDITED PROGRAM does not refer to training functions or educational programs.

(2) "ACTIVE MANAGERIAL CONTROL" means the purposeful use of specific policies and procedures in the FOOD ESTABLISHMENT to control foodborne illness risk factors. It embodies a preventive rather than reactive approach to food safety through a continuous system of training, monitoring, and verification.

(3) "ADDITIVE."

(a) "FOOD ADDITIVE" has the meaning stated in the Federal Food, Drug, and Cosmetic Act, Section 201(s) and 21 C.F.R. 170.3(e)(1).

App C 012

(b) "COLOR ADDITIVE" has the meaning stated in the Federal Food, Drug, and Cosmetic Act, Section 201(t) and 21 C.F.R. 70.3(f).

(4) "ADULTERATED" has the meaning stated in the Federal Food, Drug, and Cosmetic Act, Section 402.

(5) "APPROVED" means acceptable to the REGULATORY AUTHORITY based on a determination of conformity with principles, practices, and generally recognized standards that protect public health.

(6) "ASIAN RICE-BASED NOODLES" means a ricebased pasta that contains rice powder, water, wheat starch, vegetable cooking oil, and optional ingredients to modify the pH or water activity, or to provide a preservative effect. The ingredients do not include products derived from animals. The rice-based pasta is prepared by using a traditional method that includes cooking by steaming at not less than one hundred thirty degrees Fahrenheit, for not less than four minutes.

(7) "ASYMPTOMATIC."

(a) ASYMPTOMATIC means without obvious symptoms; not showing or producing indications of a disease or other medical condition, such as an individual infected with a pathogen but not exhibiting or producing any signs or symptoms of vomiting, diarrhea, or jaundice.

(b) ASYMPTOMATIC includes not showing symptoms because symptoms have resolved or subsided, or because symptoms never manifested.

(8) "$A_w$" means water activity which is a measure of the free moisture in a FOOD, is the quotient of the water vapor pressure of the substance divided by the vapor pressure of pure water at the same temperature, and is indicated by the symbol $A_w$.

(9) "BALUT" means an embryo inside a fertile EGG that has been incubated for a period sufficient for the embryo to reach a specific stage of development after which it is removed from incubation before hatching.

(10) "BED AND BREAKFAST OPERATION" means a private home or inn offering one or more lodging units on a temporary basis to travelers.

(11) "BEVERAGE" means a liquid for drinking, including water.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 013

(12) "BOTTLED DRINKING WATER" means water that is SEALED in bottles, packages, or other containers and offered for sale for human consumption, including bottled mineral water.

(13) "CATERING OPERATION."

(a) CATERING OPERATION means a PERSON who contracts with a client to prepare a specific menu and amount of FOOD in an APPROVED FOOD ESTABLISHMENT for service to the client's guests or customers at a different location.

(b) Consistent with its application under WAC 246-215-08325, a CATERING OPERATION APPROVED for a PERMIT may cook or perform final preparation on certain FOOD at the service location.

(14) "CERTIFICATION NUMBER" means a unique combination of letters and numbers assigned by a SHELLFISH CONTROL AUTHORITY to a MOLLUSCAN SHELLFISH DEALER according to the provisions of the National Shellfish Sanitation Program.

(15) "CERTIFIED FOOD PROTECTION MANAGER" means an EMPLOYEE with the authority to implement food protection measures and who meets the certification requirements listed by a Conference for Food Protection-recognized accrediting agency as conforming to the Conference for Food Protection Standards for Accreditation of Food Protection Manager Certification Programs.

(16) "C.F.R." means Code of Federal Regulations. Citations in this chapter to the C.F.R. refer sequentially to the Title, Part, and Section numbers, such as 40 C.F.R. 180.194 refers to Title 40, Part 180, Section 194.

(17) "CIP."

(a) CIP means cleaned in place by the circulation or flowing by mechanical means through a piping system of a detergent solution, water rinse, and SANITIZING solution onto or over EQUIPMENT surfaces that require cleaning, such as the method used, in part, to clean and SANITIZE a frozen dessert machine.

(b) CIP does not include the cleaning of EQUIPMENT such as band saws, slicers, or mixers that are subject to in-place manual cleaning without the use of a CIP system.

(18) "COMMINGLE" means:

App C 014

(a) To combine SHELLSTOCK harvested on different days or from different growing areas as identified on the tag or label, or

(b) To combine SHUCKED SHELLFISH from containers with different container codes or different shucking dates.

(19) "COMMINUTED."

(a) COMMINUTED means reduced in size by methods including chopping, flaking, grinding, or mincing.

(b) COMMINUTED includes FISH or MEAT products that are reduced in size and restructured or reformulated such as gefilte FISH, gyros, ground beef, and sausage; and a mixture of two or more types of MEAT that have been reduced in size and combined, such as sausages made from two or more MEATS.

(20) "COMMISSARY" means an APPROVED FOOD ESTABLISHMENT where FOOD is stored, prepared, portioned, or PACKAGED for service elsewhere.

(21) "CONDITIONAL EMPLOYEE" means a potential FOOD EMPLOYEE to whom a job offer is made, conditional on responses to subsequent medical questions or examinations designed to identify potential FOOD EMPLOYEES who may be suffering from a disease that can be transmitted through FOOD and done in compliance with Title 1 of the Americans with Disabilities Act of 1990.

(22) "CONFIRMED DISEASE OUTBREAK" means a FOODBORNE DISEASE OUTBREAK in which laboratory analysis of appropriate specimens identifies a causative agent and epidemiological analysis implicates the FOOD as the source of the illness.

(23) "CONSUMER" means a PERSON who is a member of the public, takes possession of FOOD, is not functioning in the capacity of an operator of a FOOD ESTABLISHMENT or FOOD PROCESSING PLANT, and does not offer the FOOD for resale.

(24) "CORROSION-RESISTANT" means a material that maintains acceptable surface cleanability characteristics under prolonged influence of the FOOD to be contacted, the normal use of cleaning compounds and SANITIZING solutions, and other conditions of the use environment.

(25) "COUNTER-MOUNTED EQUIPMENT" means EQUIPMENT that is not portable and is designed to be mounted off the floor on a table, counter, or shelf.

App C 015

(26) "CRITICAL CONTROL POINT" means a point or procedure in a specific FOOD system where loss of control might result in an unacceptable health RISK.

(27) "CRITICAL LIMIT" means the maximum or minimum value to which a physical, biological, or chemical parameter must be controlled at a CRITICAL CONTROL POINT to minimize the RISK that the identified FOOD safety HAZARD might occur.

(28) "CUT LEAFY GREENS" means fresh leafy greens whose leaves have been cut, shredded, sliced, chopped, or torn. The term "leafy greens" includes iceberg lettuce, romaine lettuce, leaf lettuce, butter lettuce, baby leaf lettuce (i.e., immature lettuce or leafy greens), escarole, endive, spring mix, spinach, cabbage, kale, arugula, and chard. The term "leafy greens" does not include herbs such as cilantro or parsley. The term "cut" does not include removing and discarding the exterior leaves.

(29) "DEALER" means a PERSON who is authorized by a SHELLFISH CONTROL AUTHORITY for the activities of SHELLSTOCK shipper, shucker-packer, repacker, reshipper, or depuration processor of MOLLUSCAN SHELLFISH according to the provisions of the National Shellfish Sanitation Program.

(30) "DISCLOSURE" means a written statement that clearly identifies the animal-derived FOODS which are, or can be ordered, raw, undercooked, or without otherwise being processed to eliminate pathogens, or items that contain an ingredient that is raw, undercooked, or without otherwise being processed to eliminate pathogens.

(31) "DONATED FOOD DISTRIBUTING ORGANIZATION" means a FOOD ESTABLISHMENT that is a charitable nonprofit organization under Section 501(c) of the federal Internal Revenue Code that distributes FOOD free of charge to the needy.

(32) "DONOR" means a person, corporation, association, or other organization that donates FOOD to a DONATED FOOD DISTRIBUTING ORGANIZATION under the provisions of chapter 69.80 RCW, known as the Good Samaritan Food Donation Act.

(33) "DONOR KITCHEN" means a kitchen that is used by a DONOR to handle, store, or prepare FOOD for donation to needy persons through a DONATED FOOD DISTRIBUTING ORGANIZATION and which is not a residential kitchen in a private home.

(34) "DRINKING WATER."

(a) DRINKING WATER means water that meets 40 C.F.R. 141, National Primary Drinking Water Regulations.

App C 016

(b) DRINKING WATER is traditionally known as "potable water."

(c) DRINKING WATER includes the term "water" except where the term used connotes that the water is not potable, such as "boiler water," "mop water," "rainwater," "wastewater," and "nondrinking" water.

(d) DRINKING WATER means potable water that is supplied in compliance with chapters 246-290 and 246-291 WAC.

(35) "DRY STORAGE" means a room or area designated for the storage of PACKAGED or containerized bulk FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD and dry goods such as SINGLE-SERVICE ARTICLES.

(36) "EASILY CLEANABLE."

(a) EASILY CLEANABLE means a characteristic of a surface that:

(i) Allows effective removal of soil by normal cleaning methods;

(ii) Is dependent on the material, design, construction, and installation of the surface; and

(iii) Varies with the likelihood of the surface's role in introducing pathogenic or toxigenic agents or other contaminants into FOOD based on the surface's APPROVED placement, purpose and use.

(b) EASILY CLEANABLE includes a tiered application of the requirements that qualify the surface as EASILY CLEANABLE as specified in (a) of this subsection to different situations in which varying degrees of cleanability are required such as:

(i) The appropriateness of stainless steel for a FOOD preparation surface as opposed to the lack of need for stainless steel to be used for floors or for tables used for CONSUMER dining; or

(ii) The need for a different degree of cleanability for a utilitarian attachment or accessory in the kitchen as opposed to a decorative attachment or accessory in the CONSUMER dining area.

App C 017

(37) "EASILY MOVABLE" means:

(a) Portable; mounted on casters, gliders, or rollers; or provided with a mechanical means to safely tilt a unit of EQUIPMENT for cleaning; and

(b) Having no utility connection, a utility connection that disconnects quickly, or a flexible utility connection line of sufficient length to allow the EQUIPMENT to be moved for cleaning of the EQUIPMENT and adjacent area.

(38) "EGG."

(a) EGG means the shell EGG of avian species such as chicken, duck, goose, guinea, quail, RATITES, turkey, or any other species of fowl.

(b) EGG does not include:

(i) A BALUT;

(ii) The EGG of a reptile species such as alligator; or

(iii) An EGG PRODUCT.

(39) "EGG PRODUCT."

(a) EGG PRODUCT means all, or a portion of, the contents found inside EGGS separated from the shell and pasteurized in a FOOD PROCESSING PLANT, with or without added ingredients, intended for human consumption such as dried, frozen, or liquid EGGS.

(b) EGG PRODUCT does not include FOOD which contains EGGS only in a relatively small proportion such as cake mixes.

(40) "EMPLOYEE" means the PERMIT HOLDER, PERSON IN CHARGE, FOOD EMPLOYEE, PERSON having supervisory or management duties, PERSON on the payroll, family member, volunteer, PERSON performing work under contractual agreement, or other PERSON working in a FOOD ESTABLISHMENT.

(41) "EPA" means the United States Environmental Protection Agency.

(42) "EQUIPMENT."

(a) EQUIPMENT means an article that is used in the operation of a FOOD ESTABLISHMENT such as a freezer, grinder, hood, ice maker, MEAT block, mixer, oven, reach-in refrigerator, scale, sink slicer, stove, table, TEMPERATURE MEASURING DEVICE for ambient air, VENDING MACHINE, or WAREWASHING machine.

(b) EQUIPMENT does not include items used for handling or storing large quantities of PACKAGED FOODS that are received from a supplier in a cased or overwrapped lot, such as hand trucks, forklifts, dollies, pallets, racks, and skids.

(43) "EXCLUDE" means to prevent a PERSON from working as an EMPLOYEE in a FOOD ESTABLISHMENT or entering a FOOD ESTABLISHMENT as an EMPLOYEE.

(44) "FDA" means the United States Food and Drug Administration.

(45) "FISH."

(a) FISH means fresh or saltwater finfish, crustaceans, mollusks, and other forms of aquatic life (including alligator, frog, aquatic turtle, jellyfish, sea cucumber, and sea urchin and the roe of such animals) other than birds or mammals, if such animal life is intended for human consumption.

(b) FISH includes an edible human FOOD product derived in whole or in part from FISH, including FISH that have been processed in any manner.

(46) "FOOD" means a raw, cooked, or processed edible substance, ice, BEVERAGE, or ingredient used or intended for use or for sale in whole or in part for human consumption, or chewing gum.

(47) "FOODBORNE DISEASE OUTBREAK" means the occurrence of two or more cases of a similar illness resulting from the ingestion of a common FOOD.

(48) "FOOD-CONTACT SURFACE" means:

(a) A surface of EQUIPMENT or a UTENSIL with which FOOD normally comes into contact; or

(b) A surface of EQUIPMENT or a UTENSIL from which FOOD might drain, drip or splash:

(i) Into a FOOD; or

(ii) Onto a surface normally in contact with FOOD.

(49) "FOOD EMPLOYEE" means an individual working with unPACKAGED FOOD, FOOD EQUIPMENT or UTENSILS, or FOOD-CONTACT SURFACES.

(50) "FOOD ESTABLISHMENT."

(a) FOOD ESTABLISHMENT means an operation that:

(i) Stores, prepares, PACKAGES, serves, and vends FOOD directly to the CONSUMER, or otherwise provides FOOD for human consumption such as a restaurant; satellite or catered feeding location; CATERING OPERATION if the operation provides FOOD directly to a CONSUMER or to a conveyance used to transport people; market; vending location; conveyance used to transport people; institution; or FOOD bank; and

(ii) Relinquishes possession of FOOD to a CONSUMER directly, or indirectly through a delivery service such as home delivery or grocery orders or restaurant takeout orders, or delivery service that is provided by common carriers.

(b) FOOD ESTABLISHMENT includes:

(i) An element of the operation such as a transportation vehicle or a central preparation facility that supplies a vending location or satellite feeding location unless the vending or feeding location is PERMITTED by the REGULATORY AUTHORITY; and

(ii) An operation that is conducted in a mobile, stationary, temporary, or permanent facility or location; where consumption is on or off the PREMISES; and regardless of whether there is a charge for the FOOD.

(c) FOOD ESTABLISHMENT does not include:

(i) An establishment that offers only nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD prePACKAGED in a licensed FOOD ESTABLISHMENT or FOOD PROCESSING PLANT;

(ii) An establishment that offers only nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD, nonREADY-TO-EAT, minimally cut, unprocessed fruits, vegetables, and fresh herbs;

(iii) A FOOD PROCESSING PLANT, cottage FOOD operation, or other establishment for activities regulated by the Washington state department of agriculture or the United States Department of Agriculture;

(iv) An establishment that offers only nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD, READY-TO-EAT FOOD produced in a licensed FOOD ESTABLISHMENT or FOOD PROCESSING PLANT (such as premixed soda pop, powdered creamer, pretzels, cookies, doughnuts, cake, or MEAT jerky) that are served from the original package without direct hand contact, with limited portioning, directly onto or into sanitary SINGLE-USE ARTICLES or SINGLE-SERVICE ARTICLES;

(v) An establishment that offers only nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD, hot BEVERAGES (such as coffee, tea, or pasteurized apple cider) served directly into sanitary SINGLE-SERVICE ARTICLES;

(vi) An establishment that offers only dry nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD, nonREADY-TO-EAT FOODS with no additional processing (such as dry beans, dry grains, in-shell nuts, coffee beans, tea leaves, or herbs for tea);

(vii) An establishment that offers only prePACKAGED frozen confections produced in a licensed FOOD ESTABLISHMENT or FOOD PROCESSING PLANT;

(viii) A residential kitchen in a private home or other location, if only FOODS that are nonTIME/TEMPERATURE CONTROL FOR SAFETY FOOD baked goods are prepared and wrapped in a sanitary manner for sale or service by a nonprofit organization operating for religious, charitable, or educational purposes and if the CONSUMER is informed by a clearly visible placard at the sales or service location that the FOODS are prepared in a kitchen that is not inspected by a REGULATORY AUTHORITY;

(ix) A location where FOODS that are prepared as specified in (c)(viii) of this subsection are sold or offered for human consumption;

(x) A hotel, motel, or other similar business that maintains an ice dispensing machine for self-service use by guests and the ice is not used by a FOOD ESTABLISHMENT;

(xi) A kitchen in a private home operated as a family day care provider as defined in RCW 43.215.010 (1)(c) or an adult family home as defined in RCW 70.128.010, used only to prepare FOOD for residents and other people for whom the operation is licensed to provide care;

(xii) A private home that receives catered or home-delivered FOOD;

(xiii) A private home or other location used for a PRIVATE EVENT;

(xiv) A DONOR KITCHEN;

(xv) A location used for a POTLUCK;

(xvi) A location, not including special events as defined in RCW 82.32.033, operating thirty or fewer days per calendar year, used by a PERSON under the age of eighteen for the sale of nonalcoholic beverages, such as lemonade, using non-TIME/TEMPERATURE CONTROL FOR SAFETY FOOD with no direct hand contact and served directly into SINGLE-SERVICE ARTICLES; and

(xvii) A BED AND BREAKFAST OPERATION that prepares and offers FOOD to guests if the home is owner occupied, the number of available guest bedrooms does not exceed two, breakfast is the only meal offered, and the CONSUMER is informed in published advertisements, mailed brochures, and placards posted at the registration area that the FOOD is prepared in a kitchen that is not regulated or inspected by the REGULATORY AUTHORITY.

(51) "FOOD PROCESSING PLANT."

(a) FOOD PROCESSING PLANT means a commercial operation that manufactures, packages, labels, or stores FOOD for human consumption, and provides FOOD for sale or distribution to other business entities such as FOOD PROCESSING PLANTS or FOOD ESTABLISHMENTS.

App C 022

(b) FOOD PROCESSING PLANT does not include a FOOD ESTABLISHMENT.

(52) "FOOD WORKER CARD" means a FOOD and BEVERAGE service worker's permit as required under chapter 69.06 RCW.

(53) "GAME ANIMAL."

(a) GAME ANIMAL means an animal, the products of which are FOOD that is not classified as livestock, sheep, swine, goat, horse, mule, or other equine in 9 C.F.R. 301.2 Definitions, or as POULTRY, or FISH.

(b) GAME ANIMAL includes mammals such as reindeer, elk, deer, antelope, water buffalo, bison, rabbit, squirrel, opossum, raccoon, nutria, or muskrat, and nonaquatic reptiles such as land snakes.

(c) GAME ANIMAL does not include RATITES.

(54) "GRADE A STANDARDS" means the requirements of the United States Public Health Service/FDA "Grade A Pasteurized Milk Ordinance" with which certain fluid and dry milk and milk products comply.

(55) "HACCP PLAN" means a written document that delineates the formal procedures for following the Hazard Analysis and Critical Control Point principles developed by The National Advisory Committee on Microbiological Criteria for Foods.

(56) "HANDWASHING SINK."

(a) HANDWASHING SINK means a lavatory, a basin or vessel for washing, a wash basin, or a PLUMBING FIXTURE especially placed for use in personal hygiene and designed for the washing of the hands.

(b) HANDWASHING SINK includes an automatic handwashing facility.

(57) "HAZARD" means a biological, chemical, or physical property that might cause an unacceptable CONSUMER health RISK.

App C 023

(58) "HEALTH PRACTITIONER" means a physician licensed to practice medicine, or if allowed by LAW, a nurse practitioner, physician assistant or similar medical professional.

(59) "HERMETICALLY SEALED CONTAINER" means a container that is designed and intended to be secure against the entry of microorganisms and, in the case of low acid canned FOODS, to maintain the commercial sterility of its contents after processing.

(60) "HIGHLY SUSCEPTIBLE POPULATION" means people who are more likely than others in the general population to experience foodborne disease because they are:

(a) Immunocompromised, PRESCHOOL age children, or older adults; and

(b) Obtaining FOOD at a facility that provides services in a custodial care, health care, or assisted living setting including, but not limited to, child or adult day care center, kidney dialysis center, hospital or nursing home, or nutritional or socialization services such as a senior center.

(61) "IMMEDIATE SERVICE" means service to the public within thirty minutes of preparation.

(62) "IMMINENT HEALTH HAZARD" means a significant threat or danger to health that is considered to exist when there is evidence sufficient to show that a product, practice, circumstance, or event creates a situation that requires immediate correction or cessation of operation to prevent injury based on a fire, flood, extended interruption of electrical or water service, SEWAGE backup, misuse of POISONOUS OR TOXIC MATERIALS, onset of an apparent FOODBORNE DISEASE OUTBREAK, gross insanitary occurrence or condition, or other circumstance that might endanger public health.

(63) "INJECTED" means manipulating MEAT to which a solution has been introduced into its interior by processes that are referred to as "injecting," "pump marinating," or "stitch pumping."

(64) "INTACT MEAT" means a cut of whole muscle(s) MEAT that has not undergone COMMINUTION, INJECTION, MECHANICAL TENDERIZATION, or RECONSTRUCTION.

(65) "JUICE."

---

(a) JUICE means the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree.

(b) JUICE does not include, for purposes of HACCP, liquids, purees, or concentrates that are not used as BEVERAGES or ingredients of BEVERAGES.

(66) "KITCHENWARE" means FOOD preparation and storage UTENSILS.

(67) "LAW" means applicable local, state, and federal statutes, regulations, and ordinances.

(68) "LINENS" means fabric items such as cloth hampers, cloth napkins, table cloths, wiping cloths, and work garments including cloth gloves.

(69) "LOCAL BOARD OF HEALTH" means the county or district board of health.

(70) "LOCAL HEALTH OFFICER" means the legally qualified physician who has been appointed as the health officer for the county or district public health department.

(71) "MAJOR FOOD ALLERGEN."

(a) MAJOR FOOD ALLERGEN means:

(i) Milk, EGG, FISH (such as bass, flounder, cod, and including crustacean shellfish such as crab, lobster, or shrimp), tree nuts (such as almonds, pecans, or walnuts), wheat, peanuts, and soybeans; or

(ii) A FOOD ingredient that contains protein derived from a FOOD as specified in (a)(i) of this subsection.

(b) MAJOR FOOD ALLERGEN does not include:

(i) Any highly refined oil derived from a FOOD specified in (a)(i) of this subsection and any ingredient derived from such highly refined oil; or

App C 025

(ii) An ingredient that is exempt under the petition or notification process specified in the Food Allergen Labeling and Consumer Protection Act of 2004. (Public Law 108-282.)

(72) "MEAT" means the flesh of animals used as FOOD including the dressed flesh of cattle, swine, sheep, or goats and other edible animals, except FISH and POULTRY.

(73) "MECHANICALLY TENDERIZED."

(a) MECHANICALLY TENDERIZED means manipulating MEAT with deep penetration by processes which may be referred to as "blade tenderizing," "jaccarding," "pinning," "needling," or using blades, pins, needles, or any mechanical device.

(b) MECHANICALLY TENDERIZED does not include processes by which solutions are INJECTED into MEAT.

(74) "MG/L" means milligrams per liter, which is the metric equivalent of parts per million (ppm).

(75) "MOBILE FOOD UNIT" means a readily movable FOOD ESTABLISHMENT.

(76) "MOBILE PRIMARY PERMIT" means a PERMIT issued by a REGULATORY AUTHORITY to operate a MOBILE FOOD UNIT within the jurisdiction of the REGULATORY AUTHORITY where the business is primarily located.

(77) "MOBILE SECONDARY PERMIT" means a PERMIT issued by a REGULATORY AUTHORITY to an applicant holding a valid MOBILE PRIMARY PERMIT as detailed in RCW 43.20.149.

(78) "MOLLUSCAN SHELLFISH" means any edible species of fresh or frozen oysters, clams, mussels, and scallops or edible portions thereof, except when the scallop product consists only of the shucked adductor muscle.

(79) "NONCONTINUOUS COOKING."

(a) NONCONTINUOUS COOKING means the cooking of FOOD in a FOOD ESTABLISHMENT using a process in which the initial heating of the FOOD is intentionally halted so that it may be cooled and held for complete cooking at a

App C 026

later time prior to sale or service.

(b) NONCONTINUOUS COOKING does not include cooking procedures that only involve temporarily interrupting or slowing an otherwise continuous cooking process.

(80) "PACKAGED."

(a) PACKAGED means bottled, canned, cartoned, securely bagged, or securely wrapped, whether PACKAGED in a FOOD ESTABLISHMENT or a FOOD PROCESSING PLANT.

(b) PACKAGED does not include a wrapper, carry-out box, or other nondurable container used by a FOOD EMPLOYEE to protect the FOOD during service or delivery to the CONSUMER:

(i) Upon CONSUMER request; or

(ii) During display at a staffed, self-service buffet line, or VENDING MACHINE on the PREMISES serving food prepared by the FOOD ESTABLISHMENT, such as at a school.

(81) "PERMIT" means the document issued by the REGULATORY AUTHORITY that authorizes a PERSON to operate a FOOD ESTABLISHMENT.

(82) "PERMIT HOLDER" means the entity that:

(a) Is legally responsible for the operation of the FOOD ESTABLISHMENT such as the owner, the owner's agent, or other PERSON; and

(b) When required, possesses a valid PERMIT to operate a FOOD ESTABLISHMENT.

(83) "PERSON" means any individual, corporation, company, association, society, firm, partnership, joint stock company, or any governmental agency, or the authorized agents of these entities.

(84) "PERSON IN CHARGE" means the individual present at a FOOD ESTABLISHMENT who is responsible for the

App C 027

operation at the time.

(85) "PERSONAL CARE ITEMS."

(a) PERSONAL CARE ITEMS means items or substances that might be poisonous, toxic, or a source of contamination and are used to maintain or enhance a person's health, hygiene, or appearance.

(b) PERSONAL CARE ITEMS include items such as medicines; first-aid supplies; and other items such as cosmetics, and toiletries such as toothpaste and mouthwash.

(86) "pH" means the symbol for the negative logarithm of the hydrogen ion concentration, which is a measure of the degree of acidity or alkalinity of a solution. Values between zero and seven indicate acidity and values between seven and fourteen indicate alkalinity. The value for pure distilled water is seven, which is considered neutral.

(87) "PHYSICAL FACILITIES" means the structure and interior surfaces of a FOOD ESTABLISHMENT including accessories such as soap and towel dispensers and attachments such as light fixtures and heating or air conditioning system vents.

(88) "PLUMBING FIXTURE" means a receptacle or device that:

(a) Is permanently or temporarily connected to the water distribution system of the PREMISES and demands a supply of water from the system; or

(b) Discharges used water, waste materials, or SEWAGE directly or indirectly to the drainage system of the PREMISES.

(89) "PLUMBING SYSTEM" means the water supply and distribution pipes; PLUMBING FIXTURES and traps; soil, waste, and vent pipes; sanitary and storm sewers and building drains, including their respective connections, devices, and appurtenances within the PREMISES; and water treating EQUIPMENT.

(90) "POISONOUS OR TOXIC MATERIALS" means substances that are not intended for ingestion and are included in four categories:

(a) Cleaners and SANITIZERS, which include cleaning and SANITIZING agents and agents such as caustics, acids, drying agents, polishes, and other chemicals;

(b) Pesticides, except SANITIZERS, which include substances such as insecticides and rodenticides;

(c) Substances necessary for the operation and maintenance of the establishment such as nonFOOD grade lubricants and PERSONAL CARE ITEMS that might be deleterious to health; and

(d) Substances that are not necessary for the operation and maintenance of the establishment and are on the PREMISES for retail sale, such as petroleum products and paints.

(91) "POTLUCK" means an event where:

(a) People are gathered to share FOOD;

(b) People attending the event are expected to bring FOOD to share;

(c) There is no compensation provided for people bringing FOOD to the event;

(d) There is no charge for any FOOD or BEVERAGE provided at the event; and

(e) The event is not conducted for commercial purposes.

(92) "POULTRY" means:

(a) Any domesticated bird (chickens, turkeys, ducks, geese, guineas, RATITES, or squabs), whether live or dead, as defined in 9 C.F.R. 381.1 Poultry Products Inspection Regulations Definitions, Poultry; and

(b) Any migratory waterfowl or game bird, pheasant, partridge, quail, grouse, or pigeon, whether live or dead, as defined in 9 C.F.R. 362.1 Voluntary Poultry Inspection Regulations, Definitions.

(93) "PREMISES" means:

(a) The PHYSICAL FACILITY, its contents, and the contiguous land or property under the control of the PERMIT HOLDER; or

(b) The PHYSICAL FACILITY, its contents, and the land or property not described under (a) of this subsection if its facilities and contents are under control of the PERMIT HOLDER and might impact FOOD ESTABLISHMENT personnel, facilities, or operations, and a FOOD ESTABLISHMENT is only one component of a larger operation such as a health care facility, hotel, motel, school, recreational camp, or prison.

(94) "PRESCHOOL."

(a) PRESCHOOL means a program that provides organized care and education for children below the age required for kindergarten entry. A PRESCHOOL operates for two or more days per week with no child enrolled on a regular basis for more than four hours per day.

(b) PRESCHOOL does not include:

(i) Programs where the parent or guardian is present at each session;

(ii) Parent-child classes where the focus is on parent education;

(iii) Short-term parks and recreation programs;

(iv) Informal parent and child groups;

(v) Irregular babysitting;

(vi) Licensed child care; or

(vii) FOOD preparation and service operations otherwise under PERMIT or license by the REGULATORY AUTHORITY.

App C 030

(95) "PRIMAL CUT" means a basic major cut into which carcasses and sides of MEAT are separated, such as beef round, pork loin, lamb flank, or veal breast.

(96) "PRIVATE EVENT" means a private gathering limited to members and guests of members of a family, organization, or club, where the event is not open or advertised to the general public, and where FOOD is provided without compensation.

(97) "PUBLIC WATER SYSTEM" means a DRINKING WATER system that is operated in compliance with chapters 246-290 and 246-291 WAC.

(98) "RATITE" means a flightless bird such as an emu, ostrich, or rhea.

(99) "READY-TO-EAT FOOD."

(a) READY-TO-EAT FOOD means FOOD that:

(i) Is in a form that is edible without additional preparation to achieve FOOD safety, as specified under WAC 246-215-03400 (1) through (3) or WAC 246-215-03405 or 246-215-03425; or

(ii) Is a raw or partially cooked animal FOOD and the CONSUMER is advised as specified under WAC 246-215-03400 (4)(a) and (c); or

(iii) Is prepared in accordance with a VARIANCE that is granted as specified under WAC 246-215-03400 (4)(d); and

(iv) May receive additional preparation for palatability or aesthetic, epicurean, gastronomic, or culinary purposes.

(b) READY-TO-EAT FOOD includes:

(i) Raw animal FOOD that is cooked as specified under WAC 246-215-03400 or 246-215-03405, or frozen as specified under WAC 246-215-03425;

App C 031

(ii) Raw fruits and vegetables that are washed as specified under WAC 246-215-03318;

(iii) Fruits and vegetables that are cooked for hot holding, as specified under WAC 246-215-03410;

(iv) All TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is cooked to the temperature and time required for the specific FOOD under WAC 246-215-03400 through 246-215-03445 and cooled as specified under WAC 246-215-03515;

(v) Plant FOOD for which further washing, cooking, or other processing is not required for FOOD safety, and from which rinds, peels, husks, or shells, if naturally present, are removed;

(vi) Substances derived from plants such as spices, seasonings, and sugar;

(vii) A bakery item such as bread, cakes, pies, fillings, or icing for which further cooking is not required for FOOD safety;

(viii) The following products that are produced in accordance with USDA guidelines and that have received a lethality treatment for pathogens: Dry, fermented sausages, such as dry salami or pepperoni; salt cured MEAT and POULTRY products, such as prosciutto ham, country cured ham, and Parma ham; and dried MEAT and POULTRY products, such as jerky or beef sticks; and

(ix) FOODS manufactured according to 21 C.F.R. Part 113, Thermally Processed Low-Acid Foods Packaged in Hermetically Sealed Containers.

