**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE GEO GROUP, INC., | No. 24-2815 |
| *Plaintiff - Appellee,* | D.C. No. 3:23-cv-05626-BHS |
| v. | |
| JAY INSLEE, Governor; ROBERT FERGUSON, | ORDER |
| *Defendants - Appellants.* | |

Filed February 11, 2026

Before: William A. Fletcher, Ronald M. Gould, and
Jacqueline H. Nguyen, Circuit Judges.

Order;
Statement by Judges W. Fletcher, Gould, and Nguyen;
Dissent by Judge Bumatay

# SUMMARY*

## Intergovernmental Immunity / Preemption

The panel denied a petition for panel rehearing and rehearing en banc in a case in which the panel (1) vacated the district court's grant of a preliminary injunction sought by GEO Group, Inc. against Washington's Governor and Attorney General, preventing the enforcement of Sections 2, 3, 5, and 6 of House Bill 1470, a Washington law that protects the health and safety of civil detainees held in the Northwest Immigration and Customs Enforcement Processing Center; and (2) granted in part GEO's motion to remand to the district court for further proceedings.

Respecting the denial of rehearing en banc, Judges W. Fletcher, Gould and Nguyen wrote that the panel correctly decided that the appropriate comparators to GEO's civil detention facility are not Washington's jails and prisons, but rather the two types of involuntary civil detainment facilities—residential treatment facilities for people with mental and substance abuse disorders, and involuntary civil commitment facilities that hold individuals, such as mentally ill patients.

Dissenting from the denial of rehearing en banc, Judge Bumatay, joined by Judges Callahan, Bennett, R. Nelson, Collins, Bress, VanDyke and Tung, wrote that the court should have reviewed this case en banc and affirmed the district court's injunction of the state regulation. The appropriate comparators to federal immigration detention

---

*This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

centers are the State's prisons and detainment facilities. By
its own terms, Washington's new immigration detention
regime does not apply to state detention facilities, and
discriminates against the federal government by singling out
the federal government for unfavorable treatment. The
Supremacy Clause forbids Washington's discrimination
against federal operations.

## ORDER

The panel unanimously voted to deny appellee's petition
for panel rehearing. Judge Gould and Judge Nguyen voted
to deny the petition for rehearing en banc, and Judge Fletcher
so recommended.

The full court has been advised of the petition for
rehearing en banc. A judge requested a vote on whether to
rehear the matter en banc. Judge Eric D. Miller did not
participate in the deliberations or vote in this case. The
matter failed to receive a majority of votes of the nonrecused
active judges in favor of en banc consideration. Fed. R. App.
P. 40.

The petition for panel rehearing and rehearing en banc
(Dkt. No. 75) is **DENIED**.

W. FLETCHER, GOULD, and NGUYEN, Circuit Judges, respecting the denial of rehearing en banc:

Our dissenting colleague has unsuccessfully sought en banc rehearing in two cases involving the GEO Group.

The first case involved work performed by civil detainees in deportation proceedings, held by a for-profit corporation, the GEO Group, in its privately owned and operated facility located in Tacoma, Washington. *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750 (9th Cir. 2025). According to GEO's own estimate, eighty-five full-time employees would have been required to do the work performed by those civil detainees. *Id.* at 758. GEO's contract with the government allowed it to employ civilian detainees, but required it to comply with "all applicable federal, state, and local laws and standards," including "labor laws and codes." *Id.* at 757.

The district court held, consistent with GEO's contract with the government, that GEO was required to comply with Washington's minimum wage law and to pay the state mandated minimum wage to its civil detainees who performed work on its behalf. *Washington v. GEO Grp., Inc.*, No. C17-5806RJB, 2021 WL 5824570, at *3 (W.D. Wash. Dec. 8, 2021). (Our colleague mischaracterizes the district court's holding when he writes that GEO was required to pay an "*inflated* minimum wage." Dissent at 7 (emphasis added)). A different panel of our court affirmed the district court. Our colleague called the opinion en banc, and his en banc call failed. *Nwauzor v. GEO Grp.*, 146 F.4th 1280 (9th Cir. 2025). In his dissent from our denial of en banc rehearing in the case now at issue, our colleague continues to object to that denial.

The second case is the case now at issue. *GEO Grp. v. Inslee,* 151 F.4th 1107 (9th Cir. 2025). This case involves the conditions of confinement of the civil detainees held by GEO in its Tacoma facility. GEO's privately owned and operated detainment facility holds civilian detainees pending determination of their immigration status. Some of the detainees will eventually be deported because they have no right to be in this country. A smaller number of the detainees will eventually be released back into this country because they have a right to be here. None of the detainees in GEO's facility is being held because he or she has been convicted of, or even charged with, a crime.

