No. 24-2815

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

The GEO Group, Inc.,

*Plaintiff-Appellee,*

— v. —

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington, and NICHOLAS W. BROWN, in his official capacity as the Attorney General of the State of Washington

*Defendants-Appellants.*

On appeal from the United States District Court for the Western District of Washington, No. 3:23-cv-05626 (Hon. Benjamin H. Settle)

## APPELLEE'S MOTION TO STAY THE MANDATE PENDING PETITION FOR WRIT OF CERTIORARI

**[Relief Required by February 18, 2026]**

Scott Schipma
THE GEO GROUP, INC.
4955 Technology Way
Boca Raton, FL 33431
(561) 999-7615
scott.schipma@geogroup.com

Dominic E. Draye
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Attorneys for Plaintiff-Appellee*

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 41(d) and Ninth Circuit Rule 41-1, Appellee The GEO Group, Inc. ("GEO") moves for a stay of the mandate in this case pending disposition of its forthcoming petition for writ of certiorari to the United States Supreme Court. This Court denied GEO's petition for rehearing on February 11, 2026. Under Federal Rule of Appellate Procedure 41(b), the mandate will issue 7 days later, on February 18, 2026. GEO's deadline for filing its petition for writ of certiorari is 90 days from this Court's entry of judgment, which falls on May 12, 2026. Sup. Ct. R. 13.

As this Court knows from this case and related litigation, Washington's attempts to enforce state law at the Northwest ICE Processing Center present substantial questions on which the circuit courts have divided and on which eight judges of this Court dissented from the denial of rehearing in this case, and six judges dissented from the denial of rehearing in *GEO Group, Inc. v. Nwauzor*, 146 F.4th 1280 (9th Cir. 2025) (denying rehearing). Moreover, the United States Department of Justice filed amicus briefs supporting GEO in both cases and explaining its view that Washington may not enforce the laws at issue. The *Nwauzor* decision is now the subject of a petition for writ of certiorari, filed January 9, 2026. *GEO Grp., Inc. v. Nwauzor*, No. 25-828 (filed Ja. 9, 2026).

1

The same legal doctrines are at issue in the current case, including a State's ability to impose substantive requirements on federal contractors performing as directed by the federal government and whether the field of immigration detention is preempted such that States may not impose additional requirements on contractors beyond those imposed by the federal government. These are "substantial questions," and the forthcoming petition for writ of certiorari is not "frivolous or filed merely for delay." 9th Cir. R. 41-1.

## ARGUMENT

This Court does not stay the mandate automatically, but only where the petition for certiorari is not "frivolous or filed merely for delay." 9th Cir. R. 41-1. In this case, the petition will be far from frivolous. Eight judges dissented from the denial of rehearing en banc, and the United States participated as amicus curiae in support of GEO—during both the current and previous presidential administrations. Given the potential for Supreme Court review in this case and the added possibility that the Court will review *Nwauzor* and alter the legal analysis on which the panel decision relies, the Court should stay the mandate pending the resolution of a petition for writ of certiorari.

### I. The Supreme Court Is Interested in the Issue of Contractor Immunity.

This Term, the Supreme Court has already heard two cases involving contractor immunity. On November 3, 2025, the Court heard argument in *Hencely*

*v. Fluor Corp.*, No. 24-924, a case involving the government contractor defense under the Federal Tort Claims Act. One week later, on November 10, 2025, the Court heard argument in a case that GEO appealed form the Tenth Circuit, *GEO Grp., Inc. v. Menocal*, No. 24-758. That case involved derivative sovereign immunity for government contractors under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940). Neither case presents issues identical to the current dispute, but the Court's decision in *Menocal* could require reconsideration of the panel's holding on derivative sovereign immunity. At minimum, the Court's interest in the law applicable to government contractors makes both *Nwauzor* and this case serious candidates for Supreme Court review.

    If anything, this case has greater stakes than *Hencely* or *Menocal*. The latter is specific to a statutory exemption from the FTCA's otherwise broad waiver of sovereign immunity. But that waiver is not applicable beyond the specific context of a contractor manufacturing products for the government. *Menocal* comes closer because the law of derivative sovereign immunity is not limited to any specific statutory context. But its scope is also narrower than the issues in this case. Intergovernmental immunity and preemption have greater impact on the range of state laws that are permissible under the Supremacy Clause. If the Court granted review in *Fluor* and *Menocal*, which present more narrow questions regarding federal contractors' ability to perform their work unimpeded by state law, the current

3

case is far from frivolous because it involves related doctrines with even broader effect.

## II. The Circuits Are Divided on the Permissibility of States Regulating Federal Contractors.

The Second, Third, and Fourth Circuits all hold that States cannot evade the intergovernmental immunity doctrine by regulating contractors rather than regulating the federal government directly.