(100) "RED HIGH RISK FACTORS" are improper practices or procedures identified as the most prevalent contributing factors to foodborne illness or injury, as listed on the food Establishment Inspection Report form.

(101) "REDUCED OXYGEN PACKAGING."

(a) REDUCED OXYGEN PACKAGING means:

(i) The reduction of the amount of oxygen in a package by removing oxygen; displacing oxygen and replacing it with another gas or combination of gases; or otherwise controlling the oxygen content to a level below that normally found in the atmosphere (approximately twenty-one percent at sea level); and

App C 032

(ii) A process as specified in (a)(i) of this subsection that involves a FOOD for which the hazards *Clostridium botulinum* or *Listeria monocytogenes* require control in the final PACKAGED form.

(b) REDUCED OXYGEN PACKAGING includes:

(i) Vacuum packaging, in which air is removed from a package of FOOD and the package is HERMETICALLY SEALED so that a vacuum remains inside the package;

(ii) Modified atmosphere packaging, in which the atmosphere of a package of FOOD is modified so that its composition is different from air but the atmosphere might change over time due to the permeability of the packaging material or the respiration of the FOOD. Modified atmosphere packaging includes reduction of the proportion of oxygen, total replacement of oxygen, or an increase in the proportion of other gases such as carbon dioxide or nitrogen;

(iii) Controlled atmosphere packaging, in which the atmosphere of a package of FOOD is modified so that until the package is opened, its composition is different from air, and continuous control of that atmosphere is maintained, such as by using oxygen scavengers or a combination of total replacement of oxygen, nonrespiring FOOD, and impermeable packaging material;

(iv) Cook chill packaging, in which cooked FOOD is hot filled into impermeable bags which have the air expelled and are then SEALED or crimped closed. The bagged FOOD is rapidly chilled and refrigerated at temperatures that inhibit the growth of psychrotrophic pathogens; or

(v) Sous vide packaging, in which raw or partially cooked FOOD is vacuum packaged in an impermeable bag, cooked in the bag, rapidly chilled, and refrigerated at temperatures that inhibit the growth of psychrotrophic pathogens.

(102) "REFUSE" means solid waste not carried by water through a SEWAGE system.

(103) "REGULATORY AUTHORITY" means the local, state, or federal enforcement body or authorized representative having jurisdiction over the FOOD ESTABLISHMENT. The LOCAL BOARD OF HEALTH, acting through the LOCAL HEALTH OFFICER, is the REGULATORY AUTHORITY for the activity of a FOOD ESTABLISHMENT, except as otherwise provided by LAW.

(104) "REMINDER" means a written statement concerning the health RISK of consuming animal FOODS raw, undercooked, or without otherwise being processed to eliminate pathogens.

(105) "RESERVICE" means the transfer of FOOD that is unused and returned by a CONSUMER after being served or sold and in the possession of the CONSUMER, to another person. RESERVICE does not include FOOD displayed on a self-service operation as described in WAC 246-215-03369.

(106) "RESTRICT" means to limit the activities of a FOOD EMPLOYEE so that there is no RISK of transmitting a disease that is transmissible through FOOD and the FOOD EMPLOYEE does not work with exposed FOOD, clean EQUIPMENT, UTENSILS, LINENS, unwrapped SINGLE-SERVICE ARTICLES, or unwrapped SINGLE-USE ARTICLES.

(107) "RESTRICTED EGG" means any check, dirty EGG, incubator reject, inedible, leaker, or loss as defined in 9 C.F.R. 590.

(108) "RESTRICTED USE PESTICIDE" means a pesticide product that contains the active ingredients specified in 40 C.F.R. 152.175 Pesticides Classified for Restricted Use, and that is limited to use by or under the direct supervision of a certified applicator.

(109) "RISK" means the likelihood that an adverse health effect will occur within a population as a result of a HAZARD in a FOOD.

(110) "SAFE MATERIAL" means:

(a) An article manufactured from or composed of materials that might not reasonably be expected to result, directly or indirectly, in their becoming a component or otherwise affecting the characteristics of any FOOD;

(b) An ADDITIVE that is used as specified in Section 409 of the Federal Food, Drug, and Cosmetic Act; or

(c) Other materials that are not ADDITIVES and that are used in conformity with applicable regulations of the FDA.

(111) "SANITIZATION" means the application of cumulative heat or chemicals on cleaned FOOD-CONTACT SURFACES that, when evaluated for efficacy, is sufficient to yield a reduction of five logs, which is equal to a 99.999% reduction, of representative disease microorganisms of public health importance.

(112) "SEALED" means free of cracks or other openings that allow the entry or passage of moisture.

App C 034

(113) "SERVICE ANIMAL" means any dog or miniature horse, meeting the requirements in RCW 49.60.040 that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. The work or tasks performed by the service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing nonviolent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors.

The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks.

(114) "SERVICING AREA" means an operating base location to which a MOBILE FOOD UNIT or transportation vehicle returns regularly for such things as vehicle and EQUIPMENT cleaning, discharging liquid or solid wastes, refilling water tanks and ice bins, and boarding FOOD.

(115) "SEWAGE" means liquid waste containing animal or vegetable matter in suspension or solution and may include liquids containing chemicals in solution.

(116) "SHELLFISH CONTROL AUTHORITY" means a state, federal, foreign, tribal, or other government entity legally responsible for administering a program that includes certification of MOLLUSCAN SHELLFISH harvesters and DEALERS for interstate commerce.

(117) "SHELLSTOCK" means raw, in-shell MOLLUSCAN SHELLFISH.

(118) "SHIGA TOXIN-PRODUCING *ESCHERICHIA COLI* (STEC)" means any *E. coli* capable of producing Shiga toxins (also called verocytotoxins). STEC infections can be asymptomatic or may result in a spectrum of illness ranging from mild nonbloody diarrhea, to hemorrhagic colitis (i.e., bloody diarrhea), to hemolytic uremic syndrome (HUS-a type of kidney failure). Examples include *E. coli* O157, *E. coli* O26, and *E. coli* O145.

(119) "SHUCKED SHELLFISH" means MOLLUSCAN SHELLFISH that have one or both shells removed.

(120) "SINGLE-SERVICE ARTICLES" means TABLEWARE, carry-out UTENSILS, and other items such as bags, containers, placemats, stirrers, straws, toothpicks, and wrappers that are designed and constructed for one-time, one-PERSON use after which they are intended for discard.

(121) "SINGLE-USE ARTICLES."

(a) SINGLE-USE ARTICLES means UTENSILS and bulk FOOD containers designed and constructed to be used once and discarded.

(b) SINGLE-USE ARTICLES includes items such as wax paper, butcher paper, plastic wrap, formed aluminum FOOD containers, jars, plastic tubs or buckets, bread wrappers, pickle barrels, ketchup bottles, and number 10 cans which do not meet the materials, durability, strength, and cleanability specifications under WAC 246-215-04100, 246-215-04200, and 246-215-04204 for multiuse UTENSILS.

(122) "SLACKING" means the process of moderating the temperature of a FOOD such as allowing a FOOD to gradually increase from a temperature of -10°F (-23°C) to 25°F (-4°C) in preparation for deep-fat frying or to facilitate even heat penetration during the cooking of previously block-frozen FOOD such as shrimp.

(123) "SMOOTH" means:

(a) A FOOD-CONTACT SURFACE having a surface free of pits and inclusions with a cleanability equal to or exceeding that of (100 grit) number three stainless steel;

(b) A nonFOOD-CONTACT SURFACE of EQUIPMENT having a surface equal to that of commercial grade hot-rolled steel free of visible scale; and

(c) A floor, wall, or ceiling having an even or level surface with no roughness or projections that render it difficult to clean.

(124) "TABLEWARE" means eating, drinking, and serving UTENSILS for table use such as flatware including forks, knives, and spoons; hollowware including bowls, cups, serving dishes, and tumblers; and plates.

(125) "TEMPERATURE MEASURING DEVICE" means a thermometer, thermocouple, thermistor, or other device that indicates the temperature of FOOD, air, or water.

(126) "TEMPORARY FOOD ESTABLISHMENT" means a FOOD ESTABLISHMENT:

App C 036

(a) Operating at a fixed location, with a fixed menu, for not more than twenty-one consecutive days in conjunction with a single event or celebration, such as a fair or festival; or

(b) Operating not more than three days a week at a fixed location, with a fixed menu, in conjunction with an APPROVED, recurring, organized event, such as a farmers market.

(127) "TIME/TEMPERATURE CONTROL FOR SAFETY FOOD" (TCS)(formerly "potentially hazardous food" (PHF)).

(a) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD means a FOOD that requires time/temperature control for safety to limit pathogenic microorganism growth or toxin formation.

(b) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD includes:

(i) An animal FOOD that is raw or heat-treated; a plant FOOD that is heat-treated or consists of raw seed sprouts, cut melons, cut leafy greens, cut tomatoes or mixtures of cut tomatoes that are not modified in a way so that they are unable to support pathogenic microorganism growth or toxin formation, fresh herb-in-oil mixtures, or garlic-in-oil mixtures that are not modified in a way so that they are unable to support pathogenic microorganism growth or toxin formation; and

(ii) Except as specified in subsection (3)(d) of this definition, a FOOD that because of the interaction of its $A_w$ and pH values is designated as product assessment required (PA) in Table A or B of this definition:

**Table A. Interaction of pH and $A_w$ for control of spores in FOOD heat-treated to destroy vegetative cells and subsequently PACKAGED**

| $A_w$ values | pH: 4.6 or less | pH: >4.6 - 5.6 | pH: >5.6 |
|---|---|---|---|
| ≤0.92 | non-TCS FOOD | non-TCS FOOD | non-TCS FOOD |
| >0.92 - 0.95 | non-TCS FOOD | non-TCS FOOD | PA |
| >0.95 | non-TCS FOOD | PA | PA |

**Table B. Interaction of pH and $A_w$ for control of vegetative cells and spores in FOOD not heat-treated or heat-treated but not PACKAGED**

| $A_w$ values | pH: <4.2 | pH: 4.2 - 4.6 | pH: >4.6 - 5.0 | pH: >5.0 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| <0.88 | non-TCS FOOD | non-TCS FOOD | non-TCS FOOD | non-TCS FOOD |
| 0.88 - 0.90 | non-TCS FOOD | non-TCS FOOD | non-TCS FOOD | PA |
| >0.90 - 0.92 | non-TCS FOOD | non-TCS FOOD | PA | PA |
| >0.92 | non-TCS FOOD | PA | PA | PA |

(c) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD does not include:

(i) An air-cooled hard-boiled EGG with shell intact, or an EGG with shell intact that is not hard boiled, but has been pasteurized to destroy all viable Salmonellae;

(ii) A FOOD in an unopened HERMETICALLY SEALED CONTAINER that is commercially processed to achieve and maintain commercial sterility under conditions of nonrefrigerated storage and distribution;

(iii) A FOOD that because of its pH or $A_w$ value, or interaction of $A_w$ and pH values, is designated as a non-TCS FOOD in Table A or B of this subsection;

(iv) A FOOD that is designated as product assessment required (PA) in Table A or B of this subsection and has undergone a product assessment showing that the growth or toxin formation of pathogenic microorganisms that are reasonably likely to occur in that FOOD is precluded due to:

(A) Intrinsic factors including added or natural characteristics of the FOOD such as preservatives, antimicrobials, humectants, acidulants or nutrients;

(B) Extrinsic factors including environmental or operational factors that affect the FOOD such as packaging, modified atmosphere such as REDUCED OXYGEN PACKAGING, shelf life and use, or temperature range of storage and use; or

(C) A combination of intrinsic and extrinsic factors; or

(v) A FOOD that does not support the growth or toxic formation of pathogenic microorganisms in accordance with (c)(i) through (iv) of this subsection even though the FOOD might contain a pathogenic microorganism or chemical

or physical contaminant at a level sufficient to cause illness or injury.

(128) "USDA" means the United States Department of Agriculture.

(129) "UTENSIL" means a FOOD-contact implement or container used in the storage, preparation, transportation, dispensing, sale, or service of FOOD, such as KITCHENWARE or TABLEWARE that is multiuse, SINGLE-SERVICE, or SINGLE-USE; gloves used in contact with FOOD; temperature sensing probes of FOOD TEMPERATURE MEASURING DEVICES; and probe-type price or identification tags used in contact with FOOD.

(130) "VARIANCE" means a written document issued by the REGULATORY AUTHORITY that authorizes a modification or waiver of one or more requirements of this chapter if, in the opinion of the REGULATORY AUTHORITY, a health HAZARD or nuisance will not result from the modification or waiver.

(131) "VENDING MACHINE" means a self-service device that, upon insertion of a coin, paper currency, token, card, or key, or by electronic transaction or optional manual operation, dispenses unit servings of FOOD in bulk or in PACKAGES without the necessity of replenishing the device between each vending operation.

(132) "VENDING MACHINE LOCATION" means the room, enclosure, space, or area where one or more VENDING MACHINES are installed and operated and includes the storage areas and areas on the PREMISES that are used to service and maintain the VENDING MACHINES.

(133) "WAREWASHING" means the cleaning and SANITIZING of UTENSILS and FOOD-CONTACT SURFACES of EQUIPMENT.

(134) "WHOLE-MUSCLE, INTACT BEEF" means whole muscle beef that is not INJECTED, MECHANICALLY TENDERIZED, reconstructed, or scored and marinated, from which beef steaks may be cut.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-01115, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-01115, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-01115, WA ADC 246-215-01115

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart A. - Supervision

WAC 246-215-02100

246-215-02100. Responsibility--Assignment (FDA Food Code 2-101.11).

Currentness

(1) Except as specified in subsection (2) of this section, the PERMIT HOLDER shall be the PERSON IN CHARGE or shall designate a PERSON IN CHARGE and shall ensure that a PERSON IN CHARGE is present at the FOOD ESTABLISHMENT during all hours of operation.

(2) In a FOOD ESTABLISHMENT with two or more separately PERMITTED departments that are the legal responsibility of the same PERMIT HOLDER and that are located on the same PREMISES, the PERMIT HOLDER may, during specific time periods when FOOD is not being prepared, PACKAGED, or served, designate a single PERSON IN CHARGE who is present on the PREMISES during all hours of operation, and who is responsible for each separately PERMITTED FOOD ESTABLISHMENT on the PREMISES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02100, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02100, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02100, WA ADC 246-215-02100

**End of Document** 
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 040

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart A. - Supervision

WAC 246-215-02105

246-215-02105. Demonstration of knowledge (FDA Food Code 2-102.11).

Currentness

Based on the RISKS of foodborne illness inherent to the FOOD operation, during inspections and upon request, the PERSON IN CHARGE shall demonstrate to the REGULATORY AUTHORITY knowledge of foodborne disease prevention, application of the HAZARD analysis and CRITICAL CONTROL POINT principles, and the requirements of this chapter. The PERSON IN CHARGE shall demonstrate this knowledge by:

(1) Complying with this chapter by having no violations of RED HIGH RISK FACTORS during the current inspection;

(2) Being a CERTIFIED FOOD PROTECTION MANAGER who has shown proficiency of required information through passing a test that is part of an ACCREDITED PROGRAM; or

(3) Responding correctly to the inspector's questions as they relate to the specific FOOD operation. The areas of knowledge include:

(a) Describing the relationship between the prevention of foodborne disease and the personal hygiene of a FOOD EMPLOYEE;

(b) Explaining the responsibility of the PERSON IN CHARGE for preventing the transmission of foodborne disease by a FOOD EMPLOYEE who has a disease or medical condition that might cause foodborne disease;

(c) Describing the symptoms associated with the diseases that are transmissible through FOOD;

(d) Explaining the significance of the relationship between maintaining the time and temperature of

TIME/TEMPERATURE CONTROL FOR SAFETY FOOD and the prevention of foodborne illness;

(e) Explaining the HAZARDS involved in the consumption of raw or undercooked MEAT, POULTRY, EGGS, and FISH;

(f) Stating the required FOOD temperatures and times for safe cooking of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD including MEAT, POULTRY, EGGS, and FISH;

(g) Stating the required temperatures and times for the safe refrigerated storage, hot holding, cooling, and reheating of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD;

(h) Describing the relationship between the prevention of foodborne illness and the management and control of the following:

(i) Cross contamination;

(ii) Hand contact with READY-TO-EAT FOODS;

(iii) Handwashing; and

(iv) Maintaining the FOOD ESTABLISHMENT in a clean condition and in good repair;

(i) Describing FOODS identified as MAJOR FOOD ALLERGENS and the symptoms that a MAJOR FOOD ALLERGEN could cause in a sensitive individual who has an allergic reaction;

(j) Explaining the relationship between FOOD safety and providing EQUIPMENT that is:

(i) Sufficient in number and capacity; and

(ii) Properly designed, constructed, located, installed, operated, maintained, and cleaned;

(k) Explaining correct procedures for cleaning and SANITIZING UTENSILS and FOOD-CONTACT SURFACES of EQUIPMENT;

(l) Identifying the source of water used and measures taken to ensure that it remains protected from contamination such as providing protection from backflow and precluding the creation of cross connections;

(m) Identifying POISONOUS OR TOXIC MATERIALS in the FOOD ESTABLISHMENT and the procedures necessary to ensure that they are safely stored, dispensed, used, and disposed of according to LAW;

(n) Identifying CRITICAL CONTROL POINTS in the operation from purchasing through sale or service that when not controlled can contribute to the transmission of foodborne illness and explaining steps taken to ensure that the points are controlled in accordance with the requirements of this chapter;

(o) Explaining the details of how the PERSON IN CHARGE and FOOD EMPLOYEES comply with the HACCP PLAN if a plan is required by the LAW, this chapter, or an agreement between the REGULATORY AUTHORITY and the FOOD ESTABLISHMENT;

(p) Explaining the responsibilities, rights, and authorities assigned by this chapter to the:

(i) FOOD EMPLOYEE;

(ii) CONDITIONAL EMPLOYEE;

(iii) PERSON IN CHARGE;

(iv) REGULATORY AUTHORITY; and

(q) Explaining how the PERSON IN CHARGE, FOOD EMPLOYEES and CONDITIONAL EMPLOYEES comply with reporting responsibilities and EXCLUSION or RESTRICTION of FOOD EMPLOYEES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02105, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02105, filed 1/17/13, effective 5/1/13.

**246-215-02105. Demonstration of knowledge (FDA Food..., WA ADC 246-215-02105**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02105, WA ADC 246-215-02105

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 044

---

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart A. - Supervision |

WAC 246-215-02107

246-215-02107. Certified food protection manager (FDA Food Code 2-102.12).

Currentness

(1) By March 1, 2023, FOOD ESTABLISHMENTS must have at least one CERTIFIED FOOD PROTECTION MANAGER on staff as evidenced by a valid certificate available from an ACCREDITED PROGRAM. The certificate must be available upon request. If the CERTIFIED FOOD PROTECTION MANAGER leaves employment for any reason, the FOOD ESTABLISHMENT must have another CERTIFIED FOOD PROTECTION MANAGER on staff within sixty days.

(2) This section does not apply to certain types of FOOD ESTABLISHMENTS deemed by the REGULATORY AUTHORITY to pose minimal risk of causing, or contributing to, foodborne illness based on the nature of the operation and extent of FOOD preparation.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02107, filed 12/15/20, effective 1/15/21.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02107, WA ADC 246-215-02107

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 045

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart A. - Supervision

WAC 246-215-02110

246-215-02110. Duties--Food protection manager certification (FDA Food Code 2-102.20).

Currentness

CERTIFIED FOOD PROTECTION MANAGER responsibilities include training and implementing a program of food protection and education for each PERSON IN CHARGE, so each PERSON IN CHARGE is able to successfully demonstrate knowledge described in WAC 246-215-02105, and fulfill the duties as described in WAC 246-215-02115 to maintain ACTIVE MANAGERIAL CONTROL.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02110, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02110, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02110, WA ADC 246-215-02110

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 046

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart A. - Supervision

WAC 246-215-02115

246-215-02115. Duties--Person in charge (FDA Food Code 2-103.11).

Currentness

The PERSON IN CHARGE shall ensure that:

(1) FOOD ESTABLISHMENT operations are not conducted in a private home or in a room used as living or sleeping quarters as specified under WAC 246-215-06290;

(2) Persons unnecessary to the FOOD ESTABLISHMENT operation are not allowed in the FOOD preparation, FOOD storage, or WAREWASHING areas, except that brief visits and tours may be authorized by the PERSON IN CHARGE if steps are taken to ensure that exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES are protected from contamination;

(3) EMPLOYEES and other persons such as delivery and maintenance persons and pesticide applicators entering the FOOD preparation, FOOD storage, and WAREWASHING areas comply with this chapter;

(4) EMPLOYEES are effectively cleaning their hands by routinely monitoring the EMPLOYEES' handwashing;

(5) EMPLOYEES are visibly observing FOODS as they are received to determine that they are from APPROVED sources, delivered at the required temperatures, protected from contamination, unADULTERATED, and accurately presented, by routinely monitoring the EMPLOYEES' observations and periodically evaluating FOODS upon their receipt;

(6) EMPLOYEES are verifying that FOODS delivered to the FOOD ESTABLISHMENT during nonoperating hours are from APPROVED sources and are placed into appropriate storage locations such that they are maintained at the required temperatures, protected from contamination, unADULTERATED and accurately presented;

(7) EMPLOYEES are properly cooking TIME/TEMPERATURE CONTROL FOR SAFETY FOOD, being particularly careful in cooking those FOODS known to cause severe foodborne illness and death, such as EGGS and COMMINUTED MEATS, through daily oversight of the EMPLOYEES' routine monitoring of the cooking temperatures using appropriate TEMPERATURE MEASURING DEVICES properly scaled and calibrated as specified under WAC 246-215-04220 and 246-215-04580(2);

(8) EMPLOYEES are using proper methods to rapidly cool TIME/TEMPERATURE CONTROL FOR SAFETY FOODS that are not held hot or are not for consumption within four hours, through daily oversight of the EMPLOYEES' routine monitoring of FOOD temperatures during cooling;

(9) EMPLOYEES are properly maintaining the temperatures of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD during hot and cold holding through daily oversight of the EMPLOYEES' routine monitoring of FOOD temperatures;

(10) CONSUMERS who order raw or partially cooked READY-TO-EAT FOODS of animal origin are informed as specified under WAC 246-215-03620 that the FOOD is not cooked sufficiently to ensure its safety;

(11) EMPLOYEES are properly SANITIZING cleaned multiuse EQUIPMENT and UTENSILS before they are reused, through routine monitoring of solution temperature and exposure time for hot water SANITIZING, and chemical concentration, pH, temperature, and exposure time for chemical SANITIZING;

(12) CONSUMERS are notified that clean TABLEWARE is to be used when they return to self-service areas such as salad bars and buffets as specified under WAC 246-215-03345;

(13) Except when approval is obtained from the REGULATORY AUTHORITY as specified under WAC 246-215-03300 (5), EMPLOYEES are preventing cross-contamination of READY-TO-EAT FOOD with bare hands by properly using suitable UTENSILS such as deli tissue, spatulas, tongs, SINGLE-USE gloves, or dispensing EQUIPMENT;

(14) EMPLOYEES are properly trained in FOOD safety, including FOOD allergy awareness, as it relates to their assigned duties;

(15) FOOD EMPLOYEES and CONDITIONAL EMPLOYEES are informed in a verifiable manner of their responsibility to report in accordance with LAW, to the PERSON IN CHARGE, information about their health and activities as they relate to diseases that are transmissible through FOOD, as specified under WAC 246-215-02205; and

(16) Written procedures and plans, such as a clean-up plan for vomit and diarrhea, where specified by this chapter and as developed by the FOOD ESTABLISHMENT to ensure ACTIVE MANAGERIAL CONTROL, are maintained and implemented as required.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02115, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02115, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02115, WA ADC 246-215-02115

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

> Washington Administrative Code
>> Title 246. Health, Department of
>>> Food Handling
>>>> Chapter 246-215. Food Service (Refs & Annos)
>>>>> Part 2. Management and Personnel
>>>>>> Subpart A. - Supervision

WAC 246-215-02120

246-215-02120. Food worker cards.

Currentness

(1) The permit holder and person in charge of the food establishment shall ensure that all food employees are in compliance with the provisions of chapter 69.06 RCW and chapter 246-217 WAC for obtaining and renewing valid food worker cards.

(2) The permit holder and person in charge of the food establishment shall display or file the original or a copy of the food worker card of each food employee at the employee's place of employment, to be available for inspection by the regulatory authority upon request.

(3) This section does not add to, or remove from, the provisions of chapter 69.06 RCW and chapter 246-217 WAC regarding food worker cards.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02120, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02120, WA ADC 246-215-02120

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.   50

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02200

246-215-02200. Employee health--Reporting policy.

Currentness

The PERMIT HOLDER shall require FOOD EMPLOYEES and CONDITIONAL EMPLOYEES to report to the PERSON IN CHARGE information about their health and activities as they relate to diseases that are transmissible through FOOD. A FOOD EMPLOYEE or CONDITIONAL EMPLOYEE shall report the information in a manner that allows the PERSON IN CHARGE to reduce the RISK of foodborne disease transmission, including providing necessary additional information, such as the date of onset of illness symptoms, diagnosis, or exposure to illness.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02200, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02200, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02200, WA ADC 246-215-02200

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 051

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02205

246-215-02205. Employee health--Reportable history of illness.

Currentness

(1) FOOD EMPLOYEES and CONDITIONAL EMPLOYEES shall report to the PERSON IN CHARGE if they:

(a) Have diarrhea, vomiting, sore throat with fever, or jaundice (yellow skin or eyes), except as specified under WAC 246-215-02235;

(b) Have a lesion containing pus such as a boil or infected wound that is open or draining and is:

(i) On the hands or wrist;

(ii) On exposed portions of the arms; or

(iii) On other parts of the body, unless the lesion is covered by a dry, durable, tight-fitting bandage; or

(c) Have an illness diagnosed by a HEALTH PRACTITIONER as due to an infection with:

(i) Norovirus;

(ii) Hepatitis A virus;

(iii) *Shigella* spp.;

(iv) SHIGA TOXIN-PRODUCING *ESCHERICHIA COLI*;

(v) *Salmonella* Typhi (Typhoid fever); or

(vi) *Salmonella* (nontyphoidal).

(2) In addition to the reporting in subsection (1) of this section, FOOD EMPLOYEES and CONDITIONAL EMPLOYEES in a FOOD ESTABLISHMENT serving a HIGHLY SUSCEPTIBLE POPULATION shall report to the PERSON IN CHARGE if they:

(a) Have consumed or prepared FOOD implicated in a CONFIRMED DISEASE OUTBREAK;

(b) Have attended or worked in a setting where there is a CONFIRMED DISEASE OUTBREAK;

(c) Live in the same household as someone who works at or attended a setting where there is a CONFIRMED DISEASE OUTBREAK; or

(d) Live in the same household as or have consumed FOOD prepared by a PERSON who is infected or ill with:

(i) SHIGA TOXIN-PRODUCING *ESCHERICHIA COLI*;

(ii) *Shigella* spp.;

(iii) *Salmonella* Typhi;

(iv) Hepatitis A virus or jaundice; or

(v) Norovirus.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02205, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02205, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02205, WA ADC 246-215-02205

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02210

246-215-02210. Employee health--Prohibit a conditional employee from becoming a food employee.

Currentness

The PERSON IN CHARGE shall ensure that a CONDITIONAL EMPLOYEE who exhibits or reports symptoms or a diagnosed disease as described in WAC 246-215-02205(1) does not become a FOOD EMPLOYEE until they meet the requirements for the removal of RESTRICTION or EXCLUSION in WAC 246-215-02245 and 246-215-02250. A CONDITIONAL EMPLOYEE that reports a history of exposure to disease in WAC 246-215-02205 (2) (a) through (d) may not become a FOOD EMPLOYEE in a FOOD ESTABLISHMENT serving a HIGHLY SUSCEPTIBLE POPULATION until the requirements in WAC 246-215-02250 are met.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02210, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02210, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02210, WA ADC 246-215-02210

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart B. - Employee Health

WAC 246-215-02215

246-215-02215. Employee health-Notify health officer.

Currentness

The person in charge shall notify the local health officer and the regulatory authority, if not the same agency, when a food employee is:

(1) Jaundiced; or

(2) Diagnosed with an illness due to a pathogen as specified under WAC 246-215-02205 (1)(c) and (2)(a).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02215, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02215, WA ADC 246-215-02215

                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

246-215-02220. Employee health--Conditions of exclusion., WA ADC 246-215-02220

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02220

246-215-02220. Employee health--Conditions of exclusion.

Currentness

Except as provided in WAC 246-215-02235, the PERSON IN CHARGE of a FOOD ESTABLISHMENT shall EXCLUDE any FOOD EMPLOYEE who is known to have:

(1) Diarrhea or vomiting;

(2) Jaundice;

(3) A diagnosed infection (symptomatic or ASYMPTOMATIC) with *Salmonella* Typhi, *Shigella*, SHIGA TOXIN-PRODUCING *ESCHERICHIA COLI*, Norovirus, or hepatitis A virus;

(4) A sore throat with fever and works in a FOOD ESTABLISHMENT serving a HIGHLY SUSCEPTIBLE POPULATION; or

(5) A previous infection with *Salmonella* Typhi within the past three months without having antibiotic therapy.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02220, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02220, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**246-215-02220. Employee health--Conditions of exclusion., WA ADC 246-215-02220**

WAC 246-215-02220, WA ADC 246-215-02220

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart B. - Employee Health

WAC 246-215-02225

246-215-02225. Employee health--Conditions of restriction.

Currentness

The PERSON IN CHARGE of a FOOD ESTABLISHMENT shall RESTRICT any FOOD EMPLOYEE who is known to have:

(1) A lesion that appears inflamed or contains pus and that is not covered;

(2) Exposure to foodborne pathogens as described in WAC 246-215-02205 (2) (a) through (d) and works in a FOOD ESTABLISHMENT serving a HIGHLY SUSCEPTIBLE POPULATION; or

(3) A sore throat with fever.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02225, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02225, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02225, WA ADC 246-215-02225

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02230

246-215-02230. Employee health-Aiding illness investigations.

Currentness

The person in charge of a food establishment and all employees shall cooperate with the regulatory authority and the local health officer investigating:

(1) A foodborne disease outbreak or a suspected foodborne disease outbreak; or

(2) A food employee suspected to be infected with a disease agent that can be transmitted from a food employee through food.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02230, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02230, WA ADC 246-215-02230

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 060

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02235

246-215-02235. Employee health--Other conditions.

Currentness

A FOOD EMPLOYEE with a symptom of gastrointestinal illness, such as vomiting, diarrhea, or jaundice, may work in a FOOD ESTABLISHMENT without special RESTRICTION, provided that the FOOD EMPLOYEE furnishes written medical documentation from a HEALTH PRACTITIONER to the REGULATORY AUTHORITY or PERSON-IN-CHARGE that the symptom is due to a medical condition not transmissible through FOOD, such as Crohn's disease, irritable bowel syndrome, ulcerative colitis, hepatitis C, cancer or pregnancy.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02235, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02235, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02235, WA ADC 246-215-02235

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart B. - Employee Health |

WAC 246-215-02240

246-215-02240. Employee health--Complying with local health officer.

Currentness

The PERSON IN CHARGE of a FOOD ESTABLISHMENT and FOOD EMPLOYEES shall comply with orders issued by the LOCAL HEALTH OFFICER for EXCLUDING EMPLOYEES from a FOOD ESTABLISHMENT or RESTRICTING EMPLOYEE activities due to a diagnosed or suspected infection by a disease agent that can be transmitted from a FOOD EMPLOYEE through FOOD until the LOCAL HEALTH OFFICER rescinds the order.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02240, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02240, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02240, WA ADC 246-215-02240

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart B. - Employee Health

WAC 246-215-02245

246-215-02245. Employee health--Removal of exclusion or restriction based on diagnosis.