The parties agree that Washington may regulate comparable detainment facilities in the same manner. The disputed question is the appropriate comparator. The government contends that GEO may treat its civil detainees in the same manner Washington treats convicted criminals held in its prisons and jails. *Id.* at 1120. Appellants contend that GEO may not treat its civil detainees as if they are convicted criminals. Instead, according to appellants, GEO may treat its civil detainees in the same manner Washington treats civil detainees held in two other types of involuntary confinement—residential treatment facilities for people with "mental disorders or substance abuse disorders," and involuntary civil commitment facilities that hold individuals, such as mentally ill patients, against their will. *Id.* Our panel concluded unanimously that the appropriate comparators are these two other types of involuntary civil confinement facilities.

There are two important differences between GEO's civil detention facility and Washington's prisons and jails that make that comparison inappropriate.

First, detainees in GEO's Tacoma facility are not being held because they are serving criminal sentences or are charged with crimes. Our colleague appears to suggest otherwise by including in his dissent a table published by Immigration and Customs Enforcement that purports to show that "most immigration-facility detainees nationwide have either a criminal conviction or a pending criminal charge." Dissent at 10. Any such suggestion is wrong. As we wrote in our opinion, "Detainees at the NWIPC are awaiting administrative review of their immigration status. They are civil detainees. They are not in criminal proceedings." *Nwauzor*, 127 F.4th at 757. Their confinement is not punitive. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (Immigration detention is "civil, not criminal" and "nonpunitive in purpose and effect."). By contrast, individuals in Washington's prisons and many of those held in its jails are there because they have been convicted of crimes. Their conditions of confinement are, by definition and design, punitive. Second, GEO's facility is privately owned and operated. By contrast, Washington's prisons and jails are governmentally owned and operated.

After concluding that the appropriate comparators are not Washington's jails and prisons, but rather the two types of involuntary civil detainment facilities, we remanded to the district court to make that comparison in the first instance.

Our dissenting colleague contends that it is so obvious that the appropriate comparator is Washington's prisons and jails that this should have been an "easy" case. Dissent at 10. We disagree with him as to the appropriate comparator, but we agree that this is an easy case. We believe that we have decided it correctly. Our court has appropriately declined to rehear the case en banc.

BUMATAY, Circuit Judge, joined by CALLAHAN, BENNETT, R. NELSON, COLLINS, BRESS, VANDYKE, and TUNG, Circuit Judges, dissenting from the denial of rehearing en banc:

We've seen this before. Just a few months ago, the Ninth Circuit ignored the Supremacy Clause of the Constitution by permitting the State of Washington to interfere with the federal government's housing of aliens in removal proceedings simply because the government chose to use federal contractors to run its immigration detention facility. *See Nwauzor v. GEO Grp., Inc.*, 146 F.4th 1280, 1282 (9th Cir. 2025) (Bumatay, J., dissenting from the denial of rehearing en banc). Under the ruling, we let a Washington law force the federal government's contractors to classify its alien detainees as "employees" under state law and pay them an inflated minimum wage. *Id.* This law violated the Supremacy Clause because, at minimum, it discriminated against the federal government. *See id.* at 1285 (Washington's law "punishes the federal government for its policy choice to use private contractors and treats the federal government differently from state facilities. That is the very definition of a state affording itself better treatment than it affords the United States.") (quoting *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 774 (9th Cir. 2025) (Bennett, J., dissenting)). Such a decision was a "dangerous precedent" allowing "any State [to] impair any federal policy—no matter how central to the federal government—so long as the State regulates federal contractors rather than the federal government itself." *Id.* at 1286.

This case is merely the latest round in the State of Washington's crusade against the federal government's use of federal contractors to enforce immigration policy. *See*

*GEO Grp., Inc. v. Inslee*, 151 F.4th 1107, 1111 (9th Cir. 2025).  The Washington Legislature imposed a series of state regulations directed *solely* at the Northwest Immigration and Customs Enforcement Processing Center in Tacoma, Washington ("Northwest ICE Center").  *See* Second Substitute House Bill 1470, 68th Leg., Reg. Sess. (Wash. 2023); Second Substitute House Bill 1232, 69th Leg., Reg. Sess. (Wash. 2025).  The regulations dictate nearly every facet of how the federal government must treat alien detainees at the Center—from the detainees' right to use their personal belongings, to the mandatory provision of special diets, to free phone calls, to a right of "privacy" during personal visits, to housekeeping.  Wash. Rev. Code §§ 70.395.040(1)(a), (e), 70.395.060(2)(b)–(d).  Not only that.  Washington claims a right to enforce these regulations through unannounced inspections and hefty penalties.  *See* Wash. Rev. Code §§ 70.395.050(2)(a), 70.395.070(1), 70.395.080.  The reason Washington claims to get away with this?  The Northwest ICE Center is run by a federal contractor—The GEO Group, Inc.

These are no across-the-board state regulations.  Instead, to avoid the fiscal and safety burdens of these obligations, Washington exempts *any* of its own facilities—including state and local detention facilities, jails, and prisons—from both the regulations and their enforcement mechanisms.  *See* Wash. Rev. Code § 70.395.080(6) ("The state and its agencies are not liable for a violation of this chapter.").  And so, these regulations apply *only* to the Northwest ICE Center. In effect, what Washington State has told Washington, D.C., is: "Rules for thee but not for me!"