During the pendency of this case, the Third Circuit decided *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025). That case held unconstitutional a state law that purported to ban private immigration detention facilities. It did so under the direct-regulation prong of intergovernmental immunity, and its reasoning breaks sharply with the panel decision in this case. After a thorough discussion of the history of intergovernmental immunity, the Third Circuit held that regulations ostensibly aimed at contractors are actually regulations of federal contracting and unconstitutional if they regulate "how and through whom [the federal government] will carry out a core federal function." *Id.* at 325. The Third Circuit distinguished the tax cases on which the panel decision relies from substantive laws that dictate how the government function is performed. *Id.* at 323–24. To underscore the disparate approach to direct regulation, the State of Washington was among the amici supporting New Jersey's law in *CoreCivic*.

4

The Second Circuit first reached that conclusion in *United States v. Town of Windsor*, 765 F.2d 16 (2d Cir. 1985). There, the Department of Energy contracted with the General Electric ("GE") to manage a nuclear research and training facility in Windsor, Connecticut. *Id.* at 17–18. At the Department's direction, GE began constructing new buildings at the site. *Id.* at 17. When the town learned of the Department's plans for nuclear research within its borders, it ordered GE to cease construction until it obtained certain state-issued permits. *Id.* at 17–18. GE refused, prompting litigation. Although the town acknowledged that the Supremacy Clause would forbid it from "demand[ing] compliance with the Code from the government" itself, it maintained that "it may demand compliance from the Government's contractors." *Id.* at 18. The Second Circuit squarely rejected that attempt to distinguish between the federal government and its contractors for Supremacy Clause purposes. As the court explained, "[e]nforcement of the substance of the permit requirement against the contractors would have the same effect as direct enforcement against the Government." *Id.* at 19. "Either way," applying the State's law would frustrate the federal government's interests, *id.*, because allowing Windsor to enforce the law against GE "would be essentially equivalent to allowing the Town to enforce the provisions directly against the Government," *id.* at 20.

The Fourth Circuit, too, has concluded that States cannot evade the Supremacy Clause by training their sights on federal contractors, rather than the

5

federal government itself. *See United States v. Virginia*, 139 F.3d 984 (4th Cir. 1998). The law in *Virginia* required private investigators to obtain a state license before working in the state. *Id.* at 985-86. When the Commonwealth threatened to enforce that requirement against private investigators who served as independent contractors for the FBI, the Bureau and one of the contractors sued. *Id.* at 986–87. The Fourth Circuit held that Virginia could not force the FBI's contractors to obtain state licenses because that would impermissibly burden the federal government's ability to select and use its chosen agents to carry out federal functions. *Id.* at 989–90.

The common thread among all these decisions is that States cannot evade the Supremacy Clause by regulating federal contractors rather than the federal government itself. As each of these courts has recognized, so long as a state law "carries the same sting" as a law that directly regulates or discriminates against the federal government, *CoreCivic*, 145 F.4th at 322, it makes no difference that a state has accomplished those forbidden ends by regulating federal contractors.

The panel opinion also raises "substantial questions" around the meaning of Supreme Court precedent. Chief among those questions is whether intergovernmental immunity's direct-regulation prong extends to the regulation of contractors, or only regulation of the federal government itself. The panel held that it does not. Op. 21. But several Supreme Court decisions at least support—if not,

6

in GEO's view, compel—the opposite conclusion. *United States v. Washington*, 596 U.S. 832 (2022); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 n.3 (1988) ("[T]he federal function must be left . . . free of state regulation" even when "the federal function is carried out by a private contractor."). The State attempted to distinguish *Goodyear Atomic* on the basis that the government owned the facility where the contractor performed its work. If that distinction is not material, as GEO contends that it is not, the Supreme Court's decision in *Goodyear Atomic* compels a different outcome in this case.

The same is true for the question whether a contractual provision that refers to "applicable" state laws excludes those that are inconsistent with the Supremacy Clause. The Court in *Leslie Miller v. Arkansas*, 352 U.S. 187 (1956), held that "applicable laws and regulations" did not include licensing laws that restrict federal contractors' ability to perform as directed, *id.* at 189–90. Whether that holding applies to the state regulations in this case that add requirements to those contained in the Performance-Based National Detention Standards is a "substantial question." Fed. R. App. P. 41.

Appellant opposes this motion.

## **CONCLUSION**

The Supreme Court itself has demonstrated an interest in the issue presented by this appeal, and the specific issues in this case have divided the circuits. GEO's

7

forthcoming petition is therefore not "frivolous or filed merely for delay." 9th Cir. R. 41-1. There is therefore a substantial chance that the Supreme Court will grant GEO's petition, and the relatively short stay of the mandate to learn the outcome of GEO's forthcoming petition imposes no undue burden on the State.

February 16, 2026

Respectfully submitted,

/s/ Dominic E. Draye
Dominic E. Draye
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Washington, DC 20037
(202) 331-3100
drayed@gtlaw.com

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 16, 2026, a copy of the foregoing brief was filed on CM/ECF and service was thereby electronically delivered to all counsel of record.

February 16, 2026                    /s/ Dominic E. Draye
                                     Dominic E. Draye

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the portions of the document exempted by Fed. R. App. 32(f) and L.R. 32(B), this document contains 1,671 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in 14-point.

February 16, 2026                                  */s/ Dominic E. Draye*
                                                   Dominic E. Draye