Currentness

Except as specified under WAC 246-215-02250, the PERSON IN CHARGE shall obtain approval from the LOCAL HEALTH OFFICER before reinstating a FOOD EMPLOYEE who was RESTRICTED or EXCLUDED based on measures the LOCAL HEALTH OFFICER deems necessary using professional judgment, current standards of practice, and the best available medical and scientific information.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02245, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050. WSR 15-05-014, S 246-215-02245, filed 2/6/15, effective 3/9/15; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02245, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02245, WA ADC 246-215-02245

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 063

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart B. - Employee Health

WAC 246-215-02250

246-215-02250. Employee health--Removal of exclusion or restriction based on symptoms.

Currentness

The PERSON IN CHARGE shall adhere to the following conditions when reinstating a FOOD EMPLOYEE who was RESTRICTED or EXCLUDED due to:

(1) Diarrhea or vomiting: Remove EXCLUSION when ASYMPTOMATIC for more than twenty-four hours;

(2) Jaundice: Remove EXCLUSION with approval of the LOCAL HEALTH OFFICER and REGULATORY AUTHORITY if not the same agency;

(3) Sore throat with fever: Remove EXCLUSION or RESTRICTION when ASYMPTOMATIC; or

(4) Uncovered infected wound or pus-filled boil: Remove RESTRICTION when skin, wound, or pus-filled boil is properly protected by an impermeable cover and, if on the hand or wrist, with a SINGLE-USE glove.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02250, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02250, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02250, WA ADC 246-215-02250

App C 064

246-215-02255. Employee health--Removal of exclusion or..., WA ADC 246-215-02255

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart B. - Employee Health |

WAC 246-215-02255

246-215-02255. Employee health--Removal of exclusion or restriction based on exposure.

Currentness

The PERSON IN CHARGE of a facility that serves a HIGHLY SUSCEPTIBLE POPULATION shall get approval from the LOCAL HEALTH OFFICER and the REGULATORY AUTHORITY before reinstating a FOOD EMPLOYEE who was RESTRICTED due to any condition under WAC 246-215-02205(2).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02255, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02255, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02255, WA ADC 246-215-02255

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**246-215-02300. Hands and arms--Clean condition (FDA..., WA ADC 246-215-02300**

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 2. Management and Personnel
          Subpart C. - Personal Cleanliness

WAC 246-215-02300

246-215-02300. Hands and arms--Clean condition (FDA Food Code 2-301.11).

Currentness

FOOD EMPLOYEES shall keep their hands and exposed portions of their arms clean.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02300, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02300, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02300, WA ADC 246-215-02300

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 066

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart C. - Personal Cleanliness

WAC 246-215-02305

246-215-02305. Hands and arms--Cleaning procedure (FDA Food Code 2-301.12).

Currentness

(1) Except as specified in subsection (4) of this section, FOOD EMPLOYEES shall clean their hands and exposed portions of their arms, including surrogate prosthetic devices for hands or arms for at least 20 seconds, using a cleaning compound in a HANDWASHING SINK that is equipped as specified under WAC 246-215-05210 and Part 6, Subpart C of this chapter.

(2) FOOD EMPLOYEES shall use the following cleaning procedure in the order stated to clean their hands and exposed portions of their arms, including surrogate prosthetic devices for hands and arms:

(a) Rinse under clean, running warm water;

(b) Apply an amount of cleaning compound recommended by the cleaning compound manufacturer;

(c) Rub together vigorously for at least ten to fifteen seconds while:

(i) Paying particular attention to removing soil from underneath the fingernails during the cleaning procedure; and

(ii) Creating friction on the surfaces of the hands and arms or surrogate prosthetic devices for hands and arms, finger tips, and areas between the fingers;

(d) Thoroughly rinse under clean, running warm water; and

(e) Immediately follow the cleaning procedure with thorough drying using a method as specified under WAC 246-215-06310.

(3) To avoid recontaminating their hands or surrogate prosthetic devices, FOOD EMPLOYEES may use disposable paper towels or similar clean barriers when touching surfaces such as manually operated faucet handles on a HANDWASHING SINK or the handle of a restroom door.

(4) If APPROVED and capable of removing the types of soils encountered in the FOOD operations involved, an automatic handwashing facility may be used by FOOD EMPLOYEES to clean their hands or surrogate prosthetic devices.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02305, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02305, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02305, WA ADC 246-215-02305

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart C. - Personal Cleanliness

WAC 246-215-02310

246-215-02310. Hands and arms--When to wash (FDA Food Code 2-301.14).

Currentness

FOOD EMPLOYEES shall clean their hands and exposed portions of their arms as specified under WAC 246-215-02305 immediately before engaging in FOOD preparation including working with exposed FOOD, clean EQUIPMENT and UTENSILS, and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES and:

(1) After touching bare human body parts other than clean hands and clean, exposed portions of arms;

(2) After using the toilet room;

(3) After caring for or handling SERVICE ANIMALS or aquatic animals as specified under WAC 246-215-02415(2);

(4) Except as specified under WAC 246-215-02400(2), after coughing, sneezing, using a handkerchief or disposable tissue, using tobacco, eating, or drinking;

(5) After handling soiled EQUIPMENT or UTENSILS;

(6) During FOOD preparation, as often as necessary to remove soil and contamination and to prevent cross contamination when changing tasks;

(7) When switching between working with raw FOOD and working with READY-TO-EAT FOOD;

(8) Before donning gloves for working with READY-TO-EAT FOOD unless a glove change is not the result of contamination; and

(9) After engaging in other activities that contaminate the hands or gloves.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02310, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02310, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02310, WA ADC 246-215-02310

App C 070

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart C. - Personal Cleanliness

WAC 246-215-02315

246-215-02315. Hands and arms--Where to wash (FDA Food Code 2-301.15).

Currentness

FOOD EMPLOYEES shall clean their hands in a HANDWASHING SINK or APPROVED automatic handwashing facility and may not clean their hands in a sink used for FOOD preparation or WAREWASHING, or in a service sink or a curbed cleaning facility used for the disposal of mop water and similar liquid waste.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02315, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02315, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02315, WA ADC 246-215-02315

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart C. - Personal Cleanliness

WAC 246-215-02320

246-215-02320. Hands and arms--Hand antiseptics (FDA Food Code 2-301.16).

Currentness

(1) A hand antiseptic used as a topical application, hand antiseptic solution used as a hand dip, or a hand antiseptic soap must:

(a) Comply with one of the following:

(i) Be an APPROVED drug that is listed in the FDA publication *Approved Drug Products with Therapeutic Equivalence Evaluations* as an APPROVED drug based on safety and effectiveness; or

(ii) Have active antimicrobial ingredients that are listed in the FDA monograph for OTC Health-Care Antiseptic Drug Products as an antiseptic handwash; and

(b) Consist only of components which the intended use of each complies with one of the following:

(i) A threshold of regulation exemption under 21 C.F.R. 170.39 - Threshold of Regulation for Substances Used in Food Contact Articles; or

(ii) 21 C.F.R. 178 - Indirect Food Additives: Adjuvants, Production Aids, and Sanitizers as regulated for use as a FOOD ADDITIVE with conditions of safe use; or

(iii) A determination of generally recognized as safe (GRAS). Partial listings of substances with FOOD uses that are GRAS may be found in 21 C.F.R. 182 - Substances Generally Recognized as Safe, 21 C.F.R. 184 - Direct Food

App C 072

Substances Affirmed as Generally Recognized as Safe, or 21 C.F.R. 186 - Indirect Food Substances Affirmed as Generally Recognized as Safe for use in contact with FOOD, and in FDA's Inventory of GRAS Notices; or

(iv) A prior sanction listed under 21 C.F.R. 181 - Prior Sanctioned Food ingredients; or

(v) A FOOD Contact Notification that is effective; and

(c) Be applied only to hands that are cleaned as specified under WAC 246-215-02305.

(2) If a hand antiseptic or a hand antiseptic solution used as a hand dip does not meet the requirements specified under subsection (1)(b) of this section, use must be:

(a) Followed by thorough hand rinsing in clean water before hand contact with FOOD or by the use of gloves; or

(b) Limited to situations that involve no direct contact with FOOD by the bare hands.

(3) A hand antiseptic solution used as a hand dip must be maintained clean and at a strength equivalent to at least 100 MG/L chlorine.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02320, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02320, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02320, WA ADC 246-215-02320

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 073

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 2. Management and Personnel
          Subpart C. - Personal Cleanliness

WAC 246-215-02325

246-215-02325. Fingernails--Maintenance (FDA Food Code 2-302.11).

Currentness

(1) FOOD EMPLOYEES shall keep their fingernails trimmed, filed, and maintained so the edges and surfaces are cleanable and not rough.

(2) Unless wearing intact gloves in good repair, a FOOD EMPLOYEE may not wear fingernail polish or artificial fingernails while preparing FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02325, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02325, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02325, WA ADC 246-215-02325

App C 074

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart C. - Personal Cleanliness |

WAC 246-215-02330

246-215-02330. Jewelry--Prohibition (FDA Food Code 2-303.11).

Currentness

Except for a single ring or wedding ring set covered by a glove in good repair, FOOD EMPLOYEES may not wear jewelry including medical information jewelry on their arms or hands while preparing FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02330, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02330, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02330, WA ADC 246-215-02330

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 075

---

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart C. - Personal Cleanliness |

WAC 246-215-02335

246-215-02335. Outer clothing--Clean condition (17 FDA Food Code 2-304.11).

Currentness

FOOD EMPLOYEES shall wear clean outer clothing to prevent contamination of FOOD, EQUIPMENT, UTENSILS, LINENS, and SINGLE-SERVICE and SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02335, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02335, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02335, WA ADC 246-215-02335

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart D. - Hygienic Practices |

WAC 246-215-02400

246-215-02400. Food contamination prevention--Eating, drinking, or using tobacco (FDA Food Code 2-401.11).

*Currentness*

(1) Except as specified in subsection (2) of this section, an EMPLOYEE may only eat, drink, or use any form of tobacco only in designated areas where exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES; or other items needing protection cannot be contaminated.

(2) A FOOD EMPLOYEE may drink from a closed BEVERAGE container if the container is handled to prevent contamination of:

(a) The EMPLOYEE'S hands;

(b) The container; and

(c) Exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02400, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02400, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02400, WA ADC 246-215-02400

App C 077

**246-215-02400. Food contamination prevention--Eating,..., WA ADC 246-215-02400**

| Washington Administrative Code |
| --- |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart D. - Hygienic Practices |

WAC 246-215-02405

246-215-02405. Food contamination prevention--Discharges from the eyes, nose, and mouth (FDA Food Code 2-401.12).

*Currentness*

FOOD EMPLOYEES experiencing persistent sneezing, coughing, or a runny nose that causes discharges from the eyes, nose, or mouth may not work with exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; or unwrapped SINGLE-SERVICE or SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02405, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02405, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02405, WA ADC 246-215-02405

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart D. - Hygienic Practices

WAC 246-215-02406

246-215-02406. Food contamination prevention--Use of bandages, finger cots, or finger stalls (FDA Food Code 2-401.13).

Currentness

If a FOOD EMPLOYEE working with exposed FOOD uses an impermeable cover such as a bandage, finger cot or finger stall located on the wrist, hand or finger, the FOOD EMPLOYEE shall cover the area with a single-use glove.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02406, filed 12/15/20, effective 1/15/21.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02406, WA ADC 246-215-02406

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 2. Management and Personnel

Subpart D. - Hygienic Practices

WAC 246-215-02410

246-215-02410. Hair restraints--Effectiveness (FDA Food Code 2-402.11).

Currentness

(1) Except as provided in subsection (2) of this section, FOOD EMPLOYEES shall wear short hair or use hair restraints such as hats, hair coverings or nets, rubber bands, or hair clips to keep their hair off the face and behind their shoulders, and clothing that covers body hair to protect exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES.

(2) This section does not apply to FOOD EMPLOYEES such as counter staff who only serve BEVERAGES and wrapped or PACKAGED FOODS, hostesses, and wait staff if they present a minimal RISK of contaminating exposed FOOD, clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02410, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02410, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02410, WA ADC 246-215-02410

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 081

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 2. Management and Personnel
Subpart D. - Hygienic Practices

WAC 246-215-02415

246-215-02415. Animals--Handling prohibition (FDA Food Code 2-403.11).

Currentness

(1) Except as specified in subsection (2) of this section, FOOD EMPLOYEES may not care for or handle animals that may be present such as patrol dogs, SERVICE ANIMALS, or pets that are allowed as specified under WAC 246-215-06570 (2)(b) through (e).

(2) FOOD EMPLOYEES with SERVICE ANIMALS may handle or care for their SERVICE ANIMALS and FOOD EMPLOYEES may handle or care for FISH in aquariums or MOLLUSCAN SHELLFISH or crustacean in display tanks if they wash their hands as specified under WAC 246-215-02305 and 246-215-02310(3).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02415, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-02415, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02415, WA ADC 246-215-02415

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 2. Management and Personnel |
| Subpart D. - Hygienic Practices |

WAC 246-215-02500

246-215-02500. Responding to contamination events--Clean-up of vomiting and diarrheal events (FDA Food Code 2-501.11).

Currentness

(1) A FOOD ESTABLISHMENT shall have written procedures for EMPLOYEES to follow when responding to vomiting or diarrheal events that involve the discharge of vomitus or fecal matter onto surfaces in the FOOD ESTABLISHMENT.

(2) The procedures shall address the specific actions EMPLOYEES must take to minimize the spread of contamination and the exposure of EMPLOYEES, consumers, FOOD, and surfaces to vomitus or fecal matter.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-02500, filed 12/15/20, effective 1/15/21.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-02500, WA ADC 246-215-02500

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 083

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart A. - Characteristics

WAC 246-215-03100

246-215-03100. Condition--Safe, unadulterated, and honestly presented (FDA Food Code 3-101.11).

*Currentness*

FOOD must be safe, unADULTERATED, and, as specified under WAC 246-215-03605, honestly presented.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03100, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03100, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03100, WA ADC 246-215-03100

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 84

App C 084

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03200

246-215-03200. Sources--Compliance with food law (FDA Food Code 3-201.11).

Currentness

(1) FOOD must be obtained from sources that comply with LAW.

(2) FOOD prepared in a private home may not be used or offered for human consumption in a FOOD ESTABLISHMENT except as otherwise provided in this chapter.

(3) PACKAGED FOOD must be labeled as specified under LAW, including chapter 69.04 RCW; 21 C.F.R. 101 Food Labeling; 9 C.F.R. 317 Labeling, Marking Devices, and Containers; 9 C.F.R. 381 Subpart N Labeling and Containers; and as specified under WAC 246-215-03265 and 246-215-03270.

(4) FISH, other than those specified under WAC 246-215-03425 (2)(a) through (f), that are intended for consumption in raw or undercooked form and allowed as specified under WAC 246-215-03400(4) may be offered for sale or service if they are obtained from a supplier that freezes the FISH as specified under WAC 246-215-03425; or if they are frozen on the PREMISES as specified under WAC 246-215-03425 and records are retained as specified under WAC 246-215-03430.

(5) WHOLE-MUSCLE, INTACT BEEF steaks that are intended for consumption in an undercooked form without a CONSUMER advisory as specified under WAC 246-215-03400(3) must be:

(a) Obtained from a FOOD PROCESSING PLANT that, upon request by the purchaser, PACKAGES the steaks and labels them to indicate that the steaks meet the definition of WHOLE-MUSCLE, INTACT BEEF; or

(b) Deemed acceptable by the REGULATORY AUTHORITY based on other evidence, such as written buyer specifications or invoices, that indicates that the steaks meet the definition of WHOLE-MUSCLE, INTACT BEEF; and

(c) If individually cut in a FOOD ESTABLISHMENT:

(i) Cut from WHOLE-MUSCLE, INTACT BEEF that is labeled by a FOOD PROCESSING PLANT as specified in (a) of this subsection or identified as specified in (b) of this subsection;

(ii) Prepared so they remain intact; and

(iii) If PACKAGED for undercooking in a FOOD ESTABLISHMENT, labeled as specified in (a) of this subsection or identified as specified in (b) of this subsection.

(6) MEAT and POULTRY that is not a READY-TO-EAT FOOD and is in a PACKAGED form when it is offered for sale or otherwise offered for consumption, must be labeled to include safe handling instructions as specified in LAW, including 9 C.F.R. 317.2(I) and 9 C.F.R. 381.125(b).

(7) EGGS that have not been specifically treated to destroy all viable *Salmonellae* must be labeled to include safe handling instructions as specified in LAW, including 21 C.F.R. 101.17(h).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03200, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03200, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03200, WA ADC 246-215-03200

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart B. - Sources, Specifications, and Original Containers and Records |

WAC 246-215-03205

246-215-03205. Sources--Food in a hermetically sealed container (FDA Food Code 3-201.12).

Currentness

FOOD in a HERMETICALLY SEALED CONTAINER must be obtained from a FOOD PROCESSING PLANT that is regulated by the FOOD regulatory agency that has jurisdiction over the plant.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03205, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03205, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03205, WA ADC 246-215-03205

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 087

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03210

246-215-03210. Sources--Fluid milk and milk products (FDA Food Code 3-201.13).

Currentness

Fluid milk and milk products must be obtained from sources that comply with GRADE A STANDARDS as specified in LAW.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03210, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03210, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03210, WA ADC 246-215-03210

**End of Document**　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03215

246-215-03215. Sources--Fish (FDA Food Code 3-201.14).

Currentness

(1) FISH that are received for sale or service must be:

(a) Commercially and legally caught or harvested; or

(b) APPROVED for sale or service.

(2) MOLLUSCAN SHELLFISH that are recreationally caught may not be received for sale or service.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03215, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03215, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03215, WA ADC 246-215-03215

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03220

246-215-03220. Sources--Molluscan shellfish (FDA Food Code 3-201.15).

Currentness

(1) MOLLUSCAN SHELLFISH must be obtained from sources according to LAW and the requirements specified in the United States Department of Health and Human Services, Public Health Service, FDA, National Shellfish Sanitation Program Guide for the Control of Molluscan Shellfish.

(2) MOLLUSCAN SHELLFISH received in interstate commerce must be from sources that are listed in the Interstate Certified Shellfish Shippers List.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03220, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03220, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03220, WA ADC 246-215-03220

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03225

246-215-03225. Sources--Wild mushrooms.

*Currentness*

(1) The PERMIT HOLDER shall obtain wild harvested mushrooms only from sources in Washington, Oregon, Idaho, California, Montana, and British Columbia where each mushroom is individually identified in the fresh state.

(2) Only the following wild harvested mushroom species may be offered for sale or service in a FOOD ESTABLISHMENT:

(a) Hedgehog (*Hydnum repandum, H. umbilicatum*);

(b) Porcini/King Bolete (*Boletus edulis*);

(c) Lobster (*Hypomyces lactifluorum* growing on *Russula brevipes*);

(d) Pacific Golden Chanterelle (*Cantharellus formosus, C. cascadensis, C. cibarius var roseocanus*);

(e) White Chanterelle (*Cantharellus subalbidus*);

(f) Yellow Foot/Winter Chanterelle (*Craterellus tubaeformis*);

(g) Black Trumpet (*Craterellus cornucopioides*);

(h) Saffron milk cap (*Lactarius deliciosus*);

(i) Coral Hydnum/Bears Tooth (*Hericium coralloides, H. abietis, H. americanum*);

(j) Oyster (*Pleurotus populinus, P. pulmonarius, P. ostreaus*);

(k) Cauliflower mushroom (*Sparassis crispa*);

(l) Oregon Black Truffle (*Leucangium carthusianum*);

(m) Oregon White Truffle (*Tuber gibbosum, T. oregonense*);

(n) Blue Chanterelle (*Polyozellus multiplex*);

(o) *Morchella* species including, but not limited to, Black Morels (*Morchella elata*) and Blonde Morels (*Morchella esculenta*);

(p) Matsutake/Japanese Pine Mushroom (*Tricholoma magnivelare*).

(3) Wild harvested mushrooms prepared for IMMEDIATE SERVICE by a FOOD ESTABLISHMENT must be cooked to 135°F except for those sold for home use from grocery or farmer's markets.

(4) The PERMIT HOLDER shall keep written documentation supplied by the mushroom identifier for any wild harvested mushrooms offered for sale or service on file for ninety days after receipt. The documentation must include:

(a) The common name and Latin binomial name of the mushroom;

(b) The name, original signature, business name, mailing address, email and telephone number of the mushroom identifier;

(c) The province, state, and county or counties where harvested;

(d) The date or dates of harvest;

(e) The date of sale to the FOOD ESTABLISHMENT; and

(f) The amount of product by weight.

(5) This section does not apply to dried or fresh mushrooms that are grown, processed or PACKAGED in a FOOD PROCESSING PLANT regulated by a state or federal FOOD REGULATORY AUTHORITY.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03225, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03225, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03225, WA ADC 246-215-03225

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03230

246-215-03230. Sources--Game animals (FDA Food Code 3-201.17).

Currentness

(1) If GAME ANIMALS are received for sale or service they must be:

(a) Commercially raised for FOOD and:

(i) Raised, slaughtered, and processed under a voluntary inspection program that is conducted by the agency that has animal health jurisdiction; or

(ii) Under a routine inspection program conducted by a regulatory agency other than the agency that has animal health jurisdiction; and

(iii) Raised, slaughtered, and processed according to:

(A) LAWS governing MEAT and POULTRY as determined by the agency that has animal health jurisdiction and the agency that conducts the inspection program; and

(B) Requirements which are developed by the agency that has animal health jurisdiction and the agency that conducts the inspection program with consideration of factors such as the need for antemortem and postmortem examination by an APPROVED veterinarian or veterinarian's designee; or

(b) Under a voluntary inspection program administered by the USDA for GAME ANIMALS such as exotic animals (reindeer, elk, deer, antelope, water buffalo, or bison) that are "inspected and APPROVED" in accordance with 9 C.F.R.

352 Exotic Animals and Horses; Voluntary Inspection or rabbits that are "inspected and certified" in accordance with 9 C.F.R. 354 Voluntary Inspection of Rabbits and Edible Products Thereof.

(2) A GAME ANIMAL may not be received for sale or service if it is a species of wildlife that is listed in 50 C.F.R. 17 Endangered and Threatened Wildlife and Plants.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03230, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03230, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03230, WA ADC 246-215-03230

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works. 95

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03235

246-215-03235. Specifications for receiving--Temperature (FDA Food Code 3-202.11).

Currentness

(1) Except as specified in subsections (2) through (4) of this section, refrigerated, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be at a temperature of 41°F (5°C) or below when received.

(2) If a temperature other than 41°F (5°C) for a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD is specified in LAW governing its distribution, such as LAWS governing milk and MOLLUSCAN SHELLFISH, the FOOD may be received at the specified temperature.

(3) Raw EGGS must be received in refrigerated EQUIPMENT that maintains an ambient air temperature of 45°F (7°C) or less.

(4) Freshly made ASIAN RICE-BASED NOODLES received at ambient temperatures directly from a noodle processing facility licensed by Washington state department of agriculture must be served within four hours of production, immediately reheated in accordance with WAC 246-215-03440(3), or immediately cooled in accordance with WAC 246-215-03515(3).

(5) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is cooked to a temperature and for a time specified under WAC 246-215-03400 through 246-215-03410 and received hot must be at a temperature of 135°F (57°C) or above.

(6) A FOOD that is labeled frozen and shipped frozen by a FOOD PROCESSING PLANT must be received frozen.

(7) Upon receipt, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be free of evidence of previous temperature abuse.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03235, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03235, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03235, WA ADC 246-215-03235

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

246-215-03240. Specifications for receiving--Additives (FDA..., WA ADC 246-215-03240

---

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03240

246-215-03240. Specifications for receiving--Additives (FDA Food Code 3-202.12).

Currentness

FOOD may not contain unAPPROVED ADDITIVES or ADDITIVES that exceed the amounts specified in 21 C.F.R. 170-180 relating to FOOD ADDITIVES, generally recognized as safe or prior sanctioned substances that exceed amounts specified in 21 C.F.R. 181-186, substances that exceed amounts specified in 9 C.F.R., Subpart C, Section 424.21(b) Food Ingredients and Sources of Radiation, or pesticide residues that exceed provisions specified in 40 C.F.R. 180 Tolerances for Pesticides Chemicals in Food, and exceptions.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03240, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03240, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03240, WA ADC 246-215-03240

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03245

246-215-03245. Specifications for receiving--Eggs (FDA Food Code 3-202.13).

Currentness

EGGS must be received clean and sound and may not exceed the RESTRICTED EGG tolerances for United States Consumer Grade B as specified in United States Standards, Grades, and Weight Classes for Shell Eggs, AMS 56.200 et seq., administered by the Agricultural Marketing Service of USDA.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03245, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03245, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03245, WA ADC 246-215-03245

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03250

246-215-03250. Specifications for receiving--Eggs and milk products, pasteurized (FDA Food Code 3-202.14).

Currentness

(1) EGG PRODUCTS must be obtained pasteurized.

(2) Fluid milk, fluid milk products, dry milk, and dry milk products must meet "Grade A pasteurized" milk standards of chapter 15.36 RCW, except "Grade A raw milk" products meeting standards of chapter 15.36 RCW may be sold in retail stores in the original intact container and not used as an ingredient.

(3) Frozen milk products, such as ice cream, must be obtained pasteurized as specified in 21 C.F.R. 135 - Frozen Desserts.

(4) Cheese must be obtained pasteurized unless alternative procedures to pasteurization are specified in the C.F.R., such as 21 C.F.R. 133 - Cheeses and Related Cheese Products, for curing certain cheese varieties.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03250, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03250, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03250, WA ADC 246-215-03250

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 100

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart B. - Sources, Specifications, and Original Containers and Records |

WAC 246-215-03255

246-215-03255. Specifications for receiving--Package integrity (FDA Food Code 3-202.15).

Currentness

FOOD packages must be in good condition and protect the integrity of the contents so that the FOOD is not exposed to adulteration or potential contaminants.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03255, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03255, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03255, WA ADC 246-215-03255

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03260

246-215-03260. Specifications for receiving--Ice (FDA Food Code 3-202.16).

Currentness

Ice used as a FOOD or a cooling medium must be made from DRINKING WATER.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03260, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03260, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03260, WA ADC 246-215-03260

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart B. - Sources, Specifications, and Original Containers and Records |

WAC 246-215-03265

246-215-03265. Specifications for receiving--Shucked shellfish, packaging and identification (FDA Food Code 3-202.17).

Currentness

(1) Raw SHUCKED SHELLFISH must be obtained in nonreturnable packages which bear a legible label that identifies the:

(a) Name, address, and CERTIFICATION NUMBER of the shucker, packer, or repacker of the MOLLUSCAN SHELLFISH; and

(b) The "sell by" or "best if used by" date for packages with a capacity of less than 1.89 L (one-half gallon) or the date shucked for packages with a capacity of 1.89 L (one-half gallon) or more.

(2) A package of raw SHUCKED SHELLFISH that does not bear a label or which bears a label which does not contain all of the information as specified under subsection (1) of this section is subject to a hold order, as allowed by LAW, or seizure and destruction in accordance with 21 C.F.R. Subpart D - Specific Administrative Decisions Regarding Interstate Shipments, Section 1240.60(d) Molluscan Shellfish.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03265, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03265, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03265, WA ADC 246-215-03265

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**246-215-03265. Specifications for receiving--Shucked..., WA ADC 246-215-03265**

App C 104

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03270

246-215-03270. Specifications for receiving--Shellstock identification (FDA Food Code 3-202.18).

Currentness

(1) SHELLSTOCK must be obtained in containers bearing legible source identification tags or labels that are affixed by the harvester or DEALER that depurates, ships, or reships the SHELLSTOCK, as specified in the *National Shellfish Sanitation Program Guide for the Control of Molluscan Shellfish*, and that list:

(a) Except as specified under subsection (3) of this section, on the harvester's tag or label, the following information in the following order:

(i) The harvester's identification number that is assigned by the SHELLFISH CONTROL AUTHORITY;

(ii) The date of harvest;

(iii) The most precise identification of the harvest location or aquaculture site that is practicable based on the system of harvest area designations that is in use by the SHELLFISH CONTROL AUTHORITY and including the abbreviation of the name of the state or country in which the shellfish are harvested;

(iv) The type and quantity of shellfish; and

(v) The following statement in bold, capitalized type: **"THIS TAG IS REQUIRED TO BE ATTACHED UNTIL CONTAINER IS EMPTY OR RETAGGED AND THEREAFTER KEPT ON FILE FOR 90 DAYS."**; and

(b) Except as specified in subsection (4) of this section, on each DEALER'S tag or label, the following information in

the following order:

(i) The DEALER'S name and address, and the CERTIFICATION NUMBER assigned by the SHELLFISH CONTROL AUTHORITY;

(ii) The original shipper's CERTIFICATION NUMBER including the abbreviation of the name of the state or country in which the shellfish are harvested;

(iii) The same information as specified for a harvester's tag under (a)(ii) through (iv) of this subsection; and

(iv) The following statement in bold, capitalized type: **"THIS TAG IS REQUIRED TO BE ATTACHED UNTIL CONTAINER IS EMPTY AND THEREAFTER KEPT ON FILE FOR 90 DAYS."**

(2) A container of SHELLSTOCK that does not bear a tag or label or that bears a tag or label that does not contain all of the information as specified under subsection (1)(a) of this section is subject to a hold order, as allowed by LAW, or seizure and destruction in accordance with 21 C.F.R. Subpart D - Specific Administrative Decisions Regarding Interstate Shipments, Section 1240.60(d).

(3) If a place is provided on the harvester's tag or label for a DEALER'S name, address and CERTIFICATION NUMBER, the DEALER'S information must be listed first.

(4) If the harvester's tag or label is designed to accommodate each DEALER'S identification as specified under subsection (1)(a)(i) and (ii) of this section, individual DEALER tags or labels need not be provided.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03270, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03270, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03270, WA ADC 246-215-03270

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart B. - Sources, Specifications, and Original Containers and Records |

WAC 246-215-03275

246-215-03275. Specifications for receiving--Shellstock, condition (FDA Food Code 3-202.19).

Currentness

When received by a FOOD ESTABLISHMENT, SHELLSTOCK must be reasonably free of mud, dead shellfish, and shellfish with broken shells. Dead shellfish or SHELLSTOCK with badly broken shells must be discarded.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03275, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03275, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03275, WA ADC 246-215-03275

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03280

246-215-03280. Specifications for receiving-- Commercially processed treated juice (FDA Food Code 3-202.110).

Currentness

PrePACKAGED JUICE must:

(1) Be obtained from a processor with a HACCP system as specified in 21 C.F.R. Part 120 Hazard Analysis and Critical Control (HACCP) Systems; and

(2) Be obtained pasteurized or otherwise treated to attain a 5-log reduction of the most resistant microorganism of public health significance as specified in 21 C.F.R. Part 120.24 Process Controls.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03280, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03280, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03280, WA ADC 246-215-03280

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart B. - Sources, Specifications, and Original Containers and Records

WAC 246-215-03285

246-215-03285. Original containers and records--Molluscan shellfish, original container (FDA Food Code 3-203.11).

Currentness

(1) Except as specified in subsections (2) through (5) of this section, MOLLUSCAN SHELLFISH may not be removed from the container in which they are received other than immediately before sale or preparation for service.

(2) For display purposes, SHELLSTOCK may be removed from the container in which they are received, displayed on drained ice, or held in a display container, and a quantity specified by a CONSUMER may be removed from the display or display container and provided to the CONSUMER if:

(a) The source of the SHELLSTOCK on display is identified as specified under WAC 246-215-03270 and recorded as specified under WAC 246-215-03290; and

(b) The SHELLSTOCK are protected from contamination.