In the normal course, the discriminatory exclusion of Washington's comparable facilities would doom the law. Whatever else the Supremacy Clause requires, it prohibits

THE GEO GROUP V. INSLEE                    9

States from targeting the federal government and its contractors with burdensome regulation while exempting themselves from its costs. *See United States v. Washington*, 596 U.S. 832, 838 (2022) (The Constitution prohibits state laws that "discriminate against the Federal Government or those with whom it deals (*e.g.*, contractors)" (simplified)). As we've said, "*any* discriminatory burden on the federal government is impermissible." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019). In determining whether a State engaged in discrimination, we look to state law's burdens on appropriate comparators. *See North Dakota v. United States*, 495 U.S. 423, 438 (1990) ("Since a regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself, the Court has required that the regulation be one that is imposed on some basis unrelated to the object's status as a Government contractor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State."). And we've already indicated that the appropriate comparators to federal immigration detention centers are the State's "prisons and detainment facilities." *California*, 921 F.3d at 882.

This comparison is obviously right—both immigration detention facilities and state jails and prisons detain those accused or convicted of violating the law, whether immigration or state criminal law. Both have comparable concerns for public safety and ensuring appearances at future proceedings. Congress has authorized, and in many cases required, the detention of certain aliens in removal proceedings. *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (b)(2)(A), 1226(a)–(c), 1231(a). Mandatory detention is required for aliens involved in serious criminal activities, such as burglary, theft, assault of a law enforcement officer, or

crimes resulting in another's death or serious bodily injury.
*See* 8 U.S.C. § 1226(c)(1)(E).  Indeed, according to ICE,
most immigration-facility detainees nationwide have either
a criminal conviction or a pending criminal charge.[1]

**ICE Currently Detained by Criminality and Arresting Agency: FY2026**

| Criminality | ICE | Percent ICE | CBP | Percent CBP | Total |
|---|---|---|---|---|---|
| Total | 57,311 | 83% | 11,679 | 17% | 68,990 |
| Convicted Criminal | 16,627 | 94% | 1,102 | 6% | 17,729 |
| Pending Criminal Charges | 16,040 | 90% | 1,841 | 10% | 17,881 |
| Other Immigration Violator | 24,644 | 74% | 8,736 | 26% | 33,380 |

So immigration detention serves two security-related
goals—"preventing flight" and "protecting the community."
*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Indeed,
"Congress adopted [the detention provisions] against a
backdrop of wholesale failure by the INS to deal with
increasing rates of criminal activity by aliens." *Demore v.
Kim*, 538 U.S. 510, 518 (2003).  So close are the goals of
immigration and criminal detention that Congress instructed
the government to consider using "existing prison[s], jail[s],
detention center[s], or other comparable facilit[ies]" before
constructing new immigration detention facilities.  *See* 8
U.S.C. § 1231(g)(2).

So this case should have been easy.  By its own terms,
Washington's new immigration detention regime doesn't
apply to state detention facilities.  It thus discriminates
against the federal government by "singling out the Federal
Government for unfavorable treatment." *Washington*, 596
U.S. at 839.    This  is  an  open-and-shut  case  of
intergovernmental    immunity—as    the    district    court

---

[1] U.S. Immigr. and Customs Enf't, Detention FY 2026 YTD (Feb. 2,
2026),
https://www.ice.gov/doclib/detention/FY26_detentionStats02022026.xl
sx [https://perma.cc/B3UC-DGAC].

concluded. *See GEO Grp., Inc. v. Inslee*, 720 F. Supp. 3d 1029, 1067 (W.D. Wash. 2024).

Unfortunately, we didn't follow the normal course. Instead, the panel invents a new set of rules when it comes to immigration detention centers run by federal contractors. Rather than looking to the state's prisons and detention facilities, the panel directs the district court to focus myopically on the smallest subset of inapt comparators— "private residential treatment facilities and civil commitment facilities." *Inslee*, 151 F.4th at 1119. This is a wholly unfitting comparison. Ignoring the obvious similarities between criminal and immigration detention, the panel wants to look only at private sector *healthcare* facilities, such as mental health and substance abuse treatment centers. While these private institutions sometimes detain patients involuntarily, they simply don't have the same public safety concerns as immigration detention centers and state prisons and jails. And healthcare facilities involve a focus on medical treatment and rehabilitation that immigration detention facilities lack. Moreover, although the panel would have us compare the Northwest ICE Center to private treatment facilities, Washington's law exempts state contractors who provide these services. *See* Wash. Rev. Code § 70.395.100. In creating this mismatch, the panel ignores both our circuit precedent and common sense.

As is almost axiomatic, the power to burden is the power to destroy. And state destruction of federal operations is something the Supremacy Clause doesn't permit. But that's the clear intent of Washington's laws. Given this, we should have reviewed this case en banc and affirmed the injunction of the state regulation. Because the Supremacy Clause forbids Washington State's discrimination against federal

operations, I respectfully dissent from the denial of rehearing en banc.