(3) SHUCKED SHELLFISH may be removed from the container in which they were received and held in a display container from which individual servings are dispensed upon a CONSUMER'S request if:

(a) The labeling information for the shellfish on display as specified under WAC 246-215-03265 is retained and correlated to the date when, or dates during which, the shellfish are sold or served; and

(b) The shellfish are protected from contamination.

---

(4) SHUCKED SHELLFISH may be removed from the container in which they were received and repacked in CONSUMER self-service containers where allowed by LAW if:

(a) The labeling information for the shellfish is on each CONSUMER self-service container as specified under WAC 246-215-03265 and 246-215-03610 (1) and (2)(a) through (e);

(b) The labeling information as specified under WAC 246-215-03265 is retained and correlated with the date when, or dates during which, the shellfish is sold or served;

(c) The labeling information and dates specified under (b) of this subsection are maintained for ninety days; and

(d) The shellfish are protected from contamination.

(5) SHELLSTOCK may be removed from the container in which they are received and repacked in CONSUMER self-service containers if:

(a) Each self-service container of SHELLSTOCK is plainly marked with the harvest area name, harvest area date, and original shellfish DEALER'S CERTIFICATION NUMBER, including the abbreviation of the name of the state or country in which the shellfish are harvested, or otherwise marked with a code that can be used to link the product with tag or label information as specified under WAC 246-215-03270;

(b) The tag or label information as specified under WAC 246-215-03270 for SHELLSTOCK is retained in a written or electronic log for ninety days that correlates the date when, or dates during which, the SHELLSTOCK sold;

(c) The SHELLSTOCK are protected from contamination; and

(d) The packaging material allows air to get to the shellfish.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03285, filed 12/15/20, effective 1/15/21;
Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03285, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**246-215-03285. Original containers and records--Molluscan..., WA ADC 246-215-03285**

WAC 246-215-03285, WA ADC 246-215-03285

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart B. - Sources, Specifications, and Original Containers and Records |

WAC 246-215-03290

246-215-03290. Original containers and records--Shellstock, maintaining identification (FDA Food Code 3-203.12).

Currentness

(1) Except as specified under subsection (3)(b) of this section, SHELLSTOCK tags or labels must remain attached to the container in which the SHELLSTOCK are received until the container is empty.

(2) The date range when the first and last SHELLSTOCK from the container is sold or served must be recorded on the tag or label.

(3) The identity of the source of SHELLSTOCK that are sold or served must be maintained by retaining SHELLSTOCK tags or labels for ninety calendar days from the last date that is recorded on the tag or label, as specified under subsection (2) of this section by:

(a) Using an APPROVED record keeping system that keeps the tags or labels in chronological order correlated to the date that is recorded on the tag or label, as specified under subsection (2) of this section; and

(b) If SHELLSTOCK are removed from its tagged or labeled container:

(i) Preserving source identification by using a recordkeeping system as specified under (a) of this subsection; and

(ii) Ensuring that SHELLSTOCK from one tagged or labeled container are not COMMINGLED WITH SHELLSTOCK from another container with different CERTIFICATION NUMBERS; different harvest dates; or different growing areas as identified on the tag or label before being ordered by the CONSUMER.

App C 112

**246-215-03290. Original containers and records--Shellstock,..., WA ADC 246-215-03290**

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03290, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03290, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03290, WA ADC 246-215-03290

**End of Document**  <span>© 2025 Thomson Reuters. No claim to original U.S. Government Works.</span>

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03300

246-215-03300. Preventing contamination by employees--Preventing contamination from hands (FDA Food Code 3-301.11).

*Currentness*

(1) FOOD EMPLOYEES shall wash their hands as specified under WAC 246-215-02305.

(2) Except when washing fruits and vegetables as specified under WAC 246-215-03318 or as specified in subsection (4) of this section, FOOD EMPLOYEES may not contact exposed, READY-TO-EAT FOOD with their bare hands and shall use suitable UTENSILS such as deli tissue, spatulas, tongs, SINGLE-USE gloves, or dispensing EQUIPMENT.

(3) FOOD EMPLOYEES shall minimize bare hand and arm contact with exposed FOOD that is not in a READY-TO-EAT form.

(4) Subsection (2) of this section does not apply to a FOOD EMPLOYEE that contacts exposed, READY-TO-EAT FOOD with bare hands when the READY-TO-EAT FOOD is to be cooked in the FOOD ESTABLISHMENT to heat all parts of the FOOD to a temperature of at least 145°F (63°C) prior to service.

(5) FOOD EMPLOYEES not serving a HIGHLY SUSCEPTIBLE POPULATION may contact exposed, READY-TO-EAT FOOD with their bare hands if:

(a) The PERMIT HOLDER obtains prior approval from the REGULATORY AUTHORITY;

(b) Written procedures are maintained in the FOOD ESTABLISHMENT and made available to the REGULATORY AUTHORITY upon request that include:

Diagrams and other information showing that handwashing facilities, installed, located, equipped, and maintained as specified under WAC 246-215-05230, 246-215-05255, 246-215-05265, 246-215-05270, 246-215-06305, 246-215-06310, and 246-215-06320, are in an easily accessible location and in close proximity to the work station where bare hand contact procedure is conducted.

(c) A written EMPLOYEE health policy that details how the FOOD ESTABLISHMENT complies with Part 2, Subpart B of this chapter including:

(i) Documentation that FOOD EMPLOYEES and CONDITIONAL EMPLOYEES acknowledge that they are informed to report information about their health and activities as they relate to gastrointestinal symptoms and diseases that are transmittable through FOOD as specified in WAC 246-215-02200, including a written log of reportable EMPLOYEE illnesses maintained for ninety days;

(ii) Documentation that FOOD EMPLOYEES and CONDITIONAL EMPLOYEES acknowledge their responsibilities as specified in WAC 246-215-02205 and 246-215-02240; and

(iii) Documentation that the PERSON IN CHARGE acknowledges the responsibilities as specified in WAC 246-215-02215, 246-215-02220, 246-215-02255, and 246-215-08520.

(d) Documentation that FOOD EMPLOYEES acknowledge they have received training at least annually in:

(i) The RISKS of contacting READY-TO-EAT FOODS with bare hands;

(ii) Proper handwashing as specified under WAC 246-215-02305;

(iii) When to wash their hands as specified under WAC 246-215-02310;

(iv) Where to wash their hands as specified under WAC 246-215-02315;

(v) Proper fingernail maintenance as specified under WAC 246-215-02325;

(vi) Prohibition of jewelry as specified under WAC 246-215-02330; and

(vii) Good hygienic practices as specified under WAC 246-215-02400 and 246-215-02405.

(e) Documentation that hands are washed before FOOD preparation and as necessary to prevent cross contamination by FOOD EMPLOYEES as specified under WAC 246-215-02300, 246-215-02305, 246-215-02310, and 246-215-02315 during all hours of operation when READY-TO-EAT FOODS are prepared;

(f) Documentation that FOOD EMPLOYEES contacting READY-TO-EAT FOOD with bare hands use two or more of the following control measures to provide additional safeguards to hazards associated with bare hand contact:

(i) Double handwashing;

(ii) Nail brushes;

(iii) A hand antiseptic after handwashing as specified under WAC 246-215-02320;

(iv) Incentive programs provided by the FOOD ESTABLISHMENT that assist or encourage FOOD EMPLOYEES not to work when they are ill; or

(v) Other APPROVED control measures; and

(g) Documentation that corrective action is taken when (a) through (f) of this subsection are not followed;

(h) If the allowance for a FOOD ESTABLISHMENT to contact READY-TO-EAT FOOD with bare hands is voluntarily or involuntarily discontinued, suspended or revoked, a FOOD ESTABLISHMENT may not reinstate bare hand contact with READY-TO-EAT FOOD without written approval from the REGULATORY AUTHORITY.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03300, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03300, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03300, WA ADC 246-215-03300

**246-215-03300. Preventing contamination by..., WA ADC 246-215-03300**

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 117

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| C - Preventing Contamination After Receiving |

WAC 246-215-03303

246-215-03303. Preventing contamination by employees--Preventing contamination when tasting (FDA Food Code 3-301.12).

*Currentness*

A FOOD EMPLOYEE may not use a UTENSIL more than once to taste FOOD that is to be sold or served.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03303, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03303, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03303, WA ADC 246-215-03303

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03306

246-215-03306. Preventing food and ingredient contamination--Packaged and unpackaged food--Separation, packaging, and segregation (FDA Food Code 3-302.11).

Currentness

(1) A FOOD must be protected from cross contamination by:

(a) Except as specified in (a) (iv) of this subsection, separating raw animal FOODS during storage, preparation, holding, and display from:

(i) Raw READY-TO-EAT FOOD including other raw animal FOOD such as FISH for sushi or MOLLUSCAN SHELLFISH, or other raw READY-TO-EAT FOOD such as fruits and vegetables;

(ii) Cooked READY-TO-EAT FOOD;

(iii) Fruits and vegetables before they are washed; and

(iv) Frozen, commercially processed and PACKAGED raw animal FOOD may be stored and displayed with or above frozen, commercially processed and PACKAGED, READY-TO-EAT FOOD.

(b) Except when combined as ingredients, separating types of raw animal FOODS from each other such as beef, FISH, lamb, pork, and POULTRY during storage, preparation, holding and display by:

(i) Using separate EQUIPMENT for each type; or

(ii) Arranging each type of FOOD in EQUIPMENT so that cross contamination of one type with another is prevented; and

(iii) Preparing each type of FOOD at different times or in separate areas.

(c) Cleaning EQUIPMENT and UTENSILS as specified under WAC 246-215-04605(1) and SANITIZING as specified under WAC 246-215-04710;

(d) Except as specified under WAC 246-215-03520 and subsection (2) of this section, storing the FOOD in packages, covered containers, or wrappings;

(e) Cleaning hermetically sealed containers of FOOD of visible soil before opening;

(f) Protecting FOOD containers that are received PACKAGED together in a case or overwrap from cuts when the case or overwrap is opened;

(g) Storing damaged, spoiled, or recalled FOOD being held in the FOOD ESTABLISHMENT as specified under WAC 246-215-06415; and

(h) Separating fruits and vegetables, before they are washed as specified under WAC 246-215-03318 from READY-TO-EAT FOOD.

(2) Subsection (1)(d) of this section does not apply to:

(a) Whole, uncut, raw fruits and vegetables and nuts in the shell, that require peeling or hulling before consumption;

(b) PRIMAL CUTS, quarters, or sides of raw MEAT or slab bacon that are hung on clean, SANITIZED hooks or placed on clean, SANITIZED racks;

(c) Whole, uncut, processed MEATS such as country hams, and smoked or cured sausages that are placed on clean, SANITIZED racks;

(d) FOOD being cooled as specified under WAC 246-215-03520; or

(e) SHELLSTOCK.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03306, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03306, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03306, WA ADC 246-215-03306

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 121

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03309

246-215-03309. Preventing food and ingredient contamination--Food storage containers, identified with common name of food (FDA Food Code 3-302.12).

Currentness

Except for containers holding FOOD that can be readily and unmistakably recognized such as dry pasta, working containers holding FOOD or FOOD ingredients that are removed from their original packages for use in the FOOD ESTABLISHMENT, such as cooking oils, flour, herbs, potato flakes, salt, spices, and sugar must be identified with the common name of the FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03309, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03309, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03309, WA ADC 246-215-03309

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03312

246-215-03312. Preventing food and ingredient contamination--Pasteurized eggs, substitute for raw eggs for certain recipes (FDA Food Code 3-302.13).

Currentness

Pasteurized EGGS or EGG PRODUCTS must be substituted for raw EGGS in the preparation of FOODS such as Caesar salad, hollandaise or Bearnaise sauce, mayonnaise, meringue, eggnog, ice cream, and EGG-fortified BEVERAGES that are not:

(1) Cooked as specified under WAC 246-215-03400 (1)(a) or (b); or

(2) Included in WAC 246-215-03400(4).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03312, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03312, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03312, WA ADC 246-215-03312

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 123

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03315

246-215-03315. Preventing food and ingredient contamination--Protection from unapproved additives (FDA Food Code 3-302.14).

Currentness

(1) FOOD must be protected from contamination that might result from the addition of, as specified under WAC 246-215-03240:

(a) Unsafe or unAPPROVED FOOD ADDITIVES or COLOR ADDITIVES; and

(b) Unsafe or unAPPROVED levels of APPROVED FOOD ADDITIVES and COLOR ADDITIVES.

(2) A FOOD EMPLOYEE may not:

(a) Apply sulfiting agents to fresh fruits and vegetables intended for raw consumption or to a FOOD considered to be a good source of vitamin $B_1$; or

(b) Except for grapes, serve or sell FOOD specified under (a) of this subsection that is treated with sulfiting agents before receipt by the FOOD ESTABLISHMENT.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03315, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03315, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be

more current. Please consult the credit on each document for more information.

WAC 246-215-03315, WA ADC 246-215-03315

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03318

246-215-03318. Preventing food and ingredient contamination--Washing fruits and vegetables (FDA Food Code 3-302.15).

Currentness

(1) Except as specified in subsection (2) of this section, and except for whole, raw fruits and vegetables that are intended for washing by the CONSUMER before consumption, raw fruits and vegetables not in a READY-TO-EAT form must be thoroughly rinsed under running water to remove soil and other contaminants after any soaking and before being cut, combined with other ingredients, cooked, served, or offered for human consumption in READY-TO-EAT form.

(2) Fruits and vegetables may be washed by using chemicals as specified under WAC 246-215-07225.

(3) Devices used for on-site generation of chemicals meeting the requirements specified in 21 C.F.R. 173.315, Chemicals Used in the Washing or to Assist in the Peeling of Fruits and Vegetables, for the washing of raw, whole fruits and vegetables must be used in accordance with the manufacturer's instructions.

(4) For the purposes of this section, raw vegetables include fresh herbs and sprouts.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03318, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03318, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03318, WA ADC 246-215-03318

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 126

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          C - Preventing Contamination After Receiving

WAC 246-215-03321

246-215-03321. Preventing food and ingredient contamination-- Combining of raw eggs in advance prohibited.

Currentness

Except EGGS that are used in batters or mixed immediately before cooking, mixing four or more raw EGGS, EGG whites, or EGG yokes is prohibited.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03321, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03321, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03321, WA ADC 246-215-03321

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
> Title 246. Health, Department of
>> Food Handling
>>> Chapter 246-215. Food Service (Refs & Annos)
>>>> Part 3. Food
>>>>> C - Preventing Contamination After Receiving

WAC 246-215-03324

246-215-03324. Preventing contamination from ice used as a coolant--Ice used as exterior coolant, prohibited as ingredient (FDA Food Code 3-303.11).

Currentness

After use as a medium for cooling the exterior surfaces of FOOD such as melons or FISH, PACKAGED FOOD such as canned BEVERAGES, or cooling coils and tubes of EQUIPMENT, ice may not be used as a FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03324, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03324, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03324, WA ADC 246-215-03324

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          C - Preventing Contamination After Receiving

WAC 246-215-03327

246-215-03327. Preventing contamination from ice used as a coolant--Storage or display of food in contact with water or ice (FDA Food Code 3-303.12).

Currentness

(1) PACKAGED FOOD may not be stored in direct contact with ice or water if the FOOD is subject to the entry of water because of the nature of its packaging, wrapping, or container or its positioning in the ice or water.

(2) Except as specified in subsections (3) and (4) of this section, unPACKAGED FOOD may not be stored in direct contact with undrained ice.

(3) Whole, raw fruits or vegetables; cut, raw vegetables such as celery or carrot sticks or cut potatoes; and tofu may be immersed in ice or water.

(4) Raw POULTRY and raw FISH that are received immersed in ice in shipping containers may remain in that condition while in storage awaiting preparation, display, service, or sale.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03327, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03327, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03327, WA ADC 246-215-03327

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03330

246-215-03330. Preventing contamination from equipment, utensils, and linens--Food contact with equipment and utensils (FDA Food Code 3-304.11).

Currentness

FOOD must only contact surfaces of:

(1) EQUIPMENT and UTENSILS that are cleaned as specified under WAC 246-215-04600 through 246-215-04650 and SANITIZED as specified under WAC 246-215-04700 through 246-215-04710;

(2) SINGLE-SERVICE ARTICLES and SINGLE-USE ARTICLES; or

(3) LINENS, such as cloth napkins, as specified under WAC 246-215-03336 that are laundered as specified under Part 4, Subpart B of this chapter.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03330, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03330, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03330, WA ADC 246-215-03330

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03333

246-215-03333. Preventing contamination from equipment, utensils, and linens--In-use utensils, between-use storage (FDA Food Code 3-304.12).

Currentness

During pauses in FOOD preparation or dispensing, FOOD preparation and dispensing UTENSILS must be stored:

(1) Except as specified under subsection (2) of this section, in the FOOD with their handles above the top of FOOD and the container;

(2) In FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD with their handles above the top of the FOOD within containers or EQUIPMENT that can be closed, such as bins of sugar, flour, or cinnamon;

(3) On a clean portion of the FOOD preparation table or cooking EQUIPMENT only if the in-use UTENSIL and the FOOD-CONTACT SURFACE of the FOOD preparation table or cooking EQUIPMENT are cleaned and SANITIZED at a frequency specified under WAC 246-215-04605 and 246-215-04705;

(4) In running water of sufficient velocity to flush particulates to the drain, if used with moist FOOD such as ice cream or mashed potatoes;

(5) In a clean, protected location if the UTENSILS, such as ice scoops, are used only with a FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD; or

(6) In a container of water maintained at a temperature of 135°F (57°C) or greater or 41°F (5°C) or less and the container is cleaned at a frequency specified under WAC 246-215-04605 (4)(g).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03333, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03333, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03333, WA ADC 246-215-03333

*End of Document* © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03336

246-215-03336. Preventing contamination from equipment, utensils, and linens--Linens and napkins, use limitation (FDA Food Code 3-304.13).

*Currentness*

LINENS, such as cloth napkins, may not be used in contact with FOOD unless they are used to line a container for the service of FOODS and the LINENS and napkins are replaced each time the container is refilled for a new CONSUMER.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03336, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03336, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03336, WA ADC 246-215-03336

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03339

246-215-03339. Preventing contamination from equipment, utensils, and linens--Wiping cloths, use limitation (FDA Food Code 3-304.14).

Currentness

(1) Cloths that are in use for wiping FOOD spills from TABLEWARE and carry out containers that occur as FOOD is being served must be:

   (a) Maintained dry; and

   (b) Used for no other purpose.

(2) Cloths in-use for wiping counters and other EQUIPMENT surfaces must be:

   (a) Held between uses in a chemical SANITIZER solution at a concentration specified under WAC 246-215-04565; and

   (b) Laundered daily as specified under WAC 246-215-04805(4).

(3) Cloths in-use for wiping surfaces in contact with raw animal FOODS must be kept separate from cloths used for other purposes.

(4) Dry wiping cloths and the chemical SANITIZING solutions specified in subsection (2)(a) of this section in which wet wiping cloths are held between uses must be free of FOOD debris and visible soil.

(5) Containers of chemical SANITIZING solutions specified in subsection (2)(a) of this section in which wet wiping cloths are held between uses must be stored and used in a manner that prevents contamination of FOOD, EQUIPMENT, UTENSILS, LINENS, SINGLE-SERVICE or SINGLE-USE ARTICLES.

(6) SINGLE-USE disposable SANITIZER wipes must be used in accordance with EPA-APPROVED manufacturer's label use instructions.

(7) Dry disposable towels used in conjunction with a spray bottle of chemical SANITIZER solution at a concentration specified under WAC 246-215-04565 must be discarded after each use.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03339, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03339, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03339, WA ADC 246-215-03339

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03342

246-215-03342. Preventing contamination from equipment, utensils, and linens--Gloves, use limitation (FDA Food Code 3-304.15).

Currentness

(1) If used, SINGLE-USE gloves must be used for only one task such as working with READY-TO-EAT FOOD or with raw animal FOOD, used for no other purpose, and discarded when damaged or soiled, or when interruptions occur in the operation.

(2) Except as specified in subsection (3) of this section, slash-resistant gloves that are used to protect the hands during operations requiring cutting must be used in direct contact only with FOOD that is subsequently cooked as specified under Part 3, Subpart D of this chapter such as frozen FOOD or a PRIMAL CUT of MEAT.

(3) Slash-resistant gloves may be used with READY-TO-EAT FOOD that will not be subsequently cooked if the slash-resistant gloves have a SMOOTH, durable, and nonabsorbent outer surface; or if the slash-resistant gloves are covered with a SMOOTH, durable, nonabsorbent glove, or a SINGLE-USE glove.

(4) Cloth gloves may not be used in direct contact with FOOD unless the FOOD is subsequently cooked as required under Part 3, Subpart D such as frozen FOOD or a PRIMAL CUT of MEAT.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03342, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03342, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03342, WA ADC 246-215-03342

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**246-215-03342. Preventing contamination from equipment,..., WA ADC 246-215-03342**

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03345

246-215-03345. Preventing contamination from equipment, utensils, and linens--Using clean tableware for second portions and refills (FDA Food Code 3-304.16).

Currentness

(1) Except for refilling a CONSUMER'S drinking cup or container without contact between the pouring UTENSIL and the lip-contact area of the drinking cup or container, FOOD EMPLOYEES may not use TABLEWARE, including SINGLE-SERVICE ARTICLES, soiled by the CONSUMER, to provide second portions or refills.

(2) Except as specified in subsection (3) of this section, self-service CONSUMERS may not be allowed to use soiled TABLEWARE, including SINGLE-SERVICE ARTICLES, to obtain additional FOOD from the display and serving EQUIPMENT.

(3) Drinking cups and containers may be reused by self-service CONSUMERS if refilling is a contamination-free process as specified under WAC 246-215-04230 (1), (2), and (4).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03345, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03345, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03345, WA ADC 246-215-03345

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03348

246-215-03348. Preventing contamination from equipment, utensils, and linens--Refilling returnables (FDA Food Code 3-304.17).

*Currentness*

(1) Except as specified in subsections (2) through (6) of this section, empty containers returned to a FOOD ESTABLISHMENT for cleaning and refilling with FOOD shall be cleaned and refilled in a regulated FOOD PROCESSING PLANT.

(2) A take-home FOOD container returned to a FOOD ESTABLISHMENT may be refilled at a FOOD ESTABLISHMENT with FOOD if the FOOD container is:

(a) Designed and constructed for reuse and in accordance with the requirements specified in Part 4, Subparts A and B of this chapter;

(b) One that was initially provided by the FOOD ESTABLISHMENT to the CONSUMER, either empty or filled with FOOD by the FOOD ESTABLISHMENT, for the purpose of being returned for reuse;

(c) Returned to the FOOD ESTABLISHMENT by the CONSUMER after use;

(d) Subject to the following steps before being refilled with FOOD:

(i) Cleaned as specified under Part 4, Subpart F of this chapter;

(ii) Sanitized as specified under Part 4, Subpart G of this chapter; and

(iii) Visually inspected by a FOOD EMPLOYEE to verify that the container, as returned, meets the requirements specified under Part 4, Subparts A and B of this chapter.

(3) A take-home FOOD container returned to a FOOD ESTABLISHMENT may be refilled at a FOOD ESTABLISHMENT with a BEVERAGE if:

(a) The BEVERAGE is not a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD;

(b) The design of the container and of the rinsing EQUIPMENT and the nature of the BEVERAGE, when considered together, allow effective cleaning at home or in the FOOD ESTABLISHMENT;

(c) Facilities for rinsing before refilling returned containers with fresh, hot water that is under pressure and not recirculated are provided as part of the dispensing system;

(d) The CONSUMER-owned container returned to the FOOD ESTABLISHMENT for refilling is refilled for sale or service only to the same CONSUMER; and

(e) The container is refilled by:

(i) An EMPLOYEE of the FOOD ESTABLISHMENT; or

(ii) The owner of the container if the BEVERAGE system includes a contamination-free transfer process as specified under WAC 246-215-04230 (1), (2), and (4) that cannot be bypassed by the container owner.

(4) Consumer-owned multiuse BEVERAGE containers may be refilled, including TIME/TEMPERATURE CONTROL FOR SAFETY FOOD beverages, by EMPLOYEES or the CONSUMER if refilling is a contamination-free process as specified in WAC 246-215-04230 (1), (2), and (4).

(5) CONSUMER-owned containers that are not FOOD-specific may be filled at a water VENDING MACHINE or system.

(6) A FOOD ESTABLISHMENT under an APPROVED plan may allow CONSUMERS to:

(a) Refill a visibly clean CONSUMER-owned container with nonREADY-TO-EAT FOOD, bulk FOOD, and PACKAGED FOOD;

(b) Refill a visibly clean CONSUMER-owned container with READY-TO-EAT FOOD when dispensed from equipment, such as a gravity-flow unit, meeting standards for liquid FOOD and ice in WAC 246-215-04230; and

(c) Request a FOOD EMPLOYEE of the FOOD ESTABLISHMENT to refill a visually clean CONSUMER-owned container with FOOD using a contamination-free process.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03348, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03348, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03348, WA ADC 246-215-03348

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03351

246-215-03351. Preventing contamination from the premises--Food storage (FDA Food Code 3-305.11).

Currentness

(1) Except as specified in subsections (2) and (3) of this section, FOOD must be protected from contamination by storing the FOOD:

(a) In a clean, dry location;

(b) Where it is not exposed to splash, dust, or other contamination; and

(c) At least six inches (15 cm) above the floor.

(2) FOOD in packages and working containers may be stored less than six inches (15 cm) above the floor on case lot handling EQUIPMENT as specified under WAC 246-215-04268.

(3) Pressurized BEVERAGE containers, cased FOOD in waterproof containers such as bottles or cans, and milk containers in plastic crates may be stored on a floor that is clean and not exposed to floor moisture.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03351, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03351, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**246-215-03351. Preventing contamination from the..., WA ADC 246-215-03351**

WAC 246-215-03351, WA ADC 246-215-03351

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03354

246-215-03354. Preventing contamination from the premises--Food storage, prohibited areas (FDA Food Code 3-305.12).

Currentness

FOOD may not be stored:

(1) In locker rooms;

(2) In toilet rooms;

(3) In dressing rooms;

(4) In garbage rooms;

(5) In mechanical rooms;

(6) Under sewer lines that are not shielded to intercept potential drips;

(7) Under leaking water lines, including leaking automatic fire sprinkler heads, or under lines on which water has condensed;

(8) Under open stairwells; or

(9) Under other sources of contamination.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03354, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03354, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03354, WA ADC 246-215-03354

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03357

246-215-03357. Preventing contamination from the premises--Vended time/temperature control for safety food, original container (FDA Food Code 3-305.13).

*Currentness*

TIME/TEMPERATURE CONTROL FOR SAFETY FOOD dispensed through a VENDING MACHINE must be in the package in which it was placed at the FOOD ESTABLISHMENT or FOOD PROCESSING PLANT at which it was prepared.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03357, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03357, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03357, WA ADC 246-215-03357

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 146

App C 146

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03360

246-215-03360. Preventing contamination from the premises--Food preparation (FDA Food Code 3-305.14).

Currentness

During preparation, unPACKAGED FOOD must be protected from environmental sources of contamination.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03360, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03360, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03360, WA ADC 246-215-03360

**End of Document** | © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03363

246-215-03363. Preventing contamination by consumers--Food display (FDA Food Code 3-306.11).

Currentness

(1) Except for nuts in the shell and whole raw fruits and vegetables that are intended for hulling, peeling, or washing by the CONSUMER before consumption, FOOD on display must be protected from contamination by the use of packaging; counter, service line, or salad bar FOOD guards; display cases; or other effective means;

(2) If PACKAGED for CONSUMER self-service, hard crusted breads such as baguettes must be completely covered and may be open at one end.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03363, filed 12/15/20, effective 1/15/21;
Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03363, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03363, WA ADC 246-215-03363

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03366

246-215-03366. Preventing contamination by consumers--Condiments, protection (FDA Food Code 3-306.12).

Currentness

(1) Condiments must be protected from contamination by being kept in dispensers that are designed to provide protection, protected food displays with the proper UTENSILS, original containers designed for dispensing, or individual packages or portions.

(2) Condiments at a VENDING MACHINE LOCATION must be in individual packages or provided in dispensers that are filled at an APPROVED location, such as the FOOD ESTABLISHMENT that provides FOOD to the VENDING MACHINE LOCATION, a FOOD PROCESSING PLANT that is regulated by the agency that has jurisdiction over the operation, or a properly equipped facility that is located on the site of the VENDING MACHINE LOCATION.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03366, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03366, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03366, WA ADC 246-215-03366

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

C - Preventing Contamination After Receiving

WAC 246-215-03369

246-215-03369. Preventing contamination by consumers--Consumer self-service operations (FDA Food Code 3-306.13).

*Currentness*

(1) Raw unPACKAGED animal FOOD such as beef, lamb, pork, POULTRY, and FISH may not be offered for CONSUMER self-service. This subsection does not apply to:

(a) CONSUMER self-service of READY-TO-EAT FOODS at buffets or salad bars that serve FOODS such as sushi or raw shellfish;

(b) Ready-to-cook individual portions for cooking and immediate consumption on the PREMISES such as CONSUMER-cooked MEATS or CONSUMER-selected ingredients for Mongolian barbecue; or

(c) Raw, frozen shrimp, lobster, finfish, calamari, or adductor muscle of scallop; or frozen, breaded seafood.

(2) CONSUMER self-service operations for READY-TO-EAT FOODS must be provided with suitable utensils or effective dispensing methods that protect the FOOD from contamination.

(3) CONSUMER self-service operations such as buffets and salad bars must be monitored by FOOD EMPLOYEES trained in safe operating procedures.

(4) Containers for display and service of READY-TO-EAT, unPACKAGED, bulk FOODS for CONSUMER self-service must have a CONSUMER access point at least 30 inches above floor level, except for APPROVED containers of liquids.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03369, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03369, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03369, WA ADC 246-215-03369

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03372

246-215-03372. Preventing contamination by consumers--Returned food and reservice of food (FDA Food Code 3-306.14).

*Currentness*

(1) Except as specified in subsections (2) and (3) of this section, after being served or sold and in the possession of a CONSUMER, FOOD that is unused or returned by the CONSUMER may not be offered as FOOD for human consumption.

(2) Except as specified under WAC 246-215-03800(7), a container of FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD may be reserved from one CONSUMER to another if:

(a) The FOOD is dispensed so that it is protected from contamination and the container is closed between uses, such as a narrow-neck bottle containing catsup, steak sauce, or wine; or

(b) The FOOD, such as crackers, salt, or pepper, is in an unopened original package and is maintained in sound condition.

(3) Surplus previously served FOOD, such as whole uncut produce that complies with WAC 246-215-03318, unopened bags of sliced fruit, unopened containers of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that are immediately placed in a temperature-controlled environment, and other APPROVED FOODS may be re-served to a PERSON or DONATED FOOD DISTRIBUTING ORGANIZATION under an APPROVED plan.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03372, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03372, filed 1/17/13, effective 5/1/13.

**246-215-03372. Preventing contamination by..., WA ADC 246-215-03372**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03372, WA ADC 246-215-03372

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
C - Preventing Contamination After Receiving

WAC 246-215-03375

246-215-03375. Preventing contamination by consumers--Miscellaneous sources of contamination (FDA Food Code 3-307.11).

Currentness

FOOD must be protected from contamination that might result from a factor or source not specified under Part 3, Subparts A through F in this chapter.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03375, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03375, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03375, WA ADC 246-215-03375

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 154

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03400

246-215-03400. Cooking--Raw animal foods (FDA Food Code 3-401.11).

Currentness

(1) Except as specified under subsections (2), (3), and (4) of this section, raw animal FOODS such as EGGS, FISH, MEAT, POULTRY, and FOODS containing these raw animal FOODS, must be cooked to heat all parts of the FOOD to a temperature and for a time that complies with one of the following methods based on the FOOD that is being cooked:

(a) 145°F (63°C) or above for fifteen seconds for:

(i) Raw EGGS that are broken and prepared in response to a CONSUMER'S order and for IMMEDIATE SERVICE; and

(ii) Except as specified under (b) and (c) of this subsection and subsections (2) and (3) of this section, FISH and INTACT MEAT, including GAME ANIMALS commercially raised for FOOD as specified under WAC 246-215-03230 (1)(a) and GAME ANIMALS under a voluntary inspection program as specified under WAC 246-215-03230 (1)(b);

(b) 158°F (70°C) or above for <1 second (instantaneous) or a temperature and time combination specified in Table 3-1, provided that FOOD EMPLOYEES monitor both temperature and time under an APPROVED plan, for RATITES; MECHANICALLY TENDERIZED and INJECTED MEATS; and COMMINUTED FISH, MEAT, GAME ANIMALS commercially raised for FOOD as specified under WAC 246-215-03230 (1)(a), GAME ANIMALS under a voluntary inspection program as specified under WAC 246-215-03230 (1)(a); and raw EGGS that are not prepared as specified under (a)(i) of this subsection; or

**Table 3-1: Minimum Temperatures**

| Temperature °F (°C) | Time |
|---|---|
| 145 (63) | 3 minutes |

| | |
|---|---|
| 150 (66) | 1 minute |
| 155 (68) | 17 seconds |

(c) 165°F (74°C) or above for <1 second (instantaneous) for POULTRY; BALUTS; wild GAME ANIMALS; stuffed FISH; stuffed MEAT; stuffed pasta; stuffed POULTRY; stuffed RATITES; or stuffing containing FISH, MEAT, POULTRY, or RATITES.

(2) Whole MEAT roasts, including beef, corned beef, lamb, pork, and cured pork roasts such as ham, must be cooked:

(a) As specified in the following Table 3-2, to heat all parts of the FOOD to a temperature and for the holding time that corresponds to that temperature:

### Table 3-2: Temperature and Holding Time

| Temperature °F (°C) | Time in Minutes[1] | Temperature °F (°C) | Time in Seconds[1] |
|---|---|---|---|
| 130 (54.4) | 112 | 147 (63.9) | 134 |
| 131 (55.0) | 89 | 149 (65.0) | 85 |
| 133 (56.1) | 56 | 151 (66.1) | 54 |
| 135 (57.2) | 36 | 153 (67.2) | 34 |
| 136 (57.8) | 28 | 155 (68.3) | 22 |
| 138 (58.9) | 18 | 157 (69.4) | 14 |
| 140 (60.0) | 12 | 158 (70.0) | 0 |
| 142 (61.1) | 8 | | |

App C 156

| 144 (62.2) | 5 |
|---|---|
| 145 (62.8) | 4 |

[1] Holding time may include postoven heat rise.

(b) In an oven that is preheated to the temperature specified for the roast's weight in Table 3-3 and that is held at that temperature; and

**Table 3-3: Oven Temperature Based on Weight**

| Oven Type | Less Than 10 lbs. (4.5 kg) | 10 lbs. (4.5 kg) or More |
|---|---|---|
| Still Dry | 350°F (177°C) or more | 250°F (121°C) or more |
| Convection | 325°F (163°C) or more | 250°F (121°C) or more |
| High Humidity[1] | 250°F (121°C) or less | 250°F (121°C) or less |

[1] Relative humidity greater than 90 percent for at least one hour as measured in the cooking chamber or exit of the oven; or in a moisture-impermeable bag that provides 100 percent humidity.

(3) A raw or undercooked WHOLE-MUSCLE, INTACT BEEF steak may be served or offered for sale in a READY-TO-EAT form if:

(a) The FOOD ESTABLISHMENT serves a population that is not a HIGHLY SUSCEPTIBLE POPULATION;

(b) The steak is labeled to indicate that it meets the definition of WHOLE-MUSCLE, INTACT BEEF as specified under WAC 246-215-03200(5); and

(c) The steak is cooked on both the top and the bottom to a surface temperature of 145°F (63°C) or above and a cooked color change is achieved on all external surfaces.

(4) A raw animal FOOD such as raw EGG, raw FISH, raw-marinated FISH, raw MOLLUSCAN SHELLFISH, or steak tartare; or a partially cooked FOOD such as lightly cooked FISH, soft cooked EGGS, or rare MEAT other than WHOLE-MUSCLE, INTACT BEEF steaks as specified in subsection (3) of this section, may be served or offered for sale in a READY-TO-EAT form if:

(a) As specified under WAC 246-215-03800 (3)(a) and (b), the FOOD ESTABLISHMENT serves a population that is not a HIGHLY SUSCEPTIBLE POPULATION;

(b) The FOOD is not offered from a children's menu or children's section of any menu; and

(c) The CONSUMER is informed as specified under WAC 246-215-03620 that to ensure its safety, the FOOD should be cooked as specified under subsection (1) or (2) of this section; or

(d) The REGULATORY AUTHORITY grants a VARIANCE from subsection (1) or (2) of this section as specified under WAC 246-215-08110 based on a HACCP PLAN that:

(i) Is submitted by the PERMIT HOLDER and APPROVED as specified under WAC 246-215-08115;

(ii) Documents scientific data or other information showing that a lesser time and temperature regimen results in safe FOOD; and

(iii) Verifies that EQUIPMENT and procedures for FOOD preparation and training of FOOD EMPLOYEES at the FOOD ESTABLISHMENT meet the conditions of the VARIANCE.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03400, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03400, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**Footnotes**

**246-215-03400. Cooking--Raw animal foods (FDA Food..., WA ADC 246-215-03400**

1        [1] Holding time may include postoven heat rise.

1        [1] Relative humidity greater than 90 percent for at least one hour as measured in the cooking chamber or exit of the oven; or in a moisture-impermeable bag that provides 100 percent humidity.

WAC 246-215-03400, WA ADC 246-215-03400

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03405

246-215-03405. Cooking--Microwave cooking (FDA Food Code 3-401.12).

Currentness

Raw animal FOODS cooked in a microwave oven must be:

(1) Rotated or stirred throughout or midway during cooking to compensate for uneven distribution of heat;

(2) Covered to retain surface moisture;

(3) Heated to a temperature of at least 165°F (74°C) in all parts of the FOOD; and

(4) Allowed to stand covered for two minutes after cooking to obtain temperature equilibrium.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03405, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03405, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03405, WA ADC 246-215-03405

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**246-215-03410. Cooking--Plant food cooking for hot holding..., WA ADC 246-215-03410**

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03410

246-215-03410. Cooking--Plant food cooking for hot holding (FDA Food Code 3-401.13).

*Currentness*

Plant FOODS that are cooked for hot holding must be cooked to a temperature of at least 135°F (57°C).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03410, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03410, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03410, WA ADC 246-215-03410

**End of Document** · © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 161

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03415

246-215-03415. Cooking--Noncontinuous cooking of raw animal foods (FDA Food Code 3-401.14).

Currentness

Raw animal FOODS that are cooked using a NONCONTINUOUS cooking process must be:

(1) Subject to an initial heating process that is no longer than sixty minutes in duration;

(2) Immediately after initial heating, cooled according to the time and temperature parameters specified for cooked, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD under WAC 246-215-03515(1);

(3) After cooling, held frozen or cold, as specified for TIME/TEMPERATURE CONTROL FOR SAFETY FOOD under WAC 246-215-03525 (1)(b);

(4) Prior to sale or service, cooked using a process that heats all parts of the FOOD to a temperature and time specified under WAC 246-215-03400 (1) through (3);

(5) Cooled according to the time and temperature parameters specified for cooked TIME/TEMPERATURE CONTROL FOR SAFETY FOOD under WAC 246-215-03515(1) if not either hot held as specified under WAC 246-215-03525(1), served immediately, or held using time as a public health control as specified under WAC 246-215-03530 after complete cooking;

(6) Prepared and stored according to written procedures that:

(a) Have obtained prior approval from the REGULATORY AUTHORITY;

(b) Are maintained in the FOOD ESTABLISHMENT and are available to the REGULATORY AUTHORITY upon request;

(c) Describe how the requirements specified under subsections (1) through (5) of this section are to be monitored, documented and the corrective actions to be taken if the requirements are not met;

(d) Describe how the FOODS, after initial heating, but prior to complete cooking, are to be marked or otherwise identified as FOODS that must be cooked as specified under subsection (4) of this section prior to being offered for sale or service; and

(e) Describe how the FOODS, after initial heating but prior to cooking as specified under subsection (4) of this section, are to be separated from READY-TO-EAT FOODS as specified under WAC 246-215-03306(1).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03415, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03415, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03415, WA ADC 246-215-03415

App C 163

**246-215-03420. Cooking-Unattended cooking and hot holding., WA ADC 246-215-03420**

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03420

246-215-03420. Cooking-Unattended cooking and hot holding.

Currentness

Unattended cooking and unattended hot holding are prohibited without continuous temperature monitoring under an approved plan.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03420, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03420, WA ADC 246-215-03420

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03425

246-215-03425. Freezing--Parasite destruction (FDA Food Code 3-402.11).

Currentness

(1) Except as specified in subsection (2) of this section, before service or sale in READY-TO-EAT form, raw, raw marinated, partially cooked, or marinated partially cooked FISH must be:

(a) Frozen and stored at a temperature of -4°F (-20°C) or below for a minimum of one hundred sixty-eight hours (seven days) in a freezer; or

(b) Frozen at -31°F (-35°C) or below until solid and stored at -31°F (-35°C) or below for a minimum of fifteen hours; or

(c) Frozen at -31°F (-35°C) or below until solid and stored at -4°F (-20°C) or below for a minimum of twenty-four hours.

(2) Subsection (1) of this section does not apply to:

(a) MOLLUSCAN SHELLFISH;

(b) A scallop product consisting only of the shucked adductor muscle;

(c) Tuna of the species *Thunnus alalunga*, *Thunnus albacares* (Yellowfin tuna), *Thunnus atlanticus*, *Thunnus maccoyii* (Bluefin tuna, Southern), *Thunnus obesus* (Bigeye tuna), or *Thunnus thynnus* (Bluefin tuna, Northern); or

(d) Aquacultured FISH, such as salmon, that:

(i) If raised in open water, are raised in net pens; or

(ii) Are raised in land-based operations such as ponds or tanks; and

(iii) Are fed formulated feed, such as pellets, that contains no live parasites infective to the aquacultured FISH.

(e) FISH EGGS that have been removed from the skein and rinsed.

(f) Fresh unfrozen finfish, such as halibut or salmon, which are partially cooked only upon consumer request and served in accordance with WAC 246-215-03620 (2) and (3)(d).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03425, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03425, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03425, WA ADC 246-215-03425

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart D. - Destruction of Organisms of Public Health Concern |

WAC 246-215-03430

246-215-03430. Freezing--Records, creation and retention (FDA Food Code 3-402.12).

*Currentness*

(1) Except as specified under WAC 246-215-03425(2) and subsection (2) of this section, if raw, raw marinated, partially cooked, or marinated partially cooked FISH are served or sold in READY-TO-EAT form, the PERSON IN CHARGE shall record the freezing temperature and time to which the FISH are subjected and shall retain the records of the FOOD ESTABLISHMENT for ninety calendar days beyond the time of service or sale of the FISH.

(2) If the FISH are frozen by a supplier, a written agreement or statement from the supplier stipulating that the FISH supplied are frozen to a temperature and for a time specified under WAC 246-215-03425 may substitute for the records specified under subsection (1) of this section.

(3) If raw, raw marinated, partially cooked, or marinated partially cooked FISH are served or sold in READY-TO-EAT form, and the FISH are raised and fed as specified under WAC 246-215-03425 (2)(c), a written agreement or statement from the supplier or aquaculturist stipulating that the FISH were raised and fed as specified under WAC 246-215-03425 (2) (c), must be obtained by the PERSON IN CHARGE and retained in the records of the FOOD ESTABLISHMENT for ninety calendar days beyond the time of service or sale of the FISH.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03430, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03430, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03430, WA ADC 246-215-03430

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**246-215-03435. Reheating--Preparation for immediate..., WA ADC 246-215-03435**

---

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart D. - Destruction of Organisms of Public Health Concern |

WAC 246-215-03435

246-215-03435. Reheating--Preparation for immediate service (FDA Food Code 3-403.10).

Currentness

Cooked and refrigerated FOOD that is prepared for IMMEDIATE SERVICE in response to an individual CONSUMER order, such as a roast beef sandwich au jus, may be served at any temperature.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03435, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03435, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03435, WA ADC 246-215-03435

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03440

246-215-03440. Reheating--Reheating for hot holding (FDA Food Code 3-403.11).

Currentness

(1) Except as specified under subsections (2), (3), and (5) of this section, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is cooked, cooled, and reheated for hot holding must be reheated so that all parts of the FOOD reach a temperature of at least 165°F (74°C) for fifteen seconds.

(2) Except as specified under subsection (3) of this section, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD reheated in a microwave oven for hot holding must be reheated so that all parts of the FOOD reach a temperature of at least 165°F (74°C) and the FOOD is rotated or stirred, covered, and allowed to stand covered for two minutes after reheating.

(3) READY-TO-EAT TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that has been commercially processed and PACKAGED in a FOOD PROCESSING PLANT that is inspected by the FOOD REGULATORY AUTHORITY that has jurisdiction over the plant, must be heated to a temperature of at least 135°F (57°C) for hot holding.

(4) Reheating for hot holding as specified under subsections (1) through (3) of this section must be done rapidly and the time the FOOD is between 41°F (5°C) and the temperature specified under subsections (1) through (3) of this section may not exceed two hours.

(5) Remaining unsliced portions of MEAT roasts that are cooked as specified under WAC 246-215-03400(2) may be reheated for hot holding using the oven parameters and minimum time and temperature conditions specified under WAC 246-215-03400(2).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03440, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03440, filed 1/17/13, effective 5/1/13.

**246-215-03440. Reheating--Reheating for hot holding (FDA..., WA ADC 246-215-03440**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03440, WA ADC 246-215-03440

**End of Document**                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
    Title 246. Health, Department of
        Food Handling
            Chapter 246-215. Food Service (Refs & Annos)
                Part 3. Food
                    Subpart D. - Destruction of Organisms of Public Health Concern

WAC 246-215-03445

246-215-03445. Other methods--Treating juice (FDA Food Code 3-404.11).

Currentness

JUICE PACKAGED in a FOOD ESTABLISHMENT must be:

(1) Treated under a HACCP PLAN as specified under WAC 246-215-08215 to attain a 5-log reduction, which is equal to a 99.999% reduction, of the most resistant microorganism of public health significance; or

(2) Labeled, if not treated to yield a 5-log reduction of the most resistant microorganism of public health significance:

(a) As specified under WAC 246-215-03610; and

(b) As specified in 21 C.F.R. 101.17(g) Food Labeling, Warning, Notice, and Safe Handling Statements, JUICES that have not been specifically processed to prevent, reduce, or eliminate the presence of pathogens with the following, "*Warning: This product has not been pasteurized and, therefore, may contain harmful bacteria that can cause serious illness in children, the elderly, and persons with weakened immune systems*."

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03445, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03445, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03445, WA ADC 246-215-03445

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 172

---

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03500

246-215-03500. Temperature and time control--Frozen food (FDA Food Code 3-501.11).

Currentness

Stored frozen FOODS must be maintained frozen.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03500, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03500, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03500, WA ADC 246-215-03500

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03505

246-215-03505. Temperature and time control-- Time/temperature control for safety food, slacking (FDA Food Code 3-501.12).

Currentness

Frozen TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is slacked to moderate the temperature must be held:

(1) Under refrigeration that maintains the FOOD temperature at 41°F (5°C) for less; or

(2) At any temperature if the FOOD remains frozen.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03505, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03505, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03505, WA ADC 246-215-03505

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03510

246-215-03510. Temperature and time control--Thawing (FDA Food Code 3-501.13).

Currentness

Except as specified in subsection (4) of this section, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be thawed:

(1) Under refrigeration that maintains the FOOD temperature at 41°F (5°C) or less; or

(2) Completely submerged under running water:

(a) At a water temperature of 70°F (21°C) or below;

(b) With sufficient water velocity to agitate and float off loose particles in an overflow; and

(c) For a period of time that does not allow thawed portions of READY-TO-EAT FOOD to rise above 41°F (5°C); or

(d) For a period of time that does not allow thawed portions of raw animal FOOD requiring cooking as specified under WAC 246-215-03400 (1) or (2) to be above 41°F (5°C) for more than four hours including:

(i) The time the FOOD is exposed to the running water and the time needed for preparation for cooking; or

(ii) The time it takes under refrigeration to lower the FOOD temperature to 41°F (5°C);

(3) As part of a cooking process if the FOOD that is frozen is:

(a) Cooked as specified under WAC 246-215-03400 (1) or (2) or 246-215-03405; or

(b) Thawed in a microwave oven and immediately transferred to conventional cooking EQUIPMENT, with no interruption in the process; or

(4) Using any procedure if a portion of frozen, READY-TO-EAT FOOD is thawed and prepared for IMMEDIATE SERVICE in response to an individual customer's order; or

(5) REDUCED OXYGEN PACKAGED FISH that bears a label indicating that it is to be kept frozen until time of use must be removed from the reduced oxygen environment:

(a) Prior to thawing under refrigeration as specified in subsection (1) of this section; or

(b) Prior to, or immediately upon completion of, thawing using procedures specified in subsection (2) of this section.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03510, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03510, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03510, WA ADC 246-215-03510

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03515

246-215-03515. Temperature and time control--Cooling (FDA Food Code 3-501.14).

*Currentness*

(1) Cooked TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be cooled, uncovered, protected from contamination, in EQUIPMENT that maintains an ambient air temperature of 41°F (5°C) or less and:

(a) In a shallow, uncovered, layer of two inches or less; or

(b) Up to four inches thick in one dimension and not touching other pieces of FOOD for INTACT MEAT.

(2) As an alternative to the cooling provisions of subsection (1) of this section, cooling methods identified in WAC 246-215-03520 that meet the following time and temperature criteria are allowed:

(a) Within two hours from 135°F (57°C) to 70°F (21°C); and

(b) Within a total of six hours from 135°F (57°C) to 41°F (5°C) or less.

(3) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be cooled within four hours to 41°F (5°C) or less if prepared from ingredients at ambient temperature, such as reconstituted FOODS and canned tuna.

(4) Except as specified in subsection (5) of this section, a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD received in compliance with LAWS allowing a temperature above 41°F (5°C) during shipment from the supplier as specified under WAC 246-215-03235(2), must be cooled within four hours to 41°F (5°C) or less.

(5) Raw EGGS must be received as specified under WAC 246-215-03235(3) and immediately placed in refrigerated EQUIPMENT that maintains an ambient air temperature of 45°F (7°C) or less.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03515, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03515, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03515, WA ADC 246-215-03515

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03520

246-215-03520. Temperature and time control--Cooling methods (FDA Food Code 3-501.15).

Currentness

(1) Cooling must be accomplished in accordance with the time and temperature requirements specified under WAC 246-215-03515 by using one or more of the following methods based on the type of FOOD being cooled:

(a) Placing the FOOD in shallow pans;

(b) Separating the FOOD into smaller or thinner portions;

(c) Using rapid cooling EQUIPMENT;

(d) Stirring the FOOD in a container placed in an ice water bath;

(e) Using containers that facilitate heat transfer;

(f) Adding ice as an ingredient; or

(g) Other effective methods.

(2) When placed in cooling or cold holding EQUIPMENT, FOOD containers in which FOOD is being cooled must be:

(a) Arranged in the EQUIPMENT to provide maximum heat transfer through the container walls; and

(b) Uncovered and protected from overhead contamination as specified under WAC 246-215-03351 (1), during the cooling period to facilitate heat transfer from the surface of the FOOD; or

(c) Loosely covered if using the cooling methods in WAC 246-215-03515(2).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03520, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03520, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03520, WA ADC 246-215-03520

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03525

246-215-03525. Temperature and time control-- Time/temperature control for safety food, hot and cold holding (FDA Food Code 3-501.16).

*Currentness*

(1) Except during active preparation for up to two hours, cooking, or cooling or when time is used as the public health control as specified under WAC 246-215-03530, and except as specified in subsections (2) and (3) of this section, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be maintained:

(a) At 135°F (57°C) or above, except that roasts cooked to a temperature and for a time specified under WAC 246-215-03400(2) or reheated as specified under WAC 246-215-03440 may be held at a temperature of 130°F (54°C) or above; or

(b) At 41°F (5°C) or less.

(2) EGGS that have not been treated to destroy all viable *Salmonellae* must be stored in refrigerated EQUIPMENT that maintains an ambient air temperature of 45°F (7°C) or less.

(3) TIME/TEMPERATURE CONTROL FOR SAFETY FOOD in a homogenous liquid form may be maintained outside the temperature control requirements, as specified under subsection (1) of this section, while contained within specially designed EQUIPMENT that complies with the design and construction requirements as specified under WAC 246-215-04230(5).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03525, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03525, filed 1/17/13, effective 5/1/13.

**246-215-03525. Temperature and time control--..., WA ADC 246-215-03525**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03525, WA ADC 246-215-03525

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03526

246-215-03526. Temperature and time control--Ready-to-eat, time/temperature control for safety food, date marking (FDA Food Code 3-501.17).

Currentness

(1) Except when PACKAGING FOOD using a REDUCED OXYGEN PACKAGING method as specified under WAC 246-215-03540, and except as specified in subsections (5) and (6) of this section, refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD prepared and held in a FOOD ESTABLISHMENT for more than twenty-four hours must be clearly marked to indicate the date or day by which the FOOD must be consumed on the PREMISES, sold, or discarded when held at a temperature of 41°F (5°C) or less for a maximum of seven days. The day of preparation must be counted as day one.

(2) Except as specified in subsections (5) through (7) of this section, refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD prepared and PACKAGED by a FOOD PROCESSING PLANT must be clearly marked, at the time the original container is opened in a FOOD ESTABLISHMENT and if the FOOD is held for more than twenty-four hours, to indicate the date or day by which the FOOD must be consumed on the PREMISES, sold, or discarded, based on the temperature and time requirements specified in subsection (1) of this section and:

(a) The day the original container is opened in the FOOD ESTABLISHMENT is counted as day one; and

(b) The day or date marked by the FOOD ESTABLISHMENT may not exceed a manufacturer's use-by date if the manufacturer determined the use-by date based on FOOD safety.

(3) A refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD ingredient or a portion of a refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is combined with additional ingredients or portions of FOOD must retain the date marking of the earliest-prepared or first-prepared ingredient.

(4) A date marking system that meets the criteria stated in subsections (1) and (2) of this section may include:

(a) Using a method APPROVED by the REGULATORY AUTHORITY for refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is frequently rewrapped, such as lunchmeat or a roast, or for which date marking is impractical, such as soft-serve mix or milk in a dispensing machine;

(b) Marking the date or day of preparation, with a procedure to discard the FOOD on or before the last date or day by which the FOOD must be consumed on the premises, sold, or discarded as specified under subsection (1) of this section;

(c) Marking the date or day the original container is opened in a FOOD ESTABLISHMENT, with a procedure to discard the FOOD on or before the last date or day by which the FOOD must be consumed on the premises, sold, or discarded as specified under subsection (2) of this section; or

(d) Using calendar dates, days of the week, color-coded marks, or other effective marking methods, provided that the marking system is disclosed to the REGULATORY AUTHORITY upon request.

(5) Subsections (1) and (2) of this section do not apply to individual meal portions served or rePACKAGED for sale from a bulk container upon a consumer's request.

(6) Subsections (1) and (2) of this section do not apply to SHELLSTOCK.

(7) Subsection (2) of this section does not apply to the following FOODS prepared and PACKAGED by a FOOD PROCESSING PLANT inspected by a REGULATORY AUTHORITY:

(a) Deli salads, such as ham salad, seafood salad, chicken salad, egg salad, pasta salad, potato salad, and macaroni salad, manufactured in accordance with 21 C.F.R. 110 Current Good Manufacturing Practice in Manufacturing, Packing, or Holding Human Food;

(b) Hard cheeses containing not more than thirty-nine percent moisture as defined in 21 C.F.R. 133 Cheeses and Related Cheese Products, such as cheddar, gruyere, parmesan and reggiano, and romano;

(c) Semi-soft cheeses containing more than thirty-nine percent moisture, but not more than fifty percent moisture, as defined in 21 C.F.R. 133 Cheeses and Related Cheese Products, such as blue, edam, gorgonzola, gouda, and monterey jack;

(d) Cultured dairy products as defined in 21 C.F.R. 131 Milk and Cream, such as yogurt, sour cream, and buttermilk;

(e) Preserved FISH products, such as pickled herring and dried or salted cod, and other acidified FISH products defined in 21 C.F.R. 114 Acidified Foods;

(f) Shelf stable, dry fermented sausages, such as pepperoni and genoa; and

(g) Shelf stable salt-cured products such as prosciutto and parma ham.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03526, filed 12/15/20, effective 1/15/21.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03526, WA ADC 246-215-03526

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03527

246-215-03527. Temperature and time control--Ready-to-eat, time/temperature control for safety food, disposition (FDA Food Code 3-501.18).

*Currentness*

(1) A FOOD specified in WAC 246-215-03526 (1) and (2) must be discarded unless it is cooked or reheated to 165°F (74°C) prior to service, if it:

(a) Exceeds the temperature and time requirements specified in WAC 246-215-03526, except time that the product is frozen;

(b) Is in a container or PACKAGE that does not bear a date or day and no ability to validate the opening date; or

(c) Is inappropriately marked with a date or day that exceeds a temperature and time combination as specified in WAC 246-215-03526(1).

(2) Refrigerated, READY-TO-EAT, TIME/TEMPERATURE CONTROL FOR SAFETY FOOD prepared in a FOOD ESTABLISHMENT and dispensed through a VENDING MACHINE with an automatic shutoff control must be discarded if it exceeds a temperature and time requirement as specified in WAC 246-215-03526(1).

(3) A FOOD ESTABLISHMENT that serves a HIGHLY SUSCEPTIBLE POPULATION may not reheat improperly marked FOOD as specified under subsection (1) of this section.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03527, filed 12/15/20, effective 1/15/21.

**246-215-03527. Temperature and time control--Ready-to-eat,..., WA ADC 246-215-03527**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03527, WA ADC 246-215-03527

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 187

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 3. Food
          Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03530

246-215-03530. Temperature and time control--Time as a public health control (FDA Food Code 3-501.19).

Currentness

(1) Except as specified under subsection (3) of this section, if time without temperature control is used as the public health control for a working supply of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD before cooking, or for READY-TO-EAT TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is displayed or held for sale or service for immediate consumption:

(a) Written procedures must be prepared in advance, maintained in the ESTABLISHMENT and made available to the REGULATORY AUTHORITY upon request that specify:

(i) Methods of compliance with subsections (2)(a) through (c) of this section; and

(ii) Methods of compliance with WAC 246-215-03515 for FOOD that is prepared, cooked, and refrigerated before time is used as a public health control.

(2) If time without temperature control is used as the public health control up to a maximum of four hours:

(a) The FOOD must have an internal temperature of 41°F (5°C) or less when removed from cold holding temperature control, or 135°F (57°C) or greater when removed from hot holding temperature control;

(b) The FOOD may have an initial temperature of 70°F (21°C) or less if;

(i) It is a READY-TO-EAT fruit or vegetable that upon cutting is rendered a TIME/TEMPERATURE CONTROL

App C 188

FOR SAFETY FOOD; or

(ii) It is a READY-TO-EAT hermetically sealed FOOD that upon opening is rendered a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD;

(iii) The FOOD temperature does not exceed 70°F (21°C) within a maximum time period of four hours from the time it was rendered a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD; and

(iv) The FOOD is marked or otherwise identified to indicate the time that is four hours past the point in time when the FOOD is rendered a TIME/TEMPERATURE CONTROL FOR SAFETY FOOD.

(c) The FOOD must be marked or otherwise identified to indicate the time that is four hours past the point in time when the FOOD is removed from temperature control;

(d) The FOOD must be cooked and served, served at any temperature if READY-TO-EAT or discarded, within four hours from the point in time when the FOOD is removed from temperature control; and

(e) The FOOD in unmarked containers or packages, or marked to exceed a four-hour limit, must be discarded.

(3) A FOOD ESTABLISHMENT that serves a HIGHLY SUSCEPTIBLE POPULATION may not use time as specified under subsections (1) and (2) of this section as the public health control for raw EGGS.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03530, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03530, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03530, WA ADC 246-215-03530

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03535

246-215-03535. Specialized processing methods--Variance requirement (FDA Food Code 3-502.11).

Currentness

A FOOD ESTABLISHMENT shall obtain a VARIANCE from the REGULATORY AUTHORITY as specified under WAC 246-215-08110 and 246-215-08115 before:

(1) Smoking FOOD as a method of FOOD preservation rather than as a method of flavor enhancement;

(2) Curing FOOD;

(3) Using FOOD ADDITIVES or adding components such as vinegar:

(a) As a method of FOOD preservation rather than as a method of flavor enhancement; or

(b) To render a FOOD so that it is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD;

(4) Packaging TIME/TEMPERATURE CONTROL FOR SAFETY FOOD using a REDUCED OXYGEN PACKAGING method except where the growth of and toxin formation by *Clostridium botulinum* and the growth of *Listeria monocytogenes* are controlled as specified under WAC 246-215-03540;

(5) Operating a MOLLUSCAN SHELLFISH life-support system display tank used to store or display shellfish that are offered for human consumption;

(6) Custom processing animals that are for personal use as FOOD and not for sale or service in a FOOD ESTABLISHMENT;

(7) Preparing FOOD by another method that is determined by the REGULATORY AUTHORITY to require a VARIANCE; or

(8) Sprouting seeds or beans.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03535, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03535, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03535, WA ADC 246-215-03535

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart E. - Limitation of Growth of Organisms of Public Health Concern

WAC 246-215-03540

246-215-03540. Specialized processing methods--Reduced oxygen packaging without a variance, criteria (FDA Food Code 3-502.12).

*Currentness*

(1) Except for a FOOD ESTABLISHMENT that obtains a VARIANCE as specified under WAC 246-215-03535, a FOOD ESTABLISHMENT that packages TIME/TEMPERATURE CONTROL FOR SAFETY FOOD using a REDUCED OXYGEN PACKAGING method shall control the growth and toxin formation of *Clostridium botulinum* and the growth of *Listeria monocytogenes*.

(2) Except as specified under subsection (6) of this section, a FOOD ESTABLISHMENT that packages TIME/TEMPERATURE CONTROL FOR SAFETY FOOD using a REDUCED OXYGEN PACKAGING method shall have a HACCP PLAN that contains the information specified under WAC 246-215-08215 (3) and (4) and that:

(a) Identifies the FOOD to be PACKAGED;

(b) Except as specified under subsections (3) through (5) of this section, requires that the PACKAGED FOOD must be maintained at 41°F (5°C) or less and meet at least one of the following requirements:

(i) Has an $A_w$ of 0.91 or less;

(ii) Has a pH of 4.6 or less;

(iii) Is a MEAT or POULTRY product cured at a FOOD PROCESSING PLANT regulated by the USDA using substances specified in 9 C.F.R. 424.21, Use of Food Ingredients and Sources of Radiation, and is received in an intact package; or

(iv) Is a FOOD with a high level of competing organisms such as raw MEAT, raw POULTRY, or raw vegetables;

(c) Describes how the PACKAGE must be prominently and conspicuously labeled on the principal display panel in bold type on a contrasting background, with instructions to:

(i) Maintain the FOOD at 41°F (5°C) or below; and

(ii) Discard the FOOD if within thirty calendar days of its packaging it is not served for on-PREMISES consumption, or consumed if served or sold for off-PREMISES consumption;

(d) Limits the refrigerated shelf life to no more than thirty calendar days from packaging to consumption, except the time the product is maintained frozen, or the original manufacturer's "sell by" or "use by" date, whichever occurs first:

(e) Includes operational procedures that:

(i) Prohibit contacting READY-TO-EAT FOOD with bare hands as specified under WAC 246-215-03300(2);

(ii) Identify a designated work area and the method by which:

(A) Physical barriers or methods of separation of raw FOODS and READY-TO-EAT FOODS minimize cross contamination; and

(B) Access to the processing EQUIPMENT is limited to responsible trained personnel familiar with the potential hazards of the operation; and

(iii) Delineate cleaning and sanitization procedures for FOOD-CONTACT SURFACES; and

(f) Describes the training program that ensures that the individual responsible for the REDUCED OXYGEN PACKAGING operation understands the:

(i) Concepts required for a safe operation;

(ii) EQUIPMENT and facilities;

(iii) Procedures specified under (e) of this subsection and WAC 246-215-08215 (3) and (4); and

(g) Is provided to the REGULATORY AUTHORITY prior to implementation as specified under WAC 246-215-08210(2).

(3) Except for FISH that is frozen before, during, and after PACKAGING, a FOOD ESTABLISHMENT may not PACKAGE FISH using a REDUCED OXYGEN PACKAGING method.

(4) Except as specified under subsections (3) and (6) of this section, a FOOD ESTABLISHMENT that PACKAGES FOOD using a cook-chill or sous vide process shall:

(a) Provide to the REGULATORY AUTHORITY prior to implementation a HACCP PLAN that contains the information as specified under WAC 246-215-08215 (3) and (4);

(b) Ensure the FOOD is:

(i) Prepared and consumed on the PREMISES, or prepared and consumed off the PREMISES but within the same business entity with no distribution or sale of the PACKAGED product to another business entity or the CONSUMER;

(ii) Cooked to heat all parts of the FOOD to a temperature and for a time as specified under WAC 246-215-03400 (1) through (3);

(iii) Protected from contamination before and after cooking as specified under Part 3, Subparts C and D of this chapter;

(iv) Placed in a package with an oxygen barrier and SEALED before cooking, or placed in a package and SEALED immediately after cooking and before reaching a temperature below 135°F (57°C);

---

(v) Cooled to 41°F (5°C) in the SEALED package or bag as specified under WAC 246-215-03515 and:

(A) Cooled to 34°F (1°C) within forty-eight hours of reaching 41°F (5°C) and held at that temperature until consumed or discarded within thirty days after the date of PACKAGING;

(B) Held at 41°F (5°C) or less for no more than seven days, at which time the FOOD must be consumed or discarded; or

(C) Held frozen with no shelf life restriction while frozen until consumed or used.

(vi) Held in a refrigeration unit that is equipped with an electronic system that continuously monitors time and temperature and is visually examined for proper operation twice daily;

(vii) If transported off-site to a satellite location of the same business entity, equipped with verifiable electronic monitoring devices to ensure that times and temperatures are monitored during transportation; and

(viii) Labeled with the product name and the date PACKAGED; and

(c) Maintain the records required to confirm that cooling and cold holding refrigeration time/temperature parameters are required as part of the HACCP PLAN and:

(i) Make such records available to the REGULATORY AUTHORITY upon request; and

(ii) Hold such records for at least six months after the last date the product was sold or served.

(d) Implement written operational procedures as specified under subsection (2)(e) of this section and a training program as specified under subsection (2)(f) of this section.

(5) Except as specified under subsection (6) of this section, a FOOD ESTABLISHMENT that PACKAGES cheese using a REDUCED OXYGEN PACKAGING method must:

(a) Limit the cheeses PACKAGED to those that are commercially manufactured in a FOOD PROCESSING PLANT

with no ingredients added in the FOOD ESTABLISHMENT and that meet the Standards of Identity as specified in 21 C.F.R. 133.150 Hard Cheeses, 21 C.F.R. 133.169 Pasteurized Process Cheese or 21 C.F.R. 133.187 Semisoft Cheeses;

(b) Have a HACCP PLAN that contains the information specified under WAC 246-215-08215 (3) and (4) and as specified under subsection (2)(a), (c)(i), (e), and (f) of this section;

(c) Labels the package on the principal display panel with a "use by" date that does not exceed thirty days from its packaging or the original manufacturer's "sell by" or "use by" date, whichever comes first; and

(d) Discards the REDUCED OXYGEN PACKAGED cheese if it is not sold for off-PREMISES consumption or consumed within thirty calendar days of its packaging.

(6) A HACCP PLAN is not required when a FOOD ESTABLISHMENT uses a REDUCED OXYGEN PACKAGING method to PACKAGE raw or READY-TO-EAT TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is always:

(a) Labeled with the production time and date;

(b) Held at 41°F (5°C) or less during refrigerated storage; and

(c) Removed from its PACKAGE in the FOOD ESTABLISHMENT within forty-eight hours after PACKAGING.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03540, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03540, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03540, WA ADC 246-215-03540

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 196

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart F. - Food Identity, Presentation, and on-Premises Labeling

WAC 246-215-03600

246-215-03600. Accurate representation--Standards of identity (FDA Food Code 3-601.11).

Currentness

PACKAGED FOOD must comply with standard of identity requirements in 21 C.F.R. 131-169 and 9 C.F.R. 319 Definitions and Standards of Identity or Composition, and the general requirements in 21 C.F.R. 130 - Food Standards: General and 9 C.F.R. 319 Subpart A - General.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03600, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03600, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03600, WA ADC 246-215-03600

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart F. - Food Identity, Presentation, and on-Premises Labeling |

WAC 246-215-03605

246-215-03605. Accurate representation--Honestly presented (FDA Food Code 3-601.12).

Currentness

(1) FOOD must be offered for human consumption in a way that does not mislead or misinform the CONSUMER.

(2) FOOD ADDITIVES or COLOR ADDITIVES, colored overwraps, or lights may not be used to misrepresent the true appearance, color, or quality of a FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03605, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03605, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03605, WA ADC 246-215-03605

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart F. - Food Identity, Presentation, and on-Premises Labeling

WAC 246-215-03610

246-215-03610. Labeling--Food labels (FDA Food Code 3-602.11).

Currentness

(1) FOOD PACKAGED in a FOOD ESTABLISHMENT must be labeled as specified in LAW, including chapters 69.04 and 15.130 RCW; 21 C.F.R. 101 - Food Labeling; and 9 C.F.R. 317 - Labeling, Marking Devices, and Containers.

(2) Label information must include:

(a) The common name of the FOOD or, absent a common name, an adequately descriptive identity statement;

(b) If made from two or more ingredients, a list of ingredients in descending order of predominance by weight, including a declaration of artificial color or flavor and chemical preservatives, if contained in the FOOD;

(c) An accurate declaration of the quantity of contents;

(d) The name and place of business of the manufacturer, packer, or distributor;

(e) The name of the FOOD source for each MAJOR FOOD ALLERGEN contained in the FOOD unless the FOOD source is already part of the common or unusual name of the respective ingredient;

(f) Except as exempted in the Federal Food, Drug, and Cosmetic Act Section 403 (q)(3) through (5), nutrition labeling as specified in 21 C.F.R. 101 - Food Labeling and 9 C.F.R. 317 Subpart B Nutrition Labeling; and

(g) For any salmonid FISH containing canthaxanthin or astaxanthin as a COLOR ADDITIVE, the labeling of the bulk FISH container, including a list of ingredients, displayed on the retail container or by other written means, such as a counter card, that discloses the use of canthaxanthin or astaxanthin.

(3) Bulk FOOD that is available for CONSUMER self-dispensing must be prominently labeled with the following information in plain view of the CONSUMER:

(a) The manufacturer's or processor's label that was provided with the FOOD; or

(b) A card, sign, or other method of notification that includes the information specified under subsection (2)(a), (b), and (f) of this section.

(4) Bulk unPACKAGED FOODS such as bakery products and unPACKAGED FOODS that are portioned to CONSUMER specification need not be labeled if:

(a) A health, nutrient content, or other claim is not made;

(b) There are no state or local LAWS requiring labeling; and

(c) The FOOD is manufactured or prepared on the PREMISES of the FOOD ESTABLISHMENT or at another FOOD ESTABLISHMENT or a FOOD PROCESSING PLANT that is owned by the same PERSON and is regulated by the FOOD regulatory agency that has jurisdiction.

(5) Whenever unpasteurized milk and FOODS containing unpasteurized milk are offered for sale at a FOOD ESTABLISHMENT, except hard or semi-soft raw milk cheeses properly fermented and aged for a minimum of sixty days in compliance with 21 C.F.R. Part 133, the PERMIT HOLDER and PERSON IN CHARGE shall ensure that:

(a) The product is conspicuously labeled **"*raw milk*"** or **"*contains raw milk*"**; and

(b) A sign is posted in a conspicuous manner near the product stating: **"*Warning: Raw milk or foods prepared from raw milk may be contaminated with dangerous bacteria capable of causing severe illness. Contact your local health agency for advice or to report a suspected illness.*"**

(6) The PERMIT HOLDER and PERSON IN CHARGE shall ensure that required information contained on FOOD labels

is in the English language, except that duplicate labeling in other languages is allowed.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03610, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03610, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03610, WA ADC 246-215-03610

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 3. Food
Subpart F. - Food Identity, Presentation, and on-Premises Labeling

WAC 246-215-03615

246-215-03615. Labeling--Other forms of information (FDA Food Code 3-602.12).

Currentness

(1) If required by LAW, CONSUMER warnings must be provided.

(2) FOOD ESTABLISHMENT or manufacturers' dating information on FOODS may not be concealed or altered.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03615, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050, 43.20.145, 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03615, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03615, WA ADC 246-215-03615

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 202

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 3. Food |
| Subpart F. - Food Identity, Presentation, and on-Premises Labeling |

WAC 246-215-03620

246-215-03620. Consumer advisory--Consumption of animal foods that are raw, undercooked, or not otherwise processed to eliminate pathogens (FDA Food Code 3-603.11).

Currentness

(1) Except as specified under WAC 246-215-03400 (3) and (4)(d) and 246-215-03800(3) if an animal FOOD such as beef, EGGS, FISH, lamb, pork, POULTRY, or shellfish is served or sold raw, undercooked, or without otherwise being processed to eliminate pathogens, either in a READY-TO-EAT form or as an ingredient in another READY-TO-EAT FOOD, the PERMIT HOLDER shall inform CONSUMERS of the significantly increased RISK of consuming such FOODS by way of a DISCLOSURE & REMINDER, as specified in subsections (2) and (3) of this section using brochures, deli case or menu advisories, label statements, table tents, placards, or other effective written means.

(2) DISCLOSURE must include:

(a) A description of the animal-derived FOODS such as "oysters on the half shell (raw oysters)," "fresh fish (can be cooked to order)," "raw egg Caesar salad," and "hamburgers (can be cooked to order)"; or

(b) Identification of the animal-derived FOODS by asterisking them to a footnote that states that the items are served raw or undercooked and contain (or might contain) raw or undercooked ingredients.

(3) REMINDER must include asterisking the animal-derived FOODS requiring DISCLOSURE to a footnote that states:

(a) "*Regarding the safety of these items, written information is available upon request*";

(b) "*Consuming raw or undercooked meats, poultry, seafood, shellfish, or eggs might increase your risk of foodborne illness*";

(c) "*Consuming raw or undercooked meats, poultry, seafood, shellfish, or eggs might increase your risk of foodborne illness, especially if you have certain medical conditions*"; or

(d) "*Regarding the safety of consuming fresh partially cooked fish, information is available upon request.*"

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03620, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03620, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03620, WA ADC 246-215-03620

App C 204

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart G. - Contaminated Food

WAC 246-215-03700

246-215-03700. Disposition--Discarding or reconditioning unsafe, adulterated, or contaminated food (FDA Food Code 3-701.11).

Currentness

(1) A FOOD that is unsafe, ADULTERATED, or not honestly presented as specified under WAC 246-215-03100 must be discarded or reconditioned according to an APPROVED procedure.

(2) FOOD that is not from an APPROVED source as specified under WAC 246-215-03200 through 246-215-03230 must be discarded.

(3) READY-TO-EAT FOOD that might have been contaminated by an EMPLOYEE who has been RESTRICTED or EXCLUDED as specified under WAC 246-215-02220 and 246-215-02225 must be discarded.

(4) FOOD that is contaminated by FOOD EMPLOYEES, CONSUMERS, or other persons through contact with their hands, bodily discharges, such as nasal or oral discharges, or other means must be discarded.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03700, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03700, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03700, WA ADC 246-215-03700

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

Subpart G. - Contaminated Food

WAC 246-215-03705

246-215-03705. Disposition--Examination, hold orders, condemnation, and destruction of food.

Currentness

(1) The PERMIT HOLDER OR PERSON IN CHARGE of a FOOD ESTABLISHMENT in which FOOD has been improperly handled, stored, or prepared shall:

(a) Voluntarily destroy the questionable FOOD; or

(b) Contact the REGULATORY AUTHORITY to determine if the FOOD is safe for human consumption.

(2) The PERMIT HOLDER or PERSON IN CHARGE of a FOOD ESTABLISHMENT shall denature or destroy any FOOD if the REGULATORY AUTHORITY determines the FOOD presents an imminent or actual health hazard.

(3) The REGULATORY AUTHORITY may examine or collect samples of FOOD as often as necessary for enforcement of these regulations.

(4) The REGULATORY AUTHORITY may, after notice to the PERMIT HOLDER or PERSON IN CHARGE, place a written hold order on any suspect FOOD until a determination on its safety can be made and shall:

(a) Tag;

(b) Label; or

(c) Otherwise identify any FOOD subject to the hold order and complete a form APPROVED by the Washington state department of health for all suspect FOOD.

(5) The hold order issued by the REGULATORY AUTHORITY must include:

(a) Instructions for filing a written request for a hearing with the REGULATORY AUTHORITY within ten calendar days; and

(b) Notification that if a hearing is not requested in accordance with the instructions provided in the hold order, and the REGULATORY AUTHORITY does not vacate the hold order, the FOOD must be destroyed under the supervision of a representative of the REGULATORY AUTHORITY.

(6) When FOOD is subject to a hold order by the REGULATORY AUTHORITY, the PERMIT HOLDER and PERSON IN CHARGE are prohibited from:

(a) Using the FOOD;

(b) Serving the FOOD; or

(c) Removing the FOOD from the FOOD ESTABLISHMENT.

(7) The REGULATORY AUTHORITY may allow storage of FOOD under conditions specified in the hold order, unless storage is not possible without RISK to public health, in which case immediate destruction shall be ordered and must be accomplished by the PERMIT HOLDER or PERSON IN CHARGE of the FOOD ESTABLISHMENT.

(8) Based upon evidence provided at the hearing, the REGULATORY AUTHORITY may either:

(a) Vacate the hold order; or

(b) Direct the PERMIT HOLDER or PERSON IN CHARGE of the FOOD ESTABLISHMENT by written order to:

(i) Denature or destroy such FOOD; or

(ii) Bring the FOOD into compliance with the provisions of these regulations.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03705, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03705, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03705, WA ADC 246-215-03705

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 3. Food

H - Special Requirements for Highly Susceptible Populations

WAC 246-215-03800

246-215-03800. Additional safeguards--Pasteurized foods, prohibited reservice, and prohibited food (FDA Food Code 3-801.11).

Currentness

In a FOOD ESTABLISHMENT that serves a HIGHLY SUSCEPTIBLE POPULATION:

(1) The following requirements apply to JUICE:

(a) For the purposes of subsection (1) of this section, children who are age nine or less and receive FOOD in a school, day care setting, or similar facility that provides custodial care are included as HIGHLY SUSCEPTIBLE POPULATIONS;

(b) PrePACKAGED JUICE or a prePACKAGED BEVERAGE containing JUICE, that bears a warning label as specified in 21 C.F.R., Section 101.17(g) Food Labeling, Warning, Notice and Safe Handling Statements, JUICES that have not been specifically processed to prevent, reduce, or eliminate the presence of pathogens, or a PACKAGED JUICE or BEVERAGE containing JUICE that bears a warning label as specified under WAC 246-215-03445(2) may not be served or offered for sale; and

(c) UnPACKAGED JUICE that is prepared on the PREMISES for service or sale in a READY-TO-EAT form must be processed under a HACCP PLAN that contains the information specified under WAC 246-215-08215 (2) through (5) and as specified in 21 C.F.R. Part 120 - Hazard Analysis and Critical Control Point (HACCP) Systems, Subpart B Pathogen Reduction, 120.24 Process controls.

(2) Pasteurized EGGS or EGG PRODUCTS must be substituted for raw EGGS in the preparation of:

(a) FOODS such as Caesar salad, hollandaise or Bearnaise sauce, mayonnaise, meringue, eggnog, ice cream, and EGG-fortified BEVERAGES; and

App C 209

(b) Except as specified in subsection (6) of this section, recipes in which more than one EGG is broken and the EGGS are combined;

(3) The following FOODS may not be served or offered for sale in a READY-TO-EAT form:

(a) Raw animal FOODS such as raw FISH, raw marinated FISH, raw MOLLUSCAN SHELLFISH, and steak tartare;

(b) A partially cooked animal FOOD such as lightly cooked FISH, rare MEAT, soft cooked EGGS that are made from raw EGGS, and meringue; and

(c) Raw seed sprouts.

(4) FOOD EMPLOYEES may not contact READY-TO-EAT FOOD as specified under WAC 246-215-03300 (2) and (5).

(5) Time only, as the public health control as specified under WAC 246-215-03530(4), may not be used for raw EGGS.

(6) Subsection (2)(b) of this section does not apply if:

(a) The raw EGGS are combined immediately before cooking for one CONSUMER'S serving at a single meal, cooked as specified under WAC 246-215-03400 (1)(a), and served immediately such as an omelet, souffle, or scrambled EGGS;

(b) The raw EGGS are combined as an ingredient immediately before baking and the EGGS are thoroughly cooked to a READY-TO-EAT form, such as a cake, muffin, or bread; or

(c) The preparation of the FOOD is conducted under a HACCP PLAN that:

(i) Identifies the FOOD to be prepared;

(ii) Prohibits contacting READY-TO-EAT FOOD with bare hands;

(iii) Includes specifications and practices that ensure:

(A) *Salmonella* Enteritidis growth is controlled before and after cooking; and

(B) *Salmonella* Enteritidis is destroyed by cooking the EGGS according to the temperature and time specified under WAC 246-215-03400 (1)(b);

(iv) Contains the information specified under WAC 246-215-08215(4) including procedures that:

(A) Control cross contamination of READY-TO-EAT FOOD with raw EGGS; and

(B) Delineate cleaning and SANITIZING procedures for FOOD-CONTACT SURFACES; and

(v) Describes the training program that ensures that the FOOD EMPLOYEE responsible for the preparation of the FOOD understands the procedures to be used.

(7) Except as specified in subsection (8) of this section, FOOD may be re-served as specified under WAC 246-215-03372 (2)(a) and (b).

(8) FOOD may not be re-served under the following conditions:

(a) Any FOOD served to patients or clients who are under contact precautions in medical isolation or quarantine, or protective environmental isolation may not be re-served to others outside.

(b) Packages of FOOD from any patients, clients, or other CONSUMERS should not be re-served to persons in protective environmental isolation.

(9) Reheating, as specified under WAC 246-215-03527 (1), may not be used for improperly marked FOOD.

App C 211

**246-215-03800. Additional safeguards--Pasteurized foods,..., WA ADC 246-215-03800**

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-03800, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-03800, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-03800, WA ADC 246-215-03800

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 212

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart A. - Materials for Construction and Repair

WAC 246-215-04100

246-215-04100. Multiuse--Characteristics (FDA Food Code 4-101.11).

Currentness

Materials that are used in the construction of UTENSILS and FOOD-CONTACT SURFACES of EQUIPMENT may not allow the migration of deleterious substances or impart colors, odors, or tastes to FOOD and under normal use conditions must be:

(1) Safe;

(2) Durable, CORROSION-RESISTANT, and nonabsorbent;

(3) Sufficient in weight and thickness to withstand repeated WAREWASHING;

(4) Finished to have a SMOOTH, EASILY CLEANABLE surface; and

(5) Resistant to pitting, chipping, crazing, scratching, scoring, distortion, and decomposition.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04100, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04100, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04100, WA ADC 246-215-04100

**246-215-04100. Multiuse--Characteristics (FDA Food Code..., WA ADC 246-215-04100**

End of Document                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 4. Equipment, Utensils and Linens
          Subpart A. - Materials for Construction and Repair

WAC 246-215-04105

246-215-04105. Multiuse--Cast iron, use limitation (FDA Food Code 4-101.12).

Currentness

(1) Except as specified in subsections (2) and (3) of this section, cast iron may not be used for UTENSILS or FOOD-CONTACT SURFACES of EQUIPMENT.

(2) Cast iron may be used as a surface for cooking.

(3) Cast iron may be used in UTENSILS for serving FOOD if the UTENSILS are used only as part of an uninterrupted process from cooking through service.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04105, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04105, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04105, WA ADC 246-215-04105

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart A. - Materials for Construction and Repair

WAC 246-215-04110

246-215-04110. Multiuse--Lead in ceramic, china, and crystal utensils, use limitation (FDA Food Code 4-101.13).

Currentness

(1) Ceramic, china, crystal UTENSILS, and decorative UTENSILS such as hand painted ceramic or china that are used in contact with FOOD must be lead-free or contain levels of lead not exceeding the limits of the following UTENSIL categories:

| Utensil Category | Description | Maximum Lead mg/L |
|---|---|---|
| BEVERAGE Mugs, Cups, Pitchers | Coffee Mugs | 0.5 |
| Large Hollowware (excluding pitchers) | Bowls ≥ 1.1 L (1.16 Quart) | 1 |
| Small Hollowware (excluding cups and mugs) | Bowls < 1.1 L (1.16 Quart) | 2.0 |
| Flat TABLEWARE | Plates, Saucers | 3.0 |

(2) Pewter alloys containing lead in excess of 0.05% may not be used as a FOOD-CONTACT SURFACE.

(3) Solder and flux containing lead in excess of 0.2% may not be used as a FOOD-CONTACT SURFACE.

**Credits**

App C 216

**246-215-04110. Multiuse--Lead in ceramic, china, and..., WA ADC 246-215-04110**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04110, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04110, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04110, WA ADC 246-215-04110

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 217

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 4. Equipment, Utensils and Linens
          Subpart A. - Materials for Construction and Repair

WAC 246-215-04115

246-215-04115. Multiuse--Copper, use limitation (FDA Food Code 4-101.14).

Currentness

(1) Except as specified in subsection (2) of this section, copper and copper alloys such as brass may not be used in contact with a FOOD that has a pH below six such as vinegar, fruit JUICE, or wine or for a fitting or tubing installed between a backflow prevention device and a carbonator.

(2) Copper and copper alloys may be used in contact with beer brewing ingredients that have a pH below six in the prefermentation steps of a beer brewing operation such as a brewpub or microbrewery.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04115, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04115, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04115, WA ADC 246-215-04115

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart A. - Materials for Construction and Repair

WAC 246-215-04120

246-215-04120. Multiuse--Galvanized metal, use limitation (FDA Food Code 4-101.15).

Currentness

Galvanized metal may not be used for UTENSILS or FOOD-CONTACT SURFACES of EQUIPMENT that are used in contact with acidic FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04120, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04120, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04120, WA ADC 246-215-04120

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart A. - Materials for Construction and Repair

WAC 246-215-04125

246-215-04125. Multiuse--Sponges, use limitation (FDA Food Code 4-101.16).

Currentness

Sponges may not be used in contact with cleaned and SANITIZED or in-use FOOD-CONTACT SURFACES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04125, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04125, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04125, WA ADC 246-215-04125

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 220

App C 220

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart A. - Materials for Construction and Repair

WAC 246-215-04130

246-215-04130. Multiuse--Wood, use limitation (FDA Food Code 4-101.17).

Currentness

(1) Except as specified in subsections (2), (3), and (4) of this section, wood and wood wicker may not be used as a FOOD-CONTACT SURFACE.

(2) Hard maple or an equivalently hard, close-grained wood may be used for:

(a) Cutting boards; cutting blocks; baker's tables; serving surfaces; and UTENSILS such as rolling pins, doughnut dowels, salad bowls, and chopsticks; and

(b) Wooden paddles used in confectionary operations for pressure scraping kettles when manually preparing confections at a temperature of 230°F (110°C) or above.

(3) Whole, uncut, raw fruits and vegetables, and nuts in the shell may be kept in the wood shipping containers in which they were received, until the fruits, vegetables, or nuts are used.

(4) If the nature of the FOOD requires removal of rinds, peels, husks, or shells before consumption, the whole, uncut, raw FOOD may be kept in:

(a) Untreated wood containers; or

(b) Treated wood containers if the containers are treated with a preservative that meets the requirements specified in 21 C.F.R. 178.3800 Preservatives for Wood.

App C 221

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04130, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04130, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04130, WA ADC 246-215-04130

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart A. - Materials for Construction and Repair

WAC 246-215-04135

246-215-04135. Multiuse--Nonstick coatings, use limitation (FDA Food Code 4-101.18).

*Currentness*

Multiuse KITCHENWARE such as frying pans, griddles, sauce pans, cookie sheets, and waffle bakers that have a perfluorocarbon resin coating must be used with nonscoring or nonscratching UTENSILS and cleaning aids.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04135, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04135, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04135, WA ADC 246-215-04135

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart A. - Materials for Construction and Repair |

WAC 246-215-04140

246-215-04140. Multiuse--Nonfood-contact surfaces (FDA Food Code 4-101.19).

Currentness

NonFOOD-CONTACT SURFACES of EQUIPMENT that are exposed to splash, spillage, or other FOOD soiling or that require frequent cleaning must be constructed of a CORROSION-RESISTANT, nonabsorbent, and SMOOTH material.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04140, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04140, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04140, WA ADC 246-215-04140

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart A. - Materials for Construction and Repair |

WAC 246-215-04145

246-215-04145. Single-service and single use--Characteristics (FDA Food Code 4-102.11).

*Currentness*

Materials that are used to make SINGLE-SERVICE and SINGLE-USE ARTICLES:

(1) May not:

(a) Allow the migration of deleterious substances; or

(b) Impart colors, odors, or tastes to FOOD; and

(2) Must be:

(a) Safe; and

(b) Clean.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04145, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04145, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

**246-215-04145. Single-service and single..., WA ADC 246-215-04145**

WAC 246-215-04145, WA ADC 246-215-04145

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 226

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04200

246-215-04200. Durability and strength--Equipment and utensils (FDA Food Code 4-201.11).

Currentness

EQUIPMENT and UTENSILS must be designed and constructed to be durable and to retain their characteristic qualities under normal use conditions.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04200, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04200, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04200, WA ADC 246-215-04200

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 227

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04202

246-215-04202. Durability and strength--Food temperature measuring devices (FDA Food Code 4-201.12).

Currentness

FOOD TEMPERATURE MEASURING DEVICES may not have sensors or stems constructed of glass, except that thermometers with glass sensors or stems that are encased in a shatterproof coating such as candy thermometers may be used.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04202, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04202, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04202, WA ADC 246-215-04202

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 228

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04204

246-215-04204. Cleanability--Food-contact surfaces (FDA Food Code 4-202.11).

Currentness

(1) Multiuse FOOD-CONTACT SURFACES must be:

(a) SMOOTH;

(b) Free of breaks, open seams, cracks, chips, inclusions, pits, and similar imperfections;

(c) Free of sharp internal angles, corners, and crevices;

(d) Finished to have SMOOTH welds and joints; and

(e) Except as specified in subsection (2) of this section, accessible for cleaning and inspection by one of the following methods:

(i) Without being disassembled;

(ii) By disassembling without the use of tools; or

(iii) By easy disassembling with the use of handheld tools commonly available to maintenance and cleaning personnel such as screwdrivers, pliers, open-ended wrenches, and Allen wrenches.

(2) Subsection (1)(e) of this section does not apply to cooking oil storage tanks, distribution lines for cooking oils, or BEVERAGE syrup lines or tubes.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04204, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04204, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04204, WA ADC 246-215-04204

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04206

246-215-04206. Cleanability--CIP equipment (FDA Food Code 4-202.12).

Currentness

(1) CIP EQUIPMENT must meet the characteristics specified under WAC 246-215-04204 and must be designed and constructed so that:

(a) Cleaning and SANITIZING solutions circulate throughout a fixed system and contact all interior FOOD-CONTACT SURFACES; and

(b) The system is self-draining or capable of being completely drained of cleaning and SANITIZING solutions; and

(2) CIP EQUIPMENT that is not designed to be disassembled for cleaning must be designed with inspection access points to ensure that all interior FOOD-CONTACT SURFACES throughout the fixed system are being effectively cleaned.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04206, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04206, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04206, WA ADC 246-215-04206

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 231

| | |
|---|---|
| Washington Administrative Code | |
| Title 246. Health, Department of | |
| Food Handling | |
| Chapter 246-215. Food Service (Refs & Annos) | |
| Part 4. Equipment, Utensils and Linens | |
| Subpart B. - Design and Construction | |

WAC 246-215-04208

246-215-04208. Cleanability--"V" threads, use limitation (FDA Food Code 4-202.13).

Currentness

Except for hot oil cooking or filtering EQUIPMENT, "V" type threads may not be used on FOOD-CONTACT SURFACES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04208, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04208, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04208, WA ADC 246-215-04208

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04210

246-215-04210. Cleanability--Hot oil filtering equipment (FDA Food Code 4-202.14).

Currentness

Hot oil filtering EQUIPMENT must meet the characteristics specified under WAC 246-215-04204 or 246-215-04206 and must be readily accessible for filter replacement and cleaning of the filter.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04210, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04210, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04210, WA ADC 246-215-04210

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04212

246-215-04212. Cleanability--Can openers (FDA Food Code 4-202.15).

Currentness

Cutting or piercing parts of can openers must be readily removable for cleaning and for replacement.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04212, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04212, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04212, WA ADC 246-215-04212

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04214

246-215-04214. Cleanability--Nonfood-contact surfaces (FDA Food Code 4-202.16).

Currentness

NonFOOD-CONTACT SURFACES must be free of unnecessary ledges, projections, and crevices, and designed and constructed to allow easy cleaning and to facilitate maintenance.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04214, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04214, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04214, WA ADC 246-215-04214

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04216

246-215-04216. Cleanability--Kick plates, removable (FDA Food Code 4-202.17).

Currentness

Kick plates must be designed so that the areas behind them are accessible for inspection and cleaning by being:

(1) Removable by one of the methods specified under WAC 246-215-04204 (1)(e) or capable of being rotated open; and

(2) Removable or capable of being rotated open without unlocking EQUIPMENT doors.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04216, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04216, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04216, WA ADC 246-215-04216

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04218

246-215-04218. Cleanability--Ventilation hood systems, filters (FDA Food Code 4-202.18).

Currentness

Filters or other grease extracting EQUIPMENT must be designed to be readily removable for cleaning and replacement if not designed to be cleaned in place.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04218, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04218, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04218, WA ADC 246-215-04218

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04220

246-215-04220. Accuracy--Temperature measuring devices, food (FDA Food Code 4-203.11).

Currentness

(1) FOOD TEMPERATURE MEASURING DEVICES that are scaled only in Celsius or dually scaled in Celsius and Fahrenheit must be accurate to ± 1°C in the intended range of use.

(2) FOOD TEMPERATURE MEASURING DEVICES that are scaled only in Fahrenheit must be accurate to ± 2°F in the intended range of use.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04220, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04220, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04220, WA ADC 246-215-04220

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 238

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04222

246-215-04222. Accuracy--Temperature measuring devices, ambient air and water (FDA Food Code 4-203.12).

Currentness

(1) Ambient air and water TEMPERATURE MEASURING DEVICES that are scaled in Celsius or dually scaled in Celsius and Fahrenheit must be designed to be easily readable and accurate to ± 1.5°C in the intended range of use.

(2) Ambient air and water TEMPERATURE MEASURING DEVICES that are scaled only in Fahrenheit must be accurate to ± 3°F in the intended range of use.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04222, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04222, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04222, WA ADC 246-215-04222

     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04224

246-215-04224. Accuracy--Pressure measuring devices, mechanical warewashing equipment (FDA Food Code 4-203.13).

Currentness

Pressure measuring devices that display the pressures in the water supply line for the fresh hot water SANITIZING rinse must have increments of one pound per square inch (seven kilopascals) or smaller and must be accurate to ± two pounds per square inch (± 14 kilopascals) in the range indicated on the manufacturer's data plate.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04224, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04224, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04224, WA ADC 246-215-04224

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04226

246-215-04226. Functionality--Ventilation hood systems, drip prevention (FDA Food Code 4-204.11).

Currentness

Exhaust ventilation hood systems in FOOD preparation and WAREWASHING areas including components such as hoods, fans, guards, and ducting must be designed to prevent grease or condensation from draining or dripping onto FOOD, EQUIPMENT, UTENSILS, LINENS, and SINGLE-SERVICE and SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04226, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04226, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04226, WA ADC 246-215-04226

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 4. Equipment, Utensils and Linens
          Subpart B. - Design and Construction

WAC 246-215-04228

246-215-04228. Functionality--Equipment openings, closures and deflectors (FDA Food Code 4-204.12).

Currentness

(1) A cover or lid for EQUIPMENT must overlap the opening and be sloped to drain.

(2) An opening located within the top of a unit of EQUIPMENT that is designed for use with a cover or lid must be flanged upward at least two-tenths of an inch (five millimeters).

(3) Except as specified under subsection (4) of this section, fixed piping, TEMPERATURE MEASURING DEVICES, rotary shafts, and other parts extending into the EQUIPMENT must be provided with a watertight joint at the point where the item enters the EQUIPMENT.

(4) If a watertight joint is not provided:

(a) The piping, TEMPERATURE MEASURING DEVICES, rotary shafts, and other parts extending through the openings must be equipped with an apron designed to deflect condensation, drips, and dust from openings into the FOOD; and

(b) The opening must be flanged as specified under subsection (2) of this section.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04228, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04228, filed 1/17/13, effective 5/1/13.

App C 242

**246-215-04228. Functionality--Equipment openings, closures..., WA ADC 246-215-04228**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04228, WA ADC 246-215-04228

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 243

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04230

246-215-04230. Functionality--Dispensing equipment, protection of equipment and food (FDA Food Code 4-204.13).

*Currentness*

In EQUIPMENT that dispenses or vends liquid FOOD or ice in unPACKAGED form:

(1) The delivery tube, chute, orifice, and splash surfaces directly above the container receiving the FOOD must be designed in a manner, such as with barriers, baffles, or drip aprons, so that drips from condensation and splash are diverted from the opening of the container receiving the FOOD;

(2) The delivery tube, chute and orifices must be protected from manual contact such as by being recessed;

(3) The delivery tube or chute and orifice of EQUIPMENT used to vend liquid FOOD or ice in unPACKAGED form to self-service CONSUMERS must be designed so that the delivery tube or chute and orifice are protected from dust, insects, rodents, and other contamination by a self-closing door if the EQUIPMENT is:

(a) Located in an outside area that does not otherwise afford the protection of an enclosure against the rain, windblown debris, insects, rodents, and other contaminants that are present in the environment; or

(b) Available for self-service during hours when it is not under the full-time supervision of a FOOD EMPLOYEE; and

(4) The dispensing EQUIPMENT actuating level or mechanism and filling device of CONSUMER self-service BEVERAGE dispensing EQUIPMENT must be designed to prevent contact with the lip-contact surface of glasses or cups that are refilled.

(5) Dispensing EQUIPMENT in which TIME/TEMPERATURE CONTROL FOR SAFETY FOOD in a homogenous liquid form is maintained outside of the temperature control requirements as specified under WAC 246-215-03525(1) must:

(a) Be specifically designed and equipped to maintain the commercial sterility of aseptically PACKAGED FOOD in a homogenous liquid form for a specified duration from the time of opening the packaging within the EQUIPMENT; and

(b) Conform to the requirements for this EQUIPMENT as specified in NSF/ANSI 18-2006 - Manual food and Beverage Dispensing Equipment.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04230, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04230, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04230, WA ADC 246-215-04230

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04232

246-215-04232. Functionality--Vending machine, vending stage closure (FDA Food Code 4-204.14).

Currentness

The dispensing compartment of a VENDING MACHINE including a machine that is designed to vend prePACKAGED snack FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD such as chips, party mixes, and pretzels must be equipped with a self-closing door or cover if the machine is:

(1) Located in an outside area that does not otherwise afford the protection of an enclosure against the rain, windblown debris, insects, rodents, and other contaminants that are present in the environment; or

(2) Available for self-service during hours when it is not under the full-time supervision of a FOOD EMPLOYEE.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04232, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04232, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04232, WA ADC 246-215-04232

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 246

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04234

246-215-04234. Functionality--Bearings and gear boxes, leakproof (FDA Food Code 4-204.15).

Currentness

EQUIPMENT containing bearings and gears that require lubricants must be designed and constructed so that the lubricant cannot leak, drip, or be forced into FOOD or onto FOOD-CONTACT SURFACES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04234, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04234, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04234, WA ADC 246-215-04234

| Washington Administrative Code |
|---|
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04236

246-215-04236. Functionality--Beverage tubing, separation (FDA Food Code 4-204.16).

Currentness

Except for cold plates that are constructed integrally with an ice storage bin, BEVERAGE tubing and cold-plate BEVERAGE cooling devices may not be installed in contact with stored ice.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04236, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04236, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04236, WA ADC 246-215-04236

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04238

246-215-04238. Functionality--Ice units, separation of drains (FDA Food Code 4-204.17).

Currentness

Liquid waste drain lines may not pass through an ice machine or ice storage bin.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04238, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04238, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04238, WA ADC 246-215-04238

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04240

246-215-04240. Functionality--Condenser unit, separation (FDA Food Code 4-204.18).

Currentness

If a condenser unit is an integral component of EQUIPMENT, the condenser unit must be separated from the FOOD and FOOD storage space by a dustproof barrier.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04240, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04240, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04240, WA ADC 246-215-04240

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04242

246-215-04242. Functionality--Can openers on vending machines (FDA Food Code 4-204.19).

Currentness

Cutting or piercing parts of can openers on vending machines must be protected from manual contact, dust, insects, rodents, and other contamination.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04242, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04242, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04242, WA ADC 246-215-04242

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04244

246-215-04244. Functionality--Molluscan shellfish tanks (FDA Food Code 4-204.110).

Currentness

(1) Except as specified under subsection (2) of this section, MOLLUSCAN SHELLFISH life support system display tanks may not be used to store or display shellfish that are offered for human consumption and must be conspicuously marked so that it is obvious to the CONSUMER that shellfish are for display only.

(2) MOLLUSCAN SHELLFISH life-support system display tanks that are used to store or display shellfish that are offered for human consumption must be operated and maintained in accordance with a VARIANCE granted by the REGULATORY AUTHORITY as specified under WAC 246-215-08110 and a HACCP PLAN that:

(a) Is submitted by the PERMIT HOLDER and APPROVED as specified under WAC 246-215-08115; and

(b) Ensures that:

(i) Water used with FISH other than MOLLUSCAN SHELLFISH does not flow into the molluscan tank;

(ii) The safety and quality of the shellfish as they were received are not compromised by the use of the tank; and

(iii) The identity of the source of the SHELLSTOCK is retained as specified under WAC 246-215-03290.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04244, filed 12/15/20, effective 1/15/21;

**246-215-04244. Functionality--Molluscan shellfish tanks..., WA ADC 246-215-04244**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04244, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04244, WA ADC 246-215-04244

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04246

246-215-04246. Functionality--Vending machines, automatic shutoff (FDA Food Code 4-204.111).

Currentness

(1) A machine vending TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must have an automatic control that prevents the machine from vending FOOD:

(a) If there is a power failure, mechanical failure, or other condition that results in an internal machine temperature that cannot maintain FOOD temperatures as specified under Part 3 of this chapter; and

(b) If a condition specified under (a) of this subsection occurs, until the machine is serviced and restocked with FOOD that has been maintained at temperatures specified under Part 3 of this chapter.

(2) When the automatic shutoff within a machine vending TIME/TEMPERATURE CONTROL FOR SAFETY FOOD is activated:

(a) In a refrigerated VENDING MACHINE, the ambient temperature may not exceed 41°F (5°C) for more than thirty minutes immediately after the machine is filled, serviced, or restocked; or

(b) In a hot holding VENDING MACHINE, the ambient air temperature may not be less than 135°F (57°C) for more than one hundred twenty minutes immediately after the machine is filled, serviced, or restocked.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04246, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04246, filed 1/17/13, effective 5/1/13.

**246-215-04246. Functionality--Vending machines, automatic..., WA ADC 246-215-04246**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04246, WA ADC 246-215-04246

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04248

246-215-04248. Functionality--Temperature measuring devices (FDA Food Code 4-204.112).

Currentness

(1) In a mechanically refrigerated or hot FOOD storage unit, the sensor of a TEMPERATURE MEASURING DEVICE must be located to measure the air temperature or a simulated product temperature in the warmest part of a mechanically refrigerated unit and in the coolest part of a hot FOOD storage unit.

(2) Except as specified in subsection (3) of this section, cold or hot holding EQUIPMENT used for TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be designed to include and must be equipped with at least one integral or permanently affixed TEMPERATURE MEASURING DEVICE that is located to allow easy viewing of the device's temperature display.

(3) Subsection (2) of this section does not apply to EQUIPMENT for which the placement of a TEMPERATURE MEASURING DEVICE is not a practical means for measuring the ambient air surrounding the FOOD because of the design, type, and use of the EQUIPMENT, such as calrod units, heat lamps, cold plates, bainmaries, steam tables, insulated FOOD transport containers, and salad bars.

(4) TEMPERATURE MEASURING DEVICES must be designed to be easily readable.

(5) FOOD TEMPERATURE MEASURING DEVICES and water TEMPERATURE MEASURING DEVICES on WAREWASHING machines must have a numerical scale, printed record, or digital readout in increments no greater than 2°F or 1°C in the intended range of use.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04248, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04248, filed 1/17/13, effective 5/1/13.

**246-215-04248. Functionality--Temperature measuring..., WA ADC 246-215-04248**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04248, WA ADC 246-215-04248

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04250

246-215-04250. Functionality--Warewashing machines, data plate operating specifications (FDA Food Code 4-204.113).

Currentness

A WAREWASHING machine must be provided with an easily accessible and readable data plate affixed to the machine by the manufacturer that indicates the machine's design and operation specifications including the:

(1) Temperatures required for washing, rinsing, and SANITIZING;

(2) Pressure required for the fresh water SANITIZING rinse unless the machine is designed to use only pumped SANITIZING rinse; and

(3) Conveyor speed for conveyor machines or cycle time for stationary rack machines.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04250, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04250, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04250, WA ADC 246-215-04250

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04252

246-215-04252. Functionality--Warewashing machines, internal baffles (FDA Food Code 4-204.114).

Currentness

WAREWASHING machine wash and rinse tanks must be equipped with baffles, curtains, or other means to minimize internal cross contamination of the solutions in wash and rinse tanks.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04252, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04252, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04252, WA ADC 246-215-04252

**End of Document**                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| --- |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04254

246-215-04254. Functionality--Warewashing machines, temperature measuring devices (FDA Food Code 4-204.115).

Currentness

A WAREWASHING machine must be equipped with a TEMPERATURE MEASURING DEVICE that indicates the temperature of the water:

(1) In each wash and rinse tank; and

(2) As the water enters the hot water SANITIZATION final rinse manifold or in the chemical SANITIZING solution tank.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04254, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04254, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04254, WA ADC 246-215-04254

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 260

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04256

246-215-04256. Functionality--Manual warewashing equipment, heaters and baskets (FDA Food Code 4-204.116).

Currentness

If hot water is used for SANITIZATION in manual WAREWASHING operations, the SANITIZING compartment of the sink must be:

(1) Designed with an integral heating device that is capable of maintaining water at a temperature not less than 171°F (77°C); and

(2) Provided with a rack or basket to allow complete immersion of EQUIPMENT and UTENSILS into the hot water.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04256, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04256, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04256, WA ADC 246-215-04256

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart B. - Design and Construction

WAC 246-215-04258

246-215-04258. Functionality--Warewashing machines, automatic dispensing of detergents and sanitizers (FDA Food Code 4-204.117).

Currentness

A WAREWASHING machine that is installed after adoption of this chapter by the REGULATORY AUTHORITY must be equipped to:

(1) Automatically dispense detergents and SANITIZERS; and

(2) Incorporate a visual means to verify that detergents and SANITIZERS are delivered or a visual or audible alarm to signal if the detergents and SANITIZERS are not delivered to the respective washing and SANITIZING cycles.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04258, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04258, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04258, WA ADC 246-215-04258

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04260

246-215-04260. Functionality--Warewashing machines, flow pressure device (FDA Food Code 4-204.118).

Currentness

(1) WAREWASHING machines that provide a fresh hot water SANITIZING rinse must be equipped with a pressure gauge or similar device such as a transducer that measures and displays the water pressure in the supply line immediately before entering the WAREWASHING machine; and

(2) If the flow pressure measuring device is upstream of the fresh hot water SANITIZING rinse control valve, the device must be mounted in a one-fourth inch (6.4 mm) iron pipe size (IPS) valve.

(3) Subsections (1) and (2) of this section do not apply to a machine that uses only a pumped or recirculated SANITIZING rinse.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04260, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04260, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04260, WA ADC 246-215-04260

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

246-215-04262. Functionality--Warewashing sinks and..., WA ADC 246-215-04262

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04262

246-215-04262. Functionality--Warewashing sinks and drainboards, self-draining (FDA Food Code 4-204.119).

Currentness

Sinks and drainboards of WAREWASHING sinks and machines must be self-draining.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04262, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04262, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04262, WA ADC 246-215-04262

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04264

246-215-04264. Functionality--Equipment compartments, drainage (FDA Food Code 4-204.120).

Currentness

EQUIPMENT compartments that are subject to accumulation of moisture due to conditions such as condensation, FOOD or BEVERAGE drip, or water from melting ice must be sloped to an outlet that allows complete draining.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04264, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04264, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04264, WA ADC 246-215-04264

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04266

246-215-04266. Functionality--Vending machines, liquid waste products (FDA Food Code 4-204.121).

Currentness

(1) VENDING MACHINES designed to store BEVERAGES that are PACKAGED in containers made from paper products must be equipped with diversion devices and retention pans or drains for container leakage.

(2) VENDING MACHINES that dispense liquid FOOD in bulk must be:

(a) Provided with an internally mounted waste receptacle for the collection of drip, spillage, overflow, or other internal wastes; and

(b) Equipped with an automatic shutoff device that places the machine out of operation before the waste receptacle overflows.

(3) Shutoff devices specified under subsection (2)(b) of this section must prevent water or liquid FOOD from continuously running if there is a failure of a flow control device in the water or liquid FOOD system or waste accumulation that could lead to overflow of the waste receptacle.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04266, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04266, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04266, WA ADC 246-215-04266

**246-215-04266. Functionality--Vending machines, liquid..., WA ADC 246-215-04266**

*End of Document*

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart B. - Design and Construction

WAC 246-215-04268

246-215-04268. Functionality--Case lot handling equipment, moveability (FDA Food Code 4-204.122).

Currentness

Apparatuses, such as dollies, pallets, racks, and skids used to store and transport large quantities of PACKAGED FOODS received from a supplier in a cased or overwrapped lot, must be designed to be moved by hand or by conveniently available apparatuses such as hand trucks and forklifts.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04268, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04268, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04268, WA ADC 246-215-04268

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 268

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04270

246-215-04270. Functionality--Vending machine doors and openings (FDA Food Code 4-204.123).

Currentness

(1) VENDING MACHINE doors and access opening covers to FOOD and container storage spaces must be tight-fitting so that the space along the entire interface between the doors or covers and the cabinet of the machine, if the doors or covers are in a closed position, is no greater than one-sixteenth inch (1.5 millimeters) by:

(a) Being covered with louvers, screens, or materials that provide an equivalent opening of not greater than one-sixteenth inch (1.5 millimeters). Screening of twelve mesh to one inch (twelve or more mesh to 2.5 centimeters) meets this requirement;

(b) Being effectively gasketed;

(c) Having interface surfaces that are at least one-half inch (13 mm) wide; or

(d) Jambs or surfaces used to form an L-shaped entry path to the interface.

(2) VENDING MACHINE service connection openings through an exterior wall of a machine must be closed by sealants, clamps, or grommets so that the openings are no larger than one-sixteenth inch (1.5 mm).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04270, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04270, filed 1/17/13, effective 5/1/13.

**246-215-04270. Functionality--Vending machine doors and..., WA ADC 246-215-04270**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04270, WA ADC 246-215-04270

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 270

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart B. - Design and Construction |

WAC 246-215-04272

246-215-04272. Acceptability--Food equipment, certification and classification (FDA Food Code 4-205.10).

*Currentness*

FOOD EQUIPMENT that is certified or classified for sanitation in conformance with a recognized American National Standards Institute (ANSI) - Accredited certification program is deemed to comply with Subparts A and B of this part.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04272, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04272, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04272, WA ADC 246-215-04272

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 271

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart C. - Numbers and Capacities

WAC 246-215-04300

246-215-04300. Equipment--Cooling, heating, and holding capacities (FDA Food Code 4-301.11).

Currentness

EQUIPMENT for cooling and heating FOOD, and holding cold and hot FOOD, must be sufficient in number and capacity to provide FOOD temperatures as specified under Part 3.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04300, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04300, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04300, WA ADC 246-215-04300

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart C. - Numbers and Capacities

WAC 246-215-04305

246-215-04305. Equipment--Manual warewashing, sink compartment requirements (FDA Food Code 4-301.12).

Currentness

(1) Except as specified in subsection (3) of this section, a sink with at least three compartments must be provided for manually washing, rinsing, and SANITIZING EQUIPMENT and UTENSILS.

(2) Sink compartments must be large enough to accommodate immersion of the largest EQUIPMENT and UTENSILS. If EQUIPMENT or UTENSILS are too large for the WAREWASHING sink, a WAREWASHING machine or alternative EQUIPMENT as specified in subsection (3) of this section must be used.

(3) Alternative manual WAREWASHING EQUIPMENT may be used when there are special cleaning needs or constraints and its use is APPROVED. Alternative manual WAREWASHING EQUIPMENT includes, but is not limited to:

(a) High-pressure detergent sprayers;

(b) Low- or line-pressure spray detergent foamers;

(c) Other task-specific cleaning EQUIPMENT;

(d) Brushes or other implements;

(e) Two-compartment sinks as specified under subsections (4) and (5) of this section; or

(f) Receptacles that substitute for the compartments of a multicompartment sink.

(4) Before a two-compartment sink is used:

(a) The PERMIT HOLDER shall have its use APPROVED; and

(b) The PERMIT HOLDER shall limit the number of KITCHENWARE items cleaned and SANITIZED in the two-compartment sink, and shall limit WAREWASHING to batch operations for cleaning KITCHENWARE such as between cutting one type of raw MEAT and another or cleanup at the end of a shift, and shall:

(i) Make up the cleaning and SANITIZING solutions immediately before use and drain them immediately after use; and

(ii) Use APPROVED procedures to properly clean and SANITIZE KITCHENWARE.

(5) A two-compartment sink may not be used for WAREWASHING operations where cleaning and SANITIZING solutions are used for a continuous or intermittent flow of KITCHENWARE or TABLEWARE in an ongoing WAREWASHING process.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04305, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04305, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04305, WA ADC 246-215-04305

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart C. - Numbers and Capacities

WAC 246-215-04310

246-215-04310. Equipment--Drainboards (FDA Food Code 4-301.13).

Currentness

Drainboards, UTENSIL racks, or tables large enough to accommodate all soiled and cleaned items that might accumulate during hours of operation must be provided for necessary UTENSILS holding before cleaning and after SANITIZING.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04310, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04310, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04310, WA ADC 246-215-04310

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart C. - Numbers and Capacities

WAC 246-215-04315

246-215-04315. Equipment--Ventilation hood systems, adequacy (FDA Food Code 4-301.14).

Currentness

Ventilation hood systems and devices must be sufficient in number and capacity to prevent grease or condensation from collecting on walls and ceilings.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04315, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04315, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04315, WA ADC 246-215-04315

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart C. - Numbers and Capacities |

WAC 246-215-04320

246-215-04320. Equipment--Clothes washers and dryers (FDA Food Code 4-301.15).

Currentness

(1) Except as specified in subsection (2) of this section, if work clothes or LINENS are laundered on the PREMISES, a mechanical clothes washer and dryer must be provided and used.

(2) If on-PREMISES laundering is limited to wiping cloths intended to be used moist, or wiping cloths are air-dried as specified under WAC 246-215-04905, a mechanical clothes washer and dryer need not be provided.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04320, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04320, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04320, WA ADC 246-215-04320

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart C. - Numbers and Capacities |

WAC 246-215-04325

246-215-04325. Equipment-Designated food preparation sinks.

Currentness

food establishments must have designated food preparation sinks that are:

(1) Sufficient in number and size to wash, soak, rinse, drain, cool, thaw, or otherwise process any food that requires placement in a sink;

(2) Appropriate for the menu, method of food preparation, and volume of food prepared; and

(3) Not used for handwashing, utensil washing, or other activities that could contaminate food.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04325, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04325, WA ADC 246-215-04325

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart C. - Numbers and Capacities |

WAC 246-215-04330

246-215-04330. Utensils, temperature measuring devices, and testing devices--Utensils, consumer self-service (FDA Food Code 4-302.11).

*Currentness*

A FOOD dispensing UTENSIL must be available for each container displayed at a CONSUMER self-service unit such as a buffet or salad bar.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04330, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04330, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04330, WA ADC 246-215-04330

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 279

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart C. - Numbers and Capacities

WAC 246-215-04335

246-215-04335. Utensils, temperature measuring devices, and testing devices--Food temperature measuring devices (FDA Food Code 4-302.12).

*Currentness*

(1) FOOD TEMPERATURE MEASURING DEVICES must be provided and readily accessible for use in ensuring attainment and maintenance of FOOD temperatures as specified under Part 3.

(2) A TEMPERATURE MEASURING DEVICE with a suitable small-diameter probe that is designed to measure the temperature of thin masses must be provided and readily accessible to accurately measure the temperature in thin FOODS such as MEAT patties and FISH fillets.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04335, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04335, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04335, WA ADC 246-215-04335

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
|---|
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart C. - Numbers and Capacities |

WAC 246-215-04340

246-215-04340. Utensils, temperature measuring devices, and testing devices--Temperature measuring devices, manual warewashing (FDA Food Code 4-302.13).

Currentness

(1) In manual WAREWASHING operations, a TEMPERATURE MEASURING DEVICE must be provided and readily accessible for frequently measuring the washing and SANITIZING temperatures.

(2) In hot water mechanical WAREWASHING operations, an irreversible registering temperature indicator must be provided and readily accessible for measuring the UTENSIL surface temperature.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04340, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04340, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04340, WA ADC 246-215-04340

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart C. - Numbers and Capacities

WAC 246-215-04345

246-215-04345. Utensils, temperature measuring devices, and testing devices--Sanitizing solutions, testing devices (FDA Food Code 4-302.14).

*Currentness*

A test kit or other device that accurately measures the concentration in mg/L of SANITIZING solutions must be provided.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04345, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04345, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04345, WA ADC 246-215-04345

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.   282

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart C. - Numbers and Capacities |

WAC 246-215-04350

246-215-04350. Cleaning agents and sanitizers--Cleaning agents and sanitizers availability (FDA Food Code 4-303.11).

Currentness

(1) Cleaning agents that are used to clean EQUIPMENT and UTENSILS as specified under Part 4, Subpart F of this chapter, must be provided and available for use during all hours of operation.

(2) Except for those that are generated on-site at the time of use, chemical SANITIZERS that are used to sanitize EQUIPMENT and UTENSILS as specified under Part 4, Subpart G of this chapter, must be provided and available for use during all hours of FOOD preparation.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04350, filed 12/15/20, effective 1/15/21.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04350, WA ADC 246-215-04350

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart D. - Location and Installation |

WAC 246-215-04400

246-215-04400. Location--Equipment, clothes washers and dryers, and storage cabinets, contamination prevention (FDA Food Code 4-401.11).

*Currentness*

(1) Except as specified in subsection (2) of this section, EQUIPMENT, a cabinet used for the storage of FOOD, or a cabinet that is used to store cleaned and SANITIZED EQUIPMENT, UTENSILS, laundered LINENS, and SINGLE-SERVICE and SINGLE-USE ARTICLES may not be located:

(a) In locker rooms;

(b) In toilet rooms;

(c) In garbage rooms;

(d) In mechanical rooms;

(e) Under sewer lines that are not shielded to intercept potential drips;

(f) Under leaking water lines including automatic fire sprinkler heads or under lines on which water has condensed;

(g) Under open stairwells; or

(h) Under other sources of contamination.

(2) A storage cabinet used for LINENS or SINGLE-SERVICE or SINGLE-USE ARTICLES may be stored in a locker room.

(3) If a mechanical clothes washer or dryer is provided, it must be located so that the washer or dryer is protected from contamination and only where there is no exposed FOOD; clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04400, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04400, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04400, WA ADC 246-215-04400

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart D. - Location and Installation

WAC 246-215-04405

246-215-04405. Installation--Fixed equipment, spacing or sealing (FDA Food Code 4-402.11).

Currentness

(1) EQUIPMENT that is fixed because it is not EASILY MOVABLE must be installed so that it is:

(a) Spaced to allow access for cleaning along the sides, behind, and above the EQUIPMENT;

(b) Spaced from adjoining EQUIPMENT, walls, and ceilings a distance of not more than one thirty-second inch (1 mm); or

(c) SEALED to adjoining EQUIPMENT or walls, if the EQUIPMENT is exposed to spilling or seepage.

(2) COUNTER-MOUNTED EQUIPMENT that is not EASILY MOVABLE must be installed to allow cleaning of the EQUIPMENT and areas underneath and around the EQUIPMENT by being:

(a) SEALED; or

(b) Elevated on legs as specified under WAC 246-215-04410.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04405, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04405, filed 1/17/13, effective 5/1/13.

App C 286

**246-215-04405. Installation--Fixed equipment, spacing or..., WA ADC 246-215-04405**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04405, WA ADC 246-215-04405

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 287

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart D. - Location and Installation |

WAC 246-215-04410

246-215-04410. Installation--Fixed equipment, elevation or sealing (FDA Food Code 4-402.12).

Currentness

(1) Except as specified in subsections (2) and (3) of this section, floor-mounted EQUIPMENT that is not EASILY MOVABLE must be SEALED to the floor or elevated on legs that provide at least a six inch (15 cm) clearance between the floor and the EQUIPMENT.

(2) If no part of the floor under the floor-mounted EQUIPMENT is more than six inches (15 cm) from the point of cleaning access, the clearance space may be only four inches (10 cm).

(3) This section does not apply to display shelving units, display refrigeration units, and display freezer units located in the CONSUMER shopping areas of a retail FOOD store, if the floor under the units is maintained clean.

(4) Except as specified in subsection (5) of this section, COUNTER-MOUNTED EQUIPMENT that is not EASILY MOVABLE must be elevated on legs that provide at least a four inch (10 cm) clearance between the table and the EQUIPMENT.

(5) The clearance space between the table and COUNTER-MOUNTED EQUIPMENT may be:

(a) Three inches (7.5 cm) if the horizontal distance of the table top under the EQUIPMENT is no more than 20 inches (50 cm) from the point of access for cleaning; or

(b) Two inches (5 cm) if the horizontal distance of the table top under the EQUIPMENT is no more than three inches (7.5 cm) from the point of access for cleaning.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04410, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04410, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04410, WA ADC 246-215-04410

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04500

246-215-04500. Equipment--Good repair and proper adjustment (FDA Food Code 4-501.11).

Currentness

(1) EQUIPMENT must be maintained in a state of repair and condition that meets the requirements specified under Part 4, Subpart A and Part 4, Subpart B of this chapter.

(2) EQUIPMENT components such as doors, seals, hinges, fasteners, and kick plates must be kept intact, tight, and adjusted in accordance with the manufacturer's specifications.

(3) Cutting or piercing parts of can openers must be replaced as needed to minimize the creation of metal fragments that can contaminate FOOD when the container is opened.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04500, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04500, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04500, WA ADC 246-215-04500

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 4. Equipment, Utensils and Linens
          Subpart E. - Maintenance and Operations

WAC 246-215-04505

246-215-04505. Equipment--Cutting surfaces (FDA Food Code 4-501.12).

Currentness

Surfaces such as cutting blocks and boards that are subject to scratching and scoring must be resurfaced if they can no longer be effectively cleaned and SANITIZED, or discarded if they are not capable of being resurfaced.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04505, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04505, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04505, WA ADC 246-215-04505

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04510

246-215-04510. Equipment--Microwave ovens (FDA Food Code 4-501.13).

Currentness

Microwave ovens must meet the safety standards specified in 21 C.F.R. 1030.10 Microwave Ovens.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04510, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04510, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04510, WA ADC 246-215-04510

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04515

246-215-04515. Equipment--Warewashing equipment, cleaning frequency (FDA Food Code 4-501.14).

Currentness

A WAREWASHING machine; the compartments of sinks, basins, or other receptacles used for washing and rinsing EQUIPMENT, UTENSILS, or raw FOODS, or laundering wiping cloths; and drainboards or other EQUIPMENT used to substitute for drainboards as specified under WAC 246-215-04310 must be cleaned:

(1) Before use;

(2) Throughout the day at a frequency necessary to prevent recontamination of EQUIPMENT and UTENSILS and to ensure that the EQUIPMENT performs its intended function; and

(3) If used, at least every twenty-four hours.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04515, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04515, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04515, WA ADC 246-215-04515

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 293

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04520

246-215-04520. Equipment--Warewashing machines, manufacturer's operating instructions (FDA Food Code 4-501.15).

Currentness

(1) A WAREWASHING machine and its auxiliary components must be operated in accordance with the machine's data plate and other manufacturer's instructions.

(2) A WAREWASHING machine's conveyor speed or automatic cycle times must be maintained accurately timed in accordance with manufacturer's specifications.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04520, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04520, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04520, WA ADC 246-215-04520

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 294

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04525

246-215-04525. Equipment--Warewashing sinks, use limitation (FDA Food Code 4-501.16).

*Currentness*

(1) A WAREWASHING sink may not be used for handwashing as specified under WAC 246-215-02315.

(2) If a WAREWASHING sink is used to wash wiping cloths, wash produce, or thaw FOOD, the sink must be cleaned as specified under WAC 246-215-04515 before and after each time it is used to wash wiping cloths or wash produce or thaw FOOD. Sinks used to wash or thaw FOOD must be SANITIZED as specified under subpart G of this part before and after using the sink to wash produce or thaw FOOD.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04525, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04525, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04525, WA ADC 246-215-04525

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04530

246-215-04530. Equipment--Warewashing equipment, cleaning agents (FDA Food Code 4-501.17).

Currentness

When used for WAREWASHING, the wash compartment of a sink, mechanical warewasher, or wash receptacle of alternative manual WAREWASHING EQUIPMENT as specified under WAC 246-215-04305(3), must contain a wash solution of soap, detergent, acid cleaner, alkaline cleaner, degreaser, abrasive cleaner, or other cleaning agent according to the cleaning agent manufacturer's label instructions.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04530, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04530, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04530, WA ADC 246-215-04530

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04535

246-215-04535. Equipment--Warewashing equipment, clean solutions (FDA Food Code 4-501.18).

Currentness

The wash, rinse and SANITIZE solutions must be maintained clean.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04535, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04535, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04535, WA ADC 246-215-04535

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 297

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04540

246-215-04540. Equipment--Manual warewashing equipment, wash solution temperature (FDA Food Code 4-501.19).

*Currentness*

The temperature of the wash solution in manual WAREWASHING EQUIPMENT must be maintained at not less than 110°F (43°C) or the temperature specified on the cleaning agent manufacturer's label instructions.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04540, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04540, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04540, WA ADC 246-215-04540

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04545

246-215-04545. Equipment--Mechanical warewashing equipment, wash solution temperature (FDA Food Code 4-501.110).

Currentness

(1) The temperature of the wash solution in spray-type warewashers that use hot water to SANITIZE may not be less than:

(a) For a stationary rack, single temperature machine, 165°F (74°C);

(b) For a stationary rack, dual temperature machine, 150°F (66°C);

(c) For a single tank, conveyor, dual temperature machine, 160°F (71°C);

(d) For a multitank, conveyor, multitemperature machine, 150°F (66°C).

(2) The temperature of the wash solution in spray-type warewashers that use chemicals to SANITIZE may not be less than 120°F (49°C).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04545, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04545, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04545, WA ADC 246-215-04545

**246-215-04545. Equipment--Mechanical warewashing..., WA ADC 246-215-04545**

End of Document        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 300

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04550

246-215-04550. Equipment--Manual warewashing equipment, hot water sanitization temperature (FDA Food Code 4-501.111).

Currentness

If immersion in hot water is used for SANITIZING in a manual operation, the temperature of the water must be maintained at 171°F (77°C) or above.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04550, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04550, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04550, WA ADC 246-215-04550

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04555

246-215-04555. Equipment--Mechanical warewashing equipment, hot water sanitization temperatures (FDA Food Code 4-501.112).

*Currentness*

(1) Except as specified in subsection (2) of this section, in a mechanical operation, the temperature of the fresh hot water SANITIZING rinse as it enters the manifold may not be more than 194°F (90°C) or less than:

  (a) For a stationary rack, single temperature machine, 165°F (74°C); or

  (b) For all other machines, 180°F (82°C).

(2) The maximum temperature specified under subsection (1) of this section, does not apply to the high pressure and temperature systems with wand-type, hand-held, spraying devices used for the in-place cleaning and SANITIZING of EQUIPMENT such as MEAT saws.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04555, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04555, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04555, WA ADC 246-215-04555

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 302

| Washington Administrative Code |
| --- |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04560

246-215-04560. Equipment--Mechanical warewashing equipment, sanitization pressure (FDA Food Code 4-501.113).

Currentness

The flow pressure of the fresh hot water SANITIZING rinse in a WAREWASHING machine, as measured in the water line immediately downstream or upstream from the fresh hot water SANITIZING rinse control valve, must be within the range specified on the machine manufacturer's data plate and may not be less than five pounds per square inch (35 kilopascals) or more than thirty pounds per square inch (200 kilopascals).

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04560, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04560, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04560, WA ADC 246-215-04560

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart E. - Maintenance and Operations

WAC 246-215-04565

246-215-04565. Equipment--Manual and mechanical warewashing equipment, chemical sanitization--Temperature, pH, concentration, and hardness (FDA Food Code 4-501.114).

Currentness

A chemical SANITIZER used in a SANITIZING solution for a manual or mechanical operation at contact times specified under WAC 246-215-04710(3) must meet the requirements specified under WAC 246-215-07220, must be used in accordance with the EPA-registered label use instructions, and must be used as follows:

(1) A chlorine solution must have a minimum temperature based on the concentration and pH of the solution as listed in the following chart:

| Concentration Range | Minimum Temperature | |
| --- | --- | --- |
| mg/L | pH 10 or less °F (°C) | pH 8 or less °F (°C) |
| 25-49 | 120 (49) | 120 (49) |
| 50-99 | 100 (38) | 75 (24) |
| 100 | 55 (13) | 55 (13) |

(2) An iodine solution must have a:

(a) Minimum temperature of 68°F (20°C);

(b) pH of 5.0 or less or a pH no higher than the level for which the manufacturer specifies the solution is effective; and

(c) Concentration between 12.5 mg/L and 25 mg/L.

(3) A quaternary ammonium compound solution must:

(a) Have a minimum temperature of 75°F (24°C);

(b) Have a concentration as specified under WAC 246-215-07220 and as indicated by the manufacturer's use directions included in the labeling; and

(c) Be used only in water with 500 mg/L hardness or less or in water having a hardness no greater than specified by the EPA-registered label use instructions;

(4) If another solution of a chemical specified under subsections (1) through (3) of this section is used, the PERMIT HOLDER shall demonstrate to the REGULATORY AUTHORITY that the solution achieves SANITIZATION and the use of the solution must be APPROVED;

(5) If a chemical SANITIZER other than chlorine, iodine, or a quaternary ammonium compound is used, it must be applied in accordance with the EPA-registered label use instructions; or

(6) If a chemical SANITIZER is generated by a device located on-site at the FOOD ESTABLISHMENT, it must be used as specified in subsections (1) through (4) of this section and must be produced by a device that:

(a) Complies with regulation as specified in sections 2(q)(1) and (12) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA);

(b) Complies with 40 C.F.R. 152.500 Requirement for Devices and 40 C.F.R. 156.10 Labeling Requirements;

(c) Displays the EPA device manufacturing facility registration number on the device; and

(d) Is operated and maintained in accordance with manufacturer's instructions.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04565, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04565, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04565, WA ADC 246-215-04565

App C 306

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
Subpart E. - Maintenance and Operations

WAC 246-215-04570

246-215-04570. Equipment--Manual warewashing equipment, chemical sanitization using detergent-sanitizers (FDA Food Code 4-501.115).

Currentness

If a detergent-SANITIZER is used to SANITIZE in a cleaning and SANITIZING procedure where there is no distinct water rinse between the washing and SANITIZING steps, the agent applied in the SANITIZING step must be the same detergent-SANITIZER that is used in the washing step.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04570, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04570, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04570, WA ADC 246-215-04570

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04575

246-215-04575. Equipment--Warewashing equipment, determining chemical sanitizer concentration (FDA Food Code 4-501.116).

*Currentness*

Concentration of the SANITIZING solution must be accurately determined by using a test kit or other device.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04575, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04575, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04575, WA ADC 246-215-04575

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

Subpart E. - Maintenance and Operations

WAC 246-215-04580

246-215-04580. Utensils and temperature and pressure measuring devices--Good repair and calibration (FDA Food Code 4-502.11).

Currentness

(1) UTENSILS must be maintained in a state of repair or condition that complies with the requirements specified under Part 4, Subparts A and B, or must be discarded.

(2) FOOD TEMPERATURE MEASURING DEVICES must be calibrated in accordance with manufacturer's specifications as necessary to ensure their accuracy.

(3) Ambient air temperature, water pressure, and water TEMPERATURE MEASURING DEVICES must be maintained in good repair and be accurate within the intended range of use.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04580, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04580, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04580, WA ADC 246-215-04580

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04585

246-215-04585. Utensils and temperature and pressure measuring devices--Single-service and single-use articles, required use (FDA Food Code 4-502.12).

Currentness

A FOOD ESTABLISHMENT without facilities specified under Part 4, Subparts F and G of this chapter for cleaning and SANITIZING KITCHENWARE and TABLEWARE must provide only SINGLE-USE KITCHENWARE, SINGLE-SERVICE ARTICLES, and SINGLE-USE ARTICLES for use by FOOD EMPLOYEES and SINGLE-SERVICE ARTICLES for use by CONSUMERS.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04585, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04585, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04585, WA ADC 246-215-04585

**End of Document** 

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04590

246-215-04590. Utensils and temperature and pressure measuring devices--Single-service and single-use articles, use limitation (FDA Food Code 4-502.13).

Currentness

(1) SINGLE-SERVICE and SINGLE-USE ARTICLES may not be reused.

(2) The bulk milk container dispensing tube must be cut on the diagonal leaving no more than one inch protruding from the chilled dispensing head.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04590, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04590, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04590, WA ADC 246-215-04590

**End of Document**   <span style="float:right">© 2025 Thomson Reuters. No claim to original U.S. Government Works.</span>

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| Subpart E. - Maintenance and Operations |

WAC 246-215-04595

246-215-04595. Utensils and temperature and pressure measuring devices--Shells, use limitation (FDA Food Code 4-502.14).

*Currentness*

Mollusk and crustacea shells may not be used more than once as serving containers.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04595, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04595, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04595, WA ADC 246-215-04595

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
F - Cleaning of Equipment and Utensils

WAC 246-215-04600

246-215-04600. Objective--Equipment, food-contact surfaces, nonfood-contact surfaces, and utensils (FDA Food Code 4-601.11).

Currentness

(1) EQUIPMENT, FOOD-CONTACT SURFACES, and UTENSILS must be clean to sight and touch.

(2) The FOOD-CONTACT SURFACES of cooking EQUIPMENT and pans must be kept free of encrusted grease deposits and other soil accumulations.

(3) NonFOOD-CONTACT SURFACES of EQUIPMENT must be kept free of an accumulation of dust, dirt, FOOD residue, and other debris.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04600, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04600, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04600, WA ADC 246-215-04600

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

F - Cleaning of Equipment and Utensils

WAC 246-215-04605

246-215-04605. Objective--Equipment food-contact surfaces and utensils (FDA Food Code 4-602.11).

Currentness

(1) EQUIPMENT, FOOD-CONTACT SURFACES, and UTENSILS must be cleaned:

(a) Except as specified in subsection (2) of this section, before each use with a different type of raw animal FOOD such as beef, FISH, lamb, pork, or POULTRY;

(b) Each time there is a change from working with raw FOODS to working with READY-TO-EAT FOODS;

(c) Between uses with raw fruits and vegetables and with TIME/TEMPERATURE CONTROL FOR SAFETY FOOD;

(d) Before using or storing a FOOD TEMPERATURE MEASURING DEVICE; and

(e) At any time during the operation when contamination might have occurred.

(2) Subsection (1)(a) of this section does not apply if the FOOD-CONTACT SURFACE or UTENSIL is in contact with a succession of different types of raw MEAT and POULTRY each requiring a higher cooking temperature as specified under WAC 246-215-03400 than the previous type.

(3) Except as specified in subsection (4) of this section, if used with TIME/TEMPERATURE CONTROL FOR SAFETY FOOD, EQUIPMENT, FOOD-CONTACT SURFACES, and UTENSILS must be cleaned throughout the day at least every four hours.

(4) Surfaces of UTENSILS and EQUIPMENT contacting TIME/TEMPERATURE CONTROL FOR SAFETY FOOD may be cleaned less frequently than every four hours if:

(a) In storage, containers of TIME/TEMPERATURE CONTROL FOR SAFETY FOOD and their contents are maintained at temperatures specified under Part 3 and the containers are cleaned when they are empty;

(b) UTENSILS and EQUIPMENT are used to prepare FOOD in a refrigerated room or area that is maintained at one of the temperatures in the following chart and:

(i) The UTENSILS and EQUIPMENT are cleaned at the frequency in the following chart that corresponds to the temperature; and

| Temperature | Cleaning Frequency |
|---|---|
| 41°F or less | 24 hours |
| (5.0°C or less) | |
| > 41°F - 45°F | 20 hours |
| (> 5.0°C - 7.2°C) | |
| > 45°F - 50°F | 16 hours |
| (> 7.2°C - 10.0°C) | |
| > 50°F - 55°F | 10 hours |
| (> 10.0°C - 12.8°C) | |

App C 315

(ii) The cleaning frequency based on the ambient temperature of the refrigerated room or area is documented in the FOOD ESTABLISHMENT.

(c) Containers in serving situations such as salad bars, delis, and cafeteria lines hold READY-TO-EAT TIME/TEMPERATURE CONTROL FOR SAFETY FOOD that is maintained at the temperatures specified under Part 3, are intermittently combined with additional supplies of the same FOOD that is at the required temperature, and the containers are cleaned every twenty-four hours;

(d) TEMPERATURE MEASURING DEVICES are maintained in contact with FOOD, such as when left in a container of deli FOOD or in a roast, held at temperatures specified under Part 3;

(e) EQUIPMENT is used for storage of PACKAGED or unPACKAGED FOOD such as a reach-in refrigerator and the EQUIPMENT is cleaned at a frequency necessary to preclude accumulation of soil residues;

(f) The cleaning schedule is APPROVED based on consideration of:

(i) Characteristics of the EQUIPMENT and its use;

(ii) The type of food involved;

(iii) The amount of FOOD residue accumulation; and

(iv) The temperature at which the FOOD is maintained during the operation and the potential for the rapid and progressive multiplication of pathogenic or toxigenic microorganisms that are capable of causing foodborne disease; or

(g) In-use UTENSILS are intermittently stored in a container of water in which the water is maintained at 135°F (57°C) or more or 41°F (5°C) or less and the UTENSILS and container are cleaned at least every twenty-four hours or at a frequency necessary to preclude accumulation of soil residues.

(5) Except when dry cleaning methods are used as specified under WAC 246-215-04620, surfaces of UTENSILS and

EQUIPMENT contacting FOOD that is not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD must be cleaned:

(a) At any time when contamination might have occurred;

(b) At least every twenty-four hours for iced tea dispensers and CONSUMER self-service UTENSILS such as tongs, scoops, or ladles;

(c) Before restocking CONSUMER self-service EQUIPMENT and UTENSILS such as condiment dispensers and display containers; and

(d) In EQUIPMENT such as ice bins and BEVERAGE dispensing nozzles and enclosed components of EQUIPMENT such as ice makers, cooking oil storage tanks and distribution lines, BEVERAGE and syrup dispensing lines or tubes, coffee bean grinders, and water vending EQUIPMENT:

(i) At a frequency specified by the manufacturer; or

(ii) Absent manufacturer specifications, at a frequency necessary to preclude accumulation of soil or mold.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04605, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04605, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04605, WA ADC 246-215-04605

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
  Title 246. Health, Department of
    Food Handling
      Chapter 246-215. Food Service (Refs & Annos)
        Part 4. Equipment, Utensils and Linens
          F - Cleaning of Equipment and Utensils

WAC 246-215-04610

246-215-04610. Objective--Cooking and baking equipment (FDA Food Code 4-602.12).

Currentness

(1) The FOOD-CONTACT SURFACES of cooking and baking EQUIPMENT must be cleaned at least every twenty-four hours. This section does not apply to hot oil cooking and filtering EQUIPMENT if it is cleaned as specified under WAC 246-215-04605 (4)(f).

(2) The cavities and door seals of microwave ovens must be cleaned at least every twenty-four hours by using the manufacturer's recommended cleaning procedure.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04610, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04610, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04610, WA ADC 246-215-04610

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-215. Food Service (Refs & Annos)

Part 4. Equipment, Utensils and Linens

F - Cleaning of Equipment and Utensils

WAC 246-215-04615

246-215-04615. Objective--Nonfood-contact surfaces (FDA Food Code 4-602.13).

Currentness

NonFOOD-CONTACT SURFACES of EQUIPMENT must be cleaned at a frequency necessary to preclude accumulation of soil residues.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04615, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04615, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04615, WA ADC 246-215-04615

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
F - Cleaning of Equipment and Utensils

WAC 246-215-04620

246-215-04620. Methods--Dry cleaning (FDA Food Code 4-603.11).

Currentness

(1) If used, dry cleaning methods such as brushing, scraping, and vacuuming may only contact surfaces that are soiled with dry FOOD residues that are not TIME/TEMPERATURE CONTROL FOR SAFETY FOOD.

(2) Cleaning EQUIPMENT used in dry cleaning FOOD-CONTACT SURFACES may not be used for any other purpose.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04620, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04620, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04620, WA ADC 246-215-04620

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
F - Cleaning of Equipment and Utensils

WAC 246-215-04625

246-215-04625. Methods--Precleaning (FDA Food Code 4-603.12).

Currentness

(1) FOOD debris on EQUIPMENT and UTENSILS must be scraped over a waste disposal unit or garbage receptacle or must be removed in a WAREWASHING machine with a prewash cycle.

(2) If necessary for effective cleaning, UTENSILS and EQUIPMENT must be preflushed, presoaked, or scrubbed with abrasives.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04625, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04625, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04625, WA ADC 246-215-04625

| |
|---|
| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-215. Food Service (Refs & Annos) |
| Part 4. Equipment, Utensils and Linens |
| F - Cleaning of Equipment and Utensils |

WAC 246-215-04630

246-215-04630. Methods--Loading of soiled items, warewashing machines (FDA Food Code 4-603.13).

Currentness

Soiled items to be cleaned in a WAREWASHING machine must be loaded into racks, trays, or baskets or onto conveyors in a position that:

(1) Exposes the items to the unobstructed spray from all cycles; and

(2) Allows the item to drain.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04630, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04630, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04630, WA ADC 246-215-04630

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-215. Food Service (Refs & Annos)
Part 4. Equipment, Utensils and Linens
F - Cleaning of Equipment and Utensils

WAC 246-215-04635

246-215-04635. Methods--Wet cleaning (FDA Food Code 4-603.14).

Currentness

(1) EQUIPMENT, FOOD-CONTACT SURFACES, and UTENSILS must be effectively washed to remove or completely loosen soils by using the manual or mechanical means necessary such as the application of detergents containing wetting agents and emulsifiers; acid, alkaline, or abrasive cleaners; hot water; brushes; scouring pads; high-pressure sprays; or ultrasonic devices.

(2) The washing procedures selected must be based on the type and purpose of the EQUIPMENT or UTENSIL, and on the type of soil to be removed.

**Credits**

Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 21-01-122, S 246-215-04635, filed 12/15/20, effective 1/15/21; Statutory Authority: RCW 43.20.050 and 43.20.145. WSR 13-03-109, S 246-215-04635, filed 1/17/13, effective 5/1/13.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-215-04635, WA ADC 246-215-04635

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-217. Food Worker Cards |

WAC T. 246, Ch. 246-217., Disp Table

Currentness

**Editors' Notes**

**DISPOSITION OF SECTIONS FORMERLY CODIFIED IN THIS CHAPTER**

246-217-001. Objective. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-001, filed 12/27/90, effective 1/31/91; Regulation.87.001, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-002. Legal authority of the state board of health. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-002, filed 12/27/90, effective 1/31/91; Regulation.86.999, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-011. Definitions. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-011, filed 12/27/90, effective 1/31/91; Regulation.86.001, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-020. Communicable disease. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-020, filed 12/27/90, effective 1/31/91; Regulation.87.020, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-030. Form of permits-Fees. (Statutory Authority: RCW 43.20.050 and chapter 69.03 RCW. WSR 92-14-093 (Order 286B), S 246-217-030, filed 6/30/92, effective 7/31/92. Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-030, filed 12/27/90, effective 1/31/91. Statutory Authority: Chapter 69.06 RCW. WSR 87-19-069 (Order 346), S 248-86-010, filed 9/16/87; Regulation.86.010, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-040. Requirements for permits. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-040, filed 12/27/90, effective 1/31/91; Regulation.86.020, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

246-217-050. Examination may be required. (Statutory Authority: RCW 43.20.050. WSR 91-02-051 (Order 124B), recodified as S 246-217-050, filed 12/27/90, effective 1/31/91; Regulation.86.040, effective 3/11/60.) Repealed by WSR 99-13-019, filed 6/7/99, effective 7/8/99. Statutory Authority: RCW 43.20.050.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be

App C 324

**T. 246, Ch. 246-217., Disp Table, WA ADC T. 246, Ch. 246-217., Disp Table**

more current. Please consult the credit on each document for more information.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 325

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-217. Food Worker Cards (Refs & Annos) |

WAC 246-217-005

246-217-005. Purpose and authority.

Currentness

The purpose of chapter 246-217 WAC is to establish state board of health standards for the issuance of food worker cards (food worker permits) under chapter 69.06 RCW and RCW 43.20.050. To promote and protect the health, safety and well-being of the public and prevent the spread of disease by food, all food service workers in the state shall demonstrate through the process of examination that they possess an adequate knowledge of the principles and practices involved in the safe preparation, storage, and service of foods.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-005, filed 6/7/99, effective 7/8/99.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-005, WA ADC 246-217-005

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 326

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-217. Food Worker Cards (Refs & Annos)

WAC 246-217-010

246-217-010. Definitions.

Currentness

As used in this chapter of the rules and regulations, the following definitions apply:

(1) 'Additional food safety training' means completion of a comprehensive training program on food safety of at least four hours in length. Training may include topics such as: Proper cooking, hot-holding, cold-holding and cooling of potentially hazardous foods; cross-contamination prevention; HACCP and/or proper hand washing techniques. Approval of training programs shall be obtained from jurisdictional health departments or the department by the training provider. Approval of training programs must be obtained in advance.

(2) 'Applicant' means an individual applying to obtain an initial or renewal food worker card.

(3) 'Department' means the Washington state department of health.

(4) 'Food service establishment' means:

(a) A place, location, operation, site, or facility where food is manufactured, prepared, processed, packaged, dispensed, distributed, sold, served, or offered to the consumer regardless of whether or not compensation for food occurs, including but not limited to:

(i) Restaurants, snack bars, cafeterias, taverns, bars;

(ii) Retail food stores, supermarkets, retail meat markets, retail fish markets, retail bakeries, delicatessens;

(iii) Institutional operations licensed by the department, the state department of social and health services or local

App C 327

health officer, such as schools, hospitals, jails, prisons, nursing homes, assisted living facilities, and child care facilities;

(iv) Central preparation sites, including caterers;

(v) Satellite servicing locations;

(vi) Temporary food service establishments or mobile food units;

(vii) Bed and breakfast operations;

(viii) Remote feeding sites;

(ix) Adult family homes; and

(x) Vending machines dispensing potentially hazardous foods.

(b) This term does not include:

(i) Private homes where food is prepared or served for consumption by household members and/or their guests;

(ii) Establishments offering only commercially prepackaged nonpotentially hazardous foods;

(iii) Commercial food processing establishments, licensed and regulated by the USDA, FDA, or WSDA; and

(iv) Farmers exempt from licensure under RCW 36.71.090.

(5) 'Food service worker' means an individual who works (or intends to work) with or without pay in a food service establishment and handles unwrapped or unpackaged food or who may contribute to the transmission of infectious diseases through the nature of his/her contact with food products and/or equipment and facilities. This does not include persons who

App C 328

simply assist residents or patients in institutional facilities with meals, or students in K-12 schools who periodically assist with school meal service.

(6) 'Food worker card' means a food and beverage service workers' permit as required under chapter 69.06 RCW.

(7) 'Health officer' means the county, city-county, or district health officer of a jurisdictional health department, or his/her authorized representative, or the representative of the department.

(8) 'Jurisdictional health department' refers to one of the following:

(a) Local health district as defined in chapter 70.46 RCW.

(b) City-county health department as defined in chapter 70.08 RCW.

(c) County health department as defined in chapter 70.05 RCW.

(9) 'Person' means any individual, partnership, corporation, association, or other legal entity or agency of state, county, or municipal government, or agency of the federal government which is subject to the jurisdiction of the state.

(10) 'Secretary' means the secretary of the state department of health.

**Credits**

Statutory Authority: RCW 69.06.010 and 2012 c 10. WSR 14-08-046, S 246-217-010, filed 3/27/14, effective 4/27/14. Statutory Authority: RCW 69.06.010. WSR 04-16-100, S 246-217-010, filed 8/3/04, effective 9/3/04. Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-010, filed 6/7/99, effective 7/8/99; WSR 91-02-051 (Order 124B), recodified as S 246-217-010, filed 12/27/90, effective 1/31/91; Regulation.87.002, effective 3/11/60.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-010, WA ADC 246-217-010

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-217. Food Worker Cards (Refs & Annos)

WAC 246-217-015

246-217-015. Applicability.

Currentness

(1) All food service workers must obtain a food worker card within fourteen calendar days from the beginning of employment at a food service establishment, except as provided in subsection (4) of this section.

(2) In the case of temporary food service establishments, at a minimum the operator or person in charge each shift or during hours of operation must have a valid food worker card obtained prior to the event.

(3) Employers at any food service establishment (permanent or temporary) must provide information or training regarding pertinent safe food handling practices to food service workers prior to beginning food handling duties if the worker does not hold a valid food worker card. Documentation that the information or training has been provided to the individual must be kept on file by the employer and be available for inspection by the health officer at all times.

(4) A food service worker in an adult family home, as defined in RCW 70.128.010, is exempt from possessing a food worker card, if the worker:

(a) Began working in an adult family home after June 30, 2005, has successfully completed basic or modified-basic caregiver training, and has documentation of receiving information or training regarding safe food handling practices from his or her employer prior to providing food handling or service for clients of the adult family home; or

(b) Held a valid food worker card prior to June 30, 2005, and obtained 0.5 hours of continuing education in food handling safety per year since June 30, 2005.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 06-05-008, S 246-217-015, filed 2/2/06, effective 3/5/06; WSR 99-13-019, S 246-217-015, filed 6/7/99, effective 7/8/99.

App C 330

**246-217-015. Applicability., WA ADC 246-217-015**

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-015, WA ADC 246-217-015

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 331

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-217. Food Worker Cards (Refs & Annos) |

WAC 246-217-025

246-217-025. Issuance of food worker cards-Fees.

Currentness

(1) In order to qualify for issuance of an initial or renewal food worker card, an applicant must demonstrate his/her knowledge of safe food handling practices by satisfactorily completing an examination conducted by the local health officer or designee.

(2) Each applicant for a food worker card must pay a fee in the amount of ten dollars. The fee shall be used by the jurisdictional health department or designee to defray the costs of food worker training and education, administration of the program, and testing of applicants. Photographic identification may be required at the time of application.

(3) The local health officer or designee must furnish to the applicant a copy of the latest edition of the '*Food and Beverage Service Workers' Manual*' or similar publication, as prepared or approved by the department.

(4) Effective January 1, 2000, prior to conducting the examination of the applicant(s), the health officer (or designee) must provide at least thirty minutes of instruction, including both audio and visual presentations. Instruction content shall include topics related to safe food preparation, storage and service. At a minimum, topics must include: Food borne illness overview; basic bacteriology as it relates to food borne illness; proper cooking, hot holding, cold holding and cooling of potentially hazardous foods; cross-contamination prevention; and proper handwashing techniques. Instruction content must also include the topic of food allergy awareness that is presented and/or distributed to each applicant.

(5) The food worker card examination will be uniform statewide and will be prepared by and/or approved by the department; except that jurisdictional health departments may include additional questions to address local health concerns. The examination will cover topics identified in subsection (4) of this section, except food allergy awareness, as required instruction topics. An exam must be approved by the department prior to its use. To pass the examination the applicant must answer at least eighty percent of the questions correctly.

(6) Upon payment of the required fee and the applicant's satisfactory completion of the examination, the applicant will receive the food worker card.

App C 332

(7) A copy of the card or the applicable information must be kept on file at the jurisdictional health department.

(8) Copies of food worker cards for all employed food service workers must be kept on file by the employer or kept by the employee on his or her person and open for inspection at all times by authorized public health officials.

(9) All food worker cards must be issued and signed by the local health officer. The local health officer may contract with persons to provide the required training or testing within his/her jurisdiction. The contracts must include test security provisions so that test questions, scoring keys, and other examination data are exempt from public disclosure to the same extent as records maintained by state or local government agencies.

(10) The health officer or designee must make test accommodations in accordance with the Americans with Disabilities Act for those requesting such accommodations.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 06-05-008, S 246-217-025, filed 2/2/06, effective 3/5/06. Statutory Authority: Chapter 69.06 RCW. WSR 02-22-079, S 246-217-025, filed 11/5/02, effective 1/1/03. Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-025, filed 6/7/99, effective 7/8/99.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-025, WA ADC 246-217-025

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 333

Washington Administrative Code
Title 246. Health, Department of
Food Handling
Chapter 246-217. Food Worker Cards (Refs & Annos)

WAC 246-217-035

246-217-035. Validity and form of food worker cards.

Currentness

(1) All initial cards are valid for two years from the date of issuance.

(2) Effective July 1, 1999, renewal cards are valid for three years from the date of issuance; except: An applicant may be granted a renewal card valid for five years from the date of issuance if the applicant documents that he/she has attended 'additional food safety training' within the past two years.

(3) Any legally issued food worker card shall be valid throughout Washington state.

(4) Food service workers may apply for a renewal of a food worker card up to sixty days before the expiration date on their current valid card. Proof of a valid card must be shown at the time of renewal application.

(5) The card shall be approximately three inches by five inches in size and contain the following information:

(a) The identification of the card as a Washington state food worker card or 'limited duty card,' as applicable;

(b) The identity of the jurisdictional health department issuing the card;

(c) Printed (or typed written) name and signature of the food service worker;

(d) Card expiration date;

**246-217-035. Validity and form of food worker cards., WA ADC 246-217-035**

(e) Signature of the health officer; and

(f) Any other identifier or other information deemed necessary by the health officer.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-035, filed 6/7/99, effective 7/8/99.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-035, WA ADC 246-217-035

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 335

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-217. Food Worker Cards (Refs & Annos) |

WAC 246-217-045

246-217-045. Limited duty food worker cards.

Currentness

The local health officer may issue a limited duty card when necessary to reasonably accommodate a person with a disability.

(1) A person applying to obtain a limited duty card shall communicate to the local health officer which low public health risk activity(ies) (e.g., dishwashing, bussing tables, filling condiment containers, etc.) he or she will be performing.

(2) The health officer may require the applicant to attend the food safety training associated with the issuance of food worker cards. No written examination is required for the issuance of limited duty cards.

(3) The local health officer shall list the approved activity(ies) on the food worker card.

(4) The fee and length of validity of limited duty cards is the same as all other food worker cards.

(5) The employer should ensure that the individual is provided with information to safely perform the activity(ies) listed on the card.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-045, filed 6/7/99, effective 7/8/99.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-045, WA ADC 246-217-045

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 336

Washington Administrative Code

Title 246. Health, Department of

Food Handling

Chapter 246-217. Food Worker Cards (Refs & Annos)

WAC 246-217-060

246-217-060. Revocation of food worker card.

Currentness

The food worker card may be revoked by the local health officer, or by the secretary, upon evidence indicating repeated or continuing violations of accepted procedures and practices in the preparation, service, or storage of food offered for public consumption, or upon demonstration of the presence of a communicable disease in the infectious state, or an infectious condition of potential hazard to the public or to the persons' co-workers, or for falsification of information required for issuance of the card. Any food service worker who has had his/her card revoked shall be ineligible for issuance of another card by any local health officer in the state until the conditions for revocation are appropriately resolved.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-060, filed 6/7/99, effective 7/8/99; WSR 91-02-051 (Order 124B), recodified as S 246-217-060, filed 12/27/90, effective 1/31/91; Regulation.86.050, effective 3/11/60.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-060, WA ADC 246-217-060

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App C 337

| Washington Administrative Code |
| Title 246. Health, Department of |
| Food Handling |
| Chapter 246-217. Food Worker Cards (Refs & Annos) |

WAC 246-217-070

246-217-070. Right of appeal.

*Currentness*

Any food service worker whose food worker card has been revoked by a local health officer, or the secretary, may appeal to the local board of health, or the department's office of professional standards consistent with chapter 246-10 WAC in the event such revocation is by the secretary, for review of the findings. The appeal must be in writing and must be filed with the appropriate board or office within ten days of revocation of the card. While the appeal is pending, the revocation of the card shall be stayed until such time as the appropriate board or office has reviewed the findings and entered its decision.

**Credits**

Statutory Authority: RCW 43.20.050. WSR 99-13-019, S 246-217-070, filed 6/7/99, effective 7/8/99; WSR 91-02-051 (Order 124B), recodified as S 246-217-070, filed 12/27/90, effective 1/31/91; Regulation.86.060, effective 3/11/60.

Current with amendments adopted through the 25-13 Washington State Register, dated July 2, 2025. Some sections may be more current. Please consult the credit on each document for more information.

WAC 246-217-070, WA ADC 246-217-070

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.